# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARK H. GOLDSTEIN, on behalf of himself
and all others similarly situated,

        Plaintiff,

   vs.

RTX CORPORATION, formerly known as
Raytheon Technologies Corporation,

        Defendant.

CIVIL ACTION NO. 1:24-CV-11525-ADB

# DEFENDANT RTX CORPORATION'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

    I.     The Complaint Should Be Dismissed Because Goldstein Lacks Standing. .......... 5

    II.    The Court Should Dismiss For Lack of Personal Jurisdiction............................. 7

    a.     The Court Lacks General Jurisdiction Over RTX. ............................................... 8

    b.     The Court Lacks Specific Jurisdiction Over RTX. ............................................. 10

    III.   The Court Should Dismiss Or Transfer The Case Because The District Of Massachusetts Is An Improper Venue. ............................................................... 12

    IV.   Goldstein Fails To State An ADEA Claim (Counts I–III)................................. 13

    a.     Goldstein Cannot State An ADEA Advertising Claim (Count I). ...................... 13

    b.     Goldstein's ADEA Disparate Treatment Claim (Count II) Fails........................ 16

    c.     Goldstein Cannot Pursue An ADEA Disparate Impact Claim (Count III). ......... 17

    V.    Goldstein's Chapter 151B Claims (Counts IV–VI) Must Be Dismissed............ 19

    VI.   Goldstein Fails To State Any Claim Under The VHRA (Counts VII–IX).......... 20

CONCLUSION...................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acheson Hotels, LLC v. Laufer,*
    601 U.S. 1 (2023) ..................................................................................................... 6

*Adamson v. Walgreens Co.,*
    750 F.3d 73 (1st Cir. 2014) ..................................................................................... 19

*Arafat v. Sch. Bd. of Broward Cnty.,*
    549 F. App'x 872 (11th Cir. 2013) ......................................................................... 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 5, 14

*Babb v. Wilkie,*
    589 U.S. 399 (2020) ............................................................................................... 15

*BNSF Ry. Co. v. Tyrrell,*
    581 U.S. 402 (2017) ................................................................................................. 8

*Boyd v. City of Wilmington,*
    943 F. Supp. 585 (E.D.N.C. 1996) ......................................................................... 13

*Bradley v. T-Mobile US, Inc.,*
    2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ......................................................... 5

*Brennan v. Paragon Emp. Agency, Inc.,*
    356 F. Supp. 286 (S.D.N.Y. 1973) ......................................................................... 15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,*
    582 U.S. 255 (2017) ............................................................................................. 7, 8

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ............................................................................................... 15

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.,*
    228 F.3d 24 (1st Cir. 2000) ................................................................................. 6, 19

*Colesanti v. Becton Dickinson,*
    2019 WL 4043957 (D.R.I. July 19, 2019) ............................................................... 7

*Copia Commc'ns, LLC v. AMResorts, L.P.,*
    812 F.3d 1 (1st Cir. 2016) ........................................................................................ 7

*Cornell v. N. Wasco Cnty. Sch. Dist. No. 21,*
    2012 WL 4599419 (D. Or. July 9, 2012) ............................................................... 13

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Cummings v. Pearson Educ., Inc.*,
    2006 WL 151880 (D. Mass. Jan. 18, 2006) ...................................................................14, 17

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .........................................................................................................9

*Dress v. Cap. One Bank (USA), N.A.*,
    368 F. Supp. 3d 178 (D. Mass. 2019) .............................................................................13

*Gallagher v. Amedisys, Inc.*,
    2018 WL 2223673 (D. Mass. May 15, 2018) ....................................................................7

*Groma, LLC v. BuildRE, LLC*,
    668 F. Supp. 3d 40 (D. Mass. 2023) .................................................................................5

*Grossmann v. Dillard Dep't Stores, Inc.*,
    109 F.3d 457 (8th Cir. 1997) ...........................................................................................17

*Hailes v. United Air Lines*,
    464 F.2d 1006 (5th Cir. 1972) .......................................................................................5, 7

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993) .......................................................................................13, 14, 16

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) .........................................................................................................8, 9

*Hilsinger Co. v. FBW Invs.*,
    109 F. Supp. 3d 409 (D. Mass. 2015) ...............................................................................4

*Jarvis v. Trader Joe's*,
    2021 WL 2481980 (D. Mass. June 16, 2021) ..................................................................13

*Kleber v. CareFusion Corp.*,
    914 F.3d 480 (7th Cir. 2019) ...........................................................................................18

*In re Lernout & Hauspie Sec. Litig.*,
    337 F. Supp. 2d 298 (D. Mass. 2004) ...........................................................................9, 10

*Lindsay v. Future Elecs. Corp.*,
    930 F. Supp. 677 (D. Mass. 1996) ...................................................................................19

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) .................................................................................................15, 16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................................................5, 7

*Magnello v. TJX Cos.*,
  556 F. Supp. 2d 114 (D. Conn. 2008) ..............................................................17

*Marino v. Hyatt Corp.*,
  793 F.2d 427 (1st Cir. 1986) ...........................................................................11

*Medici v. Lifespan Corp.*,
  239 F. Supp. 3d 355 (D. Mass. 2017) .........................................................9, 10, 12

*Merrick v. Franey Med. Lab, Inc.*,
  2019 WL 4542515 (D. Mass. Sept. 19, 2019) ...........................................17

*Motus, LLC v. CarData Consultants, Inc.*,
  23 F.4th 115 (1st Cir. 2022)...............................................................................4

*Newark Branch, NAACP v. Harrison*,
  907 F.2d 1408 (3d Cir. 1990)..............................................................................7

*Parr v. Woodmen of the World Life Ins. Soc.*,
  657 F. Supp. 1022 (M.D. Ga. 1987) ..................................................................6

*Pearce v. Frontier Airlines*,
  2024 WL 2881329 (D. Md. June 7, 2024)..............................................................18

*Peterson v. Black Body Corp.*,
  2024 WL 3272548 (W.D. Va. June 28, 2024) ......................................................20

*Pettit v. AngioDynamics, Inc.*,
  2021 WL 4441261 (D. Mass. Sept. 28, 2021) ................................................9, 11

*Phillips v. Prairie Eye Ctr.*,
  530 F.3d 22 (1st Cir. 2008)....................................................................10, 11, 12

*Pietrantoni v. Corcept Therapeutics Inc.*,
  640 F. Supp. 3d 197 (D. Mass. 2022) ..................................................................16

*Raymond v. Spirit Aerosystems Holdings, Inc.*,
  406 F. Supp. 3d 996 (D. Kan. 2019)...................................................................18

*Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*,
  43 F.4th 150 (1st Cir. 2022)................................................................................10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sack v. Bentsen*,
    51 F.3d 264 (1st Cir. 1995) ............................................................................14, 15

*Saeed v. Omex Sys., Inc.*,
    2017 WL 4225037 (D. Mass. Sept. 22, 2017) ........................................................12

*Sledge v. J. P. Stevens & Co.*,
    585 F.2d 625 (4th Cir. 1978) ...............................................................................5, 6

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ...............................................................................................18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................................4

*Sweeney v. Santander Bank, N.A.*,
    2021 WL 4224312 (D. Mass. Sept. 16, 2021) ........................................................19

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) .....................................................................................4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................................................5

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 963 (11th Cir. 2016) ...............................................................................18

*Williams v. Lazer Spot, Inc.*,
    2014 WL 5365581 (D. Md. Oct. 21, 2014) ...........................................................17

*Wilson v. Recorded Future, Inc.*,
    669 F. Supp. 3d 53 (D. Mass. 2023) ......................................................................20

**Statutes**

28 U.S.C. § 1391 ............................................................................................................12

28 U.S.C. § 1404 .........................................................................................................1, 12

29 U.S.C. § 623 ..........................................................................................13, 14, 15, 16, 18, 20

Mass. Gen. Laws ch. 151B, § 5 ....................................................................................19

Mass. Gen. Laws ch. 151B, § 9 ....................................................................................19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Va. Code Ann. § 2.2-3903 ...........................................................................................20

Va. Code Ann. § 2.2-3905 ...........................................................................................20

**Other Authorities**

Chronicle of Higher Education, *Age Distribution Among College Students, Fall
2017*, Almanac (2019) ............................................................................................14

**Regulations**

29 C.F.R. § 1625.4 .....................................................................................................15

## PRELIMINARY STATEMENT

Plaintiff Mark Goldstein's age discrimination suit against Defendant RTX Corporation ("RTX") is brought by the wrong plaintiff, in the wrong forum, and on the wrong legal theory. Goldstein's suit suffers from four primary deficiencies, any one of which provides sufficient grounds to dismiss the Complaint.

*First,* Goldstein lacks Article III standing because he suffered no injury in fact. While he alleges that RTX discriminated against him based on his age by refusing to hire him and "deterring" him from applying for entry-level positions allegedly limited to recent graduates, his allegations make clear that he had no genuine interest in these positions, applying to them solely to gin up a basis for this lawsuit. That does not suffice for Article III standing.

*Second,* the Court lacks personal jurisdiction over RTX. RTX is incorporated in Delaware and headquartered in Virginia, and its principal place of business is in Connecticut. None of the entry-level positions Goldstein identifies were based in Massachusetts, and hiring decisions were made by employees of three RTX subsidiaries. In other words, the alleged conduct central to Goldstein's claims has nothing to do with any contacts RTX had with Massachusetts.

*Third,* for the same reasons, the Court should dismiss this case for improper venue. Alternatively, it should transfer the case under 28 U.S.C. § 1404(a) to the U.S. District Court for the Eastern District of Virginia—the District where RTX is headquartered and Goldstein resides.

*Fourth,* Goldstein's Complaint, which asserts advertising, disparate treatment, and disparate impact age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), Mass. Gen. Laws ch. 151B, and Virginia Human Rights Act ("VHRA"), should be dismissed for failure to state a claim. Goldstein alleges that RTX limits certain positions to and publishes job postings geared toward *inexperienced* job applicants—not younger ones—which is insufficient to state an advertising or disparate treatment claim. And as a job applicant, he cannot

1

bring a disparate impact claim, which is available only to employees.

The Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiff Mark Goldstein is a 67-year-old man who earned a bachelor's degree in economics in 1978 and a master's degree in business administration in 1980.  Compl. ¶ 30.  He alleges that since October 2018, RTX has engaged in a pattern or practice of age discrimination in refusing to hire him and a putative class and collective of workers age 40 or older.  *Id.* ¶ 34.  Specifically, he alleges that RTX limits some (but not all) positions to "Recent Graduate[s]," who are "new or recent graduates or candidates with less than 12 or 24 months of work experience," publishes job postings to that effect, and screens out candidates who do not meet this criterion.  *Id.* ¶ 35.

Goldstein admits that he is not a "Recent Graduate," but alleges he nevertheless pursued some of these jobs and was deterred from unidentified others.  Compl. ¶¶ 65, 129.  The roles he pursued varied greatly and sought vastly different qualifications.  For example, Goldstein allegedly applied for "Cyber Defense Technologist II" and "Cost Schedule Analyst" jobs.  *Id.* ¶¶ 69, 77.  The former sought candidates with a recent master's degree and experience with "DoD classified operating and/or laboratory environments" and "audit reviews" related to "physical security, network and application, [and] password administration," while the latter sought applicants with a recent bachelor's degree and experience with "[p]roposal & pricing" and "APEX, SAP Business Warehouse, Rplan & ACES."  Ex. 1; Ex. 2.

Goldstein resides in Virginia.  Compl. ¶ 30.  While he alleges that "at least one" of the positions he sought was "based in Massachusetts," in fact, all of the jobs he references were based in California, Texas, or Iowa.  *See* Declaration of Stephen Schulz ("Schulz Decl.") ¶¶ 11–17.  A summary of the positions to which Goldstein alleges he applied follows:

| Position | Requisition Number | Application Date | Employing Entity | Location |
|---|---|---|---|---|
| Cyber Defense Technologist II | 139389BR[1] | 5/6/2019 | Raytheon Company | Fullerton, CA |
| Program Cost Schedule Analyst I (New Grad Opportunity) | 139244BR | 5/15/2019 | Raytheon Company | Fullerton, CA |
| Proposal Analyst I (early 2021 Start) | 174644BR | 2/4/2021 | Raytheon Company | Goleta, CA |
| Financial Analyst I | 179782BR | 6/1/2021 | Raytheon Company | Plano, TX |
| Associate, System Engineer (New Graduate) | 01464198 | 3/10/2022 | Rockwell Collins, Inc. | Cedar Rapids, IA |
| Associate, Software Engineer (New Grad) | 01468255 | 6/8/2022 | ARINC Incorporated | Los Angeles, CA |
| Systems Engineer I – Onsite | 01560901 | 3/15/2023 | Rockwell Collins, Inc. | Cedar Rapids, IA |
| Systems Engineer I – New Grad – Onsite | 01550545 | 4/5/2023 | Rockwell Collins, Inc. | Cedar Rapids, IA |

*Id.* ¶¶ 11–18.  RTX has no record of Goldstein applying for the Proposal Analyst I role.  *Id.* ¶ 18.

While Goldstein brings this suit against RTX, none of the positions he alleges he pursued were with RTX.  In fact, as reflected in the table above, the employing entities for all the roles he pursued were RTX subsidiaries, namely Raytheon Company, Rockwell Collins, Inc. ("Rockwell Collins"), and ARINC Incorporated ("ARINC").  *See* Schulz Decl. ¶¶ 11–17.  Raytheon Company and Rockwell Collins are each wholly owned subsidiaries of RTX, organized under the laws of Delaware.  Declaration of Renee Morrell ("Morrell Decl.") ¶¶ 9–10, 16–17.  ARINC is a Delaware corporation and subsidiary of Radio Holdings, Inc., which itself is a subsidiary of Rockwell Collins.  *Id.* ¶¶ 21–22.  Raytheon Company is headquartered in Virginia.  *Id.* ¶ 11.  Rockwell Collins's headquarters is in Cedar Rapids, Iowa.  *Id.* ¶ 17.  And ARINC's headquarters is in Annapolis, Maryland.  *Id.* ¶ 22.  Goldstein filed an EEOC charge against Raytheon Company in

---

[1]    While Goldstein alleges that this position's requisition number was 139839BR, it was in fact 139**389**BR.  Schulz Decl. ¶ 11.

August 2019 and obtained a right to sue letter on April 9, 2021. Compl. ¶ 21. He filed a second EEOC charge against RTX on June 13, 2023. Ex. 9. He cross-filed the second charge with the Massachusetts Commission Against Discrimination ("MCAD") but withdrew it on April 23, 2024. Compl. ¶ 27. He also cross-filed the second charge with the Virginia Office of Civil Rights, which allegedly issued a right to sue letter on March 19, 2024. *Id.* ¶ 28.

Goldstein now brings nine putative class and collective age discrimination claims against RTX. *See* Compl. ¶ 130. Goldstein alleges that RTX violated the ADEA, 29 U.S.C. § 621 *et seq.*, by publishing job postings indicating a preference for younger applicants (Count I), intentionally discriminating against older applicants by limiting some positions to recent graduates (Count II), and disparately impacting older applicants by using recent graduate positions (Count III). *See* Compl. ¶¶ 154–89. He brings substantially similar claims under Mass. Gen. Laws ch. 151B, § 4 *et seq.* (Count IV–VI), *see* Compl. ¶¶ 190–224, and the VHRA, Va. Code Ann § 2.2-3900 *et seq.* (Counts VII–IX), *see* Compl. ¶¶ 225–55. RTX now moves to dismiss the Complaint.

## STANDARD OF REVIEW

A court must dismiss a complaint under Rule 12(b)(1) where a plaintiff lacks Article III standing. At the pleading stage, the "plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing, including injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A complaint is subject to dismissal under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for lack of venue. Where the motion is "made at the inception of the case and the issue of jurisdiction is not intertwined with the merits," the plaintiff bears the burden to offer facts supporting personal jurisdiction. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022). While courts take "facts affirmatively alleged by plaintiff as true," they do "not credit conclusory allegations or draw farfetched inferences." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994). On a motion to dismiss, the court can consider "facts

put forward by . . . defendants, to the extent that they are uncontradicted." *Hilsinger Co. v. FBW Invs.*, 109 F. Supp. 3d 409, 416 (D. Mass. 2015) (cleaned up). Such facts are not "disputed" merely because the opposing party challenges them in a brief. *Groma, LLC v. BuildRE, LLC*, 668 F. Supp. 3d 40, 45 (D. Mass. 2023).

Finally, a complaint must be dismissed under Rule 12(b)(6) unless it "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## <u>ARGUMENT</u>

### I.    The Complaint Should Be Dismissed Because Goldstein Lacks Standing.

Goldstein has not "suffered an injury in fact" sufficient to establish Article III standing because he had no genuine interest in the RTX positions he references in the Complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must have been "concretely harmed" to bring suit, because "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Consistent with that principle, an unsuccessful job applicant must be "seriously interested" in a position to have standing to pursue a discrimination claim against an employer. *Sledge v. J. P. Stevens & Co.*, 585 F.2d 625, 641 (4th Cir. 1978). Similarly, a plaintiff deterred from applying for a position because of allegedly discriminatory advertisements must "demonstrate that he has a real, present interest in the type of employment advertised" and that "he was effectively deterred by the improper ad from applying for such employment." *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972); *see also Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924, at *11 (N.D. Cal. Mar. 13, 2020).

Goldstein was not concretely harmed because he had no "genuine" or "serious" interest in any of the RTX positions referenced in the Complaint. *Bradley*, 2020 WL 1233924, at *11.

Goldstein's allegations make clear that he applied to "at least 7 Recent Graduate Positions" not because of any desire to work in those jobs, but to manufacture grounds for a lawsuit. Compl. ¶ 65. The job duties for the positions Goldstein pursued varied widely. *Compare, e.g.*, Ex. 6 ("Systems Engineer I" job required "supporting aircraft integration and ramp/flight test activities"), *with* Ex. 3 ("Financial Analyst" job involved "duties in Contract Set Up and Customer Invoicing").[2] Nor was there any geographical rhyme or reason to Goldstein's applications. The jobs he pursued were in California, Texas, and Iowa. *See* Schulz Decl. ¶¶ 11–17. The primary common thread among them is that they were allegedly for "Recent Graduates." Further, Goldstein does not allege that he applied for *any* RTX positions that did not seek "Recent Graduates," despite acknowledging that RTX offers ample "other opportunities" to applicants who are not "current college senior[s], or . . . recent college graduate[s]." Compl. ¶ 39.[3]

All this makes clear that Goldstein's "purpose in applying for work with [RTX] was to test the legality of [RTX's] hiring practices rather than to seek actual employment." *Sledge*, 585 F.2d at 641.[4] As a result, he was "not . . . harmed by a refusal to hire" and lacks standing. *Id.*; *see also Parr v. Woodmen of the World Life Ins. Soc.*, 657 F. Supp. 1022, 1032 (M.D. Ga. 1987) (similar); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 5, 7 (2023) (J. Thomas, concurring in the judgment) ("self-described 'tester'" of "hotels she has no intention of visiting" lacks standing).

Goldstein also lacks standing to bring any advertising claim based on positions he did not

---

[2]    The job postings may be considered on a motion to dismiss because they are "integral to [and] explicitly relied upon in the [C]omplaint." *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *see also* Compl. ¶¶ 69, 77, 85, 93, 101, 108, 115, 122.

[3]    Goldstein alleges that, as of May 2023, "roughly 25% of all new hires" at RTX were "new or recent college graduates," Compl. ¶ 5, meaning about 75% were more experienced applicants.

[4]    Indeed, this is not the first time Goldstein has pursued an age discrimination claim, as he has filed at least two separate ADEA suits. *See Goldstein v. Forcepoint, LLC*, No. 1:17-CV-1194-RP (W.D. Tex.); *Goldstein v. Forcepoint LLC*, No. 1:23-cv-1484-RP (W.D. Tex.).

pursue.  While he alleges that he was "discouraged and deterred" from applying for "dozens" of other unidentified "Recent Graduate" roles based on RTX's job postings, Compl. ¶ 129, he fails to allege *any* information about these positions.  He nowhere alleges facts establishing when and where he saw postings related to these jobs, his interest in them, the requirements or duties they involved, or that he would have applied to them if not for the postings.  Absent such allegations, he cannot establish that he had "a real, present interest" in these positions, let alone that "he was effectively deterred" from applying.  *Hailes*, 464 F.2d at 1008; *see also Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1414–16 (3d Cir. 1990).  Indeed, the facts Goldstein *does* allege indicate that he was *not* deterred from applying for "Recent Graduate" positions, repeatedly applying to them so that he could bring this lawsuit.  *See Colesanti v. Becton Dickinson*, 2019 WL 4043957, at *5 (D.R.I. July 19, 2019) ("internally inconsistent" allegations must be "set aside"), *R&R adopted*, 2019 WL 4039529 (D.R.I. Aug. 27, 2019).  As a result, Goldstein fails to demonstrate the "irreducible constitutional minimum" of injury in fact.  *Lujan*, 504 U.S. at 560.

## II.    The Court Should Dismiss For Lack of Personal Jurisdiction.

Due process permits "two types of personal jurisdiction": "general" and "specific." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017).[5]  "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Id.* (cleaned up).  By contrast, "to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the forum."  *Id.* (cleaned up).  General jurisdiction lies only against corporations whose contacts "are so continuous

---

[5]    Personal jurisdiction must also be authorized by the Massachusetts long-arm statute.  *See, e.g.*, *Gallagher v. Amedisys, Inc.*, 2018 WL 2223673, at *3 (D. Mass. May 15, 2018) (Burroughs, J.).  The First Circuit has generally "treated the limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause."  *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016).  Thus, the Court may "sidestep the statutory inquiry."  *Gallagher*, 2018 WL 2223673, at *3 (cleaned up).

and systematic as to render them essentially at home in the forum." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (cleaned up). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *Id.* (cleaned up). General jurisdiction may lie beyond these paradigm forums only "in an exceptional case." *Id.* (cleaned up). By contrast, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*, 582 U.S. at 262. Even "extensive forum contacts that are unrelated to those claims" do not suffice. *Id.* at 264. Here, there is no basis for either type of jurisdiction.

**a. The Court Lacks General Jurisdiction Over RTX.**

The Court cannot exercise general jurisdiction over RTX because RTX is not "at home" in Massachusetts. Neither "paradigm" basis for jurisdiction applies. RTX is incorporated in Delaware, and its headquarters is in Virginia. *See* Morrell Decl. ¶¶ 4, 8. Its principal place of business has been in Connecticut for the entire relevant time period because, among other reasons, RTX's corporate leadership offices have been located in Connecticut since at least March 2010, and RTX's CEO and other corporate officers maintain principal offices there. *See id.* ¶¶ 5–7; *see Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 93 (2010) (corporation's principal place of business is the "actual center of direction, control, and coordination"). Goldstein does not allege that RTX has any "exceptional" other connections with Massachusetts that would warrant extending general jurisdiction to RTX. Nor could he, as there is no evidence that RTX's operations in Massachusetts are "so substantial and of such a nature as to render [it] at home in [Massachusetts]." *Tyrrell*, 581 U.S. at 413. While Goldstein alleges that RTX was "headquartered in Waltham, Massachusetts until "approximately June 2022," when its headquarters moved to Virginia, Compl. ¶ 31, that is insufficient to convey general jurisdiction over RTX, which had its principal place of business in Connecticut during the period Goldstein alleges it was headquartered in Massachusetts. *See*

Morrell Decl. ¶¶ 5–7; *Hertz*, 559 U.S. at 93 (headquarters is not principal place of business where another location is the center of direction, control, and coordination).

Nor is there any basis to exercise general jurisdiction over RTX based on its subsidiaries' contacts with Massachusetts. Goldstein allegedly applied for eight "Recent Graduate" positions, for which the relevant employers were the RTX subsidiaries (1) Raytheon Company, (2) ARINC, and (3) Rockwell Collins. Schulz Decl. ¶¶ 11–17. None of these entities are incorporated or headquartered in Massachusetts. All three are incorporated in Delaware. Morrell Decl. ¶¶ 10, 17, 22. Raytheon Company is headquartered in Virginia, ARINC is headquartered in Maryland, and Rockwell Collins is headquartered in Iowa. *Id.* ¶¶ 11, 17, 22. Goldstein offers no allegations or evidence suggesting these subsidiaries are nevertheless "at home" in Massachusetts. *See, e.g.*, *Pettit v. AngioDynamics, Inc.*, 2021 WL 4441261, at *7 (D. Mass. Sept. 28, 2021) (Burroughs, J.).

Even if Goldstein had put forth any such allegations or evidence, "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent" absent plausible allegations that the parent "'exerts greater than normal control' over the subsidiary." *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 312 (D. Mass. 2004); *see also Medici v. Lifespan Corp.*, 239 F. Supp. 3d 355, 371–72 (D. Mass. 2017) (Burroughs, J.); *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) (foreign corporations not subject to "general jurisdiction whenever they have an in-state subsidiary or affiliate"). A plaintiff can overcome the "presumption of corporate separateness" by demonstrating that a parent and subsidiary are "alter egos" that "do not exist as separate entities but are one and the same for purposes of jurisdiction." *Medici*, 239 F. Supp. 3d at 371. But this is a "demanding" standard akin to piercing the corporate veil, and courts treat separate entities as alter egos "only with reluctance and in extreme circumstances when compelled by reasons of equity." *Id.*

Here, the Complaint pleads *no* facts whatsoever about the relationship between these subsidiaries and RTX, let alone facts sufficient to satisfy the stringent alter ego standard.  And it could not.  While these entities are subsidiaries of RTX, they operate as separate businesses with their own profit and loss and employees.  *See* Morrell Decl. ¶¶ 12–15, 18–20, 21, 23–24.  They are separately incorporated, observe corporate formalities, have separate officers and boards of directors, and use separate facilities.  *See id.* ¶¶ 12–13, 18, 23.  Nothing about the relationship between RTX and its subsidiaries would constitute the "extreme circumstances" necessary to treat any of the subsidiaries as the same entity as RTX.  *See Medici*, 239 F. Supp. 3d at 372.[6]

### b.  The Court Lacks Specific Jurisdiction Over RTX.

The Court also lacks specific jurisdiction over RTX because this suit does not arise out of any contacts RTX had with Massachusetts.  The constitutional analysis for specific personal jurisdiction "has three distinct prongs: (1) relatedness; (2) purposeful availment; and (3) reasonableness."  *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022).  All three must be satisfied to demonstrate specific jurisdiction, and Goldstein bears the burden of making this showing with evidence.  *See id.*

***First**,* the "relatedness" prong requires "that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts."  *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008).  In other words, the "defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case."  *Id.* (cleaned up). Goldstein attempts

---

[6]  In assessing the impact of a subsidiary's forum contacts on personal jurisdiction over a corporate parent, some courts have also analyzed (1) whether the subsidiary is an "empty shell" and (2) whether the subsidiary acts as the parent's agent.  *See In re Lernout*, 337 F. Supp. 2d at 313.  RTX's subsidiaries are not empty shells.  *See* Morrell Decl. ¶¶ 13–15, 18–20, 23–24.  And the agency inquiry "often depend[s] on the same facts" as the alter ego test, so any argument that Raytheon acts as RTX's agent fails for the same reasons described above.  *In re Lernout*, 337 F. Supp. 2d at 313.

to make this showing, alleging that "Raytheon's nationwide employment decisions have been made in Massachusetts," that he "applied to at least one Recent Graduate Position based in Massachusetts," and that "many of the acts" giving rise to his claims "occurred in and emanated from Raytheon's headquarters" in Massachusetts. Compl. ¶ 17. But the evidence belies these cursory allegations. Goldstein never applied for a role with RTX. Instead, the employing entities for the jobs he allegedly pursued were Raytheon Company, ARINC, and Rockwell Collins. *See* Schulz Decl. ¶¶ 11–17. *None* of the jobs were based in Massachusetts; in fact, they were based in California, Texas, and Iowa. *See id.* ¶¶ 11–17. Individual hiring managers within each subsidiary prepared the job postings with assistance from recruiting staff, and the hiring managers made independent hiring decisions. *See id.* ¶¶ 4–5. Only one hiring manager was located in Massachusetts, and the rest were based in the job location (i.e., in California, Texas, or Iowa) or working remotely in a state other than Massachusetts. *Id.* ¶¶ 11–17.[7] In other words, "all key events related to this case occurred" outside Massachusetts. *Pettit*, 2021 WL 4441261, at \*7.

What's more, even if any of the three relevant RTX subsidiaries *did* have relevant contacts with Massachusetts, those contacts could not be attributed to RTX. *Supra* at 9–10. RTX's subsidiaries are distinct corporate entities that operate as separate businesses observing corporate formalities and with their own profits and losses, employees, officers, boards of directors, and facilities. *See* Morrell Decl. ¶¶ 12–15, 18–20, 23–24. Goldstein offers no allegations to the contrary. Thus, he cannot identify "in-state conduct" by RTX that is "important" or "material" to his claims to carry his burden to show relatedness. *Phillips*, 530 F.3d at 27.

---

[7]    Goldstein does not allege the locations of the "dozens" of other unidentified "Recent Graduate" roles he supposedly did not pursue because of RTX's job postings. Compl. ¶ 129. His vague allegations regarding these positions cannot support any finding of personal jurisdiction. *Marino v. Hyatt Corp.*, 793 F.2d 427, 430 (1st Cir. 1986).

**Second**, Goldstein cannot demonstrate that RTX "purposefully availed" itself of Massachusetts by invoking "the benefits and protections of that state's laws" in a way that makes RTX's "involuntary presence before the state's courts foreseeable." *Saeed v. Omex Sys., Inc.*, 2017 WL 4225037, at *6 (D. Mass. Sept. 22, 2017) (Burroughs, J.) (cleaned up). RTX did not "avail itself" of Massachusetts law in any way relevant to Goldstein's claims, both because it was not the relevant employing entity and because none of the positions were based in Massachusetts. RTX could not "have known that it was rendering itself liable to suit in Massachusetts" when its subsidiaries sought to fill jobs in other states. *Phillips*, 530 F.3d at 29.

**Third**, the "reasonableness" factor weighs against litigating this case in Massachusetts. *See Medici*, 239 F. Supp. 3d at 371 (detailing five "Gestalt" factors relevant to reasonableness analysis, including burden, efficiency, and state interests in the dispute). RTX is a foreign corporation, and Goldstein himself resides in Virginia. None of the positions Goldstein pursued were based in Massachusetts, so it is unlikely that Massachusetts will be the most convenient and efficient forum for witnesses relevant to the case. And, as detailed below, Virginia has a greater interest in adjudication of this dispute as the forum where Goldstein resides and RTX is headquartered.

## III.    The Court Should Dismiss Or Transfer The Case Because The District Of Massachusetts Is An Improper Venue.

Because RTX is not "subject to the court's personal jurisdiction," it is not a resident of Massachusetts for venue purposes. 28 U.S.C. § 1391(c)(2). And, for the reasons explained above, no "substantial part of the events or omissions giving rise to the claim occurred" here either. *Id.* § 1391(b)(2). Accordingly, the Court should dismiss for improper venue.

Even if the Court *had* personal jurisdiction and was an appropriate venue, it should transfer this case to the Eastern District of Virginia "[f]or the convenience of [the] parties and witnesses." 28 U.S.C. § 1404(a). RTX is headquartered in Arlington, Virginia. Compl. ¶ 31. Goldstein also

resides in Virginia, *id.* ¶ 30, and at least as of June 2023 lived in the Eastern District of Virginia, Ex. 9, making that forum more convenient for *both* parties.  *See, e.g.*, *Jarvis v. Trader Joe's*, 2021 WL 2481980, at *2 (D. Mass. June 16, 2021) (transferring case to Eastern District of Virginia where plaintiff resided in neighboring district).  And while there is generally a presumption in favor of the plaintiff's chosen forum, that choice "is less significant" in a putative class action suit like this one.  *Dress v. Cap. One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 181–82 (D. Mass. 2019).  Thus, if the case is not dismissed, it should be transferred to the Eastern District of Virginia.

## IV.    Goldstein Fails To State An ADEA Claim (Counts I–III).

Even if the Court had personal jurisdiction over RTX and Goldstein had standing to sue, the Complaint fails to state any viable ADEA claim.  Goldstein's ADEA advertising and intentional discrimination claims (Counts I and II) must be dismissed because the Complaint alleges that certain RTX positions are reserved for applicants with limited *experience*—not younger applicants.  And Goldstein's disparate impact claim (Count III) must be dismissed because the ADEA does not provide a disparate impact cause of action for job applicants.

### a.    Goldstein Cannot State An ADEA Advertising Claim (Count I).

The ADEA prohibits "any notice or advertisement relating to employment . . . indicating any preference, limitation, specification, or discrimination, based on age."  29 U.S.C. § 623(e).  While the statute protects job seekers from age-based discrimination, it does not proscribe hiring decisions "wholly motivated by factors other than age, . . . even if the motivating factor is correlated with age."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).  Consistent with that principle, the statute's advertising provision bars employers from publishing notices indicating a preference for younger applicants, but not notices indicating a preference for attributes correlated with age.  *See, e.g.*, *Cornell v. N. Wasco Cnty. Sch. Dist. No. 21*, 2012 WL 4599419, at *12 (D. Or. July 9, 2012); *Boyd v. City of Wilmington*, 943 F. Supp. 585, 592 (E.D.N.C. 1996).  Courts in

this Circuit have routinely concluded that employer preferences for "[r]ecent . . . education or experience" are correlated with but "analytically distinct from age." *Sack v. Bentsen*, 51 F.3d 264, at *4 (1st Cir. 1995) (adding points to qualification score for recent education did not violate ADEA); *Cummings v. Pearson Educ., Inc.*, 2006 WL 151880, at *9 (D. Mass. Jan. 18, 2006).

Goldstein's ADEA advertising claim fails at the threshold because he alleges that RTX publishes job postings seeking applicants with limited experience—not younger applicants. He alleges that RTX job postings include "terms like 'New Grad,' 'New Graduate,' 'Recent Grad,' or similar language," or "state that the basic qualifications require the applicant to be a recent graduate, a soon-to-be graduate, have graduated within a recent time frame, or have less than 12 or 24 months of relevant work experience." Compl. ¶ 162. Nowhere does he allege that any RTX job postings indicate that positions are limited to individuals under age 40 or include any other "preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e). And while he alleges that RTX's job postings "deter" older workers from applying and reveal that RTX "prefers to hire younger workers," he includes no factual allegations in support of these claims. Absent such facts, these are "mere conclusory statements" that need not be taken as true. *Iqbal*, 556 U.S. at 678. When they are set aside, Goldstein alleges only that RTX's job postings indicate a preference for a lack of experience that is merely (in some but not all cases) "correlated with age." *Hazen*, 507 U.S. at 611.[8]

In an attempt to buttress his claim, Goldstein cites an EEOC regulation stating that job postings with the terms "college student," "recent college graduate," and "phrases of a similar

---

[8]  This correlation is not as strong as Goldstein suggests. *See* Compl. ¶ 50. As of 2017, university populations included a substantial number of older students: 16 percent of undergraduates were age 30 and older, and nearly 20 percent of graduate students were age 40 and older. Chronicle of Higher Education, *Age Distribution Among College Students, Fall 2017*, Almanac (2019).

Case 1:24-cv-01169-JLH-SRF    Document 33    Filed 09/13/24    Page 22 of 28 PageID #: 156

nature" violate the ADEA. 29 C.F.R. § 1625.4(a). But the regulation—which has rarely been cited or interpreted by courts—is inconsistent with the ADEA's prohibition only on job postings indicating preferences "based on age." 29 U.S.C. § 623(e). As the Supreme Court has explained in interpreting another ADEA provision, the phrase "based on age" "requires that age be a but-for cause" of the employer's action. *Babb v. Wilkie*, 589 U.S. 399, 405–06 (2020). In other words, the ADEA's advertising provision prohibits age from being the "but-for cause" of "any preference, limitation, specification, or discrimination" in a job posting. 29 U.S.C. § 623(e). The EEOC's regulation departs from this requirement, flatly declaring that the terms "college student" and "recent college graduate" always "violate the Act" absent a statutory exception, regardless of why the employer uses them. 29 C.F.R. § 1625.4(a). The regulation thus impermissibly transforms the ADEA's prohibition on advertising preferences "based on age" into an "analytically distinct" bar against indicating a preference for inexperienced applicants. *Sack*, 51 F.3d 264, at *4.

Because the EEOC's regulation is unmoored from the text and purpose of the ADEA, it lacks "power to persuade," and the Court should reject it. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2247, 2262 (2024) (cleaned up). Indeed, prior to the Supreme Court's (now abrogated) decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), at least one court declined to follow precisely this regulatory interpretation of the ADEA's advertising provision. *See Brennan v. Paragon Emp. Agency, Inc.*, 356 F. Supp. 286, 288–89 (S.D.N.Y. 1973) (declining to follow agency bulletin construing ADEA to prohibit terms "recent college graduate" and "college student" in advertisements), *aff'd,* 489 F.2d 752 (2d Cir. 1974).

If that were not enough, the EEOC's *own* job postings for its entry-level hiring programs underscore that its regulation is inconsistent with the ADEA. The EEOC touts its "Pathways Recent Graduates Program" as providing "individuals who *recently graduated* from qualifying

15

institutions or programs with developmental experiences in the Federal government." Ex. 10 (emphasis added).[9] And the agency publicizes its Attorney Honors Program as being limited to "third-year law student[s]," "full-time graduate law students" with "no significant post- J.D. employment," and judicial law clerks who have engaged in no other "significant legal employment following graduation." Ex. 11. Of course, the EEOC is charged with enforcing the ADEA, and it strives to be a "model employer." *See* EEOC Strategic Plan 2022–2026, https://www.eeoc.gov/eeoc-strategic-plan-2022-2026. Its "do as I say, not as I do" approach to its own job postings further undermines the already minimal persuasive force of its interpretation of the ADEA. *See Loper Bright*, 144 S. Ct. at 2247 (persuasive power of agency's interpretation depends in part on "its consistency with earlier and later pronouncements" (cleaned up)).

**b. Goldstein's ADEA Disparate Treatment Claim (Count II) Fails.**

Goldstein's ADEA intentional discrimination claim is similar to his advertising claim, and it fails for similar reasons. The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As already detailed above, an employer may only be held liable under this provision if age "actually motivated the employer's decision," rather than an "analytically distinct" criterion like experience level. *Hazen*, 507 U.S. at 610–11.

Here too, Goldstein's factual allegations focus exclusively on RTX's claimed practice of limiting certain positions only to recent graduates. For example, the Complaint alleges that the "basic qualifications for many positions" require applicants to be current students or recent graduates, and that RTX refuses to interview or hire applicants outside these groups. Compl.

---

[9] The Court can take judicial notice of the EEOC's public postings on a motion to dismiss. *See, e.g.*, *Pietrantoni v. Corcept Therapeutics Inc.*, 640 F. Supp. 3d 197, 205 (D. Mass. 2022).

¶ 173.  Goldstein further alleges that RTX targets its "recruitment and hiring efforts" to recent graduates and current students, requires applicants to provide "year and month of graduation and academic transcripts" when applying, and uses "automated systems" to "screen out" experienced applicants.  *See id.*  Once again, these allegations are insufficient to state a disparate treatment claim because they indicate that RTX prefers inexperienced applicants, not younger ones.  *See Cummings*, 2006 WL 151880, at *9; *see also Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 875 (11th Cir. 2013) (affirming dismissal where plaintiff alleged employer preferred "fresh graduates"); *Grossmann v. Dillard Dep't Stores, Inc.*, 109 F.3d 457, 459 (8th Cir. 1997) ("That Dillards recruits recent college graduates is not evidence it discriminates against older workers."); *Williams v. Lazer Spot, Inc.*, 2014 WL 5365581, at *3 (D. Md. Oct. 21, 2014) (holding that an employer's stated preference for "'somebody that just got out of truck school' . . . does not, by itself, constitute unlawful age discrimination"); *Magnello v. TJX Cos.*, 556 F. Supp. 2d 114, 123 (D. Conn. 2008) (holding that defendant's "use of college recruitment" was reasonable).

Goldstein attempts to bolster this obvious defect by alleging "[u]pon information and belief" that RTX "prefers to hire younger workers" and "kn[ew] and intended" that its hiring practices would result in disproportionate hiring of younger applicants.  Compl. ¶ 175.  But he once again fails to provide any factual support for these conclusory claims.  Without such facts, his conclusory allegation of discriminatory intent cannot support an ADEA claim.  *See Merrick v. Franey Med. Lab, Inc.*, 2019 WL 4542515, at *2 (D. Mass. Sept. 19, 2019) (dismissing ADEA claim based on a "speculative conclusion that Plaintiff's termination was the result of age discrimination").

### c.  Goldstein Cannot Pursue An ADEA Disparate Impact Claim (Count III).

Goldstein's disparate impact claim must be dismissed for a different, but equally straightforward reason:  the ADEA does not provide a disparate impact cause of action for actual

or prospective job applicants.  The statute's disparate impact provision, Section 4(a)(2), makes it unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623(a)(2).  The "key phrase" is "or otherwise adversely affect his status as an employee," which makes clear that "depriving or tending to deprive any individual of employment opportunities" is "a subset of 'adversely affecting the individual's status as an employee.'"  *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 963, 963 (11th Cir. 2016) (en banc) (cleaned up).  "In other words, section 4(a)(2) protects an individual only if he has a 'status as an employee.'"  *Id.*  "Applicants who are not employees when alleged discrimination occurs do not have a 'status as an employee.'"  *Id.* at 964.

Consistent with this text, both appeals courts to address the issue (and several district courts) have concluded that the ADEA permits employees—but not applicants—to bring disparate impact claims.  *See Villarreal*, 839 F.3d at 963–70; *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482–88 (7th Cir. 2019) (en banc); *accord Pearce v. Frontier Airlines*, 2024 WL 2881329, at *2 n.1 (D. Md. June 7, 2024); *Raymond v. Spirit Aerosystems Holdings, Inc.*, 406 F. Supp. 3d 996, 1000 (D. Kan. 2019).  And the Supreme Court's decision in *Smith v. City of Jackson* further supports these courts' reading of the statute.  544 U.S. 228 (2005).  There, the Supreme Court held that an *employee* may bring a disparate impact claim under section 4(a)(2) of the ADEA but did not address whether *applicants* may do so.  Three Justices authored a concurring opinion explaining that, "Section 4(a)(2), *of course*, does not apply to 'applicants for employment' at all—it is only § 4(a)(1) that protects this group."  *Id.* at 266 (O'Connor, J., concurring) (emphasis added).

Here, Goldstein asserts a disparate impact claim based on supposed discrimination he experienced as a job applicant and "deterred" applicant.  The Court should follow the well-

reasoned decisions rejecting such a cause of action under the ADEA and dismiss Goldstein's claim.

**V.    Goldstein's Chapter 151B Claims (Counts IV–VI) Must Be Dismissed.**

Goldstein's three Chapter 151B claims closely track his ADEA claims.  *Compare* Compl. ¶¶ 154–189, *with id.* ¶¶ 190–224.  The standard for Chapter 151B claims is "so similar" to ADEA claims "that those claims can be analyzed together."  *Sweeney v. Santander Bank, N.A.*, 2021 WL 4224312, at *12 (D. Mass. Sept. 16, 2021) (Burroughs, J.); *see also Adamson v. Walgreens Co.*, 750 F.3d 73, 83 (1st Cir. 2014) (ADEA and 151B analyses are "substantially similar").  Thus, the Court should dismiss Goldstein's Chapter 151B claims for the same reasons.  *See supra* at 13–19.

Further, Goldstein cannot bring any Chapter 151B claims related to the "Cyber Defense Technologist II" and "Program Cost Schedule Analyst I" positions for which RTX allegedly denied his applications on May 8 and 15, 2019.  Compl. ¶¶ 69, 72, 77, 80.  Chapter 151B requires a plaintiff to file a charge with MCAD "within 300 days after the alleged act of discrimination."  Mass. Gen. Laws ch. 151B, §§ 5, 9.  Goldstein does not allege that he filed any charge with MCAD within 300 days of being rejected for these positions.  Compl. ¶¶ 72, 80.  Instead, he filed a charge with the EEOC in August 2019.  *Id.* ¶ 21; Ex. 8.[10]  However, Goldstein did not cross-file that charge with MCAD.  *See* Ex. 8.  As a result, he failed to exhaust his Chapter 151B claims.  *See Lindsay v. Future Elecs. Corp.*, 930 F. Supp. 677, 678 (D. Mass. 1996) (Chapter 151B claim not exhausted where plaintiff filed charge with EEOC but not MCAD).[11]

Finally, Goldstein does not allege facts to show that Massachusetts is the state that "has the

---

[10]    Goldstein's May 2019 and June 2023 EEOC charges are incorporated by reference in the Complaint.  *See Clorox Co. Puerto Rico*, 228 F.3d at 32.

[11]    Goldstein alleges that he filed his second, June 2023 charge with MCAD.  Compl. ¶¶ 23, 27.  But that charge was filed long after the 300-day deadline.  *See* Ex. 9.  And although Goldstein alleges that he and RTX signed a tolling agreement regarding his claims, tolling began as of June 6, 2021—more than 300 days after Goldstein was rejected for the two May 2019 positions.  *See* Compl. ¶¶ 22, 69, 72, 77, 80.

most significant relationship" to the parties with respect to jobs outside of Massachusetts, as required to apply Chapter 151B extraterritorially.  *See Wilson v. Recorded Future, Inc.*, 669 F. Supp. 3d 53, 58 (D. Mass. 2023).  For all of these reasons, Goldstein's 151B claims fail.

## VI.    Goldstein Fails To State Any Claim Under The VHRA (Counts VII–IX).

Like his Chapter 151B claims, Goldstein's VHRA claims closely track his ADEA claims. *Compare* Compl. ¶¶ 154–189, *with id.* ¶¶ 225–255.  At the outset, Goldstein cannot state a VHRA claim based on any positions he allegedly pursued (or was deterred from pursuing) prior to July 1, 2020.  Before July 1, 2020, the VHRA provided a claim only to employees who were *discharged* based on age (not applicants alleging failure to hire) and was limited to employers with five to 20 employees.  Va. Code Ann. § 2.2-3903 (2014).  Goldstein was an unsuccessful job applicant, not a discharged employee, and RTX is alleged to have "over 180,000" employees.  Compl. ¶ 59.

Effective July 1, 2020, Virgina's General Assembly amended the VHRA to provide expanded causes of action for alleged age discrimination.  *See Peterson v. Black Body Corp.*, 2024 WL 3272548, at *9 (W.D. Va. June 28, 2024) (summarizing statutory changes).  But Goldstein cannot state a claim under the revised VHRA for positions he allegedly pursued after July 1, 2020, either.  The revised provisions of the VHRA are generally similar to the ADEA.  *Compare* Va. Code Ann. § 2.2-3905(B)(1), (8), *with* 29 U.S.C. § 623.  Thus, Goldstein's VHRA claims under the revised statute fail for the same reasons as his ADEA claims.  *See supra* at 13–19.[12]

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint or, in the alternative, transfer this case to the U.S. District Court for the Eastern District of Virginia.

---

[12]    Although the VHRA uses a "motivating factor" intent standard rather than the ADEA's "but for" standard, *see* Va. Code Ann. § 2.2-3905(B)(6), Goldstein fails to satisfy even that standard because he makes no non-conclusory allegations that RTX rejects applicants based on age.

Dated:  September 13, 2024                    Respectfully submitted,

                                   By:  */s/ Barry J. Miller*_____
                                        Barry J. Miller (BBO #661596)
                                        SEYFARTH SHAW LLP
                                        Two Seaport Lane, Suite 1200
                                        Boston, MA 02210
                                        (617) 946-4806
                                        bmiller@seyfarth.com

                                        Jason C. Schwartz (*pro hac vice pending*)
                                        Naima L. Farrell (BBO #688133, *admission pending*)
                                        Alex Bruhn (*pro hac vice pending*)
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1700 M St. N.W.
                                        Washington, D.C. 20036
                                        (202) 955-8500
                                        jschwartz@gibsondunn.com
                                        nfarrell@gibsondunn.com
                                        abruhn@gibsondunn.com

                                        *Attorneys for Defendant RTX Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13 2024, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                        */s/ Barry J. Miller*_____
                                        Barry J. Miller