**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | C.A. No. 24-cv-01169-JLH |
| v. | |
| RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC., | |
| Defendants. | |

**DEFENDANTS' OPENING BRIEF**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

Date: January 10, 2025

OF COUNSEL:

Jason C. Schwartz*
Naima L. Farrell*
Alex Bruhn*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com

*Admitted Pro Hac Vice*

Brian M. Rostocki (#4599)
John T. Miraglia (#6682)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

<u>Page</u>

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

STATEMENT OF FACTS ........................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT ................................................................................................................ 6

    I.    Plaintiffs' Claims Should Be Dismissed Because They Lack Standing. ............... 6

    II.    Plaintiffs Failed To Exhaust Their Claims Against The Non-RTX Defendants. ...................................................................................................... 8

    III.    Plaintiffs Fail To State An ADEA Claim (Counts I–III). .................................... 11

        a.    Plaintiffs Cannot State An ADEA Advertising Claim (Count I). ............ 11

        b.    Plaintiffs' ADEA Disparate Treatment Claim (Count II) Fails. .............. 14

        c.    Plaintiffs Cannot Pursue An ADEA Disparate Impact Claim (Count III). ................................................................................................ 16

    IV.    Plaintiffs' MFEPA Claims (Counts IV–VI) Must Be Dismissed. ....................... 17

    V.    Plaintiffs Fail To State Any Claim Under The VHRA (Counts VII–IX). ........... 17

    VI.    Plaintiffs Fail To State Any FEHA Claim (Counts IX-XII). .............................. 18

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acheson Hotels, LLC v. Laufer*,
    601 U.S. 1 (2023) ............................................................................................................. 7

*Adamson v. Walgreens Co.*,
    750 F.3d 73 (1st Cir. 2014) ........................................................................................... 17

*Arafat v. Sch. Bd. of Broward Cnty.*,
    549 F. App'x 872 (11th Cir. 2013) ............................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 12, 20

*Babb v. Wilkie*,
    589 U.S. 399 (2020) ..................................................................................................... 12

*Boyd v. City of Wilmington*,
    943 F. Supp. 585 (E.D.N.C. 1996) ............................................................................... 11

*Bradley v. T-Mobile US, Inc.*,
    2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ............................................................... 6

*Brazill v. California Northstate Coll. of Pharmacy, LLC*,
    904 F. Supp. 2d 1047 (E.D. Cal. 2012) ....................................................................... 18

*Brennan v. Paragon Emp. Agency, Inc.*,
    356 F. Supp. 286 (S.D.N.Y. 1973) .............................................................................. 13

*Carter v. CB Richard Ellis, Inc.*,
    19 Cal. Rptr. 3d 519 (Ct. App. 2004) ..................................................................... 19, 20

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ..................................................................................................... 13

*Clark v. Governor of N.J.*,
    53 F.4th 769 (3d Cir. 2022) ......................................................................................... 12

*Cole v. Boeing Co.*,
    845 F. Supp. 2d 277 (D.D.C. 2012) ............................................................................. 18

*Cornell v. N. Wasco Cnty. Sch. Dist. No. 21*,
    2012 WL 4599419 (D. Or. July 9, 2012) ..................................................................... 11

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ....................................................................................... 3, 8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*E.E.O.C. v. BE&K Eng'g Co.*,
   536 F. Supp. 2d 498 (D. Del. 2008) ................................................................11

*Grossmann v. Dillard Dep't Stores, Inc.*,
   109 F.3d 457 (8th Cir. 1997) ........................................................................15

*Gyda v. F.B.I. Crime Lab'y*,
   2015 WL 4077009 (E.D. Pa. July 6, 2015) .............................................15, 16, 17

*Hailes v. United Air Lines*,
   464 F.2d 1006 (5th Cir. 1972) ......................................................................6, 8

*Harris v. City of Santa Monica*,
   294 P.3d 49 (Cal. 2013) ...............................................................................19

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) ...........................................................................11, 12, 14

*Huertas v. Bayer US LLC*,
   120 F.4th 1169 (3d Cir. 2024) ........................................................................5

*Kleber v. CareFusion Corp.*,
   914 F.3d 480 (7th Cir. 2019) ........................................................................16

*Lindsay v. Future Elecs. Corp.*,
   930 F. Supp. 677 (D. Mass. 1996) ..................................................................9

*Liu v. Uber Techs., Inc.*,
   2024 WL 3102801 (9th Cir. June 24, 2024) ....................................................20

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ...............................................................................13, 14

*Lopez-Rodriguez v. Kern Med. Surgery Ctr., LLC*,
   2022 WL 17904540 (E.D. Cal. Dec. 23, 2022) ..................................................8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................6

*Magnello v. TJX Cos.*,
   556 F. Supp. 2d 114 (D. Conn. 2008) ...........................................................15

*Mahler v. Jud. Council of California*,
   282 Cal. Rptr. 3d 34 (Ct. App. 2021) .............................................................20

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McCall v. Butler Health Sys./Butler Mem'l Hosp.*,
   2013 WL 6253417 (W.D. Pa. Dec. 4, 2013)....................................................................9

*Miles v. City of Philadelphia*,
   2012 WL 525737 (E.D. Pa. Feb. 17, 2012) ...................................................................10

*Newark Branch, NAACP v. Harrison*,
   907 F.2d 1408 (3d Cir. 1990)...........................................................................................8

*Parr v. Woodmen of the World Life Ins. Soc.*,
   657 F. Supp. 1022 (M.D. Ga. 1987) .................................................................................7

*Pearce v. Frontier Airlines*,
   2024 WL 2881329 (D. Md. June 7, 2024)......................................................................16

*Pekar v. U.S. Steel/Edgar Thomson Works*,
   2010 WL 419421 (W.D. Pa. Jan. 29, 2010).....................................................................16

*Peterson v. Black Body Corp.*,
   2024 WL 3272548 (W.D. Va. June 28, 2024) ................................................................18

*Pollock v. Tri-Modal Distrib. Servs., Inc.*,
   491 P.3d 290 (Cal. 2021) ...............................................................................................10

*Raymond v. Spirit AeroSystems Holdings, Inc.*,
   --- F.4th ----, 2025 WL 39997 (10th Cir. Jan. 7, 2025) ................................................15

*Raymond v. Spirit Aerosystems Holdings, Inc.*,
   406 F. Supp. 3d 996 (D. Kan. 2019)...............................................................................16

*Robinson v. Dalton*,
   107 F.3d 1018 (3d Cir. 1997).....................................................................................8, 10

*Russo v. APL Marine Servs., Ltd.*,
   135 F. Supp. 3d 1089 (C.D. Cal. 2015) .........................................................................20

*Saba v. Middlesex Cnty. Bd. of Soc. Servs.*,
   2017 WL 2829618 (D.N.J. June 30, 2017) ......................................................................8

*Sack v. Bentsen*,
   51 F.3d 264 (1st Cir. 1995)......................................................................................11, 13

*Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*,
   903 F.2d 243 (3d Cir. 1990)...........................................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Sledge v. J. P. Stevens & Co.*,
  585 F.2d 625 (4th Cir. 1978) ........................................................................6, 7

*Smith v. City of Jackson*,
  544 U.S. 228 (2005)........................................................................................16, 17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)........................................................................................5

*Sweeney v. Santander Bank, N.A.*,
  2021 WL 4224312 (D. Mass. Sept. 16, 2021) ...........................................17

*Talley v. Christiana Care Health Sys.*,
  2018 WL 4938566 (D. Del. Oct. 11, 2018) ................................................8

*Timmons v. Chubb Ltd.*,
  2021 WL 5631733 (E.D. Pa. Dec. 1, 2021) ...............................................11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................................................6

*Urella v. Verizon New England Inc.*,
  2024 WL 1075300 (D. Mass. Mar. 12, 2024)............................................8, 10

*Vanderklok v. United States*,
  868 F.3d 189 (3d Cir. 2017)........................................................................13

*Villarreal v. R.J. Reynolds Tobacco Co.*,
  839 F.3d 963 (11th Cir. 2016) ....................................................................16

*Webb v. Int'l Bhd. of Elec. Workers*,
  2005 WL 2373869 (E.D. Pa. Sept. 23, 2005) ............................................9

*Williams v. Lazer Spot, Inc.*,
  2014 WL 5365581 (D. Md. Oct. 21, 2014) ................................................15

*Wilson v. Recorded Future, Inc.*,
  669 F. Supp. 3d 53 (D. Mass. 2023) ..........................................................17

**Statutes**

29 U.S.C. § 623................................................................................9, 11, 12, 13, 14, 16, 18

29 U.S.C. § 626................................................................................................8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Gov't Code § 12900 ......................................................................................5

Cal. Gov't Code § 12940 ....................................................................................19

Cal. Gov't Code § 12960 ......................................................................................8

Mass. Gen. Laws ch. 151B, § 5 ............................................................................8

Mass. Gen. Laws ch. 151B, § 9 ............................................................................8

Va. Code Ann. § 2.2-3900 ..................................................................................18

Va. Code Ann. § 2.2-3903 ..................................................................................18

Va. Code Ann. § 2.2-3905 ..................................................................................18

Va. Code Ann. § 2.2-3907 ....................................................................................8

Va. Code Ann. § 2.2-3908 ....................................................................................8

**Other Authorities**

Chronicle of Higher Education, *Age Distribution Among College Students, Fall 2017*, Almanac (2019) ............................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1)..........................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................................5, 8

**Regulations**

29 C.F.R. § 1625.4 ........................................................................................12, 13

29 C.F.R. § 1626.8 ................................................................................................9

## NATURE AND STAGE OF PROCEEDINGS

Defendants RTX Corporation ("RTX"), ARINC Inc., Raytheon Company, and Rockwell Collins, Inc.[1] require a consistent pipeline of top-notch talent to maintain their competitive edge in the aerospace and defense industry. To that end, they invest in both entry-level and experienced talent. Plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan may have been viable candidates for any number of positions with Defendants given their allegedly considerable work experience. But rather than focus on positions consistent with that experience, Plaintiffs allegedly applied for *entry-level* jobs with Defendants. When Plaintiffs failed to secure employment, they accused Defendants of intentional age discrimination in hiring and advertising and disparate impact age discrimination based on the allegation that Defendants reserve some—but not all—entry-level positions for recent graduates or individuals with under two years of work experience.

If accepted, Plaintiffs' claims would upend entry-level hiring practices used by employers nationwide, including the Equal Employment Opportunity Commission ("EEOC") itself. Fortunately, the law permits hiring based on work experience, so Plaintiffs' disparate treatment and advertising claims fail. Nor can Plaintiffs make out any disparate impact claim. Only one statute under which Plaintiffs sue—California's Fair Employment and Housing Act ("FEHA")—even allows job applicants (as opposed to employees) to bring disparate impact claims, and Plaintiffs fail to allege the facts necessary to support such a FEHA claim. Plaintiffs also lack Article III standing to sue and failed to exhaust their claims as to all Defendants other than RTX.

Plaintiffs have been unable to remedy these defects despite amending their original Complaint in response to RTX's previous motion to dismiss, so the Court should dismiss the First Amended Complaint ("FAC") with prejudice.

---

[1] As noted below, Defendants "Collins Aerospace" and "Pratt & Whitney" are not legal entities, and therefore are not amenable to suit. *See infra* at 8 n.5.

## SUMMARY OF ARGUMENT

1. Plaintiffs' claims against Defendants other than RTX (i.e., ARINC Inc., Collins Aerospace, Pratt & Whitney, Raytheon Company, and Rockwell Collins, Inc.) should be dismissed because Plaintiffs failed to timely exhaust their administrative remedies as to those defendants and because "Collins Aerospace" and "Pratt & Whitney" are not legal entities subject to suit.

2. The Court should dismiss Plaintiffs' claims because they lack Article III standing. Plaintiffs fail to adequately allege that they were truly interested in any entry-level positions limited to recent graduates. Indeed, the facts they *do* allege suggest they had no genuine interest in these positions, applying to them solely to gin up a basis for this lawsuit.

3. The FAC, which asserts advertising, disparate treatment, and disparate impact age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), Massachusetts Fair Employment Practices Act ("MFEPA"), Virginia Human Rights Act ("VHRA"), and FEHA should be dismissed for failure to state a claim. Plaintiffs allege that Defendants limit certain positions to and publish job postings geared toward *inexperienced* job applicants—not younger ones—which is insufficient to state advertising or disparate treatment claims under the ADEA, MFEPA, VHRA, or FEHA. Nor can Plaintiffs bring disparate impact claims under the ADEA, MFEPA, or VHRA, since such claims are available only to employees, not job applicants. And while disparate impact claims are generally available under FEHA, Plaintiffs failed to identify any statistical disparities caused by RTX's alleged hiring practice of reserving some—but not all—positions for inexperienced applicants, so this claim fails too.

## STATEMENT OF FACTS

Plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan are over 60 years old and possess considerable work experience in project management, marketing, engineering, consulting, and programming. FAC ¶¶ 35–37. Despite earning their respective degrees more than a decade

ago, each Plaintiff allegedly applied for positions with Defendants that required or preferred applicants to have "graduated from college or graduate school within a recent time period or to have less than one or two years of work experience." *Id.* ¶¶ 9, 13. Their applications were unsuccessful. *Id.* ¶ 13. Now, Plaintiffs assert that, since October 2018, Defendants have engaged in a pattern or practice of age discrimination by limiting some (but not all) open positions to recent graduates and publishing job postings to that effect. *Id.* ¶ 67.

***Mark Goldstein***. Goldstein is a 67-year-old Virginia resident who earned a bachelor's degree in economics in 1978 and a master's degree in business administration in 1980. FAC ¶ 35. Between 2019 and 2023, Goldstein allegedly applied for "at least eight" positions allegedly advertised for "'new' or 'recent' graduates or candidates with less than 12 or 24 months of work experience." *Id.* ¶¶ 68, 98, 101, 102, 110, 118, 126, 134, 141, 148, 155. The roles he pursued varied greatly and sought vastly different qualifications. For example, a "Cyber Defense Technologist II" position for which he applied sought candidates with a recent master's degree and experience with "DoD classified operating and/or laboratory environments" and "audit reviews" related to "physical security, network and application, [and] password administration," while a "Cost Schedule Analyst" role he pursued sought applicants with a recent bachelor's degree and experience with "[p]roposal & pricing" and "APEX, SAP Business Warehouse, Rplan & ACES." *See* Decl. of Brian M. Rostocki, Exs. 1, 2.[2]

Goldstein filed an EEOC age discrimination charge against Raytheon Company in August 2019. FAC ¶ 22. The EEOC issued a right-to-sue letter on April 9, 2021. *Id.* On June 25, 2021, Goldstein and RTX, which was then named Raytheon Technologies Corporation (and by that date

---

[2]   Job postings describing these positions may be considered on a motion to dismiss because they are "integral to" and "explicitly relied upon" in the FAC. *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016); *see also* FAC ¶¶ 102, 110, 118, 126, 134, 141, 148, 155.

was Raytheon Company's parent), entered a tolling agreement applicable to his and certain others' age-discrimination claims against RTX. *Id.* ¶ 23. Years later, on June 13, 2023, Goldstein filed a second EEOC charge, this time against Raytheon Technologies Corporation (which was renamed RTX approximately one month later). *Id.* ¶ 24; Ex. 3. Goldstein cross-filed the second charge with the Massachusetts Commission Against Discrimination ("MCAD") but withdrew it on April 23, 2024. FAC ¶ 30. He also filed the second charge with the Virginia Office of Civil Rights ("OCR"), which allegedly issued a right-to-sue letter on March 19, 2024. *Id.* ¶ 31.

***Ducamp Beaulieu***. Beaulieu is a 62-year-old Massachusetts resident who graduated with a bachelor's degree in engineering technology in 2013. FAC ¶¶ 36, 164. In September 2021, Beaulieu allegedly applied for two "Junior Systems Engineer" positions with "RTX, Raytheon Company, or another RTX-affiliated entity." *Id.* ¶ 166. Both postings noted a preference or requirement that the applicant be a "recent college graduate, attending college or have less than 12 or 24 months of work experience if they were a college graduate." *Id.* Beaulieu was not selected for either position, *id.* ¶ 170, so he filed a charge of discrimination with MCAD on August 29, 2024, *id.* ¶ 32. On November 18, 2024, Beaulieu withdrew his administrative charge. *Id.*

***John Bryan***. Bryan is a 63-year-old California resident who earned a bachelor's degree in economics in 1996 and a master's degree in electrical engineering in 2006. FAC ¶¶ 37, 176. Bryan has significant post-graduate work experience in computer programming and engineering. *Id.* ¶¶ 37, 177. Despite this experience, Bryan allegedly applied for "at least three positions" with "RTX and Raytheon Company" or "other RTX-affiliated entities" that noted a preference or requirement that the applicant be a "recent college graduate, attending college, or have less than 12 or 24 months of work experience if they were a college graduate." *Id.* ¶ 178. Bryan does not specify when he allegedly applied to these positions but suggests he did so between 2020 and

August 2024. *See id.* ¶¶ 178–79. Bryan was not selected for these positions, and he filed a charge of discrimination with the California Civil Rights Department ("CRD") on September 27, 2024. *Id.* ¶ 33. He received a right-to-sue letter from CRD on October 24, 2024. *Id.*

Goldstein originally filed this suit against Defendant RTX in the U.S. District Court for the District of Massachusetts. *See* D.I. 1. RTX moved to dismiss for failure to state a claim, improper venue, and lack of standing and personal jurisdiction. *See* D.I. 33. Before Goldstein opposed the motion, the parties stipulated to transfer venue to this Court. *See* D.I. 45. Plaintiffs then filed the FAC, naming Beaulieu and Bryan as additional Plaintiffs and the non-RTX entities as additional Defendants. D.I. 68. In Counts I–III of the twelve count FAC, Plaintiffs allege that Defendants violated the ADEA, 29 U.S.C. § 621 *et seq.*, by publishing job postings indicating a preference for younger applicants (Count I), intentionally discriminating against older applicants by limiting some positions to recent graduates (Count II), and disparately impacting older applicants by using recent graduate positions (Count III). *See* FAC ¶¶ 211–48. Plaintiffs bring substantially similar claims under the MFEPA, Mass. Gen. Laws ch. 151B, § 4 *et seq.* (Count IV–VI) (all Plaintiffs); the VHRA, Va. Code Ann § 2.2-3900 *et seq.* (Counts VII–IX) (Goldstein only); and FEHA, Cal. Gov't Code § 12900 *et seq.* (Counts X–XII) (Goldstein and Bryan). *See* FAC ¶¶ 249–351. Defendants now move to dismiss the FAC.

## STANDARD OF REVIEW

Courts apply the same legal standard in reviewing a facial challenge to standing under Rule 12(b)(1) and for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). Rule 12(b)(1) requires that plaintiffs "clearly allege facts demonstrating each element" of standing, including injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). Rule 12(b)(6) demands that plaintiffs allege facts sufficient to "state a claim to relief that is plausible on its face." *Huertas*, 120 F.4th at 1174.

## <u>ARGUMENT</u>

I.    **Plaintiffs' Claims Should Be Dismissed Because They Lack Standing.**

Plaintiffs fail to allege "an injury in fact" sufficient to establish Article III standing because they do not plead any facts indicating a genuine interest in the positions referenced in the FAC. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must have been "concretely harmed" to bring suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Consistent with that principle, an unsuccessful job applicant must be "seriously interested" in a position to have standing to pursue a discrimination claim against an employer. *Sledge v. J. P. Stevens & Co.*, 585 F.2d 625, 641 (4th Cir. 1978). Similarly, a plaintiff deterred from applying for a position because of allegedly discriminatory advertisements must "demonstrate that he has a real, present interest in the type of employment advertised" and that "he was effectively deterred by the improper ad from applying for such employment." *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972); *see also Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924, at *11 (N.D. Cal. Mar. 13, 2020).

Plaintiffs fail to adequately plead that they had a "genuin[e]" interest in any of the positions referenced in the FAC. *Bradley*, 2020 WL 1233924, at *11. They fail to explain why—despite having decades of work experience—they desired to work in entry-level positions. Nor do they allege any facts suggesting that they had any particular interest in the jobs they pursued or any desire to work at the Defendants' companies. Indeed, Bryan does not even describe which positions he pursued—let alone his interest in them. *See* FAC ¶ 178. Instead, Plaintiffs simply repeat the boilerplate allegation that they were "genuinely interested in each of the positions" and were "willing to relocate, if necessary, or work remotely." *Id.* ¶¶ 99, 167, 179. That "merely conclusory" allegation cannot establish Article III standing. *Bradley*, 2020 WL 1233924, at *10.

The facts Plaintiffs *do* plead suggest that they had no interest in these positions. Goldstein applied to "at least eight Recent Graduate Positions," FAC ¶ 98, with widely varying job duties.

*Compare, e.g.*, Ex. 4 ("Systems Engineer I" job required "[s]upporting aircraft integration and ramp/flight test activities"), *with* Ex. 5 ("Financial Analyst" job involved "duties in Contract Set Up and Customer Invoicing"). The jobs he pursued were in locations as disparate as California, Texas, and Iowa. *See* Exs. 5, 6, 7, 8. The primary common thread among them is that they were allegedly for "Recent Graduates." Further, Goldstein does not allege that he applied for *any* positions that did not seek "Recent Graduate[s]," despite acknowledging that Defendants offer ample "other opportunities" to applicants who are not "current college senior[s], or . . . recent college graduate[s]." FAC ¶ 72.[3] Beaulieu similarly pursued only two "Recent Graduate" positions, despite his years of experience. *Id.* ¶ 166. All this makes clear that Plaintiffs' "purpose in applying for work with [Defendants] was to test the legality of [their] hiring practices rather than to seek actual employment." *Sledge*, 585 F.2d at 641.[4] As a result, they were "not . . . harmed by a refusal to hire" and they therefore lack standing. *Id.*; *see also Parr v. Woodmen of the World Life Ins. Soc.*, 657 F. Supp. 1022, 1032 (M.D. Ga. 1987) (similar); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 5, 7 (2023) (Thomas, J., concurring in the judgment) ("self-described 'tester'" of "hotels she has no intention of visiting" lacked standing).

Plaintiffs also lack standing to bring any advertising claim based on positions they did not pursue. While they allege that they were "discouraged and deterred" from applying for "dozens" of other unidentified "Recent Graduate" roles based on Defendants' job postings, *e.g.*, FAC ¶ 162, they fail to allege *any* information about these positions. Absent such allegations, Plaintiffs cannot establish that they had "a real, present interest" in these positions, let alone that they were

---

[3]  Plaintiffs allege that, as of May 2023, "roughly 25% of all new hires" at RTX were "new or recent college graduates," FAC ¶ 7, meaning about 75% were more experienced applicants.

[4]  Indeed, this is not the first time Goldstein has pursued an age discrimination claim, as he has filed at least two separate ADEA suits. *See Goldstein v. Forcepoint, LLC*, No. 1:17-CV-1194-RP (W.D. Tex.); *Goldstein v. Forcepoint LLC*, No. 1:23-cv-1484-RP (W.D. Tex.).

"effectively deterred" from applying. *Hailes*, 464 F.2d at 1008; *see also Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1414–16 (3d Cir. 1990). Indeed, the FAC indicates that Plaintiffs were *not* deterred from pursuing "Recent Graduate" positions and readily applied to them so that they could bring this lawsuit. *See Talley v. Christiana Care Health Sys.*, 2018 WL 4938566, at *5 n.4 (D. Del. Oct. 11, 2018) (a court "need not accept allegations that are contradicted by other allegations in the FAC"). As a result, Plaintiffs fail to demonstrate injury in fact.

## II.    Plaintiffs Failed To Exhaust Their Claims Against The Non-RTX Defendants.

Alternatively, Plaintiffs' claims against the non-RTX Defendants should be dismissed under Rule 12(b)(6) because Plaintiffs failed to timely exhaust them. *See Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).[5] An ADEA plaintiff must file an EEOC charge "within 300 days after the alleged unlawful practice occurred" if state law prohibits age discrimination and permits enforcement by a state agency. 29 U.S.C. § 626(d)(1)(B). The MFEPA, VHRA, and FEHA have similar charge-filing and timing requirements. *See* Mass. Gen. Laws ch. 151B, §§ 5, 9 (300 days); Va. Code Ann. § 2.2-3907(A) (300 days); Cal. Gov't Code § 12960(e) (3 years). A Plaintiff may only bring claims under these statutes against a defendant named in an administrative charge. *See Saba v. Middlesex Cnty. Bd. of Soc. Servs.*, 2017 WL 2829618, at *5 (D.N.J. June 30, 2017) (ADEA); *Urella v. Verizon New England Inc.*, 2024 WL 1075300, at *3 (D. Mass. Mar. 12, 2024) (MFEPA); *Lopez-Rodriguez v. Kern Med. Surgery Ctr., LLC*, 2022 WL 17904540, at *4 (E.D. Cal. Dec. 23, 2022) (FEHA); Va. Code Ann. §§ 2.2-3907(A), 2.2-3908(A) (VHRA).

---

[5]    Even if Plaintiffs had exhausted their claims, they cannot state any claim against Defendants "Collins Aerospace" or "Pratt & Whitney" because neither is a legal entity. As the RTX Form 10-K cited in the FAC makes clear, "Collins Aerospace" and "Pratt & Whitney" are both fictitious trade names. *See* RTX SEC Form 10-K for Fiscal Year Ending Dec. 31, 2023, Ex. 21, https://investors.rtx.com/static-files/6c951fb4-1b3e-417a-9c44-c726d27dc93d (listing RTX subsidiaries, which do not include Collins Aerospace and Pratt & Whitney); *Davis*, 824 F.3d at 351 (considering documents "integral to" and "explicitly relied upon" in complaint).

Goldstein did not timely exhaust his ADEA, VHRA, and MFEPA claims against the non-RTX defendants or his FEHA claims against any Defendants.[6]  He allegedly submitted applications for "at least 8" relevant positions between 2019 and 2023, the last of which he claims to have submitted on March 15, 2023.  FAC ¶¶ 98, 148.  Goldstein filed an EEOC charge in August 2019, EEOC and MCAD charges in June 2023, and an OCR charge in July 2023, all of which he alleges were filed *only* "against RTX."  *Id.* ¶¶ 22, 24, 30–31.[7]  Goldstein received a right-to-sue notice from OCR on March 19, 2024, and withdrew his MCAD charge on April 23, 2024.  *Id.* ¶¶ 30–31.  Although Goldstein amended his second EEOC charge on November 13, 2024 to include RTX's "wholly owned subsidiaries and related or affiliated entities," *id.* ¶ 24,[8] he filed that amendment more than 600 days after his final March 15, 2023 application—long past the 300-day exhaustion period for MFEPA, VHRA, and ADEA claims.[9]  And while Goldstein alleges that he signed a tolling agreement applicable to all three Plaintiffs' claims, that agreement was only "with RTX," not the other Defendants.  *Id.* ¶ 23.  Goldstein does not allege that he filed *any* charge with

---

[6]  Further, Goldstein cannot bring MFEPA claims against any Defendant regarding the "Cyber Defense Technologist II" and "Program Cost Schedule Analyst I" positions for which Defendant Raytheon Company allegedly denied his applications on May 8 and 15, 2019, because he only filed a timely charge with the EEOC—not MCAD.  *See* FAC ¶¶ 102, 105, 110, 113; Ex. 9; *Lindsay v. Future Elecs. Corp.*, 930 F. Supp. 677, 678 (D. Mass. 1996) (MFEPA claim not exhausted where plaintiff filed charge with EEOC but not MCAD).

[7]  Goldstein alleges that the 2019 charge was filed "against RTX (then Raytheon Company)."  FAC ¶ 22.  To the extent Goldstein claims the 2019 charge exhausted his claim against Defendant Raytheon Company, he failed to file suit against that entity within 90 days of receipt of his April 9, 2021 right-to-sue letter.  *See id.*; 29 U.S.C. § 626(e).

[8]  Plaintiffs' EEOC charges may be considered on a motion to dismiss because they are public records, are referenced in the FAC, and are integral to Plaintiffs' claims.  *See, e.g.*, *McCall v. Butler Health Sys./Butler Mem'l Hosp.*, 2013 WL 6253417, at *3 (W.D. Pa. Dec. 4, 2013).

[9]  Although an EEOC regulation permits an amended charge correcting "technical defects or omissions" to relate back to the filing date of the original charge, that provision does not apply to the addition of new respondents.  *See* *Webb v. Int'l Bhd. of Elec. Workers*, 2005 WL 2373869, at *7 (E.D. Pa. Sept. 23, 2005) (discussing 29 C.F.R. § 1626.8).

California's CRD, meaning he failed to exhaust his FEHA claims as to all Defendants. *See Pollock v. Tri-Modal Distrib. Servs., Inc.*, 491 P.3d 290, 295 (Cal. 2021).

Although the Third Circuit has recognized an exception to the charge naming requirement where "the unnamed party received notice" and "there is a shared commonality of interest with the named party," *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, 903 F.2d 243, 252 (3d Cir. 1990); *see also Urella*, 2024 WL 1075300, at *3 (similar standard for MCAD charge), the exception does not apply to Goldstein's claims. He does not allege that any of the non-RTX defendants "ever received actual notice" of his charges against RTX. *Miles v. City of Philadelphia*, 2012 WL 525737, at *8 (E.D. Pa. Feb. 17, 2012). Therefore, he failed to exhaust his claims.

Beaulieu likewise failed to exhaust his ADEA and MFEPA claims against the non-RTX entities. He alleges that he was "summarily rejected" for "two engineering positions" in September 2021. FAC ¶¶ 166, 170. However, he only filed a charge against RTX with the EEOC and MCAD on August 29, 2024, which he amended to include non-RTX defendants on November 13, 2024. *Id.* ¶¶ 27, 32; Ex. 10. *Both* of Beaulieu's charges came roughly three years after his September 2021 applications—long after the required 300-day ADEA and MFEPA deadlines.

Finally, Bryan fails to adequately allege that he timely exhausted his ADEA, MFEPA, and FEHA claims against the non-RTX Defendants. Bryan alleges he applied to "at least three positions" with a recent graduate requirement "[s]ince 2020," but he fails to allege when he applied or was denied. FAC ¶ 178. Therefore, he fails to adequately allege that his September 2024 or November 2024 charges were timely. *See id.* ¶ 33; *Robinson*, 107 F.3d at 1022. Thus, Plaintiffs' claims as to the non-RTX defendants must be dismissed.[10]

---

[10]    To the extent Plaintiffs claim they have timely exhausted claims against the non-RTX Defendants for positions Plaintiffs were "deterred" from pursuing, they fail to allege any facts indicating when they were deterred from pursuing those jobs. *See* FAC ¶¶ 162, 174, 186.

III.    **Plaintiffs Fail To State An ADEA Claim (Counts I–III).**

Alternatively, Plaintiffs' ADEA advertising and intentional discrimination claims (Counts I and II) must be dismissed because the FAC alleges that positions are reserved for applicants with limited *experience*—not younger applicants.  Their disparate impact claim (Count III) must be dismissed because the ADEA does not provide that cause of action for job applicants.

a.    **Plaintiffs Cannot State An ADEA Advertising Claim (Count I).**

The ADEA prohibits "any notice or advertisement relating to employment . . . indicating any preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e). While the statute protects job seekers from age-based discrimination, it does not proscribe hiring decisions "wholly motivated by factors other than age, . . . even if the motivating factor is correlated with age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).  Consistent with that principle, the statute's advertising provision bars employers from publishing notices indicating a preference for younger applicants, but not notices indicating a preference for attributes that may correlate with age, such as experience, education, or skill levels.  *See, e.g.*, *Cornell v. N. Wasco Cnty. Sch. Dist. No. 21*, 2012 WL 4599419, at *12 (D. Or. July 9, 2012); *Boyd v. City of Wilmington*, 943 F. Supp. 585, 592 (E.D.N.C. 1996).  Courts have routinely concluded that employer preferences for "[r]ecent . . . education or experience" are correlated with but "analytically distinct from age." *Sack v. Bentsen*, 51 F.3d 264, at *4 (1st Cir. 1995); *see also, e.g.*, *E.E.O.C. v. BE&K Eng'g Co.*, 536 F. Supp. 2d 498, 507 (D. Del. 2008) (supervisor's interest in "new graduates for entry-level positions" was not evidence of discrimination (cleaned up)); *Timmons v. Chubb Ltd.*, 2021 WL 5631733, at *5 (E.D. Pa. Dec. 1, 2021) (noting that "an employer can consider the applicant's experience, even though experience and age are often correlated").

Plaintiffs' ADEA advertising claim fails at the threshold because they allege that Defendants' job postings seek applicants with limited experience—not younger applicants. They

allege that these job postings include "terms like 'New Grad,' 'New Graduate,' 'Recent Grad,' or similar language," or "state that the basic qualifications require the applicant to be a recent graduate, a soon-to-be graduate, have graduated within a recent time frame, or have less than 12 or 24 months of relevant work experience." FAC ¶ 220. Nowhere do they allege that any job postings indicate that positions are limited to individuals under age 40 or include any other "preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e). And while Plaintiffs allege that Defendants' job postings "deter[]" older workers from applying and reveal that Defendants "prefer to hire younger workers," FAC ¶¶ 4, 220, the FAC includes no factual allegations in support of these claims. These "mere conclusory statements" need not be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When they are set aside, Plaintiffs allege only that the job postings indicate a preference for a level of experience that is merely (in some but not all cases) "correlated with age." *Hazen*, 507 U.S. at 611.[11]

In an attempt to buttress their claims, Plaintiffs cite an EEOC regulation stating that job postings with the terms "college student," "recent college graduate," and phrases "of a similar nature" violate the ADEA. 29 C.F.R. § 1625.4(a). But the regulation—which has rarely been cited or interpreted by courts—is inconsistent with the ADEA's prohibition only on job postings indicating preferences "based on age." 29 U.S.C. § 623(e). As the Supreme Court has explained in interpreting another ADEA provision, the phrase "based on age" "requires that age be a but-for cause" of the employer's action. *Babb v. Wilkie*, 589 U.S. 399, 405–06 (2020). In other words,

---

[11] This correlation is not as strong as Plaintiffs suggest. *See* FAC ¶ 83. As of 2017, university populations included a substantial number of older students: 16 percent of undergraduates were age 30 and older, and nearly 20 percent of graduate students were age 40 and older. Chronicle of Higher Education, *Age Distribution Among College Students, Fall 2017*, Almanac (2019); *see also Clark v. Governor of N.J.*, 53 F.4th 769, 774 n.8 (3d Cir. 2022) (taking judicial notice of statistics). Indeed, Beaulieu and Bryan were themselves over age 40 when they earned their terminal degrees. *See* FAC ¶¶ 36, 164, 176.

the ADEA's advertising provision prohibits age from being the but-for cause of "any preference, limitation, specification, or discrimination" in a job posting. 29 U.S.C. § 623(e). The EEOC's regulation departs from this requirement, flatly declaring that the terms "college student" and "recent college graduate" always "violate the Act" absent a statutory exception, regardless of why the employer uses them. 29 C.F.R. § 1625.4(a). The regulation thus impermissibly transforms the ADEA's prohibition on advertising preferences based on age into an "analytically distinct" bar against indicating a preference for inexperienced applicants. *Sack*, 51 F.3d 264, at *4.

Because the EEOC's regulation is unmoored from the text and purpose of the ADEA, it lacks "power to persuade," and the Court should reject it. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370, 939–94 (2024) (cleaned up). Indeed, even before the Supreme Court abrogated its prior *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ruling, at least one court declined to follow precisely this regulatory interpretation of the ADEA's advertising provision. *See Brennan v. Paragon Emp. Agency, Inc.*, 356 F. Supp. 286, 288–89 (S.D.N.Y. 1973) (declining to follow agency bulletin construing ADEA to prohibit terms "recent college graduate" and "college student" in advertisements), *aff'd,* 489 F.2d 752 (2d Cir. 1974). This outcome is even more certain after *Loper Bright*.

If that were not enough, the EEOC's *own* job postings for its entry-level hiring programs underscore that its regulation is inconsistent with the ADEA. The EEOC touts its "Pathways Recent Graduates Program" as providing "individuals who *recently graduated* from qualifying educational institutions or programs with developmental experiences in the Federal government." Ex. 11 (emphasis added).[12] And the agency publicizes its Attorney Honors Program as being

---

[12] The Court can take judicial notice of the EEOC's public postings on a motion to dismiss. *See, e.g.*, *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (Courts may take judicial notice of information "publicly available on government websites.").

limited to "[t]hird-year law student[s]," "[f]ull-time graduate law student[s]" with "no significant post-J.D. employment," and judicial law clerks who have engaged in no other "significant legal employment following graduation." Ex. 12. Of course, the EEOC is charged with enforcing the ADEA, and it strives to be a "model employer." *See* EEOC Strategic Plan 2022–2026, https://www.eeoc.gov/eeoc-strategic-plan-2022-2026. Its "do as I say, not as I do" approach to its own job postings further undermines the already minimal persuasive force of its interpretation of the ADEA. *See Loper Bright*, 603 U.S. at 370 (persuasive power of agency's interpretation depends in part on "its consistency with earlier and later pronouncements" (cleaned up)).

     **b. Plaintiffs' ADEA Disparate Treatment Claim (Count II) Fails.**

Plaintiffs' ADEA intentional discrimination claim is similar to their advertising claim, and it fails for similar reasons. The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As already detailed above, an employer may only be held liable under this provision if age "actually motivated the employer's decision," rather than an "analytically distinct" criterion like experience level. *Hazen*, 507 U.S. at 610–11.

Here too, Plaintiffs' factual allegations focus exclusively on Defendants' claimed practice of limiting certain positions only to recent graduates. For example, the FAC alleges that the "basic qualifications for many positions" require applicants to be current students or recent graduates, and that Defendants refuse to interview or hire applicants outside these groups. FAC ¶ 232. Plaintiffs further allege that Defendants target their "recruitment and hiring efforts" to recent graduates and current students, require applicants to provide "year and month of graduation and academic transcripts" when applying, and use "automated systems" to "screen out" experienced applicants. *Id.* Once again, these allegations are insufficient to state a disparate treatment claim

because, even if taken as true, they would only indicate that Defendants prefer inexperienced applicants, not younger ones. *See Gyda v. F.B.I. Crime Lab'y*, 2015 WL 4077009, at *4 (E.D. Pa. July 6, 2015) (dismissing ADEA claim challenging requirement that applicants receive doctorate within 5 years of start date); *see also Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 875 (11th Cir. 2013) (affirming dismissal where plaintiff alleged employer preferred "fresh graduates"); *Grossmann v. Dillard Dep't Stores, Inc.*, 109 F.3d 457, 459 (8th Cir. 1997) ("That Dillards recruits recent college graduates is not evidence it discriminates against older workers."); *Williams v. Lazer Spot, Inc.*, 2014 WL 5365581, at *3 (D. Md. Oct. 21, 2014) (preference for "somebody that just got out of truck school" not discrimination); *Magnello v. TJX Cos.*, 556 F. Supp. 2d 114, 123 (D. Conn. 2008) (defendant's "use of college recruitment" reasonable); *Raymond v. Spirit AeroSystems Holdings, Inc.*, --- F.4th ----, 2025 WL 39997, at *3 (10th Cir. Jan. 7, 2025) (consideration of tenure in implementing reduction in force did not violate ADEA).

Plaintiffs attempt to bolster this obvious defect by alleging "[u]pon information and belief" that Defendants "prefer to hire younger workers" and "kn[ew] and intended" that their hiring practices would result in disproportionate hiring of younger applicants. FAC ¶ 234. But Plaintiffs once again fail to provide any support for these conclusory claims. They do not allege any facts suggesting that Defendants implemented the alleged "recent graduate" requirement to favor younger applicants rather than for any number of non-discriminatory reasons—e.g., because inexperienced applicants can be trained from scratch on Defendants' preferred business practices, may require lower salaries, or are likely to have just been educated regarding the most up-to-date technical know-how. Nor do Plaintiffs identify younger applicants hired instead of them, offering only identical boilerplate allegations that, upon "information and belief," Defendants "hired a substantially younger individual who was not significantly more qualified or experienced." *See,*

*e.g.*, FAC ¶¶ 107, 115, 132, 171, 183.  Thus, they offer only the "mere allegation that an adverse employment action was motivated by age," the very "type of broad conclusory allegation which the Supreme Court has found insufficient." *Pekar v. U.S. Steel/Edgar Thomson Works*, 2010 WL 419421, at *7 (W.D. Pa. Jan. 29, 2010); *see also Gyda*, 2015 WL 4077009, at *4.

### c. Plaintiffs Cannot Pursue An ADEA Disparate Impact Claim (Count III).

Plaintiffs' disparate impact claim must be dismissed for a different, but equally straightforward reason:  the ADEA does not provide a disparate impact cause of action for actual or prospective job applicants.  The statute's disparate impact provision, Section 4(a)(2), makes it unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623(a)(2).  The "key phrase" is "or otherwise adversely affect his status as an employee," which makes clear that "depriving or tending to deprive any individual of employment opportunities" is "a subset of 'adversely affecting the individual's status as an employee.'"  *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) (en banc) (cleaned up).  "In other words, section 4(a)(2) protects an individual only if he has a 'status as an employee.'"  *Id.*  "Applicants who are not employees when alleged discrimination occurs do not have a 'status as an employee.'" *Id.* at 964.

Consistent with this text, both appeals courts to address the issue (and several district courts) have concluded that the ADEA permits employees—but not applicants who were never employees—to bring disparate impact claims.  *See Villarreal*, 839 F.3d at 963–70; *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482–88 (7th Cir. 2019) (en banc); *accord Pearce v. Frontier Airlines*, 2024 WL 2881329, at *2 n.1 (D. Md. June 7, 2024); *Raymond v. Spirit Aerosystems Holdings, Inc.*, 406 F. Supp. 3d 996, 1000 (D. Kan. 2019). The Supreme Court's decision in *Smith v. City of Jackson* further supports this reading of the statute.  544 U.S. 228 (2005).  There, the

Supreme Court held that an *employee* may bring a disparate impact claim under section 4(a)(2) of the ADEA but did not address whether *applicants* may do so.  Three Justices authored a concurring opinion explaining that, "Section 4(a)(2), *of course*, does not apply to 'applicants for employment' at all—it is only § 4(a)(1) that protects this group." *Id.* at 266 (O'Connor, J., concurring) (emphasis added).  The Court should follow these well-reasoned decisions and dismiss Plaintiffs' claim.[13]

## IV.    Plaintiffs' MFEPA Claims (Counts IV–VI) Must Be Dismissed.

Plaintiffs' three MFEPA claims closely track their ADEA claims.  *Compare* FAC ¶¶ 211–248, *with id.* ¶¶ 249–283.  The standard for MFEPA claims is "so similar" to ADEA claims "that those claims can be analyzed together."  *Sweeney v. Santander Bank, N.A.*, 2021 WL 4224312, at *12 (D. Mass. Sept. 16, 2021); *see also Adamson v. Walgreens Co.*, 750 F.3d 73, 83 (1st Cir. 2014) (ADEA and MFEPA analyses are "substantially similar").  Thus, the Court should dismiss Plaintiffs' MFEPA claims for the same reasons.  *See supra* at 11–16.  Further, Plaintiffs do not allege facts to show that Massachusetts is the state that "has the most significant relationship" to the parties with respect to jobs outside of Massachusetts, as required to apply the MFEPA extraterritorially.  *See Wilson v. Recorded Future, Inc.*, 669 F. Supp. 3d 53, 58 (D. Mass. 2023).  Therefore, Plaintiffs' MFEPA claims fail.

## V.    Plaintiffs Fail To State Any Claim Under The VHRA (Counts VII–IX).

Only Goldstein brings VHRA claims, which closely track Plaintiffs' ADEA claims.  *Compare* FAC ¶¶ 211–248, *with id.* ¶¶ 284–317.  At the outset, he cannot state a VHRA claim based on positions he allegedly pursued (or was deterred from pursuing) prior to July 1, 2020.  Before July 1, 2020, the VHRA provided a claim only to employees *discharged* based on age (not

---

[13]    Even if a disparate impact claim was cognizable under the ADEA (or VHRA or MFEPA), Plaintiffs fail to adequately plead such a claim for the same reasons as their FEHA claim.  *See infra* at 19–20; *Gyda*, 2015 WL 4077009, at *3 (dismissing ADEA disparate impact claim).

applicants alleging failure to hire) and was limited to employers with five to 20 employees. Va. Code Ann. § 2.2-3903 (2014). Goldstein was a job applicant, not a discharged employee, and each Defendant allegedly "employs thousands of employees in the United States." FAC ¶ 199.

Effective July 1, 2020, Virgina's General Assembly amended the VHRA to provide expanded causes of action for alleged age discrimination. *See Peterson v. Black Body Corp.*, 2024 WL 3272548, at *9 (W.D. Va. June 28, 2024) (summarizing statutory changes). But Goldstein cannot state a claim under the revised VHRA for positions he allegedly pursued after July 1, 2020, either. The revised provisions of the VHRA are generally similar to the ADEA. *Compare* Va. Code Ann. § 2.2-3905(B)(1), (8), *with* 29 U.S.C. § 623. Thus, Goldstein's VHRA claims under the revised statute fail for the same reasons as his ADEA claims. *See supra* at 11–16.[14]

Finally, Goldstein fails to state a VHRA claim because he does not allege that he applied to positions in Virginia or that any Virginia-based Defendant rejected his applications. Though Goldstein lives in Virginia, the VHRA "prevent[s] discrimination within [Virginia's] territorial boundaries," and the "alleged acts of discrimination" took place elsewhere. *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284–85 (D.D.C. 2012) (citing Va. Code Ann. § 2.2-3900).

## VI.    Plaintiffs Fail To State Any FEHA Claim (Counts IX-XII).

Goldstein and Bryan fail to state any FEHA advertising or disparate treatment claim for largely the same reasons as their ADEA claims, and they fail to adequately plead a FEHA disparate impact claim. Generally, courts have evaluated ADEA and FEHA claims together because of FEHA's "similarity to the ADEA." *Brazill v. California Northstate Coll. of Pharmacy, LLC*, 904 F. Supp. 2d 1047, 1052 (E.D. Cal. 2012). Like the ADEA, FEHA allows experience-based hiring,

---

[14] While the VHRA uses a "motivating factor" intent standard rather than the ADEA's "but for" standard, *see* Va. Code Ann. § 2.2-3905(B)(6), Goldstein fails to satisfy even that standard because he fails to allege that Defendants reject applicants based on age.

expressly providing that "hiring or promotion *on the basis of experience* and training . . . or *hiring under an established recruiting program from* high schools, *colleges, universities, or trade schools* do not, in and of themselves, constitute unlawful employment practices." Cal. Gov't Code § 12940(a)(5)(a) (emphases added). Plaintiffs' allegation that Defendants reserve positions for applicants with "less than one or two years of work experience," FAC ¶ 9, falls squarely within FEHA's provision allowing employers to hire "on the basis of experience," Cal. Gov't Code § 12940(a)(5)(a). And Defendants may require that some applicants be current or recent graduates because "hiring under an established recruiting program from . . . colleges [and] universities" is also expressly authorized by the statute. *Id.* As explained above, Plaintiffs fail to allege that age played *any* part in the rejection of their applications. *See supra* at 15–16.[15]

Nor have Plaintiffs adequately pleaded a disparate impact claim because "the mere fact that each person affected by a practice or policy is also a member of a protected group does not establish a disparate impact." *Carter v. CB Richard Ellis, Inc.*, 19 Cal. Rptr. 3d 519, 527 (Ct. App. 2004). Persons who are not recent graduates are not a protected class. Instead, Plaintiffs must allege that the "practice in question has caused the exclusion of applicants for jobs or promotions *because of* their membership in a protected group"—applicants over age 40. *Id.* at 526–27 (emphasis added). That is typically done by identifying "[s]tatistical disparities" so "substantial that they raise such an inference of causation." *Id.* at 527. Here, Plaintiffs simply assert that Defendants' hiring practices "have a statistically significant impact on older workers" because: (1) "the vast majority of recent college graduates are under the age of 40;" (2) "the vast majority of people who are 40 years or older are not recent graduates;" and (3) "people under 40 years of age

---

[15] Similar to the VHRA, FEHA adopts a "substantial motivating factor" intent standard rather than the ADEA's but-for standard. *Harris v. City of Santa Monica*, 294 P.3d 49, 66 (Cal. 2013). Again, Plaintiffs' allegations are insufficient to meet even FEHA's intent standard.

are far more likely than people who are 40 years or older to be recent graduates." FAC ¶ 12.  But Plaintiffs rely on an "incomplete" data set because they have "offered no evidence regarding the . . . age composition" of Defendants' actual applicant pool.  *Carter*, 19 Cal. Rptr. 3d at 528.

To be sure, Plaintiffs cite a report suggesting that "[recent] college graduates are 15 times more likely to be under 40 than age 40 or older." FAC ¶ 84.  But these "publicly available reports and studies" do not "provide a non-speculative basis for plausibly inferring that any such significant disparity is *actually* occurring with respect to [Defendants' hiring practices]." *Liu v. Uber Techs., Inc.*, 2024 WL 3102801, at *2 (9th Cir. June 24, 2024) (emphasis added) (affirming dismissal of FEHA disparate impact claim); *see also Mahler v. Jud. Council of California*, 282 Cal. Rptr. 3d 34, 55 (Ct. App. 2021) (similar).  Plaintiffs fail to identify the average age of *graduate* school graduates or the typical age of applicants who have less than 12 months or 24 months of relevant work experience.  Moreover, Plaintiffs fail to allege that their general statistics align with the actual "makeup of the applicant pool" for Defendants' recent graduate positions.  *Id.* For example, Plaintiffs fail to account for the "common sense" observation that, like many companies in the defense industry, Defendants receive a significant number of applications from individuals with pre-college military experience, increasing the average age of the applicant pool.  *See Iqbal*, 556 U.S. at 679.  The FAC, at best, provides a "speculative correlation" between age and experience "insufficient to state a claim for disparate impact." *Mahler*, 282 Cal. Rptr. 3d at 55.

Finally, Goldstein and Bryan do not plead facts indicating that FEHA should apply to jobs in other states, as they must to overcome the presumption that the statute does not apply extraterritorially. *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017).  The Court should thus dismiss Plaintiffs' FEHA claims.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

Respectfully submitted,

OF COUNSEL:

Jason C. Schwartz*
Naima L. Farrell*
Alex Bruhn*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com

*Admitted Pro Hac Vice*

Date: January 10, 2025

/s/ Brian M. Rostocki
Brian M. Rostocki (#4599)
John T. Miraglia (#6682)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants*