## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,<br><br>Defendants. | C.A. No. 24-cv-01169-JLH |

## DEFENDANTS' REPLY BRIEF
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Date: March 17, 2025

OF COUNSEL:

Jason C. Schwartz*
Naima L. Farrell*
Alex Bruhn*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com

*Admitted Pro Hac Vice*

Brian M. Rostocki (#4599)
John T. Miraglia (#6682)
REED SMITH LLP
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

<u>Page</u>

ARGUMENT ...................................................................................................................... 1

    I.     Plaintiffs Lack Standing To Sue. ........................................................................ 1

    II.    Plaintiffs Did Not Exhaust Their Claims Against The Non-RTX Defendants. ......................................................................................................... 3

    III.   Plaintiffs' ADEA Advertising Claim (Count I) Must Be Dismissed.................... 5

    IV.   Plaintiffs Cannot State Any ADEA Disparate Treatment Claim (Count II).......... 8

    V.    Plaintiffs' ADEA Disparate Impact Claim (Count III) Fails. ............................ 10

    VI.   Plaintiffs Cannot State Any MFEPA Claims (Counts IV–VI). .......................... 12

    VII.  Plaintiffs' VHRA Claims Must Be Dismissed (Counts VII–IX)........................ 13

    VIII. Plaintiffs Fail To State Any FEHA Claim (Counts IX-XII). .............................. 14

CONCLUSION................................................................................................................ 15

i

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Allen v. Prince George's Cnty.*,
   538 F. Supp. 833 (D. Md. 1982) ............................................................................2

*Arafat v. Sch. Bd. of Broward Cnty.*,
   549 F. App'x 872 (11th Cir. 2013) .......................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................9

*Babb v. Wilkie*,
   589 U.S. 399 (2020) ............................................................................................8

*Blackman v. Lincoln Nat'l Corp.*,
   2012 WL 6151732 (E.D. Pa. Dec. 10, 2012) .....................................................14

*Boyd v. City of Wilmington*,
   943 F. Supp. 585 (E.D.N.C. 1996) .......................................................................7

*Bradley v. T-Mobile US, Inc.*,
   2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) .....................................................1

*Brennan v. Hughes Pers. Inc.*,
   1974 WL 211 (W.D. Ky. May 22, 1974) ..............................................................7

*Brennan v. Paragon Emp. Agency, Inc.*,
   356 F. Supp. 286 (S.D.N.Y. 1973) .......................................................................8

*Bright v. Le Moyne Coll.*,
   306 F. Supp. 2d 244 (N.D.N.Y. 2004) .................................................................5

*Caldrone v. Circle K Stores, Inc.*,
   2023 WL 5505014 (C.D. Cal. Aug. 8, 2023) .....................................................14

*Christaldi-Smith v. JDJ, Inc.*,
   367 F. Supp. 2d 756 (E.D. Pa. 2005) ...................................................................5

*Cole v. Boeing Co.*,
   845 F. Supp. 2d 277 (D.D.C. 2012) ...................................................................13

*Comm'n on Hum. Rts. & Opportunities v. Travelers Indem. Co.*,
   326 A.3d 557 (Conn. App. Ct. 2024) ...............................................................6, 9

*Cornell v. N. Wasco Cnty. Sch. Dist. No. 21*,
   2012 WL 4599419 (D. Or. July 9, 2012) .............................................................6

## TABLE OF AUTHORITIES
(continued)

Page(s)

*EEOC v. State of Arizona*,
    824 F. Supp. 898 (D. Ariz. 1991) .................................................................7

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)....................................................................................3

*Emerson v. Mezzion Int'l, LLC*,
    2021 WL 765765 (D. Del. Feb. 26, 2021) .................................................4

*FEC v. Cruz*,
    596 U.S. 289 (2022)....................................................................................2

*Fordham v. Agusta Westland N.V.*,
    2007 WL 136329 (E.D. Pa. Jan. 11, 2007) ...............................................5

*Glagola v. MacFann*,
    701 F. Supp. 3d 274 (W.D. Pa. 2023) ........................................................6

*Glus v. G.C. Murphy Co.*,
    562 F.2d 880 (3d Cir. 1977)........................................................................5

*Grim v. May Grant Assocs.*,
    2019 WL 358520 (E.D. Pa. Jan. 29, 2019) ...............................................1

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009).................................................................................12

*Gualandi v. Adams*,
    385 F.3d 236 (2d Cir. 2004).....................................................................14

*Gyda v. F.B.I. Crime Lab'y*,
    2015 WL 4077009 (E.D. Pa. July 6, 2015)................................................9

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993).........................................................................6, 8, 10

*Henson v. Santander Consumer USA Inc.*,
    582 U.S. 79 (2017).....................................................................................11

*Hodgson v. Approved Pers. Servs., Inc.*,
    529 F.2d 760 (4th Cir. 1975) .....................................................................7

*Kleber v. CareFusion Corp.*,
    914 F.3d 480 (7th Cir. 2019) .........................................................10, 11, 12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Liu v. Uber Technologies, Inc.*,
2024 WL 3102801 (9th Cir. June 24, 2024) ...................................................................15

*Loughrin v. United States*,
573 U.S. 351 (2014)........................................................................................................12

*Mahler v. Jud. Council of Cal.*,
282 Cal. Rptr. 3d 34 (Ct. App. 2021) ............................................................................15

*Mobley v. Workday, Inc.*,
740 F. Supp. 3d 796 (N.D. Cal. 2024) ...........................................................................10

*Neary v. Gruenberg*,
730 F. App'x 7 (2d Cir. 2018) ......................................................................................8, 9

*Opiotennione v. Bozzuto Mgmt. Co.*,
--- F.4th ----, 2025 WL 678636 (4th Cir. Mar. 4, 2025) ................................................2

*Parr v. Woodmen of the World Life Ins. Soc.*,
657 F. Supp. 1022 (M.D. Ga. 1987) ................................................................................2

*Rabin v. PricewaterhouseCoopers LLP*,
236 F. Supp. 3d 1126 (N.D. Cal. 2017) .........................................................................11

*Rippy v. Pub. Health Mgmt. Corp.*,
2020 WL 832088 (E.D. Pa. Feb. 19, 2020) .....................................................................5

*Robinson v. Dalton*,
107 F.3d 1018 (3d Cir. 1997)...........................................................................................3

*Rosenfeld v. Abraham Joshua Heschel Day Sch., Inc.*,
172 Cal. Rptr. 3d 465 (Ct. App. 2014) ..........................................................................14

*Siebe, Inc. v. Louis M. Gerson Co.*,
908 N.E.2d 819 (Mass. Ct. App. 2009) ...........................................................................4

*Sledge v. J. P. Stevens & Co.*,
585 F.2d 625 (4th Cir. 1978) ...........................................................................................2

*Smith v. City of Jackson*,
544 U.S. 228 (2005).........................................................................................................11

*Smith v. Home Health Sols., Inc.*,
2018 WL 5281743 (D. Mass. Oct. 24, 2018)..................................................................12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sterry v. Safe Auto Ins. Co.*,
    2003 WL 23412974 (S.D. Ohio Aug. 25, 2003).................................................9

*Stouffer v. Union R.R. Co.*,
    85 F.4th 139 (3d Cir. 2023) ........................................................................9

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ...............................................................10, 11

*Wilson v. Recorded Future, Inc.*,
    669 F. Supp. 3d 53 (D. Mass. 2023) ............................................................13

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) ....................................................................8

**Statutes**

29 U.S.C. § 623.............................................................................5, 8, 11, 12

29 U.S.C. § 631......................................................................................12

29 U.S.C. § 633a.....................................................................................12

42 U.S.C. § 2000e-2.................................................................................12

Cal. Code Regs. tit. 2, § 11015 ....................................................................15

Cal. Gov't Code § 12940 ...........................................................................14

Mass. Gen. Laws ch. 151B, § 4 ...................................................................12

Va. Code Ann. § 2.2-3900 ..........................................................................13

**Other Authorities**

Webster's Third New International Dictionary (1981).............................................15

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................3, 4, 9

**Regulations**

24 C.F.R. § 100.75 ....................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

29 C.F.R. § 1625.4 ............................................................................................................8

Plaintiffs' opposition brief doubles down on the flawed foundational premise of their claims—that an employer's desire to hire applicants with limited experience is tantamount to age discrimination.    That premise is irreconcilable with the statutes under which Plaintiffs sue, Supreme Court precedent, and the legitimate practices of countless employers across the country. Plaintiffs' opposition brief also fails to remedy the threshold defects in their claims, including their lack of standing, failure to exhaust their claims, and the absence of any age-based disparate impact claim for job applicants.  The Court should dismiss the FAC with prejudice.[1]

## ARGUMENT

### I.    Plaintiffs Lack Standing To Sue.

Plaintiffs' argument that they provide "detailed factual allegations about their injuries" Opp. 4–5, is belied by the FAC, which simply repeats the boilerplate allegation that Plaintiffs were "genuinely interested in each of the positions" and were "willing to relocate, if necessary, or work remotely."  FAC ¶¶ 99, 167, 179.  The Court need not credit these "merely conclusory" allegations on a motion to dismiss.  *Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924, at *10 (N.D. Cal. Mar. 13, 2020).    Plaintiffs belatedly attempt to bolster their anemic pleading, citing new factual allegations presented only in the "detailed" particulars of their EEOC charges.  *See* Opp. 6–9. However, Plaintiffs cannot amend the FAC now by offering those facts on a motion to dismiss. *See, e.g.*, *Grim v. May Grant Assocs.*, 2019 WL 358520, at *5 n.3 (E.D. Pa. Jan. 29, 2019) (refusing to consider screenshots attached to motion to dismiss opposition because "a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion" (cleaned up)). In any event, Goldstein and Beaulieu do not credibly explain why, despite their years of work

---

[1]    Unless otherwise defined, capitalized terms have the same meaning as in Defendants' opening brief.  *See* D.I. 83.

experience, they focused their application efforts on entry-level positions.[2]  Nor does Bryan—who has a master's degree in electrical engineering and "experience with computer programming, hardware design, technology, and engineering"—plausibly allege that he was genuinely interested in "at least three" unspecified positions seeking college students or recent college graduates.  FAC ¶¶ 176–78.  The discrimination Plaintiffs claim "to have suffered boils down to membership in the disfavored age group."  *Opiotennione v. Bozzuto Mgmt. Co.*, --- F.4th ----, 2025 WL 678636, at *3 (4th Cir. Mar. 4, 2025) (plaintiff lacked standing to challenge age-targeted ads).  Since Plaintiffs have failed to plead that they were "seriously interested" in the positions they unsuccessfully sought, they lack standing.  *Sledge v. J. P. Stevens & Co.*, 585 F.2d 625, 641 (4th Cir. 1978).[3]

Plaintiffs also fail to allege that they have standing to challenge the "dozens" of positions to which they were supposedly deterred from applying.  *See* Opp. 8–9.  Plaintiffs still have not identified a *single* job they would have pursued absent the recent graduate requirement, described when or how they saw these positions, or explained how they would have otherwise been qualified for these unknown jobs.  The only facts they do plead indicate they were *not* deterred, since they repeatedly applied to recent graduate positions.  Absent a shred of detail in support of Plaintiffs' deterrence claims, the Court need not take Plaintiffs' word for it.  *See* Mot. 7–8.

---

[2]   Puzzlingly, Plaintiffs assert that Goldstein pursued a "more senior" "Cyber Technologist II role" that is "unchallenged by this litigation."  Opp. 8 (citing FAC ¶ 102).  However, the FAC alleges that Defendants limited this role to "recent graduate[s]" of master's degree programs and thereby "discriminated against older workers."  FAC ¶¶ 102–03.

[3]   Some courts in other circuits have permitted "tester" claims under Title VII or the ADA.  *See* Opp. 5 & n.2 (citing cases).  However, this Court should follow the decisions concluding that testers without a genuine interest in a position cannot suffer harm from a rejection. *See, e.g.*, *Sledge*, 585 F.2d at 641; *Allen v. Prince George's Cnty.*, 538 F. Supp. 833, 842 (D. Md. 1982), *aff'd*, 737 F.2d 1299 (4th Cir. 1984); *Parr v. Woodmen of the World Life Ins. Soc.*, 657 F. Supp. 1022, 1032 (M.D. Ga. 1987).  And while Plaintiffs cite *FEC v. Cruz*, 596 U.S. 289, 297 (2022), that case did not involve testers or employment claims and concerned the "traceability" standing requirement rather than injury in fact.

2

## II.    Plaintiffs Did Not Exhaust Their Claims Against The Non-RTX Defendants.

Contrary to Plaintiffs' claim that this "affirmative defense" should be "determined later in the litigation," Opp. 21, "[t]imeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim." *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).[4]  Plaintiffs' own allegations clearly demonstrate that they have not exhausted their claims against the non-RTX Defendants.[5]

Goldstein's June 2021 tolling agreement, which he alleges to be with Raytheon Technologies Corporation, later renamed RTX Corporation, does not apply to claims against the non-RTX Defendants.  The agreement states that it is made between Goldstein and "Raytheon Technologies," which the agreement thereafter refers to as "Raytheon" or "Company," to toll certain claims by Goldstein and others "against *Raytheon* under federal, state, or local laws related to *Company's* employment policies or practices."  D.I. 97-9 at 1 (emphases added).  The only signatories to the tolling agreement are Goldstein and Raytheon Technologies, and the agreement nowhere references any subsidiary generally or by name.  *Id.* at 1–3.  While Plaintiffs now claim there is somehow a "factual dispute" as to whether the agreement binds non-signatory RTX subsidiaries, Opp. 22, it is hornbook law that a contract "cannot bind a non-party." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  And given the agreement's unambiguous provisions, extrinsic considerations regarding its purported "specific purpose" or RTX's hypothetical

---

[4]    Plaintiffs do not dispute that their claims against "Collins Aerospace" and "Pratt & Whitney" must be dismissed because those Defendants are not legal entities subject to suit, or that Goldstein failed to exhaust his FEHA claims.  *See* Mot. 8 n.5, 9–10.

[5]    Plaintiffs assert (at 22 n.21) that they have timely exhausted their claims that they were "deterred" from pursuing recent graduate positions and that their EEOC charges make clear they were deterred from applying after submitting "their last timely applications."  But Goldstein's charge offers no detail about when he was supposedly deterred from applying, and Bryan and Beaulieu's charges claim only that they applied to recent graduate positions and were "thereafter" deterred from pursuing more.  *See* D.I. 97-4 at 12; 97-6 at 13; 97-8 at 12.

authority to bind its subsidiaries, Opp. 22–23, are simply not relevant.  *See, e.g.*, *Siebe, Inc. v. Louis M. Gerson Co.*, 908 N.E.2d 819, 825 (Mass. Ct. App. 2009) (where contract is unambiguous, "the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract").[6]  Based on these crystal-clear provisions—and Plaintiffs' admission that the tolling agreement was "with RTX," FAC ¶ 23—the Court can rule at the pleading stage that the agreement does not apply to the non-RTX Defendants.  *See, e.g.*, *Emerson v. Mezzion Int'l, LLC*, 2021 WL 765765, at *1 (D. Del. Feb. 26, 2021) (dismissing claim against subsidiary under Rule 12(b)(6) because contract with parent did not bind subsidiary).[7]

Plaintiffs' argument (at Opp. 23 & n.23) that they named the non-RTX Defendants in their 2023 and 2024 pre-amendment EEOC charges is meritless.  Plaintiffs filed those charges against RTX or Raytheon Technologies Corporation—not any subsidiaries.  *See* D.I. 97-3; 97-5; 97-7. Unsurprisingly, all three charges claim Plaintiffs were not selected for "one or more jobs" with "RTX Corporation" or "Raytheon Technologies Corporation" and challenge *those* entities' alleged "company-wide discrimination practices."  D.I. 97-3 at 3; 97-5 at 4; 97-7 at 4.  The 2023 and 2024 charges refer to "Raytheon Company" only in passing to discuss a former entity that became a subsidiary of Raytheon Technologies Corporation; they do not mention the other non-RTX Defendants at all.  *Id.*  And while Bryan's September 2024 charge includes an omnibus reference to "any wholly owned subsidiary and related or affiliated entities," 97-5 at 4, this blunderbuss

---

[6]    Even if the Court concluded that the tolling agreement applies to Raytheon Company because Goldstein filed his 2019 EEOC charge against that entity, there would be no basis to extend tolling to the other non-RTX Defendants.

[7]    Plaintiffs assert that Bryan's September 2024 and November 2024 charges are timely as to his August 12, 2024 application for a Junior Software Engineer position, regardless of any tolling. *See* Opp. 22 n.21.  But Bryan does not allege any facts demonstrating that the August 2024 position was one of "at least three" recent graduate positions he allegedly sought, FAC ¶ 178, and he does not allege that he was actually rejected from that job, stating only in his September 2024 position statement that he had "not heard back."  D.I. 97-6 at 13.

approach cannot satisfy the requirement to "specifically name" each Defendant in an EEOC charge. *Rippy v. Pub. Health Mgmt. Corp.*, 2020 WL 832088, at *7 (E.D. Pa. Feb. 19, 2020).[8]

Plaintiffs' argument that they are exempted from the naming requirement because they allege that Defendants engaged in a "common discriminatory scheme," Opp. 23–24, should be rejected. As Plaintiffs' own case explained in *declining* to apply that exception, it is "inapposite" where, as here, a plaintiff's "EEOC charge does not even mention" the unnamed party. *Bright v. Le Moyne Coll.*, 306 F. Supp. 2d 244, 258 (N.D.N.Y. 2004).

Finally, the "commonality of interest" exception to the naming requirement set forth in *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 887–88 (3d Cir. 1977), cannot save Plaintiffs' claims. To start, several courts have held that the *Glus* exception applies only where a charging party is "not represented by counsel at the time that the EEOC complaint was filed." *Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d 756, 763 n.3 (E.D. Pa. 2005); *accord, e.g.*, *Fordham v. Agusta Westland N.V.*, 2007 WL 136329, at *3 (E.D. Pa. Jan. 11, 2007). Plaintiffs were all represented by counsel in filing their 2023 and 2024 charges. *See* D.I. 97-3 at 2; 97-5 at 2; 97-7 at 2. And even if *Glus* could apply here, the FAC fails to allege that any of the non-RTX Defendants received actual notice of Plaintiffs' claims, as required to apply the exception. *See* Mot. 10.[9]

## III.    Plaintiffs' ADEA Advertising Claim (Count I) Must Be Dismissed.

The ADEA's prohibition on publishing advertisements "indicating any preference, limitation, specification, or discrimination, based on age," 29 U.S.C. § 623(e), means exactly what

---

[8]    Even assuming the exhibits Plaintiffs cite that are attached to Goldstein's EEOC charge can be considered in assessing the naming requirement, those exhibits only reference employment "with Collins Aerospace." *See* Opp. 23 n. 23 (citing D.I. 97-3 at 12–102). As Plaintiffs tacitly concede, Collins Aerospace is not a legal entity subject to suit.

[9]    Plaintiffs argue that all Defendants received notice because RTX and Raytheon Company filed "position statements on behalf of all Defendants." Opp. 25 (cleaned up). But the position statements attached to Plaintiffs' brief do not support that claim. *See* D.I. 97-10; 97-11.

it says.  Advertisements indicating preferences for factors merely "correlated with" age—like limited work experience—are permitted.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608 (1993); *see also Cornell v. N. Wasco Cnty. Sch. Dist. No. 21*, 2012 WL 4599419, at *12 (D. Or. July 9, 2012) (rejecting ADEA advertising claim based on notice indicating "a preference based on pension status" rather than age, "even though there may be a correlation between pension status and age"); *Comm'n on Hum. Rts. & Opportunities v. Travelers Indem. Co.*, 326 A.3d 557, 572 (Conn. App. Ct. 2024) (reference to "recent college graduates" in job advertisement "did not indicate a preference or specification so as to discriminate on the basis of age" under Connecticut law).  Plaintiffs allege only that Defendants post jobs listing preferences for limited experience, and they fail to plead any facts indicating that Defendants do so because they intend to hire younger applicants.  *See* Mot. 11–12.  That dooms their claims.

The Court should reject Plaintiffs' invitation to import the Fair Housing Act's "ordinary reader" test into the ADEA.  *See* Opp. 10.  In arguing that an employer's intent in using the phrase "recent graduates" in an advertisement is irrelevant, Plaintiffs ignore the *Hazen* Court's teaching that the ADEA does not prohibit employment decisions based on factors "correlated with age." 507 U.S. at 611.  Regardless, Plaintiffs' claims would fail even under their proposed test.  Courts applying the ordinary reader test to the FHA have explained that, absent a showing of discriminatory intent, the advertisement must "communicate[] discrimination in an obvious or undeniable way to an ordinary reader."  *Glagola v. MacFann*, 701 F. Supp. 3d 274, 282 (W.D. Pa. 2023).  No ordinary reader would construe Defendants' alleged preference for inexperienced applicants as communicating an "obvious" or "undeniable" preference for younger applicants.  That is particularly so because, as Plaintiffs admit, Defendants offer ample "other opportunities" to applicants who are not "current college senior[s], or . . . recent college graduate[s]," and roughly

75% of Defendants' new hires are more experienced applicants.  FAC ¶¶ 7, 72.[10]

Plaintiffs' out-of-Circuit case law does not save their claims.  *See* Opp. 11 (citing *Hodgson v. Approved Pers. Servs., Inc.*, 529 F.2d 760, 763–65 (4th Cir. 1975) and *Brennan v. Hughes Pers. Inc.*, 1974 WL 211, at *3 (W.D. Ky. May 22, 1974)).  These decisions pre-date *Hazen* and, in any event, are factually distinguishable.  The advertisements in *Hodgson* "merely requested a 'recent college grad' without requiring any connection or relation between the job and type of educational experience" and "did not provide any detail or information about the employment."  *Boyd v. City of Wilmington*, 943 F. Supp. 585, 591 (E.D.N.C. 1996) (declining to extend *Hodgson* to advertisements stating that "candidates for MPA or MSIR degrees are preferred").  *Brennan* likewise considered postings with no connection between the position and "recent graduate" requirement, and the employer concededly desired applicants "between the ages of 28 and 35."  *Brennan*, 1974 WL 211, at *2.[11]  The challenged postings, like those in *Boyd*, clearly link educational requirements to the jobs at issue, *see, e.g.*, Ex. 1, 2, and Plaintiffs have failed to allege any facts suggesting that this is a pretext for discrimination.  Thus, these postings "d[o] not evince an intent to discriminate against older applicants."  *Boyd*, 943 F. Supp. at 591.

Plaintiffs attempt to defend the EEOC's regulation barring use of the term "recent graduate," arguing that this phrasing "obviously indicates a preference for younger workers" because an "ordinary person knows that the vast majority of recent graduates are younger than 40."  Opp. 11–12.  But once again, that simplistic reading ignores that the ADEA prohibits only

---

[10]  Plaintiffs' comparison to FHA regulations recognizing "publication liability" even absent a reference to a protected characteristic is irrelevant because the provisions they cite do not concern the content of advertisements at all.  Opp. 13 (citing 24 C.F.R. § 100.75(c)(3)–(4)).

[11]  Plaintiffs also cite *EEOC v. State of Arizona*, but that case predated *Hazen*, did not address the argument that an experience-based job posting is permissible, and allowed the plaintiff's claim to go forward under the now-superseded *Conley* standard based on only a cursory analysis. 824 F. Supp. 898, 900 (D. Ariz. 1991).

advertisements that discriminate "based on age." 29 U.S.C. § 623(e); *see also Babb v. Wilkie*, 589 U.S. 399, 405–06 (2020). The Court need not "reverse 60 years of ADEA case law and regulatory guidance," Opp. 12–13, to break with the EEOC's inaccurate interpretation. It need only follow the text of the statute, the longstanding precedent rejecting the EEOC's reading, and the EEOC's own job postings. *See Brennan v. Paragon Emp. Agency, Inc.*, 356 F. Supp. 286, 288–89 (S.D.N.Y. 1973), *aff'd*, 489 F.2d 752 (2d Cir. 1974); Exs. 11, 12.[12]

## IV.    Plaintiffs Cannot State Any ADEA Disparate Treatment Claim (Count II).

Plaintiffs' disparate treatment claim fails for much the same reason as their advertising claim—age and graduation year are "analytically distinct," even if the "average" college graduate, is "typically" younger than 40 years old. *Hazen*, 507 U.S. at 611; *see also Neary v. Gruenberg*, 730 F. App'x 7, 11–12 (2d Cir. 2018) (affirming dismissal of ADEA disparate treatment claim despite plaintiff alleging that hiring program targeted "recent college graduates" and nearly all new hires were under the age of 40). Nor does it matter whether it is "common sense" that "recent college graduates . . . are overwhelmingly under 40," Opp. 13, because Defendants' mere "aware[ness] of the adverse consequences the [hiring practice] would have on a protected group" is not enough to state a claim. *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).

Plaintiffs argue that "[t]he balance" of Defendants' long list of supporting cases granted motions for summary judgment, not motions to dismiss. Opp. 15 n.12. But those cases rejected, as a matter of law, the proposition that favoring "recent college graduates" constitutes age discrimination under the ADEA. And the Third Circuit has recognized that ADEA cases decided

---

[12]  Plaintiffs attempt to square the EEOC's regulation with the agency's advertisements seeking recent graduates for certain programs by arguing that the EEOC "also hires non-recent graduates" for those programs. Opp. 11 n.7. But Plaintiffs do not and cannot cite any part of the EEOC's job postings supporting that assertion. And even if their claim was accurate, the EEOC's call for recent graduates in its job postings would run afoul of the agency's categorical conclusion that use of that phrase "violate[s] the Act." 29 C.F.R. § 1625.4(a).

at the summary judgment stage may guide district courts in resolving a motion to dismiss.  *See Stouffer v. Union R.R. Co.*, 85 F.4th 139, 146 (3d Cir. 2023).  In any event, plenty of courts have rejected similar theories at the pleading stage.  *See, e.g.*, *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming district court order granting motion to dismiss); *Neary*, 730 F. App'x at 11–12 (same); *Gyda v. F.B.I. Crime Lab'y*, 2015 WL 4077009, at *1 (E.D. Pa. July 6, 2015) (granting motion to dismiss).  For their part, Plaintiffs cite only one (unpublished, out-of-Circuit) case in which a court *denied* a motion to dismiss—but even that decision was under the pre-*Iqbal*/*Twombly* Rule 12(b)(6) standard, so it has little relevance here.  *See Sterry v. Safe Auto Ins. Co.*, 2003 WL 23412974, at *14–15 (S.D. Ohio Aug. 25, 2003).

Nothing in the FAC demonstrates that "Defendants' explicit written policy is to totally exclude older workers."  Opp. 14.  Defendants' alleged "policy" is "facially neutral" with respect to age, FAC ¶ 103, and Plaintiffs' insinuation that older applicants cannot be recent graduates reflects their own inaccurate and "stigmatizing stereotypes."  *See* Mot. 12 n.11; *see also Travelers*, 326 A.3d at 573.  Indeed, compared to the cases cited above rejecting Plaintiffs' "recent-graduate-as-proxy" theory, Defendants' alleged hiring practices are even *less* connected to age because they allegedly require applicants to be a "recent college or graduate school graduate *or* have less than 12 or 24 months of relevant work experience."  FAC ¶ 86 (emphasis added).  Applicants of any age, including those shifting to a new career or returning to the workforce after raising children, may have "less than 12 or 24 months of relevant work experience."  And Plaintiffs still cannot account for the "common sense" observation that, like many companies in the defense industry, Defendants' recruitment of "recent college graduates" includes many individuals with pre-college military experience.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Nor can Plaintiffs satisfy the pleading requirements for a disparate treatment claim by

pointing to Defendants' purported "post-litigation shift to place greater emphasis on candidate experience—or lack thereof." Opp. 14. Plaintiffs cherry-pick examples to support the false proposition that Defendants only began requiring that applicants have "less than 12 or 24 months of experience" after the EEOC issued an adverse finding in 2021. *Id.* at 14–15. But the FAC itself contradicts that sweeping allegation. FAC ¶ 67 (alleging that Defendants have held this "ongoing pattern or practice" "[s]ince at least October 2018"); *id.* ¶ 178 (noting that "[s]ince 2020," Mr. Bryan has applied for over jobs with a requirement or preference that the applicant be a "recent college graduate, attending college, *or have less than 12 or 24 months of experience*" (emphasis added)).[13] Plaintiffs also accuse Defendants of "trafficking in age-related stereotypes" that inexperienced applicants may be easily trained and have up-to-date technical knowledge. Opp. 13. But, like Plaintiffs' claims, this criticism rest on a flawed premise. Because hiring preferences for easy trainability or technical knowledge are "wholly motivated by factors other than age," the "problem of inaccurate and stigmatizing stereotypes disappears." *Hazen*, 507 U.S. at 611.

## V.    Plaintiffs' ADEA Disparate Impact Claim (Count III) Fails.

Applicants also cannot bring disparate impact claims under the ADEA. Every federal appellate court to analyze this issue has come to the same conclusion. *See, e.g.*, *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) (en banc); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482–88 (7th Cir. 2019) (en banc).[14] That is because the ADEA's text, structure, and history establish that disparate impact claims are available only to employees.

---

[13]    Nor does Defendants' desire to hire applicants with less experience for entry-level roles "contradict" Defendants' stated desire to attract "world-class talent" because there is, of course, a difference between talent and experience. Opp. 15.

[14]    Plaintiffs' authority to the contrary is limited to two district court decisions, one of which did not even analyze the issue beyond a footnote after noting the defendant waived the argument. *See Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 811 n.4 (N.D. Cal. 2024).

Plaintiffs simply ignore the statute's use of the word "employee." Section 623(a)(2) makes it unlawful for an employer to "limit, segregate, or classify *his employees*, in any way which would deprive or tend to deprive any individual of employment opportunities or *otherwise adversely affect his status as an employee*, because of such individual's age." 29 U.S.C. § 623(a)(2) (emphases added). Thus, deprivation of employment opportunities for "any individual," must adversely affect the individual's "status as an employee." *Villarreal*, 839 F.3d at 963. Because the text limits "any individual" with the phrase "or otherwise affect his status as an employee," the "individuals" covered by this subsection are those with "status as an employee." *Id.*

*Smith v. City of Jackson* supports Defendants' reading of the ADEA. 544 U.S. 228 (2005). *Smith* recognized that the ADEA's disparate impact provision "focuses on the effects of the action on the *employee*." *Id.* at 236 (emphasis altered). And Justice O'Connor's concurring opinion makes clear that the provision "does not apply to 'applicants for employment' at all." *Id.* at 266 (O'Connor, J., concurring). Plaintiffs' only response is that *Smith* "relied heavily on the reasoning in *Griggs*, which . . . did not limit its holding to employees." Opp. 17 n.14 (quoting *Rabin v. PricewaterhouseCoopers LLP*, 236 F. Supp. 3d 1126, 1131 (N.D. Cal. 2017)). But "[n]owhere in *Griggs* did the Court state that its holding extended to job applicants." *Kleber*, 914 F.3d at 485.

Plaintiffs would abandon the plain text of the ADEA simply because the statute has the purpose of combatting age discrimination. Opp. 16–17. But a statute's broad legislative purpose does not mean Congress placed no limits on its reach. "Indeed, it is quite mistaken to assume . . . that whatever might appear to further the statute's primary objective must be the law." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (cleaned up). Indeed, the structure and history of other ADEA provisions establish that applicants are not included under Section 623(a)(2). Congress knows how to cover job applicants when it wants to do so. *See, e.g.*,

29 U.S.C. §§ 623(c), 623(d), 631(b), 633a(a), 633a(b)(3) (referring to "applicants for employment"). "[W]hen Congress includes particular language in one section of a statute—but omits it in another—let alone the very next provision—this Court presumes that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (cleaned up).

Plaintiffs' claim that the ADEA's disparate impact provision is identical to Title VII's is wrong. Opp. 18. In 1972, Congress amended Title VII's disparate impact provision to add "applicants for employment," 42 U.S.C. § 2000e2(a)(2), but left Section 623(a)(2) of the ADEA unchanged. Thus, "§ 703(a)(2) of Title VII differs from § 4(a)(2) in at least one material respect: the protections of the former extend expressly to 'applicants for employment,' while the latter covers only individuals with 'status as an employee.'" *Kleber*, 914 F.3d at 487. The upshot is that this Court "cannot ignore Congress' decision to amend Title VII's relevant provisions but not make similar changes to the ADEA." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009).[15]

## VI.    Plaintiffs Cannot State Any MFEPA Claims (Counts IV–VI).

Plaintiffs' MFEPA claims are substantially identical to their ADEA claims and should be dismissed for the same reasons. Mot. 11–17. Plaintiffs cite *Smith v. Home Health Solutions, Inc.*, 2018 WL 5281743, at *2 (D. Mass. Oct. 24, 2018), for the proposition that "courts routinely allow applicants to bring disparate impact claims under MFEPA," Opp. 18 n.16, but *Smith* dealt with a different statutory provision unrelated to age discrimination, Mass. Gen. Laws ch. 151B, § 4(1). Plaintiffs bring their disparate impact claim under MFEPA Chapter 151B, Section 4(1B), which contains no language typically associated with disparate impact liability.

In any event, Plaintiffs improperly seek to extend MFEPA extraterritorially. Plaintiffs

---

[15]    Indeed, even when Congress amended the ADEA in 1974 to include "applicants for employment" in *other* sections of the ADEA, Congress chose not to amend § 623(a)(2). That choice was intentional too. *See Kleber*, 914 F.3d at 485–86.

failed to allege that Massachusetts is the state with the "most significant relationship" to Defendants' positions outside of Massachusetts. *Wilson v. Recorded Future, Inc.*, 669 F. Supp. 3d 53, 58 (D. Mass. 2023). Though MFEPA may nonetheless apply "where the employment decisions at issue were made in Massachusetts," *id.* at 57, Plaintiffs have only alleged, in a conclusory manner, that "many of the discriminatory policies and practices described here[] were developed, directed, facilitated and enforced in Massachusetts." FAC ¶ 39.[16] But the FAC recognizes that, since 2022, no Defendant has been headquartered in Massachusetts, and nearly all the positions referenced in the FAC were based outside of Massachusetts. Plaintiffs have thus failed to allege that the MFEPA should be applied beyond the Commonwealth's borders.

## VII.    Plaintiffs' VHRA Claims Must Be Dismissed (Counts VII–IX).

Plaintiffs concede that Goldstein cannot state a claim based on any conduct prior to July 1, 2020, when the VHRA was amended to expand the availability of age discrimination claims. Nor do they dispute that the VHRA generally tracks the ADEA, so the Court should dismiss Goldstein's VHRA claims for the same reasons the Court should dismiss his ADEA claims.

Separately, Goldstein has not alleged that he applied to any Virginia position or was rejected by any Virginia-based Defendant. Plaintiffs fail to cite any case as to the VHRA's extraterritorial effect, so *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284–85 (D.D.C. 2012), provides the most (and only) persuasive account of the issue. Basic statutory interpretation confirms that the statute applies only within Virginia's "territorial boundaries." *Id.* at 284. After all, the VHRA protects "individuals *within* the Commonwealth." Va. Code Ann. § 2.2-3900 (emphasis added). Absent any contrary authority, this Court should rely on the "well-established presumption against

---

[16]    Though *Wilson* involved the Massachusetts Wage Act, the court applied Massachusetts' general choice-of-law doctrine. 669 F. Supp. 3d at 58 ("[W]here a Massachusetts statute is silent as to its extraterritorial effect, Massachusetts courts rely on the state's functional choice-of-law principles in assessing the applicability of the statute to the plaintiffs' claims.").

[the] extraterritorial application of statutes." *Blackman v. Lincoln Nat'l Corp.*, 2012 WL 6151732, at *4 (E.D. Pa. Dec. 10, 2012). Thus, Goldstein's VHRA claims should be dismissed.

## VIII.    Plaintiffs Fail To State Any FEHA Claim (Counts IX-XII).

Goldstein and Bryan's California FEHA claims fail for the same reasons as their ADEA claims. *See Rosenfeld v. Abraham Joshua Heschel Day Sch., Inc.*, 172 Cal. Rptr. 3d 465, 472 n.4 (Ct. App. 2014). Plaintiffs' claims also fail for an independent reason: FEHA expressly permits Defendants' alleged preference for inexperienced applicants.

First, "hiring or promotion on the basis of experience and training . . . do[es] not, in and of [it]sel[f], constitute [an] unlawful employment practice[]." Cal. Gov't Code § 12940(a)(5)(A). Plaintiffs argue that "Defendants relied on a lack of experience as a pretext to intentionally hire younger people after [the] EEOC found RTX violated the ADEA." Opp. 20. But no factual allegations support this conclusory assertion. *See supra* Section IV at 9. Plaintiffs misread *Caldrone v. Circle K Stores, Inc.* as holding that an employer may *only* invoke § 12940(a)(5)(A) "where the selected employee possessed more . . . experience than the plaintiff." 2023 WL 5505014, at *12 (C.D. Cal. Aug. 8, 2023). But that confuses an example for a rule. *Caldrone* simply identifies one situation—but not the only situation—in which "an employer can demonstrate a legitimate, nondiscriminatory reason" for not hiring a plaintiff. *Id.*

Second, FEHA expressly permits "hiring under an established recruiting program from high schools, colleges, [and] universities." Cal. Gov't Code § 12940(a)(5)(A). While Plaintiffs claim without explanation that Defendants' recruiting programs are not "established," Opp. 20, the FAC challenges Defendants' alleged "college and university recruiting efforts" pursuant to "proven [college] campus development programs," FAC ¶ 49. These allegations surely fit within any interpretation of the phrase "established recruiting program." *See Gualandi v. Adams*, 385 F.3d 236, 242 (2d Cir. 2004) (noting that "establish" can mean "both 'to bring into existence,' and

14

'to provide for' or 'endow'" (quoting Webster's Third New International Dictionary (1981))); Cal. Code Regs. tit. 2, § 11015 (defining "recruitment" as a practice "that has the purpose or effect of informing any individual about an employment opportunity, or assisting an individual to apply for employment, [or] an activity leading to employment").

In defending their disparate impact claim, Plaintiffs ignore *Liu v. Uber Technologies, Inc.*, 2024 WL 3102801 (9th Cir. June 24, 2024), which affirmed dismissal of FEHA claims at the pleading stage. *Id.* at *2. There, an Uber driver challenged the ride-sharing company's practice of terminating drivers based on a customer-driven "star" rating system, under which non-white drivers were allegedly more likely to receive low star ratings. *Id.* Liu's complaint was armed with "a broad body of social science literature," a survey that included thousands of Uber drivers, and statements from a professor that race was "highly statistically significant" in the termination of drivers based on their ratings. *Id.* at *2-3. However, the court concluded that these statistics could not support a disparate impact claim because they involved "the incorrect denominator"—that is, "the total number of drivers of [certain] race[s] in the entire survey pool." *Id.* at *3.

So too here. Plaintiffs only provide general statistics about the average age of recent college graduates. FAC ¶ 84. That, of course, says nothing about the age of Defendants' applicant pool. Plaintiffs argue that they need not proffer facts of this type before discovery. But they come nowhere close to alleging the sort of facts required by *Liu*, 2024 WL 3102801, at *3, which affirmed dismissal prior to discovery. Indeed, Plaintiffs have not even identified the average age of applicants seeking employment in the defense industry generally. So, the FAC only provides a "speculative correlation" between age and experience "insufficient to state a claim for disparate impact." *Mahler v. Jud. Council of Cal.*, 282 Cal. Rptr. 3d 34, 55 (Ct. App. 2021) (cleaned up).

## <u>CONCLUSION</u>

The Court should dismiss the FAC with prejudice.

Respectfully submitted,

OF COUNSEL:

Jason C. Schwartz*
Naima L. Farrell*
Alex Bruhn*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com

*Admitted Pro Hac Vice*

Date: March 17, 2025

/s/ Brian M. Rostocki
Brian M. Rostocki (#4599)
John T. Miraglia (#6682)
REED SMITH LLP
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants*