# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,<br><br>Defendants. | C.A. No. 24-cv-01169-JLH-SRF |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Date: April 4, 2025

OF COUNSEL:

Jason C. Schwartz*
Naima L. Farrell*
Alex Bruhn*
Samuel Z. Whipple*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com
swhipple@gibsondunn.com

*Admitted Pro Hac Vice*

Brian M. Rostocki (#4599)
John T. Miraglia (#6682)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

ARGUMENT ................................................................................................................ 4

    I.      Legal Standard. ............................................................................................. 4

    II.     The Court Should Rule First On Defendants' Motion To Dismiss. ................... 6

    III.    Plaintiffs Cannot Show Similarity Under Any Evidentiary Standard. ............... 7

          A.    Plaintiffs Have Not Shown A Common Discriminatory Policy. .............. 8

          B.    Plaintiffs Are Atypical Applicants. ........................................................ 10

          C.    Opt-In Claims Would Require Individualized Review ............................ 12

    IV.    The Proposed Collective Is Facially Overbroad. ................................................ 14

          A.    Deterred Applicants Cannot Be Included In The Proposed Collective. ............................................................................................ 15

          B.    Applicants To The Non-RTX Defendants Cannot Be Included. ............. 17

    V.    In The Alternative, The Court Should Reject Plaintiffs' Unbalanced Notice Plan And Request For Unavailable Data ................................................. 18

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Adami v. Cardo Windows, Inc.*,
   299 F.R.D. 68 (D.N.J. 2014) .................................................................................18

*Anderson v. Minacs Grp. (USA) Inc.*,
   2017 WL 1856276 (E.D. Mich. May 9, 2017).........................................................19

*Babb v. Wilkie*,
   589 U.S. 399 (2020)................................................................................................13

*Babcock v. Butler Cnty.*,
   2014 WL 688122 (W.D. Pa. Feb. 21, 2014) ............................................................6

*Bellan v. Cap. BlueCross*,
   496 F. Supp. 3d 854 (M.D. Pa. 2020) ...................................................................19

*Black v. P.F. Chang's China Bistro, Inc.*,
   2017 WL 2080408 (N.D. Ill. May 15, 2017) ...........................................................9

*Bramble v. Wal–Mart Stores, Inc.*,
   2011 WL 1389510 (E.D. Pa. April 12, 2011) .........................................10, 12, 14

*Clark v. A&L Homecare & Training Ctr., LLC*,
   68 F.4th 1003 (6th Cir. 2023) ...........................................................................5, 6

*Copley v. Evolution Well Servs. Operating, LLC*,
   2022 WL 295848 (W.D. Pa. Jan. 31, 2022)...........................................................18

*Fischer v. Fed. Express Corp.*,
   42 F.4th 366 (3d Cir. 2022) ...................................................................................10

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)..................................................................................................10

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
   842 F.3d 215 (3d Cir. 2016).....................................................................................5

*Heath v. Google Inc.*,
   215 F. Supp. 3d 844 (N.D. Cal. 2016) ...................................................10, 12, 13

*Hively v. Allis-Chalmers Energy, Inc.*,
   2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) .........................................................20

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)....................................................................................4, 18, 19

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Holder v. Bacus Foods Corp.*,
    2023 WL 5671406 (D. Ariz. Sept. 1, 2023)...........................................................................7

*Joyce v. Colter Energy Servs. USA, Inc.*,
    2024 WL 2794278 (W.D. Pa. May 31, 2024).......................................................................19

*Kronick v. bebe Stores, Inc.*,
    2008 WL 4546368 (D.N.J. Oct. 2, 2008)..............................................................................5

*Magee v. Francesca's Holdings Corp.*,
    2018 WL 10602187 (D.N.J. Nov. 6, 2018) ..........................................................................19

*Miller v. JAH, LLC*,
    2018 WL 305819 (N.D. Ala. Jan. 5, 2018)..........................................................................19

*Moore v. Consol Pa. Coal Co.*,
    2024 WL 1251418 (W.D. Pa. Mar. 22, 2024) ......................................................................18

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
    111 F. Supp. 2d 493 (D.N.J. 2000) .....................................................................................14

*Mueller v. CBS, Inc.*,
    201 F.R.D. 425 (W.D. Pa. 2001) ..........................................................................................9

*Nelson v. Wal-Mart Stores, Inc.*,
    245 F.R.D. 358 (E.D. Ark. 2007)........................................................................................16

*Patnaude v. Gonzales*,
    478 F. Supp. 2d 643 (D. Del. 2007).....................................................................................17

*Rabin v. PricewaterhouseCoopers LLP*,
    2018 WL 3585143 (N.D. Cal. July 26, 2018)..........................................................10, 15, 16

*Russo v. Gov't Emps. Ins. Co.*,
    2022 WL 3098107 (D.N.J. Aug. 3, 2022) ...........................................................................18

*Smith v. City of Jackson*,
    544 U.S. 228 (2005).............................................................................................................14

*Smith v. Sovereign Bancorp, Inc.*,
    2003 WL 22701017 (E.D. Pa. Nov. 13, 2003) ....................................................................16

*Stansbury v. Barrick Enters.*,
    2024 WL 1333367 (M.D. Pa. Mar. 28, 2024).....................................................................19

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Steinberg v. TD Bank, N.A.*,
  2012 WL 2500331 (D.N.J. June 27, 2012) ........................................................................18

*Swales v. KLLM Transport Services, LLC*,
  985 F.3d 430 (5th Cir. 2021) ...............................................................................................6

*Symczyk v. Genesis HealthCare Corp.*,
  656 F.3d 189 (3d Cir. 2011) ...........................................................................4, 5, 7, 10, 16

*Villanueva-Bazaldua v. TruGreen Ltd. Partners*,
  479 F. Supp. 2d 411 (D. Del. 2007) ..............................................................................6, 14

*Wilhoit v. AstraZeneca Pharms. LP*,
  2024 WL 2843169 (D. Del. June 5, 2024) .............................................................5, 8, 10, 16

*Zavala v. Wal Mart Stores*,
  691 F.3d 527 (3d Cir. 2012) ................................................................................................5

**Statutes**

29 U.S.C. § 621 *et seq.* ...............................................................................................................4

29 U.S.C. § 623(e) .....................................................................................................................13

29 U.S.C. § 626(d)(1)(B) ...........................................................................................................17

**Other Authorities**

RTX, "Careers that make a difference," https://careers.rtx.com/ global/en/search-
  results (accessed Apr. 4, 2025) .........................................................................................15

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs ask this Court to approve notice of their ADEA collective action to "tens of thousands" of potential opt-in claimants nationwide. D.I. 93 (Brief, or "Br.") at 17 (defining the "Proposed Collective"); D.I. 68 (First Amended Complaint, or "FAC") ¶ 41. To meet their burden, Plaintiffs must show, beyond speculation, that they are similarly situated to this sprawling group. Plaintiffs' evidence consists of little more than threadbare declarations and a handful of job postings clipped from the RTX Careers website, all of which demonstrate that their experiences *cannot* be generalized across tens of thousands of jobseekers. If the Court invites opt-in claims from a nationwide collective, it will have to review *every* candidate's unique experience and qualifications against the specific job to which they applied (or from which they purportedly were deterred from applying). Before the Court could even undertake this unwieldy and individualized review, the parties would need to somehow identify potential members of a collective that includes an unknown number of supposedly "deterred" candidates who never even applied for positions with Defendants. This is an untenable way for a collective action to proceed.

The Court need not and should not address these questions now. As Defendants have argued in their pending motion to dismiss, Plaintiffs' claims should be dismissed entirely. To the extent the Court rules that any of Plaintiffs' claims can go forward, conditional certification of a sweeping nationwide collective action is not warranted. The Court should deny Plaintiffs' motion and order them to proceed, if at all, on an individual basis.

## SUMMARY OF ARGUMENT

1.  Plaintiffs' motion is premature. Defendants completed briefing on their motion to dismiss on March 17. D.I. 83, 96, 101. Defendants argue, among other points, that Plaintiffs failed to timely exhaust administrative remedies against the non-RTX Defendants; that Plaintiffs lack Article III standing to pursue all of their claims; and that Plaintiffs have failed to state an ADEA claim based

1

on Defendants' alleged practice of limiting certain positions to *inexperienced* candidates (not *younger* candidates). D.I. 83. If granted in full or in part, Defendants' motion will eliminate or limit the claims to which other plaintiffs could opt in and the universe of potential opt-ins, if any, to whom notice would be sent. Defendants respectfully suggest that it would be more efficient for the Court to rule on the motion to dismiss before considering notice to the Proposed Collective.

2. Plaintiffs have not met their evidentiary burden to show they are similarly situated to the Proposed Collective. Recent graduate requirements vary—as evidenced in the handful of job postings Plaintiffs described in exhibits or declarations. Plaintiffs' experiences are also individualized, featuring repeated applications to entry-level roles not commensurate with their experience. Opt-in plaintiffs are likely to differ with respect to individual qualifications, necessitating person-by-person review that is incompatible with the collective action procedure.

3. The Proposed Collective is facially overbroad. So-called "deterred" applicants cannot be part of the Collective. The parties have no way of identifying this group—and, moreover, Plaintiffs were *not* deterred from applying to dozens of positions with Defendants. The non-RTX Defendants cannot be included either, as opt-in claims against them are barred by Plaintiffs' failure to exhaust administrative remedies, and "Collins Aerospace" and "Pratt & Whitney" are not legal entities.

4. If the Court approves notice to the Proposed Collective, it should substantially narrow Plaintiffs' notice plan and must curtail some of the information that Plaintiffs' counsel seeks from Defendants. Plaintiffs seek to contact recipients up to eight times across various media, using language that is skewed in favor of joining the collective action. Defendants' notice plan better respects privacy interests and judicial neutrality, without veering into solicitation. Further, Defendants do not have certain information requested, such as social media account information, dates of birth (or any way of determining age), and Social Security numbers.

2

## STATEMENT OF FACTS

RTX and its subsidiaries seek to recruit, develop, and retain world-class talent to maintain their competitive edge in the aerospace and defense industry. To be hired for certain entry-level positions, applicants must be "recent graduates" of college or graduate school. *See, e.g.*, D.I. 94-1 Ex. 8. Of course, "recent graduates" may be of any age, and older applicants (aged 40 or over) can and regularly do meet the requirement if, for example, they served in the military before obtaining higher education or earned a degree while changing careers. Plaintiffs Bryan and Beaulieu were themselves over 40 when they earned their terminal degrees. *See* FAC ¶¶ 36, 164, 176. Across RTX and its subsidiaries, just under ten percent of recent graduate positions between January 1, 2019, and June 24, 2024 (shortly after this suit was filed) were filled by new employees aged 40 or over. McKnight Decl. ¶ 10 (calculating 8.6%). Per its equal opportunity policy, RTX and its subsidiaries do not discriminate based on age or other protected characteristics. Schulz Decl. ¶ 14.

Job requisitions are the principal responsibility of the individual manager who will oversee the position. Schulz Decl. ¶ 5. RTX Human Resources provides central support for the hiring process, including posting requisitions to the RTX Careers webpage. *Id*. The text of the requisition is prepared by the hiring manager. *Id*. During Plaintiffs' claimed "relevant time period," language describing recent graduate requirements has varied—particularly on the recency of the degree and whether a minimum amount of relevant experience will substitute for the absence of a degree. *Id.* ¶ 6; *compare, e.g.*, D.I. 94-1, Ex. 8 at 4, *with id.* at 13.

Defendants collect no identifiable data on individuals who browse a job posting without applying. Schulz Decl. ¶¶ 16, 17. Defendants request an email address when a candidate creates a profile on the RTX Careers website, and they request an address and telephone number when a candidate uses that profile to apply to a job. *Id.* ¶¶ 17, 18. Defendants only receive an applicant's Social Security number if that candidate is hired and onboarded, and Defendants do not request

3

social media accounts at all. *Id.* ¶¶ 20–21. Finally, Defendants do not request candidates' ages during the application process; they only receive age data for hires during onboarding. *Id.* ¶ 19.

Although recent graduate positions are open to all qualifying applicants regardless of age, Plaintiffs filed this suit in June 2024, alleging that Defendants' use of these positions is tantamount to age discrimination. *See* D.I. 1. In the FAC, Plaintiffs allege that Defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by publishing job postings indicating a preference for younger applicants (Count I), intentionally discriminating against older applicants by limiting some positions to recent graduates (Count II), and disparately impacting older applicants by using recent graduate positions (Count III). *See* FAC ¶¶ 211–48. Plaintiffs also bring similar claims under state law. *See id.* ¶¶ 249–351. Defendants moved to dismiss the FAC in its entirety, citing deficiencies in standing, administrative exhaustion, and Plaintiffs' failure to plead any ADEA or state law claim. D.I. 83. Without awaiting the Court's decision, Plaintiffs moved for conditional certification of a nationwide ADEA collective, supported by a handful of exhibits and declarations that mostly repeat the FAC's (unfounded) allegations. D.I. 94-1.

## ARGUMENT

### I.  Legal Standard.

"[D]istrict courts have discretion, in appropriate cases, to implement [collective action procedures] in ADEA actions by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). In the Third Circuit, courts have historically followed a two-step process. "During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*,

4

569 U.S. 66 (2013); *see Zavala v. Wal Mart Stores*, 691 F.3d 527, 536 (3d Cir. 2012). "The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members. Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (citations omitted).[1]

To carry their initial burden, plaintiffs "must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193. "In spite of the modest evidentiary standard applicable at this stage, courts have not hesitated to deny conditional certification when evidence is lacking." *Kronick v. bebe Stores, Inc.*, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008). Moreover, where plaintiffs "seek to certify a broad collective of nationwide employees or applicants," a "'heavier-than-usual burden'" applies. *Wilhoit v. AstraZeneca Pharms. LP*, 2024 WL 2843169, at *8 (D. Del. June 5, 2024), *adopting R&R*, 2024 WL 706901 (Fallon, J.). If a plaintiff's proffered evidence does not suffice, courts can "permit the issue to be revisited after discovery or efforts by the named plaintiff to re-define the contours of the proposed collective action." *Halle*, 842 F.3d at 224–25.

Recently, other Courts of Appeal have applied more rigorous frameworks to avoid sending notice improperly to "employees who are not, in fact, eligible to join the suit." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023). In *Clark*, the Sixth Circuit, recognizing the multitude of fact-bound issues that may be relevant, adopted a preliminary-injunction standard, requiring plaintiffs to show a "strong likelihood" that putative collective

---

[1] Cases like *Halle* that arise under the Fair Labor Standards Act ("FLSA") are equally applicable to ADEA cases. "[T]he ADEA incorporates enforcement provisions of the FLSA, including the collective action provisions of 29 U.S.C. § 216(b)." *Halle*, 842 F.3d at 224 n.8.

members are "similarly situated to the plaintiffs themselves." *Id.* at 1011. Similarly, in *Swales v. KLLM Transport Services, LLC*, the Fifth Circuit instructed that a district court "should identify . . . what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." 985 F.3d 430, 441 (5th Cir. 2021). Only after a district court has considered "all available evidence" should it decide certification. *Id.* at 443. While the two-step approach of *Symczyk* and its progeny is the law of this Circuit, Defendants maintain that the *Clark* and *Swales* frameworks are more appropriate, particularly in a fact-intensive case such as this, where the proposed collective would consist of applicants with unique and widely varying characteristics.

## II.    The Court Should Rule First On Defendants' Motion To Dismiss.

Defendants have moved for full dismissal of this action. D.I. 83. Defendants argue that Plaintiffs lack standing; Plaintiffs failed to administratively exhaust their claims against the non-RTX Defendants (and "Collins Aerospace" and "Pratt & Whitney" are not legal entities subject to suit); Plaintiffs' ADEA advertising claim is not viable because Defendants' job postings refer to experience, not age; Plaintiffs have not adequately alleged disparate treatment on the basis of age; and the ADEA does not provide a disparate impact cause of action for job applicants. *Id.*

A ruling for Defendants would moot Plaintiffs' request for notice distribution. It would be an inefficient use of resources—for the Court, the parties, and "tens of thousands" of potential notice recipients, FAC ¶ 41—to complete the notice process if the case is later dismissed. Peer courts have expressed "concern[] about subjecting [defendants] to nationwide discovery and this court with the management of an opt-in class action, on a yet-to-be established legal premise," *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 418 (D. Del. 2007), and have aptly concluded that the "judicially fair and efficient" order of operations is to rule first on the motion to dismiss. *Babcock v. Butler Cnty.*, 2014 WL 688122, at *3 (W.D. Pa. Feb. 21, 2014).

Even a partial ruling for Defendants would narrow the scope of Plaintiffs' claims—for example, by dismissing the non-RTX Defendants, or by limiting Plaintiffs' ADEA theories. Resolving these issues first would allow the parties to tailor any Court-approved notice to the surviving claims and to limit the recipients to those who might have such claims. Otherwise, an opt-in notice could inadvertently invite members to join the collective action who have no viable claims, sowing confusion among recipients, imposing unnecessary burden on the parties and the Court, and complicating the Court's work at final certification.

Defendants' proposed ordering is unlikely to cause any appreciable delay. The motion to dismiss is already ripe. D.I. 101. Moreover, any delay would not be prejudicial. Potential collective action members remain free to opt in before notice issues—as several have done, *see* D.I. 40 (Bryan), 42 (Beaulieu), 43 (Capasso)—or to file independent lawsuits. *See Holder v. Bacus Foods Corp.*, 2023 WL 5671406, at *3 (D. Ariz. Sept. 1, 2023) ("[A]ny delay in court-approved notice does not affect these individuals' ability to prosecute their own lawsuits or intervene in this one."). Accordingly, Defendants respectfully suggest that the Court should first consider Defendants' motion to dismiss, which might obviate or limit the need for Court-authorized notice.

## III.    Plaintiffs Cannot Show Similarity Under Any Evidentiary Standard.

At this stage, Plaintiffs must come forward with "evidence, 'beyond pure speculation,' of a factual nexus" between their experiences and the Proposed Collective. *Symczyk*, 656 F.3d at 193. The Proposed Collective is vast, encompassing "All individuals, who, from October 11, 2018 onward . . . (i) applied to and were denied, or were deterred from applying for, at least one Recent Graduate Position; (ii) met the basic qualifications for such position; and (iii) were aged 40 or older at the time they applied or were deterred from applying." Br. 17. Plaintiffs speculate that "tens of thousands" will fit these contours. FAC ¶ 41. Their threadbare declarations and random assortment of job postings do not meet the "'heavier-than-usual burden'" for conditionally

certifying such a sweeping, nationwide collective. *Wilhoit*, 2024 WL 2843169, at *8. If anything, the limited evidence Plaintiffs have introduced tends to show they are dissimilar from the Proposed Collective. These differences provide ample grounds to deny Plaintiffs' motion.

### A. Plaintiffs Have Not Shown A Common Discriminatory Policy.

First, there is no "single decision, policy, or plan" that unifies the Proposed Collective. Br. 11. The hiring decisions Plaintiffs complain of—including determining job requirements and extending an employment offer—were made independently by employees across RTX and its subsidiaries. When a recent graduate requirement appears on a job posting, it is by decision of the relevant hiring manager—that is, the employee who will directly manage the hired position. Schulz Decl. ¶ 5. Hiring managers have principal responsibility for their job postings: they determine the job description, compensation grade, desired experience level, and other job requirements, which they enter into a draft job posting. *Id.* Recruiting staff at RTX assist with reviewing and editing job postings, but hiring managers are ultimately responsible for the content. *Id.* Recruiting staff also perform initial application screening based on instructions of the hiring manager. *Id.* ¶ 7.

The supposedly uniform "recent graduate" requirement is similarly variable. Schulz Decl. ¶ 6. Even the handful of job postings Plaintiffs submit or describe include differing descriptions:

- "Bachelor's degree and less than 2 years prior relevant experience OR In the absence of a degree, 6 years of relevant experience is required." D.I. 94-1, Ex. 8 at 4, 7; *see* D.I. 94-1, Ex. 1 (Goldstein Decl.) ¶¶ 22, 28.

- "Bachelor's degree and 12 months or less of relevant professional work experience (excluding internships)." D.I. 94-1, Ex. 8 at 10, 13, 15; *see* Goldstein Decl. ¶ 26.

- "Bachelor's Degree . . . in the past 18 months or by [date]." Goldstein Decl. ¶¶ 13, 20.

- "***Great opportunity for current seniors in college or recent college graduates. If you are not a current college senior, or a recent college graduate, please visit our other opportunities at our [website] rtx.com/careers and apply!***" Goldstein Decl. ¶ 16.

- "[E]ntry-level" role for a "New Grad." Goldstein Decl. ¶ 18.

- "[B]achelor's degree and less than 2 years prior relevant experience." Goldstein Decl. ¶ 24.

Even this limited evidence demonstrates that, rather than acting pursuant to a "uniform policy" dictated from on high, Br. 12, individual hiring managers decided whether to create recent graduate positions based on the needs of their individual teams, and the "recent graduate" requirements can vary by posting. Those differences matter when attempting to conditionally certify a collective action as broad as Plaintiffs propose. For example, a 50-year-old applicant with no degree and 20 years of relevant work experience would meet the basic job requirements as stated in the first bullet above, but not the second. *See supra* at 8.

Plaintiffs attempt to paper over these differences by citing "RTX's centralized human resources functions and technology platforms." Br. 12. But Plaintiffs cannot "extrapolate all of their [ADEA] allegations" across the RTX enterprise "merely on the basis that Defendant is a centrally run company." *Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *10–11 (N.D. Ill. May 15, 2017) ("generalized evidence of centralized control," such as a "common website for hiring employees," did not "create an inference" that "unlawful policies were present" across the entire business). The fact that RTX, like most companies, maintains a centralized website and overarching equal employment opportunity policies does not establish that Defendants' recent graduate requirements, specifically, are "uniform." Br. 12. As already described, Defendants have no central policy favoring recent graduates. Schulz Decl. ¶ 5.

Plaintiffs' cited cases considered far more centralized policies on more robust evidentiary records. In *Mueller v. CBS, Inc.*, the court relied upon "preliminary discovery"—including "deposition testimony," meeting "reports," and "statistical analyses"—as evidence of "a corporate-wide policy" to push out older employees. 201 F.R.D. 425, 428 (W.D. Pa. 2001). In *Donofrio v. IKEA US Retail, LLC*, the court cited "testimonial evidence that IKEA employees that were tasked with promotion decision-making were aware of and took into consideration what they perceived

to be a broad organizational preference for the promotion of young employees to management positions." 2019 WL 9698597, at *3 (E.D. Pa. May 15, 2019). In *Rabin v. PricewaterhouseCoopers LLP*, the court looked favorably on "statistical analyses showing a central uniform hiring policy which results in age disparities in hiring." 2018 WL 3585143, at *4 (N.D. Cal. July 26, 2018). And in *Heath v. Google Inc.*, the court relied on "statistical information related to the median age of Google's workforce compared to the median age in the United States for computer programmers," as well as detailed accounts of Google recruiters focusing on the plaintiffs' age and years of experience. 215 F. Supp. 3d 844, 854 (N.D. Cal. 2016).[2]

Plaintiffs have put forward no evidence of this sort. They have a small sample of job postings with varied recent graduate requirements, from which they ask this Court to infer a common "policy" implemented by Defendants. That will not suffice, as the "speculative nature of Plaintiffs' allegations about the existence of a company-wide plan or policy undercuts Plaintiffs' assertion that members of the proposed collective are similarly situated under any such policy." *Wilhoit*, 2024 WL 2843169, at *8 (quoting R&R). In other words, Plaintiffs fail to offer "evidence, 'beyond pure speculation,'" of the uniform policy they allege. *Symczyk*, 656 F.3d at 193.

### B.  Plaintiffs Are Atypical Applicants.

Furthermore, Plaintiffs have not introduced sufficient evidence that their experiences can be "more broadly applied" as opposed to being "merely anecdotal evidence specific to them." *Bramble v. Wal–Mart Stores, Inc.*, 2011 WL 1389510, at *6 (E.D. Pa. April 12, 2011). Their declarations suggest their experiences applying to RTX are unique and atypical of the Proposed

---

[2]  Plaintiffs' additional discussion of class certification cases under Rule 23 is inapt, by their own admission: these cases are "fundamentally different" from a collective action. Br. 14 n.10 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, 75 (2013)); *see also Fischer v. Fed. Express Corp.*, 42 F.4th 366, 376 (3d Cir. 2022). At the proper time, Defendants will dispute that Plaintiffs satisfy the Rule 23 standard with respect to their class action claims.

Collective—i.e., that they are not "similarly situated."

As Defendants discussed in their motion to dismiss, Plaintiff Goldstein displayed an idiosyncratic pattern of applying to entry-level positions, with job duties ranging from engineering to invoicing and locations from California to Iowa. D.I. 83 at 6–7. Indeed, Goldstein does not allege that he ever applied to a *non*-recent graduate position, which might have been commensurate with his years of experience. Goldstein's serial applications to recent graduate positions show he lacked any genuine interest in these positions and applied to them as pretext for a lawsuit. *See id.* He has nothing in common with a member of the Proposed Collective who genuinely pursued such a position, let alone a potential applicant allegedly deterred by a recent graduate requirement. Goldstein's standing to sue must be assessed individually, based on facts that are personal to him.

Before Plaintiff Beaulieu applied to two recent graduate positions in September 2021, he unsuccessfully applied to other jobs in 2015 and 2020. D.I. 94-1, Ex. 2 (Beaulieu Decl.) ¶¶ 7–8. Beaulieu does not allege that the 2015 or 2020 applications were to recent graduate positions, and he does not allege that he was denied for those jobs based on his age. *Id.* ¶ 7. Effectively, Beaulieu ran his own experiment: even without a recent graduate requirement, he still did not receive an interview. Beaulieu's subjective "belie[f]" that his age was the reason for his denials in September 2021, *id.* ¶ 13, is conclusory—and it does not address the alternate inference that, as in 2015 and 2020, Beaulieu was not the best candidate for those specific jobs at RTX. Thus, like Goldstein, Beaulieu's claim suffers unique deficiencies that make him atypical of the Proposed Collective.

Plaintiff Bryan is likewise far from a typical applicant. He first applied through an on-campus program in 2004. D.I. 94-1, Ex. 3 (Bryan Decl.) ¶ 5. At that time, Bryan was roughly 43 years old and was completing his master's degree—meaning he *met* the recent graduate requirement as an older applicant. *Id.* ¶¶ 1, 4. Bryan participated in an interview, but, like Beaulieu,

did not receive an offer. He proceeded to submit 165 applications over nearly 20 years—only "several" of which "sought recent college graduates." *Id.* ¶¶ 8, 9. By his estimate, 138 applications preceded the period "covered by this lawsuit." *Id.* ¶ 15. Bryan's prolific application history presents unique obstacles, as his repeated rejections from recent graduate and non-recent graduate positions alike over almost two decades suggest these rejections had nothing to do with his age.

Conversely, RTX data shows that older applicants *are* hired for recent graduate positions in meaningful numbers. RTX performed a statistical analysis of candidates hired for recent graduate positions between January 2019 and June 2024. McKnight Decl. ¶¶ 3, 7.[3] Of 17,169 positions considered, 1,472 (or 8.6%) were filled by applicants aged 40 or older. *Id.* ¶ 10.

Thus, none of the Plaintiffs has described an experience that can be "more broadly applied." *Bramble*, 2011 WL 1389510, at *6. Their experiences are instead highly "anecdotal," *id.*, rendering conditional certification inappropriate.

### C.  Opt-In Claims Would Require Individualized Review.

Individualized evidence would overwhelm any similarities across the Proposed Collective. The prima facie elements of Plaintiffs' ADEA claims would require the Court to examine each unique pairing of applicant and posting, making the case ill-suited to proceed as a collective action.

Take Plaintiffs' Count II ADEA intentional discrimination claim as an example. As Plaintiffs' cited authority confirms, being "qualified for the position" is a "prima facie" element of an ADEA discrimination claim, so the proposed collective must be "similarly situated" in that regard. *Heath*, 215 F. Supp. 3d at 857. In *Heath*, the court denied conditional certification to a

---

[3]  Defendants prepared a data analysis approximating the time periods and entities Plaintiffs contend should be included in the Proposed Collective through the date of this suit. Defendants dispute that Plaintiffs have correctly calculated the applicable period and that any non-RTX Defendant belongs in this lawsuit. *Infra* Section IV.B.

"vast class" that would include older applicants "without regard to their qualifications," because "[c]ommon sense dictates that Google would have rejected those individuals based on their lack of qualifications, not their age." *Id.* Plaintiffs have attempted to address *Heath* by defining the Proposed Collective as individuals who "met the basic qualifications for such position," presumably excepting the recent graduate requirement. Br. 17. But this aspect of the definition is individualized and cannot be determined at scale. Plaintiffs have proposed no way of winnowing the applicant pool at the notice stage; presumably, they would allow opt-in plaintiffs to self-determine whether they met qualifications other than the recent graduate requirement.

As Defendants explained in Section III.A, the recent graduate requirement manifested differently across positions, meaning an applicant could meet the requirement for some but not others. In fact, Plaintiffs' definition of the Proposed Collective includes applicants aged 40 or older who *meet* a recent graduate requirement—perhaps because they changed careers or attended school after military service. *See* Br. 17. To the extent those individuals were denied, it would have been on criteria other than the recent graduate requirement. *But see Babb v. Wilkie*, 589 U.S. 399, 405–06 (2020) (intentional discrimination requires "but-for" causation). At stage two, the Court would need to review every opt-in plaintiff's unique qualifications and demographics against the job posting to which they applied (or were deterred from applying). Effectively, the Court would be making mini-screening decisions across potentially "tens of thousands" of opt-in plaintiffs.

Plaintiffs' Count I ADEA advertising claim would likewise be hopelessly individualized. To adjudicate that claim, the Court must assess whether job postings indicate "any preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e). Because job posting language varies, the Court could only complete this task for potentially "tens of thousands" of collective members by reviewing postings individually, job by job and line by line. That is an

13

untenable way for a collective action to proceed.

Plaintiffs' Count III ADEA disparate impact claim fares no better. As an initial matter, that claim should be dismissed. *See* D.I. 83 at 16. Regardless, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, [Plaintiffs are] 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis original). Since Plaintiffs have not shown a single central policy, *supra* Section III.A, all the Court can review are tens of thousands of individualized hiring decisions—which Defendants would show were "based on reasonable factors other than age." *Id.* There is no practicable way to aggregate that analysis.

As courts have routinely recognized, if "proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Villanueva-Bazaldua*, 479 F. Supp. 2d at 416 (denying FLSA conditional certification). The "individualized or fact intensive analysis" necessary to gauge opt-in claims here "will not provide for 'the economy of scale envisioned by the [ADEA] collective action procedure.'" *Bramble*, 2011 WL 1389510, at *6. Since applicant qualifications cannot be generalized across the Proposed Collective, and "would need to be determined on . . . an employee-by-employee basis," Plaintiffs cannot show they are similarly situated to that broad group. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000). "[L]itigating this case as a collective action would be anything but efficient," making "collective treatment improper." *Id.*

## IV.    The Proposed Collective Is Facially Overbroad.

Plaintiffs' motion should also be denied because the Proposed Collective is facially overbroad. Plaintiffs fail to offer any method of identifying "deterred" applicants, and their collective would include members with unexhausted claims against the non-RTX Defendants.

14

**A.  Deterred Applicants Cannot Be Included In The Proposed Collective.**

Plaintiffs propose to define "deterred" applicants "as only those individuals who demonstrated a genuine interest in applying for Recent Graduate Positions, including those who created a profile on RTX's Careers Website, which Plaintiffs understand to be a prerequisite to applying for positions with all Defendants." Br. 17 n.12. To the extent that deterred applicants exist, Plaintiffs' proposed proxy will not identify them. There are many reasons a jobseeker might create an RTX Careers profile but not apply for a position: perhaps they did not find a job of interest, did not meet the skill qualifications, or terminated their job search because they found a position at another company. Conversely, a "deterred" applicant would not necessarily create an RTX Careers profile, as it is possible to browse job listings on the RTX website without logging in. Schulz Decl. ¶ 15; *see* RTX, "Careers that make a difference," https://careers.rtx.com/ global/en/search-results (accessed Apr. 4, 2025). Thus, as a proxy, RTX Careers profiles are over- and under-inclusive of the (alleged) deterred applicant group.

Nor do Defendants possess the information necessary to cull Plaintiffs' inaccurate proxy for "deterred" applicants to the subset that might fit within the Proposed Collective. To start, Defendants have no reliable way to determine which individuals who created RTX Careers profiles viewed, but did not apply to, recent graduate positions during the relevant time period. Schulz Decl. ¶¶ 16, 17. Even if Defendants could identify these individuals, Defendants still could not determine whether they "met the basic qualifications" for the positions they viewed and were "aged 40 or older at the time they . . . were deterred from applying." Br. 17. Defendants do not know qualifications until a jobseeker applies, and they do not collect age data until a candidate is hired and onboarded. Schulz Decl. ¶¶ 18, 19. Because allegedly "deterred" applicants never get this far, Defendants have no way to identify them. *Cf. Rabin*, 2018 WL 3585143, at *6 n.10 (noting

15

potential "ascertainability challenges" in identifying "deterred applicants").

Courts have long recognized that a shotgun approach to collective action notice is unwise. "This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery." *Smith v. Sovereign Bancorp, Inc.*, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003). The very purpose of the "factual showing requirement" is "to narrow the potential class . . . to just those [individuals] who can possibly claim" to have been affected by "the same policy as allegedly affected Plaintiffs." *Id.* at *3; *accord Symczyk*, 656 F.3d at 193. Plaintiffs have not offered any viable way of so narrowing the deterred applicant group.

Even if deterred applicants could somehow be ascertained, it would be inappropriate to include them in the Proposed Collective alongside rejected applicants. "[T]he breadth of the proposed collective runs counter to Plaintiffs' position that the members of the proposed collective are similarly situated." *Wilhoit*, 2024 WL 2843169, at *8 (quoting R&R). As Plaintiffs' own precedent explains, rejected applicants "are not similarly situated to potential class members who were deterred from applying, because they *did* apply." *Rabin*, 2018 WL 3585143, at *6 (emphasis original). Plaintiffs' attempt to distinguish *Rabin* fails to address the dissimilarity between deterred applicants and individuals, like Plaintiffs, who "*did* apply." *Id.*[4] While two out of the three Plaintiffs allege that they too were deterred from applying to other positions *after* their

---

[4] Plaintiffs' citation to *Nelson* is not contrary. The court, in ruling on Rule 23 class certification, found that "inclusion of deterred and thwarted applicants seems most appropriate in the context of *word-of-mouth practices*, since the nature of word-of-mouth recruiting is to prevent members of a protected class from *even knowing about* employment opportunities." *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 366 (E.D. Ark. 2007) (emphasis added). Here, Defendants did not engage in "word-of-mouth recruiting"; the positions were accessible to all on the RTX website.

16

unsuccessful applications,[5] they lack standing to pursue such claims, as they have failed to identify a *single* position they would have pursued but did not because of the recent graduate requirement. *See* Goldstein Decl. ¶ 34; Beaulieu Decl. ¶ 14; D.I. 101 at 2. Moreover, Plaintiffs' declarations suggest their "discourage[ment]" was due to their previous rejected applications, rather than the language of (unspecified) other postings. Goldstein Decl. ¶ 34 ("I was thereafter discouraged"); Beaulieu Decl. ¶ 14 (same). These flimsy allegations are insufficient to counteract Plaintiffs' allegations that they applied—repeatedly—to recent graduate positions, and they certainly cannot justify sending notice to an unknown number of purportedly deterred applicants.

### B. Applicants To The Non-RTX Defendants Cannot Be Included.

Another facial deficiency in Plaintiffs' Proposed Collective is its inclusion of the non-RTX Defendants. As Defendants detail in their motion to dismiss, Plaintiffs failed to administratively exhaust their claims against ARINC Inc., Collins Aerospace, Pratt & Whitney, Raytheon Company, and Rockwell Collins, Inc. D.I. 83 at 8.[6] Goldstein did not reference the non-RTX Defendants in his August 7, 2019 EEOC charge (from which he is calculating the "Relevant Time Period"), and his tolling agreement was entered into only with RTX. *Id.* at 9. Accordingly, if notice were issued based on Plaintiffs' definition of the Proposed Collective, it would solicit *years* of putative claims against the non-RTX Defendants which have not been administratively exhausted. *But see* 29 U.S.C. § 626(d)(1)(B) (EEOC charge must be filed within, at most, 300 days of the alleged unlawful practice); *Patnaude v. Gonzales*, 478 F. Supp. 2d 643, 648 (D. Del. 2007) (ADEA plaintiffs "must first exhaust administrative remedies before filing suit in federal court").

Where a proposed collective action would encompass individuals without colorable claims,

---

[5]  Bryan's declaration does not claim that he was deterred from applying to any positions.

[6]  As Defendants further explain, Pratt & Whitney and Rockwell Collins, Inc. are trade names, not legal entities capable of being sued. *Id.* at 8 n.5.

courts do not hesitate to exclude them from conditional certification. *See, e.g.*, *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 81–82 (D.N.J. 2014) (signers of mandatory arbitration agreements were not "similarly situated" to plaintiffs who did not sign such agreements); *Copley v. Evolution Well Servs. Operating, LLC*, 2022 WL 295848, at *6 (W.D. Pa. Jan. 31, 2022) ("limit[ing] the proposed collective" to remove time-barred claims). These sensible limitations comport with the Supreme Court's instruction in *Hoffmann-La Roche* that district courts may "facilitat[e] notice" only "to potential plaintiffs." 493 U.S. at 169. Because there are no administratively exhausted claims to assert against the non-RTX Defendants, these entities must be excluded.

## V. In The Alternative, The Court Should Reject Plaintiffs' Unbalanced Notice Plan And Request For Unavailable Data.

If the Court finds conditional certification is warranted, Plaintiffs' notice plan is improper—not to mention impracticable given (a) the difficulties in determining who should receive notice, and (b) that Defendants do not have the data requested. *See supra* at 15. "District courts have the discretion to decide whether and how such notices should be implemented." *Moore v. Consol Pa. Coal Co.*, 2024 WL 1251418, at *6 (W.D. Pa. Mar. 22, 2024). The Court should ensure notice is "timely, accurate, and informative," and does not stray into "solicitation of claims." *Hoffman-La Roche*, 493 U.S. at 172, 174. Plaintiffs' notice plan fails that mark.

*First*, Plaintiffs' volume of notice is excessive, redundant, and intrusive. Plaintiffs seek to contact recipients up to eight times across various media: mail, text, email, and social media, doubled by reminder notice. *See* Br. 17–19. Courts deny duplicative notice where primary avenues are not shown to be deficient. *See, e.g.*, *Steinberg v. TD Bank, N.A.*, 2012 WL 2500331, at *10 (D.N.J. June 27, 2012) (limiting notice to mail, as "allowing all of Plaintiffs' requests . . . would be excessive and unfairly prejudicial"); *Russo v. Gov't Emps. Ins. Co.*, 2022 WL 3098107, at *5 (D.N.J. Aug. 3, 2022) (similar). Defendants are amenable to notice by mail and email, to the extent

they have that contact information. Notice by text message should be denied, as Plaintiffs have "not made any showing . . . that traditional notice . . . would be insufficient." *Magee v. Francesca's Holdings Corp.*, 2018 WL 10602187, at *5 (D.N.J. Nov. 6, 2018).[7] Further, Defendants do not have cell phone numbers for "deterred" candidates, and even for those candidates who applied, the phone number provided can be either a cell phone or land line. Schulz Decl. ¶ 18.

*Second*, Defendants lack the data to facilitate notice by social media and "skip tracing" by Social Security number. *See* Br. 18, 20. Setting aside the weighty privacy concerns, that data is not available for members of the Proposed Collective. Defendants do not collect social media information from applicants (much less deterred applicants). Schulz Decl. ¶ 21. And Defendants only collect Social Security numbers as part of the new hire onboarding process. *Id.* ¶ 20. Additionally, Defendants do not possess age information for rejected applicants or individuals who create a profile on the RTX Careers site and never apply for a job. *Id.* ¶ 19.

*Third*, the notice text (D.I. 94-1, Ex. 12) is unbalanced and not "scrupulous to respect judicial neutrality." *Hoffman-La Roche*, 493 U.S. at 174. To name a few shortcomings:

- The long-form notice does not state that, by joining the collective action, members may be required to appear for deposition, testify in court, or potentially share in liability for payment of costs if RTX prevails in the suit.[8]

- The notice does not advise recipients they may contact counsel of their own choice.[9]

- The notice states that if recipients do not opt in, they will "give up the possibility of a

---

[7]    *See also Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (text notice duplicative); *Stansbury v. Barrick Enters.*, 2024 WL 1333367, at *9 (M.D. Pa. Mar. 28, 2024) (similar); *Anderson v. Minacs Grp. (USA) Inc.*, 2017 WL 1856276, *9 (E.D. Mich. May 9, 2017) (text notice can be "harassing"); *Miller v. JAH, LLC*, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) (text notice can cause some individuals "to incur monetary charges").

[8]    *See Joyce v. Colter Energy Servs. USA, Inc.*, 2024 WL 2794278, at *6–7 (W.D. Pa. May 31, 2024) (ordering language about the possibility of paying costs, and to "advise opt-in members that they may be required to give a deposition, respond to written discovery, or testify in court").

[9]    *See id.* at *7 ("[T]he notice should state that joining members may retain their own counsel.").

19

monetary recovery that may come from a trial or settlement if those bringing the lawsuit are successful." This is inaccurate, given that the lawsuit includes parallel class action claims (not presently at issue) which, if certified, would bind all who do not opt out.

- The short-form notices are even less complete. The reminder omits that no action is required of the recipient; and the text message omits any reference to "age," RTX's denial of the claims, and that no decision has been reached on RTX's liability.

Should the Court authorize the sending of notice via mail and email, Defendants propose the redline edits to the forms attached as Exhibits 2 & 3 to the Declaration of Naima Farrell.[10]

*Fourth*, the scope and schedule for Plaintiffs' proposed data production is onerous and unreasonable. Plaintiffs would give Defendants just 14 days from the Court's order to produce contact information on "tens of thousands" of potential opt-in claimants spanning multiple corporate entities for a period of six and a half years. Br. 20 (stating deadline); FAC ¶ 41 (estimating collective action size). Since Defendants do not maintain age data for denied applicants (much less for "deterred" applicants), even estimating which applicants are "potential Collective members" would be a monumental task. Br. 20; Schulz Decl. ¶ 19. Defendants request a minimum of 45 days to complete the data production. Further, any data production order should be limited to data Defendants possess. Defendants do not maintain "social media account information" or "Social Security numbers," and cannot guarantee the completeness of other data fields for all denied or purportedly deterred applicants. Br. 20; Schulz Decl. ¶¶ 20, 21.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Court-Authorized Notice.

---

[10] Further changes to the notice may be necessary based on the Court's ruling on Defendants' pending motion to dismiss. Alternatively, Defendants request that the Court direct the parties to meet and confer regarding the content of the notice. *See, e.g.*, *Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 5936418, at *8 (W.D. Pa. Nov. 5, 2013).

                                                        Respectfully submitted,

OF COUNSEL:

                                                        */s/ Brian M. Rostocki*
Jason C. Schwartz*                                      Brian M. Rostocki (Bar No. 4599)
Naima L. Farrell*                                       John T. Miraglia (Bar No. 6682)
Alex Bruhn*                                             REED SMITH LLP
Samuel Z. Whipple*                                      1201 N. Market Street, Suite 1500
GIBSON, DUNN & CRUTCHER LLP                             Wilmington, DE 19801
1700 M Street N.W.                                      (302) 778-7500
Washington, D.C. 20036                                  brostocki@reedsmith.com
(202) 955-8500                                          jmiraglia@reedsmith.com
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com                                   *Attorneys for Defendants*
swhipple@gibsondunn.com

* *Admitted Pro Hac Vice*

Date: April 4, 2025