# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC., <br><br> Defendants. | C.A. No. 24-1169-JLH-SRF |

**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(B)**

Kimberly A. Evans (#5888)
**BLOCK & LEVITON LLP**
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600
kim@blockleviton.com

*Counsel for Plaintiffs and the Proposed Class and Collective*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................1

LEGAL STANDARD......................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.   PLAINTIFFS' EVIDENCE OF DISCRIMINATORY JOB ADS SATISFIES THE § 216(B) FIRST-STEP STANDARD BECAUSE IT SHOWS A COMMON FACTUAL NEXUS AFFECTING THE COLLECTIVE............................................................................................................2

II.  PLAINTIFFS' EVIDENCE OF DEFENDANTS' COMMON, CENTRALIZED HIRING POLICIES FURTHER SUPPORTS CERTIFICATION AND EXCEEDS THE SHOWING IN PRIOR SIMILAR CASES................................................................................................................3

III. PLAINTIFFS ARE SIMILARLY SITUATED TO PROPOSED COLLECTIVE MEMBERS. ..........................................................................................4

   A.  Defendants' "Similarly Situated" Arguments Are Premature and/or an Improper Attempt to Apply the Heightened Rule 23 Class Action Standard. ........................................................................................5

   B.  Any "Individualized Review" of Opt-Ins' Claims is Better Suited for the Second-Step Inquiry. ....................................................................7

IV.  PLAINTIFFS' PROPOSED NOTICE IS REASONABLE AND CAN REACH DETERRED APPLICANTS............................................................................9

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Black v. P.F. Chang's China Bistro, Inc.*,
   2017 WL 2080408 (N.D. Ill. May 15, 2017) ........................................................................ 4

*Bramble v. Wal-Mart Stores, Inc.*,
   2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ........................................................................ 6

*Burrell v. Lackawanna Recycling Ctr., Inc.*,
   No. 14 Civ. 1891, 2024 U.S. Dist. LEXIS 81788 (M.D. Pa. May 6, 2024) ......................... 1

*Byrd v. Aaron's Inc.*,
   784 F.3d 154 (3d Cir. 2015) .................................................................................................. 5

*Charles v. Progressions Behavioral Health Servs., Inc.*,
   No. 17 Civ. 2439, 2018 U.S. Dist. LEXIS 173846 (E.D. Pa. Oct. 9, 2018) ....................... 10

*Donofrio v. IKEA US Retail LLC*,
   2019 U.S. Dist. LEXIS 230218 (E.D. Pa. May 15, 2019) ..................................................... 5

*Halle v. W. Penn. Allegheny Health Sys.*,
   842 F.3d 215 (3d Cir. 2016) .................................................................................................. 5

*Heath v. Google*,
   215 F. Supp. 3d 844 (N.D. Cal. 2016) ............................................................................ 4, 7-7

*Joyce v. Colter Energy Servs.*,
   2024 U.S. Dist. LEXIS 96854 (W.D. Pa. May 31, 2024) ................................................... 10

*Kaiser v. Daiichi Sankyo*,
   No. 12-cv-02414, 2012 U.S. Dist. LEXIS 205472 (D.N.J. Apr. 27, 2012) ........................... 9

*Kaynaroglu v. Avis Budget Grp.*,
   No. 24 Civ. 06828 2025 U.S. Dist. 57769 (D.N.J. Mar. 27, 2025) ................................ 1, 10

*Matthews v. Phila. Corp. for Aging*,
   No. 22 Civ. 4632, 2023 U.S. Dist. LEXIS 98894 (E.D. Pa. June 7, 2023) ........................... 1

*Mueller v. CBS Inc.*,
   201 F.R.D. 425 (W.D. Pa. 2001) .......................................................................................... 5

*Nelson v. Wal-Mart Stores, Inc.*,
   245 F.R.D. 358 (E.D. Ark. 2007) .......................................................................................... 6

*Rabin v. PricewaterhouseCoopers LLP*,
   No. 16-cv-02276, 2018 U.S. Dist. LEXIS 125438 (N.D. Cal. July 26, 2018) .................. 3, 4

*Rabin v. PricewaterhouseCoopers LLP*,
    No. 16-cv-02276, 2019 U.S. Dist. LEXIS 59419 (N.D. Cal. Mar. 28, 2019) ........................ 9

*Symczyk v. Genesis HealthCare Corp.*,
    656 F.3d 189 (3d Cir. 2011)................................................................................................. 1

*Thomas v. Teksystems, Inc.*,
    2025 U.S. Dist. LEXIS 43003 (W.D. Pa. Mar. 10, 2025) ..................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................................................. 7

*Wilhoit v. AstraZeneca Pharms.*,
    2024 WL 2843169 (D. Del. June 5, 2024)......................................................................... 1-2

## **STATUTES**

29 U.S.C. § 623(e) ....................................................................................................................... 8

## **FEDERAL RULES**

Fed. R. Civ. P. 23(a)(3).................................................................................................................. 5

## **OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 21.222 ........................................................................ 6

Mobile Marketing Association (Apr. 27, 2021), https://www.mmaglobal.com/articles/how-sms-can-power-your-multichannel-marketing-strategy-0 ................................................... 10

## INTRODUCTION

In their Motion, Plaintiffs have identified centrally-developed job ads that facially discriminate against older job applicants in the same way, and a common policy that prevents them from ever being considered for Recent Graduate Positions, despite their actual qualifications for the jobs. Plaintiffs' evidence easily meets the Third Circuit's "lenient" standard for conditional certification that requires only a "modest" showing of a "factual nexus" between the manner in which Defendants' policies impacted them and the proposed collective members. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011). Defendants' arguments consist of little more than complaints about the conditional certification standard and rehashed merits disputes. Plaintiffs' Motion should be granted.

## LEGAL STANDARD

The first step of the applicable two step standard is "lenient" because the "sole consequence of conditional certification is the dissemination of court-approved notice to potential collective action members." *Matthews v. Phila. Corp. for Aging*, No. 22 Civ. 4632, 2023 U.S. Dist. LEXIS 98894, at *5 (E.D. Pa. June 7, 2023). The Third Circuit "has unequivocally endorsed" this two-step approach, *Burrell v. Lackawanna Recycling Ctr., Inc.*, No. 14 Civ. 1891, 2024 U.S. Dist. LEXIS 81788, at *15 (M.D. Pa. May 6, 2024), and district courts in this Circuit have consistently rejected attempts to import the Fifth and Sixth Circuits' heightened one-step standard.[1] Nor has the Third Circuit ever endorsed a "heightened standard" where plaintiffs seek a nationwide collective based on nationwide policies.[2]

---

[1] Defendants acknowledge that the "two-step approach of *Symczyk* and its progeny" remains "the law of this Circuit." Opp. at 6; *see also Kaynaroglu v. Avis Budget Grp.*, No. 24 Civ. 06828, 2025 U.S. Dist. 57769, at *33 (D.N.J. Mar. 27, 2025) (rejecting policy arguments that the Court should apply a heightened standard despite binding two-step precedent in this Circuit).

[2] This Court's analysis in *Wilhoit v. AstraZeneca Pharms.*, 2024 WL 2843169 (D. Del. June 5,

1

## ARGUMENT

**I.    Plaintiffs' Evidence of Discriminatory Job Ads Satisfies the § 216(b) First-Step Standard Because It Shows a Common Factual Nexus Affecting the Collective.**

All Defendants use similar job ads and hiring criteria for "Recent Graduate Positions" that either facially discriminate against and/or categorically eliminate almost all older job applicants from consideration, readily supporting the "factual nexus" needed to certify a collective action. The ads for Recent Graduate Positions that violated the proposed collective's rights are clearly defined and easily delineated because they contain at least one of two limitations, requiring eligible candidates to be: (a) recent graduates (e.g., using facially discriminatory terms like "New Grad"), including those who graduated within the prior two years; or (b) those with college degrees who had less than two years' prior work experience. Pls' Mot. at 1, 17; FAC ¶¶ 4, 188.

While the precise wording has varied slightly over time, the effect of the language and policy has been the same, and, in all instances, has served to exclude the vast majority of older workers from certain jobs, in clear violation of the ADEA's publication, disparate treatment, and disparate impact provisions. Pls' MTD Opp. at 9-13. Despite Defendants' attempts to manufacture meaningful differences among the handful of example ads Plaintiffs provided, each ad meets Plaintiffs' collective definition, showing a common policy. Opp. at 8-9. For example, Defendants argue that candidates can qualify for the Associate Systems Engineer position by having, "*[i]n the absence of a degree*, 6 years of relevant experience." *Id.* at 8. But Defendants ignore that Plaintiffs' proposed collective is limited to *college graduates* (Pls' Mot. at 1, 17;

---

2024) (adopting R&R), is not to the contrary. *Wilhoit* noted that additional scrutiny may apply to an unworkably broad national collective, but also applied the prevailing "lenient" standard in rejecting a proposed collective of all older employees who suffered any type of adverse action (termination, reduction in force, or promotion denial) without evidence of a common policy.

2

FAC ¶¶ 4, 188) and minimize that this ad expressly excludes college graduates with "less than 2 years" of experience.  Ex. 8 at 3.

## II.     Plaintiffs' Evidence of Defendants' Common, Centralized Hiring Policies Further Supports Certification and Exceeds the Showing in Prior Similar Cases.

Beyond the ads themselves, Defendants admit to actually enforcing their discriminatory policies in the same manner for all applicants, no matter the specific position, manager, business unit or job advertisement at issue.  Opp. at 3 (admitting that to "be hired for certain entry-level positions, applicants must be 'recent graduates' of college or graduate school").  Indeed, in conjunction with the ads, the evidence of Defendants' centralized implementation of the underlying policy of limiting Recent Graduate Positions to exclude the vast majority of older job applicants provides much stronger grounds for initial conditional certification than in other cases, despite Defendants' contrary arguments.  Opp. at 9.

For instance, in *Rabin v. PwC*, the court specifically concluded that the applicant plaintiffs "adequately show[ed] a uniform decision, policy, or plan *on the basis of PwC's centralized and uniform hiring policies*" and other early evidence suggesting a common policy of discrimination, such as statistical evidence of age disparities and a hodgepodge of other facts (*e.g.*, an on-campus recruitment practices and anecdotes of bias).  No. 16-cv-02276, 2018 U.S. Dist. LEXIS 125438, at *14 (N.D. Cal. July 26, 2018)  (emphasis added).  Here, Defendants *admit* the central, uniform policy at issue – that they limit Recent Graduate Positions in a way that eliminates almost all older applicants from consideration. *See* Schulz Decl. ¶ 7; Opp. at 3 (admitting that applicants for the positions at issue "must be 'recent graduates'"); Schulz Decl. ¶ 7; ("Job applications are reviewed in the first instance" by RTX staff who "make an initial assessment of qualifications" and decide whether to "pass qualified applicants to the hiring

3

manager.").[3] Thus, unlike in other cases, Plaintiffs need not cobble together different pieces of evidence to show what has already been admitted.

As for Plaintiffs' purported lack of "statistical analysis," statistics are not required at this early stage, especially given the undisputed evidence of Defendants' exclusionary policies. In any event, Plaintiffs have credibly alleged the overwhelming majority of recent college graduates are under the age of 40, *see* FAC ¶¶ 84, 234 (over 90 percent of recent graduates are under 40), and Defendants' own statistical analysis appears to confirm that over 90 percent of its hires for Recent Graduate Positions in the relevant period have, in fact, been under 40. Opp. at 3; McKnight Decl. at ¶ 10. Even before Plaintiffs have an opportunity to test Defendants' statistical data, these disparities already align with the type of general disparities found to be sufficient for notice purposes in *Rabin* and *Heath*. *See Rabin*, 2018 U.S. Dist. LEXIS 125438, at *8; *Heath v. Google*, 215 F. Supp.3d 844, 856-59 (N.D. Cal. 2016).[4]

## III.     Plaintiffs Are Similarly Situated to Proposed Collective Members.

Defendants devote much of their opposition to arguing that Plaintiffs are not "similarly situated" to potential opt-ins because Plaintiffs are "atypical applicants," because "opt-in claims

---

[3] Defendants' assertion that "individual managers" select or assist in preparing the ad text for jobs they will ultimately supervise (Opp. at 3) is immaterial since the ads all use the same types of discriminatory language. Defendants' further assertion that RTX does not "screen applications with automated processes" (Schulz Decl. at ¶ 7) is also irrelevant because whether older workers are filtered by human or automated processes, the discriminatory result is the same. These allegations should also be tested in discovery, particularly given Plaintiffs' allegations that they received automated rejection emails, sometimes within minutes of submitting applications, and at what would be odd working hours, such as 5:04 a.m. FAC at ¶ 55; Ex. 2 at ¶ 10; Ex. 3 at ¶ 20.

[4] Defendants' passing reliance on *Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *10–11 (N.D. Ill. May 15, 2017), Opp. at 9, is inapposite. There, the court *granted* first-step certification for restaurant servers alleging wage and hour violations under the FLSA, but limited the collective to the two locations where the named plaintiffs worked as they could not adduce any evidence that their managers' actions were pursuant to any broader company policies.

4

would require individualized review," and because deterred applicants are not "ascertainable." Opp. at 10-17. These arguments are unfounded.

### A. Defendants' "Similarly Situated" Arguments Are Premature and/or an Improper Attempt to Apply the Heightened Rule 23 Class Action Standard.

At best, Defendants' arguments are premature, because it is not until the second step of the collective certification inquiry, "with the benefit of discovery" and actual knowledge of the opt-in population, that a court "makes a conclusive determination" as to whether each opt-in plaintiff "is in fact similarly situated to the named plaintiff." *Donofrio v. IKEA US Retail LLC*, 2019 U.S. Dist. LEXIS 230218, at *6 (E.D. Pa. May 15, 2019); *Halle v. W. Penn. Allegheny Health Sys.*, 842 F.3d 215, 225-26 (3d Cir. 2016) (same). Moreover, Defendants contradict their own protestations about Rule 23 being "inapt" (Opp. at n. 2), because their arguments over "typicality" and "ascertainability" have no support in the conditional certification case law,[5] and are clearly imported from the heightened Rule 23 class action standard. *See* Fed. R. Civ. P. 23(a)(3) (requiring the claims of the named plaintiffs to be "typical" of the class); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015) ("The source of, or basis for, the ascertainability requirement as to a Rule 23(b)(3) class is grounded in the nature of the class-action device itself."). Such arguments should be rejected for this reason alone.

Under the proper standard, all Plaintiffs are required to do here is to make a "modest factual showing – something beyond mere speculation" that they were "affected" in the same way as proposed collective members. *Halle*, 842 F.3d at 224. As described above, Plaintiffs easily surpass this burden because Defendants' ads plainly "affect" Plaintiffs and collective

---

[5] Indeed, district court ADEA cases within the Third Circuit don't even mention the words "typicality" or "ascertainability" nor address those concepts. *See, e.g.*, *Donofrio*, 2019 U.S. Dist. LEXIS 230218; *Mueller v. CBS Inc.*, 201 F.R.D. 425 (W.D. Pa. 2001).

5

members in the same exact way – by subjecting them to discriminatory language and eligibility requirements that categorically block them from consideration for Recent Graduate Positions.[6] Defendants argue that deterred applicants in Plaintiffs' proposed collective are not "ascertainable," but this argument appears to consist largely of practical concerns that can be addressed by the parties in the notice and opt-in process, and fails to engage with the uniquely strong facts supporting the inclusion of deterred job applicants in this case. For example, Defendants argue that they do not collect or maintain fulsome contact information for the individuals Plaintiffs have identified as potential deterred job applicants – individuals who created a profile to apply for a position on Defendants' Careers website, but ultimately did not submit an application. Opp. at 15-16. Further meet and confer efforts and discovery will bear out what data Defendants maintain and how it can best be used to facilitate notice, and, as noted below, Defendants fail to address Plaintiffs' proposal for *publication* notice, which could reach deterred applicants. If notice is "under-inclusive," that is not a reason to deny notice and is a common issue in other types of complex litigation. *See* Manual for Complex Litigation (Fourth) § 21.222. ("There is no need to identify every individual member at the time of certification"). Defendants also complain that notice is "over-inclusive," but they can address any opt-ins whom they believe should be excluded from the collective at step two.

Finally, Defendants fail to meaningfully engage with the fact that their ads amount to a clear "sign . . . on the hiring-door office" ensuring that interested, facially qualified older job applicants are discouraged from applying, *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 366

---

[6] The sole case Defendants could muster in support of their "typicality" argument, *Bramble v. Wal-Mart Stores, Inc.*, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) simply found that the named plaintiffs failed to provide "even modest evidence beyond their own speculation" that their job duties were similar to those of Walmart workers employed in other stores. *Id.* at * 6.

(E.D. Ark. 2007). These are unique facts not present in *Rabin*. And Defendants' repetitive argument that Plaintiffs do not have "standing" (Opp. at 17) to represent deterred job applicants is misplaced. Plaintiffs, like other deterred applicants, have similarly been deterred from submitting additional applications because of Defendants' policies and practices.

      **B.    Any "Individualized Review" of Opt-Ins' Claims is Better Suited for the Second-Step Inquiry.**

Defendants also argue that "individualized evidence would *overwhelm* any similarities across the proposed Collective." Opp. at 12 (emphasis added). Once again, this is a thinly-veiled attempt at importing a heightened requirement from Rule 23 (predominance) that has no application under the first-step conditional certification standard. *See, e.g.*, *Thomas v. Teksystems, Inc.*, 2025 U.S. Dist. LEXIS 43003, at *31, 33 n.4 & 63 (W.D. Pa. Mar. 10, 2025) (granting final second-step collective certification to nationwide FLSA collective because "individual [] determinations" did not defeat "showing that Plaintiffs and members of the collective [were] similarly situated" and, separately, granting more "stringent" Rule 23 class certification of state claims because "[c]ommon questions of law and fact *overwhelm* any purported individualized defenses and inquiries) (emphasis added).[7]

Defendants' reliance on *Heath* and its discussion of relative "qualifications" among the proposed collective members does not compel a different result. In *Heath*, the court granted first-step ADEA conditional certification for a proposed collective of interviewees over Google's nearly identical argument that "individualized inquiries into the qualifications and situation of each member of the collective" rendered certification inappropriate. 215 F. Supp. 3d at 854-55.

---

[7] In any event, Plaintiffs continue to assert that they are well-situated for eventual class certification of their state law claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (an employer's stated policy of particular eligibility requirements for "every applicant . . . clearly would satisfy the commonality" and other elements for class certification).

The court explained that argument "would be more appropriately addressed in a motion to decertify, if any." *Id.* at 855. The court separately denied a motion for joinder by a different plaintiff for a broader collective of *all* applicants that made no attempt to establish collective members' basic qualifications. *Id.* at 857 (explaining that the second collective could include "a lawyer applying for a software engineer position").

Here, as previously explained, relative qualifications have no bearing on the merits of the Plaintiffs' and opt-ins' publication claims under 29 U.S.C. § 623(e), because whether a job applicant or potential applicant is qualified does not constitute an element of the claim. Instead, § 623(e) claims rise and fall on whether an employer has "printed or published" ads that use language indicating a discriminatory preference, like "college student, recent college graduate" or "others of a similar nature." Ex. 10 (EEOC Final Determination) (citing 29 U.S.C. § 623(e) & EEOC Enforcement Guidance). Defendants provide no response to this argument.[8]

With regard to Plaintiffs' intentional discrimination claim, Defendants significantly undercut their qualifications argument by conceding that these positions are specifically "geared toward *inexperienced* job applicants" who "can be trained from scratch on Defendants' preferred business practices[.]" Defs' Mot. to Dismiss at 1, 15. Indeed, job ads for the Recent Graduate Positions confirm that the only "Basic Qualifications" are things like a "Bachelor's degree and 12 months or less or relevant professional work experience[.]" *See, e.g.*, Ex. 8 at 1 & 13 ("Basic Qualifications" for Procurement Analyst). In fact, Defendants likely never even "considered"

---

[8] Separately, Defendants argue that Plaintiffs' publication claim would be "hopelessly individualized" because the Court would be required to review job posting language for "tens of thousands" of opt-ins, "job by job, line by line." Opp. at 13-14. Not so. Plaintiffs never estimated that "tens of thousands" of opt-ins will join the case. Given the data here, the actual opt-ins will likely be a fraction of that number. Further, the relevant job ads can be culled by the parties in the notice and opt-in process, and any remaining disputes can be addressed at the second step.

8

whether Plaintiffs and other older job applicants "met the minimum qualifications required for the jobs" because they were screened out at the initial stage of the hiring process based on Defendants' proxy criteria for age. Ex. 10 (EEOC Final Determination) at 1.

Finally, even if Defendants actually took particular qualifications into account when screening applicants, Plaintiffs' limitation of their proposed collective to only those who "met the basic qualifications" suffices to render the collective similarly situated for purposes of first-step conditional certification. *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276, 2018 U.S. Dist. LEXIS 125438, at *14 (N.D. Cal. July 26, 2018) (rejecting defendant's argument that ADEA applicant collective could not be certified because the "basic qualifications var[ied] from position to position" and approving notice process for opt-ins to affirm their basic qualifications). Additionally, as in *Rabin*, "[s]hould it become clear that Plaintiffs' proposed definition is indeed unworkable," the "two-step collective certification process provides a ready solution: [Defendants] may move to decertify" the collective at step two.[9] *Id.* at *14.

**IV.     Plaintiffs' Proposed Notice Is Reasonable and Can Reach Deterred Applicants.**

Plaintiffs and Defendants are both "amenable" to mail and email notice, but Defendants disagree with text message and social media notice. Opp. at 18. However, the Court should grant those forms of notice as well in order to effectuate the "main purpose" of the "first step of conditional certification" which "is to provide notice" to as many affected persons as possible to "allow them the opportunity to opt-in to the action." *Kaiser v. Daiichi Sankyo*, No. 12-cv-02414, 2012 U.S. Dist. LEXIS 205472, at *5 (D.N.J. Apr. 27, 2012).

---

[9] Again, Plaintiffs can confer with Defendants to review "applicant data and internal guidance regarding minimum qualifications to develop a notice list, excluding those who facially lack the minimum qualifications for the relevant positions." *Rabin v. PwC*, No. 16-cv-02276, 2019 U.S. Dist. LEXIS 59419, at *12 (N.D. Cal. Mar. 28, 2019).

9

Defendants argue that text notice is "duplicative," but courts in this Circuit – and recent studies – have increasingly recognized that notice via text message supplements email notice, given the overwhelming number of emails people receive in modern day life. *Kaynaroglu*, 2025 U.S. Dist. LEXIS 57769, at *53 (permitting notice via email and text); *see also* Mobile Marketing Association (Apr. 27, 2021), *https://www.mmaglobal.com/articles/how-sms-can-power-your-multichannel-marketing-strategy-0* (study showing only 20% of business emails are opened by recipients, as compared to 98% of business text messages).

Defendants argue that social media notice is improper, but only apparently because they do not collect social media information from applicants. Opp. at 19. That argument does not directly address, and indeed supports, Plaintiffs' proposal for *publication* notice via social media to contact individuals, including deterred applicants, for whom Defendants do not maintain contact information. Courts increasingly authorize notice via social media, including through publication notice. *See* Pls' Mot. at 18 (citing cases).

Moreover, the Court should adopt Plaintiff's proposed notice text, which is based on the Federal Judicial Center template. Defendants propose additional text warning that opt-ins may "share in liability for payment of costs if RTX prevails in the suit," Opp. at 19, but there is no support for this type of chilling language, and even Defendants' sole authority omits it. *See Joyce v. Colter Energy Servs.*, 2024 U.S. Dist. LEXIS 96854, at *18-19 (W.D. Pa. May 31, 2024) (approving only limited language on Defendants' ability to request costs (not fees) but that Plaintiffs' lawyers agreed to cover costs in the event they were awarded); *see also, e.g.*, *Charles v. Progressions Behavioral Health Servs., Inc.*, No. 17 Civ. 2439, 2018 U.S. Dist. LEXIS 173846, at *17 (E.D. Pa. Oct. 9, 2018) (rejecting language about costs in notice because it is "is unnecessarily intimidating and may chill otherwise valid participation in the collective").

Dated: April 18, 2025

*Of Counsel:*

Adam T. Klein\*
Chauniqua Young\*
Zarka Dsouza\*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000
Fax: (646) 509-2060
atk@outtengolden.com
cyoung@outtengolden.com
zdsouza@outtengolden.com

Moira Heiges-Goepfert\*
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
(415) 729-2430
Fax: (415) 638-8810
MHG@outtengolden.com

Mikael Rojas\*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Washington, DC 20005
(202) 914-0711
Fax: (202) 847-4410
mrojas@outtengolden.com

Peter Romer-Friedman (admitted *pro hac vice*)
Patrick David Lopez (admitted *pro hac vice*)
David Berman (admitted *pro hac vice*)
**PETER ROMER-FRIEDMAN LAW PLLC**
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364
peter@prf-law.com
david@prf-law.com

**BLOCK & LEVITON LLP**

/s/ Kimberly A. Evans
Kimberly A. Evans (#5888)
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600
kim@blockleviton.com

*Counsel for Plaintiffs and the Proposed Class and Collective*

11

Rebecca Rodgers (admitted *pro hac vice*)
Louis Lopez (admitted *pro hac vice*)
Samantha Wehrle (admitted *pro hac vice*)
Lauren Naylor (admitted *pro hac vice*)
**AARP FOUNDATION LITIGATION**
601 E Street NW
Washington, DC 20049
(202) 434-6983
rrodgers@aarp.org
llopez@aarp.org
sgerleman@aarp.org
lnaylor@aarp.org

*Admitted *Pro Hac Vice*