## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 24-1169-JLH-SRF |

## REPORT AND RECOMMENDATION

Presently before the court in this putative collective and class action for violations of the

Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Massachusetts

Fair Employment Practices Act ("MFEPA"), the Virginia Human Rights Act ("VHRA"), and the

California Fair Employment and Housing Act ("FEHA") are the following motions: (1) the

motion of defendants RTX Corporation ("RTX") and Raytheon Company, ARINC Inc., Pratt &

Whitney, Collins Aerospace, and Rockwell Collins, Inc. (the "non-RTX Defendants;"

collectively with RTX, "Defendants")[1] to dismiss the first amended complaint ("FAC") for lack

---

[1] In a footnote devoid of citations to authority, Defendants contend that "Collins Aerospace" and "Pratt & Whitney" are fictitious trade names, and they are not legal entities. (D.I. 83 at 8 n.5; D.I. 68 at ¶ 43 n.6) Plaintiffs identify Collins Aerospace and Pratt & Whitney as RTX subsidiaries. (D.I. 96 at 1 n.1) The court "need not address arguments raised entirely in footnotes." *Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 268 n.11 (D. Del.

of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively, (D.I. 82);[2] and (2) the motion for court-authorized notice pursuant to 29 U.S.C. § 216(b), filed by plaintiffs Mark Goldstein, Ducamp Beaulieu, John Bryan, and all others similarly situated (collectively, "Plaintiffs"), (D.I. 92).[3] For the following reasons, I recommend that the court GRANT-IN-PART Defendants' motion to dismiss and GRANT-IN-PART Plaintiffs' motion for court-authorized notice.

## I.    BACKGROUND

Plaintiffs are more than sixty years old, and each unsuccessfully applied for positions with Defendants that expressed a requirement or preference for recent college graduates with less than one or two years of work experience. (D.I. 68 at ¶¶ 8-9, 13, 68) Below is a chart outlining the facts relevant to each Plaintiff, as alleged in the FAC:

|  | Goldstein | Beaulieu | Bryan |
|---|---|---|---|
| Age | 67 | 62 | 63 |
| Year of Degree(s) | Bachelor's – 1978 Master's - 1980 | Bachelor's – 2013 | Bachelor's – 1996 Master's - 2006 |
| Degree(s) Earned | Economics & business admin. | Engineering technology | Economics & electrical engineering |
| Prior work experience | 40 years in project management, cybersecurity, tech., risk management, engineering, sales, marketing, business, and consulting | Math, physics, programming languages, and software engineering | Coding languages, information technology services |
| Applications made | 8 Recent Graduate Positions on 5/6/2019, 5/15/2019, | 2 Recent Graduate Positions in 9/2021 | 3 Recent Graduate Positions on 11/13/2021, |

2019).  Therefore, this Report and Recommendation applies to all Defendants identified in the case caption.
[2] The briefing and related filings associated with the pending motion to dismiss are found at D.I. 83, D.I. 84, D.I. 96, D.I. 97, D.I. 101, and D.I. 125.
[3] The briefing and related filings associated with the pending motion for court-authorized notice are found at D.I. 93, D.I. 94, D.I. 108, D.I. 109, D.I. 110, D.I. 111, D.I. 112, D.I. 120, and D.I. 121.

| | 8/7/2019, 2/4/2021, 3/10/2022, 3/15/2023 | | 9/29/2022, and 8/12/2024 |
|---|---|---|---|
| **Admin. charge(s) filed** | 8/2019 - EEOC[4] charge<br>6/13/2023 – EEOC charge<br>7/11/2023 - VA OCR[5] charge | 8/29/2024 – EEOC and MCAD[6] charges | 9/27/2024 – EEOC and CRD[7] charges |
| **Right to sue letter received** | 4/9/2021 - EEOC<br>3/19/2024 – VA OCR | Charge withdrawn | 10/24/2024 - CRD |

(D.I. 68 at ¶¶ 22-24, 30-33, 35-37, 94-183)

Plaintiffs brought their administrative charges of discrimination against RTX. (*Id.* at ¶¶ 22-28) On June 25, 2021, Goldstein entered into a tolling agreement with RTX to toll the statute of limitations for age discrimination claims as of June 6, 2021 on behalf of Goldstein and "all other individuals nationwide who may have age discrimination claims against Raytheon under federal, state, or local laws related to the Company's employment policies or practices regarding new or recent graduates[.]" (*Id.* at ¶ 23; D.I. 97, Ex. 9) The tolling agreement remained in effect until June 6, 2024. (D.I. 68 at ¶ 25) Plaintiffs amended their administrative charges on or about November 13, 2024 to add the non-RTX Defendants. (*Id.* at ¶¶ 24, 27-28)

## II. DISCUSSION

### A. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

Constitutional standing "is properly tested under Rule 12(b)(1)" for lack of subject matter jurisdiction and "may be challenged facially or factually." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020). In this case, Defendants present a facial challenge

---

[4] "EEOC" refers to the Equal Employment Opportunity Commission. (D.I. 68 at ¶ 6)
[5] "VA OCR" refers to the Virginia Office of Civil Rights. (D.I. 68 at ¶ 31)
[6] "MCAD" refers to the Massachusetts Commission Against Discrimination. (D.I. 68 at ¶ 30)
[7] "CRD" refers to the California Civil Rights Department. (D.I. 68 at ¶ 33)

to standing. (D.I. 83 at 5) "A facial challenge argues that the plaintiff's factual allegations cannot meet the elements of standing." *Id.* (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). For a facial challenge, the court applies the same standard that governs a Rule 12(b)(6) motion for failure to state a claim, accepting the plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences allegations in favor of the plaintiff. *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024).

"To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018) (internal quotation marks and citations omitted). Here, Defendants contend that the FAC fails to allege an injury in fact sufficient to establish Plaintiffs' standing because the pleading contains no facts indicating that Plaintiffs had a genuine interest in the job openings for which they applied. (D.I. 83 at 6-8) According to Defendants, conclusory allegations that Plaintiffs were "genuinely interested in each of the positions" are insufficient to establish standing. (*Id.* at 6) Plaintiffs respond that Defendants improperly ask the court to draw negative inferences against them in contravention of the applicable legal standard. (D.I. 96 at 5)

I recommend that the court DENY Defendants' motion to dismiss the FAC for lack of standing under Rule 12(b)(1). The FAC alleges that each named Plaintiff

> suffered harm from Defendants' pattern or practice challenged in this action, including the denial of an opportunity to compete for positions on equal footing with younger applicants, the denial of employment, the loss of income, benefits, and career advancement, stigmatic harm from seeing advertisements that indicate a preference for younger workers and discrimination against older workers and

from being rejected or deterred from applying for positions that Defendants intended for younger workers.

(D.I. 68 at ¶¶ 163, 175, 187)  Defendants question the sincerity of Plaintiffs' interest in the job openings because the FAC avers that the jobs were in disparate locations and involved widely varying responsibilities.  (D.I. 83 at 6-7)  But the FAC alleges that Plaintiffs' education and experience complemented the job descriptions, and each named Plaintiff "has been genuinely interested in each of the positions he applied for at RTX and has been willing to relocate, if necessary, or work remotely."  (D.I. 68 at ¶¶ 99, 167, 179)  Viewing these pleaded allegations in the light most favorable to Plaintiffs, it is reasonable to infer that Plaintiffs were genuinely interested in Defendants' job postings and their rejection from those positions resulted in actual harm to Plaintiffs. *See Tyler v. Hennepin County, Minn.*, 598 U.S. 631, 637 (2023) ("At this initial stage of the case, [the plaintiff] need not definitively prove her injury or disprove the [defendant's] defenses" when the complaint otherwise plausibly pleads that she suffered financial harm); *Liou v. Le Reve Rittenhouse Spa, LLC*, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (denying motion to dismiss ADEA claim where defendants "provided no legal basis for the argument that plaintiff was required to plead facts asserting the sincerity of his application."). Questions regarding the sincerity of Plaintiffs' interest in the job openings may be revisited after fact discovery.

Most of the case authority cited by Defendants is from outside the Third Circuit and does not persuasively support Defendants' position that Plaintiffs lack standing in this case. *See, e.g., Sledge v. J.P. Stevens & Co.*, 585 F.2d 625, 641 (4th Cir. 1978) (remanding the case so the applicant's "motives [could] be considered only upon an adversarial presentation of the evidence."); *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972) (concluding that pleadings were "facially sufficient" to demonstrate the plaintiff's "real, present interest in the

type of employment advertised."); *Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924, at \*10 (N.D. Cal. Mar. 13, 2020) (finding pleaded allegations were too vague and conclusory to establish that the named plaintiffs were personally injured by the denial of the opportunity to apply for jobs). The one case from this district cited by Defendants in support of their Rule 12(b)(1) motion did not address standing and did not involve a claim under the ADEA. *See Talley v. Christiana Care Health Sys.*, C.A. No. 17-926-CJB, 2018 WL 4938566, at \*5 (D. Del. Oct. 11, 2018) (granting a Rule 12(b)(6) motion to dismiss an antitrust claim under the Sherman Act). Moreover, the Third Circuit's decision in *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.* is distinguishable because it addressed a situation in which the plaintiff sued on behalf of its members without alleging that any member had applied for a job or otherwise demonstrated their interest in the positions to the defendant. 907 F.2d 1408, 1415 (3d Cir. 1990).

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations

allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### 1. Exhaustion of claims against the non-RTX Defendants

Defendants argue that Plaintiffs' claims against the non-RTX Defendants should be dismissed because Plaintiffs initially only filed administrative charges against RTX and failed to timely exhaust their administrative remedies against the non-RTX Defendants. (D.I. 83 at 8) Plaintiffs respond that Goldstein's tolling agreement with RTX applies equally to charges against the non-RTX Defendants, rendering their administrative charges timely under the November 13, 2024 amendment to add the non-RTX Defendants. (D.I. 96 at 21-22) But Defendants maintain that the tolling agreement does not apply to the non-RTX Defendants because they were not parties to the agreement. (D.I. 83 at 9; D.I. 101 at 3-4)

I recommend that the court GRANT Defendants' motion to dismiss Plaintiffs' claims against the non-RTX Defendants for failure to exhaust their administrative remedies. Generally, ADEA claims may be brought only against a party previously named in an EEOC charge. *See*

*Schafer v. Bd. of Public Educ. of the Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 251 (3d Cir. 1990). It is undisputed that Plaintiffs did not name the non-RTX Defendants in their original charges of discrimination. *See Rippy v. Public Health Mgmt. Corp.*, 2020 WL 832088, at *7 (E.D. Pa. Feb. 19, 2020) (dismissing claims with prejudice for failure to exhaust administrative remedies as to defendant not specifically named in charge of discrimination); *Saba v. Middlesex County Bd. of Soc. Servs.*, 2017 WL 2829618, at *5 (D.N.J. June 30, 2017) ("Plaintiff may only bring a Title VII, ADEA, or ADA action against a defendant who was previously named in an EEOC charge[.]"). The FAC and the terms of the tolling agreement[8] also confirm that the non-RTX Defendants were not expressly named as parties to the tolling agreement. (D.I. 68 at ¶ 23; D.I. 97, Ex. 9)

Plaintiffs argue that references to RTX in the original charges and tolling agreement apply equally to the non-RTX Defendants because the complaint states that "RTX operates as a 'single employer' . . . with its business units and subsidiaries," and it "is the sole publicly traded parent company that exerts financial control and operational direction over each of its business units and subsidiaries." (D.I. 96 at 23 (citing D.I. 68 at ¶¶ 42-43)) This argument runs counter to the general principle that a contract cannot generally bind a nonparty subsidiary. *Emerson v. Mezzion Int'l, LLC*, C.A. No. 20-808-SB, 2021 WL 765765, at *1 (D. Del. Feb. 26, 2021) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). Moreover, pleaded averments that RTX "functions as an employment agency with respect to its business units and subsidiaries by regularly working to procure employees for its business units and subsidiaries through recruitment, marketing, job advertising, and hiring activities" reinforce Defendants' position that

---

[8] The court may consider the tolling agreement at this stage because it is incorporated by reference into the FAC. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that the court "may consider documents that are . . . incorporated by reference or integral to the claim" in evaluating a motion to dismiss).

RTX is the entity responsible for the discriminatory conduct alleged in the complaint. (D.I. 68 at ¶ 42)

According to Plaintiffs, the discrimination charges should nonetheless apply to the non-RTX Defendants because they were expressly named in the November 13, 2024 amendments, which relate back to the original charges and the tolling agreement.[9] (D.I. 96 at 21-22) But the complaint alleges only that the charges were amended on November 13, 2024, without stating that the amendments relate back to the original charges or that they name the non-RTX Defendants. (D.I. 68 at ¶¶ 24, 27-78) There are no pleaded averments suggesting that these substantive amendments to add new respondents relate back to the date the original charges were filed. *See Webb v. Int'l Brotherhood of Elec. Workers*, 2005 WL 2373869, at *7 (E.D. Pa. Sept. 23, 2005) (rejecting argument that amendment to discrimination charges should relate back to original charges where the amendment added a new respondent and was not limited to correcting administrative deficiencies). "As the Third Circuit has stated, [i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. 3d 483, 487 (D. Del. 2022) (internal citations and quotation marks omitted).

Plaintiffs ask the court to apply two exceptions to the general rule requiring a defendant to be named in an administrative charge for purposes of exhaustion: the "common discriminatory

_____

[9] In a footnote, Plaintiffs contend that their original discrimination charges filed in 2023 and 2024 timely exhausted their administrative remedies against the non-RTX Defendants even if the November 13, 2024 amendments do not apply because the non-RTX Defendants' names were referenced in the "body" of those charges. (D.I. 96 at 23 n.23) A review of the charges does not support Plaintiffs' assertion. The body of the 2023 and 2024 charges by Beaulieu, Bryan, and Goldstein refer to "RTX Corporation, formerly Raytheon Technologies Corporation, and also formerly Raytheon Company[.]" (D.I. 97, Ex. 5; *see also id.*, Exs. 3 & 7) Those charges do not identify any non-RTX Defendant by name except Raytheon Company, and Raytheon Company is identified only as a former name for RTX, as opposed to a present-day subsidiary of RTX. (*Id.*)

scheme" exception and the "commonality of interest" exception. (D.I. 96 at 23-24) The "common discriminatory scheme" exception provides that an unnamed party may fall within the scope of an EEOC charge when the named defendant and the unnamed defendant are engaged in a common discriminatory scheme. *See Bright v. Le Moyne Coll.*, 306 F. Supp. 2d 244, 257-58 (N.D.N.Y. 2004). Plaintiffs do not cite any case authority within the Third Circuit applying this exception. (D.I. 96 at 23-24) The court declines to broaden the application of this exception in the instant case.

Next, Plaintiffs argue that their administrative remedies against the unnamed non-RTX Defendants should be deemed exhausted based on the commonality of interest between RTX and the non-RTX Defendants. (D.I. 96 at 24) Courts recognize the commonality of interest exception to the naming requirement "when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer v. Bd. of Public Educ. of the Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 252 (3d Cir. 1990). To determine whether a commonality of interest exists between the named and unnamed defendants, courts consider: (1) whether the role of the unnamed party could be ascertained through reasonable effort at the time the EEOC charge was filed; (2) whether the interests of the named party are so similar to the unnamed party's interests that it would be unnecessary to include the unnamed party in the EEOC charge; (3) whether the unnamed party's absence from the EEOC charge resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has represented to the complainant that its relationship with the complainant is to be through the named party. *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds*, 451 U.S. 935 (1981).

The commonality of interest exception to the naming requirement does not apply where, as here, the FAC does not allege that the non-RTX Defendants received actual notice of Plaintiffs' claims.[10] *See Miles v. City of Phila.*, 2012 WL 525737, at *8 (E.D. Pa. Feb. 17, 2012) (citing cases and declining to apply the commonality of interest exception to the naming requirement where the complaint did not allege the unnamed defendant received actual notice that the plaintiff filed her discrimination charges). Plaintiffs claim the non-RTX Defendants received notice of their claims because the amended charges state that RTX filed "position statements on behalf of all Defendants."[11] (D.I. 96 at 25; *see* D.I. 97, Ex. 4 at 3; Ex. 6 at 3; Ex. 8 at 3) But the position statements referenced by the amended charges do not state that actual notice was provided to RTX's subsidiaries. (D.I. 97, Exs. 10-11) Thus, neither the FAC nor the documents incorporated by reference into the FAC allege that the non-RTX Defendants received actual notice of the discrimination charges. Because Plaintiffs did not name the non-RTX Defendants in their EEOC charges and "have not shown that they are entitled to the benefit of the narrowly-drawn 'commonality of interest' exception," I recommend that the court GRANT Defendants' motion to dismiss the claims against the non-RTX Defendants due to Plaintiffs'

---

[10] Defendants also contend that the commonality of interest exception does not apply because the charging party was represented by counsel at the time the discrimination charges were filed, citing case law holding that the exception applies only where a charging party is "not represented by counsel at the time the EEOC complaint was filed." (D.I. 101 at 5) (citing *Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d 756, 763 n.3 (E.D. Pa. 2005); *Fordham v. Agusta Westland N.V.*, 2007 WL 136329, at *3 (E.D. Pa. Jan. 11, 2007)). As Plaintiffs indicated during oral argument, more recent case authority within the Third Circuit has called this argument into question. *See Turk v. Salisbury Behavioral Health, Inc.*, 2010 WL 1718268, at *3 (E.D. Pa. Apr. 27, 2010); *see also Middlebrooks v. Teva Pharms. USA, Inc.*, 2018 WL 705058, at *4 (E.D. Pa. Feb. 5, 2018) ("I find that a claim may be brought against a party unnamed in the EEOC complaint so long as the *Glus* factors are satisfied, and regardless of whether the plaintiff was represented by counsel at the administrative filing.").

[11] In addition to citing the amended charges in support of their argument on actual notice, Plaintiffs cite to "FAC ¶¶" without including any citation to paragraphs of the FAC alleging the non-RTX Defendants received actual notice. (D.I. 96 at 25)

failure to exhaust their administrative remedies. *Fordham v. Agusta Westland N.V.*, 2007 WL 136329, at *3 (E.D. Pa. Jan. 11, 2007).

### 2. ADEA claims (Counts I-III)

#### a. ADEA advertising claim (Count I)

A violation of the ADEA's provision on advertising at 29 U.S.C. § 623(e) occurs when an employer publishes a job description that indicates a "preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e); *see Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, 548 F. App'x 797, 806 (3d Cir. 2013). Defendants contend that Plaintiffs' advertising claim under the ADEA should be dismissed because the pleaded allegations describe job descriptions seeking recent graduates or individuals with minimal experience, but those job descriptions do not expressly seek younger applicants. (D.I. 83 at 11) According to Defendants, it is permissible for an employer to express preferences that are correlated with age, so long as those preferences are motivated by factors other than age. (*Id.*) Plaintiffs respond that a job posting seeking recent college graduates or individuals with limited experience indicates an unlawful age-based preference because most individuals fitting this description are young people. (D.I. 96 at 10-11)

I recommend that the court DENY Defendants' motion to dismiss Count I of the FAC. The FAC plausibly alleges that Defendants' job postings and advertisements discriminate based on age by restricting applicants to recent graduates or individuals with limited work experience. (D.I. 68 at ¶¶ 70-73, 219-20) The FAC also describes and incorporates by reference the EEOC's Final Determination Letter on Goldstein's 2019 discrimination charge, which declared that RTX's advertisements seeking recent college graduates were discriminatory. (*Id.* at ¶ 14) The applicable regulation supports Plaintiffs' position that advertisements seeking recent graduates may violate the ADEA by indicating a preference for younger applicants:

> Help wanted notices or advertisements may not contain terms and phrases that limit or deter the employment of older individuals. Notices or advertisements that contain terms such as *age 25 to 35, young, college student, recent college graduate, boy, girl*, or others of a similar nature violate the Act unless one of the statutory exceptions applies.

29 C.F.R. § 1625.4(a) (emphasis in original); *see Hodgson v. Approved Personnel Serv., Inc.*, 529 F.2d 760, 766 (4th Cir. 1975) ("Most 'recent graduates' are composed of young people. When the term is used with a specific job, it violates the Act since it is not merely informational to the job seeker but operates to discourage the older job hunter from seeking that particular job and denies them an actual job opportunity.").[12]

At oral argument, the court asked Defendants' counsel for case authority supporting the dismissal of an ADEA advertising claim on a motion to dismiss.  (7/22/2025 Tr.)  Defendants cited two cases in response.  The first case, which was issued by the Southern District of New York in 1973, dismissed a claim under the statute because the complaint failed to allege the defendant met the statutory definition of an "employer."  *Brennan v. Paragon Emp. Agency, Inc.*, 356 F. Supp. 286, 288 (S.D.N.Y. 1973).  The court went on to opine that the relief sought would not "effectuate the purposes" of the statute, which was not intended to prohibit employers from posting job notices containing terms and phrases such as "college student" or "recent college graduate" that might encourage younger individuals to apply.  *Id.* at 288-89.  This decision is not binding and is inconsistent with 29 C.F.R. § 1625.4(a), which went into effect in 2007.  The

---

[12] On July 18, 2025, Plaintiffs moved for leave to file a notice of supplemental authority, directing the court to a recent decision in *United States v. AION Management, LLC.* (D.I. 125) In that case, the court denied the defendants' motion to dismiss the plaintiffs' claims under 42 U.S.C. § 3604(c) pertaining to discriminatory notices or advertisements made in connection with the sale or rental of a dwelling. *United States v. AION Mgmt., LLC*, C.A. No. 23-742-GBW, 2025 WL 843620, at *9 (D. Del. Mar. 18, 2025).  This case supports the conclusion that a motion to dismiss is not the proper vehicle to address alleged deficiencies of this nature.  However, it arises in the context of a different title of the United States Code and its persuasive value is therefore limited.

second case, *Cornell v. North Wasco County School District No. 12*, was decided on a motion for summary judgment based on the plaintiff's failure to "offer . . . evidence that the [defendant] ever printed or published any actual notice or advertisement indicating any such preference" correlated with age. 2012 WL 4599419, at *12 (D. Or. July 9, 2012).

### b. ADEA disparate treatment claim (Count II)

Next, Defendants argue that Plaintiffs' claim for disparate treatment under the ADEA at Count II of the FAC should be dismissed for reasons similar to those presented in connection with Count I. (D.I. 83 at 14) Section 623(a)(1) of the ADEA prohibits employers from failing or refusing to hire, discharging, or discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment due to the individual's age. 29 U.S.C. § 623(a)(1); *see vMedex, Inc. v. TDS Operating, Inc.*, C.A. No. 18-1662-MN, 2020 WL 4925512, at *14 (D. Del. Aug. 21, 2020) (explaining that a disparate treatment claim under the ADEA "requires age to be the but-for cause of the adverse treatment."). "To state a claim of age discrimination by disparate treatment, a plaintiff must show that: (1) he is a member of the protected class (*i.e.* at least forty years old); (2) he applied for a position for which he was qualified; (3) his application was rejected; and (4) the rejection was motivated by discriminatory animus." *Gyada v. F.B.I. Crime Lab.*, 2015 WL 4077009, at *4 (E.D. Pa. July 6, 2015) (citing *Barber v. CSX Distrib. Serv.*, 68 F.3d 694, 698 (3d Cir. 1995)). Ultimately, the plaintiff must prove that "age was the 'but-for' cause of the employer's adverse decision." *Id.* (quoting *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009)).

Here, Defendants contend that the FAC's focus on their practice of limiting certain positions to recent graduates shows only that Defendants prefer less experienced applicants, as opposed to younger applicants, for those positions. (D.I. 83 at 14-15) Plaintiffs respond that the

FAC plausibly alleges recent graduate status is used by Defendants as a proxy for soliciting applicants under forty years of age, and the disproportionality between recent graduates who are over forty years old versus those who are under forty is sufficient to plausibly allege disparate treatment. (D.I. 96 at 13-14)

I recommend that the court DENY Defendants' motion to dismiss Plaintiffs' disparate treatment claim under 29 U.S.C. § 623(a)(1) at Count II. The FAC plausibly alleges that Plaintiffs are over forty years old, they applied for positions for which they were qualified, and their applications were rejected. (*See, e.g.*, D.I. 68 at ¶¶ 98, 101, 104-06, 166, 169-70, 178-79, 181-82) These well-pleaded allegations distinguish the circumstances of this case from those in *Gyada v. F.B.I. Crime Laboratory*, in which the court granted a motion to dismiss the plaintiff's disparate treatment claim because the plaintiff failed to allege he applied for the position and was rejected. 2015 WL 4077009, at *4. Defendants otherwise rely upon cases from other circuits that are not binding on this court and are of limited persuasive value because all but one of those decisions was rendered on a motion for summary judgment or post-jury verdict.[13] (D.I. 83 at 15)

The FAC also plausibly alleges that age was the motivating factor for Defendants' rejection of Plaintiffs' applications. Specifically, the FAC states that applicants were required to provide age-related data, such as the year and month of graduation and academic transcripts, and this information was then used by automated systems to screen out older applicants. (D.I. 68 at ¶ 232) The FAC further alleges that "Defendants know to a substantial degree of certainty that recent graduates are likely to be younger applicants (under 40 years of age) because 95% of

---

[13] *See Grossmann v. Dillard Dep't Stores, Inc.*, 109 F.3d 457, 459 (8th Cir. 1997) (ruling on an appeal of a jury verdict); *Williams v. Lazer Spot, Inc.*, 2014 WL 5365581, at *3 (D. Md. Oct. 21, 2014) (ruling on a motion for summary judgment); *Magnello v. TJX Cos.*, 556 F. Supp. 2d 114, 123 (D. Conn. 2008) (ruling on a motion for summary judgment); *Raymond v. Spirit AeroSystems Holdings, Inc.*, 125 F.4th 1016 (10th Cir. Jan. 7, 2025) (ruling on a motion for summary judgment).

college graduates are under 40 years of age." (*Id.* at ¶ 234)  These averments are more specific than the conclusory allegations in *Pekar v. U.S. Steel/Edgar Thomson Works*, which stated that the plaintiff was discharged due to his age so his employer could replace him with an unspecified individual who would receive a defined contribution pension, instead of a defined benefit pension.  2010 WL 419421, at *7 (W.D. Pa. Jan. 29, 2010).  The FAC adequately alleges but-for causation at the pleading stage, and questions regarding whether Defendants had non-discriminatory reasons for soliciting recent graduates go to Plaintiff's ultimate burden of proof. *See Kenny v. Univ. of Del.*, C.A. No. 17-1156-RGA, 2018 WL 1022576, at *5 (D. Del. Feb. 22, 2018) ("Although the Supreme Court established the 'but-for' causation standard in *Gross*, that standard applies to [the plaintiff's] ultimate burden of persuasion and does not apply here at the pleading stage.").

### c.  ADEA disparate impact claim (Count III)

Section 623(a)(2) of the ADEA prohibits an employer from limiting, segregating, or classifying "his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]"  29 U.S.C. § 623(a)(2).  Defendants do not challenge the sufficiency of the pleaded allegations with respect to Plaintiffs' disparate impact claim at Count III of the FAC. Instead, Defendants contend that the claim must be dismissed because the ADEA provides a disparate impact cause of action only for employees, and not for actual or prospective job applicants.  (D.I. 83 at 16-17)  Plaintiffs respond that the ADEA's text, purpose, and legislative history all contradict Defendants' position, focusing on the portion of the statute that prohibits an employer from "depriv[ing] any individual of employment opportunities[.]"  (D.I. 96 at 16-17)

I recommend that the court GRANT Defendants' motion to dismiss Count III of the FAC because the ADEA does not provide prospective job applicants with a cause of action for disparate impact. In a concurring opinion in *Smith v. City of Jackson, Mississippi*, Justice O'Connor clarified that Section 623(a)(2) "of course, does not apply to 'applicants for employment' at all" because only Section 623(a)(1) protects that group. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 266 (2005). More recently, the Eleventh Circuit explained that the clause "deprive or tend to deprive any individual of employment opportunities" is a subset of the clause "adversely affect[ing] his status as an employee" in Section 623(a)(2). *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 964 (11th Cir. 2016). Consequently, "[a]pplicants who are not employees when alleged discrimination occurs do not have a 'status as an employee.' " *Id.* The Seventh Circuit took a similar approach in *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482 (7th Cir. 2019), unequivocally stating that, "[b]y its terms, [Section 623(a)(2)] proscribes certain conduct by employers and limits its protection to employees." The parties appear to agree that no other circuit court, including the Third Circuit, has addressed the issue.

Plaintiffs cite a district court case from the Northern District of California in support of their position that Section 623(a)(2) protects job applicants in addition to employees. *See Rabin v. PricewaterhouseCoopers LLP*, 236 F. Supp. 3d 1126, 1128 (N.D. Cal. 2017). However, the weight of authority and the statutory text support Defendants' position that Section 623(a)(2) is limited in its application to employees and does not extend to job applicants.

### 3. MFEPA claims (Counts IV-VI)

I recommend that the court DENY Defendants' motion to dismiss Counts IV to VI of the complaint for violations of the Massachusetts Fair Employment Practices Act ("MFEPA"). Defendants concede that "[t]he standard for MFEPA claims is 'so similar' to ADEA claims 'that

those claims can be analyzed together.'" (D.I. 83 at 17) (quoting *Sweeney v. Santander Bank, N.A.*, 2021 WL 4224312, at *12 (D. Mass. Sept. 16, 2021)). Thus, Defendants' motion to dismiss Plaintiffs' claims for discriminatory advertising and disparate treatment under the MFEPA at Counts IV and V of the FAC should be denied for the same reasons set forth at § II.B.2.a-b, *supra*.

Although the court recommends granting Defendants' motion to dismiss Plaintiffs' disparate impact claim under the ADEA at § II.B.2.c, *supra*, Plaintiffs' corresponding claim under the MFEPA should not be dismissed. Plaintiffs cite case authority confirming that disparate impact claims may be brought by job applicants under the MFEPA. *See Smith v. Home Health Sols., Inc.*, 2018 WL 5281743, at *2-4 (D. Mass. Oct. 24, 2018) (denying motion to dismiss disparate impact claim based on facially neutral hiring policies that allegedly fell more harshly on a protected group). Defendants contend that *Smith* is inapposite because it arose under a different statutory provision under the MFEPA, but Plaintiffs provided authority showing that both provisions have identical language, and all subsections of Section 4 of the MFEPA recognize that claims may be brought on a disparate impact theory. *See Porio v. Dep't of Revenue*, 951 N.E.2d 714, 722-23 (Mass. App. Ct. 2011) ("When the Supreme Judicial Court first recognized that one could base a c. 151B claim on a disparate impact theory, the court did not tether that conclusion to any particular language in the statute.").

### 4. VHRA claims (Counts VII-IX)

Defendants contend that Goldstein's claims for positions he pursued prior to July 1, 2020 should be dismissed under the VHRA because the statute only applied to employees discharged based on age prior to that date, and it did not extend to applicants alleging failure to hire. (D.I. 83 at 17-18) In response, Plaintiffs concede that "VHRA may not have protected applicants

from age discrimination before July 1, 2020[.]" (D.I. 96 at 20 n.17)  Consequently, I recommend that the court GRANT Defendants' motion to dismiss Counts VII to IX to the extent that those claims are based on Goldstein's hiring allegations predating July 1, 2020.

Defendants also suggest that Plaintiffs' claims under the Virginia Human Rights Act ("VHRA") should be dismissed because Goldstein does not allege that he applied to positions in Virginia or that any Virginia-based Defendant rejected his applications.  (D.I. 83 at 18)  In response, Plaintiffs maintain that the VHRA applies to "all individuals within [Virginia]," and the FAC alleges that Goldstein resides in Virginia.  (D.I. 96)  I recommend that the court DENY Defendants' motion to dismiss the VHRA claims to the extent that those claims are based on positions Goldstein allegedly pursued after July 1, 2020.  The FAC alleges that Goldstein resides in Virginia, and the text of the VHRA confirms that it applies to all individuals within Virginia. (D.I. 68 at ¶ 35); Va. Code Ann. § 2.2-3900(B)(2).

### 5.  FEHA claims (Counts X-XII)

As a preliminary matter, I recommend that the court dismiss the FEHA claims at Counts X to XII to the extent those claims are brought by Goldstein.  The FAC states that these claims are brought "On Behalf of Plaintiffs Mark Goldstein, John Bryan, and the California Class." (D.I. 68 at ¶¶ 318-51)  Defendants contend that Goldstein failed to exhaust his administrative remedies for his FEHA claims as to all Defendants.  (D.I. 83 at 9-10)  Plaintiffs do not refute this argument, and they conceded at oral argument that Goldstein is not pursuing claims under the FEHA.  (D.I. 126 at 5:25-6:6)

According to Defendants, Plaintiffs' advertising and disparate treatment claims under the California Fair Employment and Housing Act ("FEHA") should be dismissed for the same reasons Defendants allege Plaintiffs' ADEA claims fail, and the FEHA expressly permits

employers to hire applicants based on their experience and training. (D.I. 83 at 18-19) Plaintiffs concede that employers may lawfully rely on experience or training in their hiring practices, but Defendants' conduct in this case violated the FEHA because Defendants relied on a lack of experience as a pretext to intentionally hire younger applicants. (D.I. 96 at 20) For the reasons explained at § II.B.2-3, *supra,* I recommend that the court DENY Defendants' motion to dismiss Plaintiffs' advertising and disparate treatment claims under the FEHA.

Defendants also contend that Plaintiffs' FEHA disparate impact claim should be dismissed because the FAC does not offer a complete data set on the age composition of Defendants' actual applicant pool. (D.I. 83 at 19-20) Defendants do not explain how Plaintiffs could obtain a complete data set on Defendants' actual applicant pool prior to the exchange of fact discovery. The unpublished Ninth Circuit case cited by Defendants, *Liu v. Uber Technologies, Inc.*, does not establish a bright line rule against "reliance on publicly available reports and studies providing relevant evidence of real-world conditions[.]" 2024 WL 3102801, at *2 (9th Cir. June 24, 2024). To the contrary, the court acknowledged that such studies "may provide a basis for plausibly inferring a statistical disparity with respect to a particular defendant" in an appropriate case. *Id.* Consequently, I recommend that the court DENY Defendants' motion to dismiss Defendants' disparate impact claim under the FEHA.

### C. Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b)

With respect to the age discrimination claims brought under the ADEA at Counts I to III of the FAC, Plaintiffs move for conditional certification of a collective action. (D.I. 92) The ADEA incorporates the collective action provisions of the Fair Labor Standards Act. *See* 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)); *see also McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379 (3d Cir. 2007).

Accordingly, the court must determine "whether those who purport to join the collective action are 'similarly situated' as intended by the statute." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

To determine whether the members of the proposed collective action are similarly situated, the court engages in a two-step inquiry. At issue here is the first step of conditional certification, which requires "a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). The standard applied is "fairly lenient," and the court does not evaluate the merits of a plaintiff's case when ruling on a motion for conditional certification. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Viscomi v. Clubhouse Diner*, 2016 WL 1255713, at *4 (E.D. Pa. Mar. 31, 2016). "The sole consequence of conditional certification is the dissemination of court-approved notice to potential collective action members." *Halle*, 842 F.3d at 224 (internal quotation marks and citations omitted). The court's determination on conditional certification is discretionary, and "[a] denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a collective action." *Id.* at 224.

Plaintiffs seek conditional certification of a nationwide collective regarding their ADEA claims, which would permit court-authorized notices to be sent to potential opt-in plaintiffs. The proposed collective is defined as "[a]ll individuals, who, from October 11, 2018, onward (i) applied to and were denied, or were deterred from applying for, at least one Recent Graduate Position; (ii) met the basic qualifications for such position; and (iii) were aged 40 or older at the

time they applied or were deterred from applying." (D.I. 92-1)  Plaintiffs seek an order that: (1)

conditionally certifies the proposed collective; (2) requires Defendants to produce a list of

proposed collective members within fourteen days of the date of the order; and (3) directs the

dissemination of the notice via U.S. mail, email, text message, and online publication notice.

(*Id.*)  I recommend that the court GRANT-IN-PART Plaintiffs' motion for court-authorized

notice under 29 U.S.C. § 216(b) for the reasons set forth below.

### 1.  Applicants to "recent graduate" positions

I recommend that the court GRANT conditional certification for applicants who applied

to one or more recent graduate positions because Plaintiffs have adequately shown the existence

of a uniform policy of discriminatory treatment against applicants for recent graduate positions

who are over forty years old.  With respect to their ADEA advertising claim, Plaintiffs offer

evidence of job advertisements soliciting recent graduates that include hiring criteria limiting

eligible candidates to individuals who graduated within the past two years or less.  (D.I. 93, Ex.

8)  Defendants highlight minor differences in the advertisements to suggest that there is no

uniform policy or practice.  (D.I. 108 at 8-9)  For example, Defendants contrast a job posting

requiring a "Bachelor's degree and less than 2 years prior relevant work experience" with an

advertisement requiring a "Bachelor's degree and 12 months or less of relevant professional

work experience (excluding internships)."  (*Id.* at 8)  But "[t]hese differences, while perhaps

significant at a later stage of the case, are insufficient to defeat conditional certification."  *Rabin

v. PricewaterhouseCoopers LLP*, 2018 WL 3585143, at *4 (N.D. Cal. July 26, 2018) (rejecting

the defendant's "focus[ ] on minor differences between the experiences of the declarants").  This

evidence supports the same publication claim for the proposed collective members under 29

U.S.C. § 623(e).

The evidence of record also supports Plaintiffs' contention that the proposed collective applicants are subject to the same centralized hiring system for purposes of Plaintiffs' disparate treatment claim. Defendants acknowledge that "RTX, like most companies, maintains a centralized website and overarching equal employment opportunity policies[.]" (D.I. 108 at 9) Declarations from Stephen Schulz, the executive director of RTX Global Talent Acquisition, establish that: (1) "enterprise-wide talent acquisition strategies" exist, (D.I. 94, Ex. 11 at ¶ 2); and (2) Defendants have a practice of screening applicants who do not meet the specified job criteria, presumably including the "recent graduate" requirement; (D.I. 109 at ¶ 7). Moreover, RTX acknowledged in a letter to the EEOC that it "reasonably sought newer graduates for the entry-level positions at issue so as to generally avoid high salary demands, job dissatisfaction, and turnover." (D.I. 94, Ex. 9 at 9) At this early stage, Plaintiffs have substantially alleged that the proposed collective members are similarly situated because they were subject to the same policy of exclusion based on the "recent graduate" selection criteria. *See Mobley v. Workday, Inc.*, 2025 WL 1424347, at *5 (N.D. Cal. May 16, 2025) (explaining that the identification of a uniform policy disproportionately affecting older applicants creates a common question of fact). RTX "will have the opportunity at a later stage of the case to present evidence that its [hiring] system does not operate in a unified way." *Id.* at *7.

Defendants' position that the named Plaintiffs are atypical would be relevant to a class certification analysis under Rule 23, but it is not persuasive at the first stage of conditional certification of a collective. (D.I. 108 at 10-12) Defendants propound evidence purportedly showing that older applicants are hired for recent graduate positions in meaningful numbers. (D.I. 108 at 12) (citing D.I. 110 at ¶¶ 3, 7, 10). However, "federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is

focused simply on whether notice should be disseminated to potential claimants." *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 855 (N.D. Cal. 2016) (quoting *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at \*4 (N.D. Cal. July 18, 2012)).

Defendants also contend that individualized evidence would overwhelm similarities across the proposed collective because the court would be tasked with comparing each applicant's qualifications to the respective job posting.  (D.I. 108 at 12-13)  But courts have "rejected similar arguments during the first stage of the [ADEA] conditional certification process, finding that these arguments go to the merits and are better addressed at the second stage, after discovery has closed." *Heath*, 215 F. Supp. 3d at 854-55 (quoting *Sanchez*, 2012 WL 2945753, at \*4 (collecting cases)).  The portion of *Heath* discussed by Defendants denied a motion for joinder by a co-plaintiff attempting to broaden the proposed collective definition to encompass any applicant, regardless of qualifications.  (D.I. 108 at 12-13) (citing *Heath*, 215 F. Supp. 3d at 857).  This portion of *Heath* is inapposite because Plaintiffs' proposed collective definition requires applicants to meet the basic qualifications for the position.  (D.I. 92-1); *see Rabin v. PricewaterhouseCoopers LLC*, 2019 WL 9078785, at \*4 (N.D. Cal. Apr. 5, 2019) (rejecting the defendant's argument that individualized inquiries would be needed to determine whether applicants met the basic qualifications, where the plaintiff revised the collective definition to exclude unqualified and deterred applicants).

### 2.  Deterred applicants

I recommend that the court DENY conditional certification with respect to deterred applicants.  Plaintiffs, who applied for recent graduate positions, are not similarly situated to potential collective members who were deterred from applying.  *See Rabin v. PricewaterhouseCoopers LLP*, 2018 WL 3585143, at \*6 (N.D. Cal. July 26, 2018) (holding that

24

plaintiffs who applied for positions "could not represent those deterred from applying in an ADEA collective certification case because they were not similarly situated."). Although Plaintiffs allege that their rejections from recent graduate positions deterred them from applying for other recent graduate positions, they do not identify any specific job listings for which they did not apply as a result of their rejections from prior positions. (*See, e.g.*, D.I. 68 at ¶ 162) ("Mr. Goldstein was discouraged and deterred from applying for, and did not apply to, dozens of other [unspecified] Recent Graduate Positions[.]"). In the absence of such evidence, it strains credulity to suggest that Goldstein applied nine times to recent graduate positions and was genuinely deterred from applying on the tenth time. (D.I. 126 at 79:10-15)

Plaintiffs cite a case from the Eastern District of Arkansas in support of their position that individuals deterred from applying should be included in the proposed collective. (D.I. 92 at 15-16) (citing *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 366 (E.D. Ark. 2007)). However, *Nelson* arose in the context of a motion for class certification under Rule 23. Plaintiffs acknowledge that "the Supreme Court has stated that collective actions under 29 U.S.C. § 216(b) and Rule 23 class actions are 'fundamentally different[,]' " without explaining why the court should nonetheless find *Nelson* persuasive on this point. (D.I. 93 at 14 n.10) The persuasive value of the analysis in *Nelson* is further limited by the fact that the court permitted the inclusion of deterred applicants in the class when "the employment practice complained of involve[d] word-of-mouth recruitment[.]" *Nelson*, 245 F.R.D. at 366. Plaintiffs do not allege that Defendants engaged in word-of-mouth recruitment in the instant case. The court finds the reasoning in *Rabin* more persuasive in recommending the exclusion of deterred applicants from the proposed collective. *See Rabin*, 2018 WL 3585143, at *6.

### 3.  Proposed notice and distribution plan

The parties have submitted competing proposals for the forms of notice and the methods of disseminating such notice to the proposed collective.  (D.I. 93 at 17-20; D.I. 94, Exs. 12-13; D.I. 108 at 18-20, Exs. 2-3)  Both parties also request a meet and confer.  (D.I. 93 at 18 n.14; D.I. 108 at 20 n.10)  The court has discretion to decide the form and manner of notice.  *See Moore v. Consol. Pa. Coal Co. LLC*, 2024 WL 1251418, at *6 (W.D. Pa. Mar. 22, 2024) ("District courts have the discretion to decide whether and how such notices should be implemented.").

In accordance with the parties' agreement to do so, I recommend that the court order the parties to meet and confer on the proper form and content of the notice to be sent to potential opt-ins.  *See Rabin*, 2019 WL 9078785, at *5 ("[T]he Court cannot yet order notice to potential members of the collective action because—as the parties themselves agree—further meet-and-confer efforts are required before they and the Court can determine who will receive such notice.").  The parties shall engage in a meet and confer during the fourteen-day period for objections.  The meet and confer shall focus on the development of a notice list, the form of court-authorized notice, the form of the consent form, and the need for a reminder notice.  The parties shall provide a status report to the court within one week of the meet and confer.

As to the method of dissemination, I recommend that the court limit the forms of notice to U.S. mail and email.  *See Russo v. Gov't Emps. Ins. Co.*, 2022 WL 3098107, at *5 (D.N.J. Aug. 3, 2022) ("Courts have found 'first class mail and home addresses are generally deemed sufficient, and additional information and contact methods are typically provided only if necessary.'" (quoting *Steinberg v. TD Bank, N.A.*, 2012 WL 2500331, at *7 (D.N.J. June 27, 2012)).  Plaintiffs' justification for publication notice and notice through social media channels is to reach deterred applicants "for whom Defendants may not maintain direct contact

information[.]" (D.I. 93 at 18)  Should the court adopt the recommendation to deny conditional certification as to deterred applicants, these additional forms of notice may not be necessary.

### III.   CONCLUSION

For the foregoing reasons, I recommend that the court:

A.   GRANT-IN-PART Defendants' motion to dismiss (D.I. 82) as follows:

    1. GRANT the Rule 12(b)(6) motion to dismiss all claims brought against the non-RTX Defendants;

    2. GRANT the Rule 12(b)(6) motion to dismiss Count III of the FAC;

    3. GRANT the Rule 12(b)(6) motion to dismiss Counts VII to IX to the extent that the claims are based on Goldstein's applications for positions prior to July 1, 2020;

    4. GRANT the Rule 12(b)(6) motion to dismiss Counts X to XII to the extent that those claims are brought by Goldstein; and

    5. DENY the Rule 12(b)(1) and (b)(6) motion to dismiss in all other respects.

B.   GRANT-IN-PART Plaintiffs' motion for court-authorized notice (D.I. 92) as follows:

    1. GRANT the motion for conditional certification with respect to individuals who, from October 11, 2018 onward, (i) applied to and were denied at least one Recent Graduate Position; (ii) met the basic qualifications for such position; and (iii) were aged 40 or older at the time they applied;

    2. DENY the motion for conditional certification with respect to individuals over age 40 who were deterred from applying for a Recent Graduate Position; and

    3. DENY without prejudice Plaintiffs' request for approval of the proposed Notice and Consent to Join Form, pending the results of the parties' meet and confer

efforts regarding the form and content of the notice, which shall occur during the fourteen-day period for objections, and the court's review of the parties' joint status report due seven days after the meet and confer;

4. GRANT Plaintiffs' request to disseminate notice to the proposed collective members via U.S. mail and email; and

5. DENY Plaintiffs' request to disseminate notice to the proposed collective members via text message and online publication notice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: September 4, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE