# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,

              Plaintiffs,

v.

RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,

              Defendants.

C.A. No. 24-1169-JLH

## **PLAINTIFFS' OBJECTIONS TO THE REPORT & RECOMMENDATION**

*Of Counsel*

Adam T. Klein*
Chauniqua Young*
Zarka Dsouza*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

Mikael Rojas*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Washington DC 20005
(202) 914-5097

Kimberly A. Evans (#5888)
**BLOCK & LEVITON LLP**
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600
kim@blockleviton.com

*Counsel for Plaintiffs and the Proposed Class Collective*

Moira Heiges-Goepfert*
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
(415) 638-8800

Peter Romer-Friedman*
Patrick David Lopez*
David Berman*
**PETER ROMER-FRIEDMAN LAW PLLC**
1629 K Street, NW, Suite 300
Washington, DC 20006
(202) 355-6364

Rebecca Rodgers*
Louis Lopez*
Samantha Wehrle*
Lauren Naylor*
**AARP FOUNDATION LITIGATION**
601 E Street, NW
Washington, DC 20049
(202) 434-6983

*Admitted Pro Hac Vice*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

STANDARD OF REVIEW .......................................................................................................... 1

OBJECTIONS ............................................................................................................................... 1

    I.    The Court Should Reject the R&R's Dismissal of the Non-RTX Defendants for Failure to Timely Exhaust Administrative Remedies. ..................................................................................... 1

        A.    The Common Discriminatory Scheme Exception Applies Here. .................................. 2

        B.    Because Plaintiffs Alleged that the Non-RTX Defendants Received Actual Notice of Their Charges, the Common Interest Exception Applies. .......................................................... 4

        C.    Both of Bryan's Charges Named All the Defendants and Were Timely. ........................ 5

        D.    Plaintiffs Have Separately Exhausted Claims Against Raytheon Company. ................... 6

    II.    Plaintiffs' ADEA Disparate Impact Claim Should Not Be Dismissed............................... 7

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*Baranek v. Kelly*,
　630 F. Supp. 1107 (D. Mass. 1986) ........................................................................... 2

*Bivines v. Temple Univ. of Commonwealth Sys. of Higher Educ.*,
　284 F. Supp. 3d 587 (E.D. Pa. 2018) ......................................................................... 5

*Brewster v. Shockley*,
　554 F. Supp. 365 (W.D. Va. 1983) ............................................................................ 2

*Bright v. Le Moyne Coll.*,
　306 F. Supp. 2d 244 (N.D.N.Y. 2004) ................................................................... 2, 3

*Chemimage Corp. v. Johnson & Johnson*,
　2024 WL 3758814 (S.D.N.Y. Aug. 12, 2024) ........................................................... 7

*Connecticut v. Teal*,
　457 U.S. 440 (1982) .................................................................................................. 8

*Daniel v. T & M Prot. Res., Inc.*,
　992 F. Supp. 2d 302 (S.D.N.Y. 2014) ....................................................................... 3

*Dothard v. Rawlinson*,
　433 U.S. 321 (1977) ............................................................................................... 8, 9

*Glus v. G.C. Murphy Co.*,
　562 F.2d 880 (3d Cir. 1977) ...................................................................................... 3

*Griggs v. Duke Power Co.*,
　401 U.S. 424 (1971) .................................................................................................. 8

*Karlo v. Pittsburgh Glass Works, LLC*,
　849 F.3d 61 (3d Cir. 2017) .................................................................................. 8, 10

*Kleber v. CareFusion Corp.*,
　914 F.3d 480 (7th Cir. 2019) ............................................................................... 7, 10

*Rabin v. PricewaterhouseCoopers, LLP*,
　236 F. Supp. 3d 1126 (N.D. Cal. 2017) .................................................................. 7, 9

*Smith v. City of Jackson*,
　544 U.S. 228 (2005) .................................................................................................. 9

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, 135*,
     236 F. Supp. 3d 1130 .................................................................................................... 8

*ThroughTEK Co. v. Reolink Innovation Inc.*,
     730 F. Supp. 3d 92 (D. Del. 2024) ............................................................................ 1, 2

*Villarreal v. R.J. Tobacco Co.*,
     839 F.3d 958 (11th Cir. 2016) ..................................................................................... 7

*Zatarain v. WDSU-Television, Inc.*,
     1995 WL 120092 (E.D. La. Mar. 17, 1995) ................................................................. 2

**STATUTES**

81 Stat. 602 ........................................................................................................................ 8

78 Stat. 241 ........................................................................................................................ 8

Title 29 U.S.C. § 621 ....................................................................................................... 10

Title 29 U.S.C. § 623 ..................................................................................................... 1, 7

**FEDERAL RULES**

Fed. R. Civ. P. 15 ............................................................................................................... 5

Fed. R. Civ. P. 72 ............................................................................................................... 1

# INTRODUCTION

Plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan (collectively, "Plaintiffs") are job applicants over 40 years old who were denied employment based on Defendants' systemic, discriminatory practice of excluding older workers from thousands of jobs that Defendants reserve only for "recent graduates." On behalf of themselves and all others similarly situated, Plaintiffs respectfully object to the portions of the Magistrate Judge's September 4, 2025 Report and Recommendation, D.I. 127 ("R&R"): (1) dismissing Defendants other than RTX Corp., and (2) dismissing Count III of Plaintiffs' First Amended Complaint ("FAC") alleging a disparate impact claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(2).[1]

# STANDARD OF REVIEW

"The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *see ThroughTEK Co. v. Reolink Innovation Inc.*, 730 F. Supp. 3d 92, 99 (D. Del. 2024).

# OBJECTIONS

Plaintiffs object to parts II.B.1 and II.B.2.c of the R&R that, respectively, dismissed Plaintiffs' claims against all Defendants other than RTX Corp. ("RTX") for failure to exhaust and dismissed Count III of the FAC alleging disparate impact claims under the ADEA. For the reasons described herein, neither the non-RTX Defendants nor Count III should be dismissed.

**I.   The Court Should Reject the R&R's Dismissal of the Non-RTX Defendants for Failure to Timely Exhaust Administrative Remedies.**

In dismissing Plaintiffs' claims against the non-RTX Defendants for failure to exhaust

---

[1] Plaintiffs also object to the R&R's denial of Plaintiffs' request to disseminate notice via methods beyond mail and email, such as text and social media publication, pending further meet and confer discussions with Defendants. While the dispute is not yet ripe, Defendants have yet to confirm the sufficiency of their data for notice purposes. Thus, Plaintiffs assert the objection for purposes of preserving it under Rule 72(a).

1

administrative remedies, the R&R failed to apply two well-established exceptions to the exhaustion rule: (1) the common discriminatory scheme exception, and (2) the common interest exception. *See* D.I. 96 ("Opp.") at 23-25; R&R at 9-11. The R&R also erred in failing to consider or rejecting Plaintiffs' other exhaustion arguments. If adopted, this portion of the R&R threatens to dramatically limit the scope of the collective and immunize viable claims of discrimination simply because they were committed by a company's subcomponent, instead of the parent.

### A.  The Common Discriminatory Scheme Exception Applies Here.

The R&R recognized that courts have applied the "common discriminatory scheme" exception, which "provides that an unnamed party may fall within the scope of an EEOC charge when the named defendant and the unnamed defendant are engaged in a common discriminatory scheme." R&R at 10 (citing *Bright v. Le Moyne Coll.*, 306 F. Supp. 2d 244, 257-58 (N.D.N.Y. 2004)). But the R&R "decline[d]" to apply "this exception in the instant case," solely because "Plaintiffs d[id] not cite any case authority within the Thid Circuit applying this exception." *Id.*

The R&R's failure to apply or consider this exception, based solely on the dearth of cases applying it in this circuit, was erroneous. *First*, courts nationwide have applied the common discriminatory scheme exception for over four decades. *See, e.g.*, *Bright*, 306 F. Supp. 2d at 257-58; *Zatarain v. WDSU-Television, Inc.*, 1995 WL 120092, at *1 (E.D. La. Mar. 17, 1995); *Baranek v. Kelly*, 630 F. Supp. 1107, 1112 (D. Mass. 1986); *Brewster v. Shockley*, 554 F. Supp. 365, 368 (W.D. Va. 1983). Defendants did not challenge the legitimacy of this exception or cite any authority rejecting it as a matter of law, either in their briefs or at oral argument. *See* D.I. 101 ("Reply") at 5. Accordingly, the R&R should have analyzed whether the exception is appropriate and whether Plaintiffs satisfy its requirements based on the facts alleged in the First Amended Complaint, D.I. 68 ("FAC"), and the EEOC charges that the court properly held were incorporated by reference.

*See* D.I. 97-3, 97-4, 97-5, 97-6, 97-7, 97-8; R&R at 11 (agreeing that Plaintiffs' EEOC charges were incorporated by reference into their complaint).[2]

*Second*, this exception is entirely consistent with Third Circuit precedent holding that the "requirements for bringing suit under [civil rights laws] should be liberally construed." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). Indeed, some courts have directly relied on *Glus* in recognizing the common discriminatory scheme exception. *See Bright*, 306 F. Supp. 2d at 258 (stating that "[a]n exception has also been created for cases in which, from the facts in the EEOC charge, the agency could have inferred that the named defendant and unnamed defendant were part of a common discriminatory scheme," and citing *Glus*, 562 F.2d at 888); *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 313 n.2 (S.D.N.Y. 2014) (same). In *Glus*, the Third Circuit held that federal exhaustion requirements should be "liberally construed" and are not intended "to serve as a stumbling block to the accomplishment of the statutory objective" of ensuring that an employer receive notice of a charge and the opportunity to conciliate. 562 F.2d at 887-88. Indeed, a worker cannot be expected to "accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, *every separate entity which in some way may have violated [the statute]*." *Id.* at 888 (emphasis added). This case illustrates the principle perfectly: RTX and its subsidiaries and business units comprise a complex firm that repeatedly changed its corporate structure (and obscured the legal names of its hiring entities from applicants), and that now seeks to wield its own corporate entanglement as a shield against liability. *See* FAC ¶¶ 38-51.

---

[2] Defendants' sole argument against the common discriminatory scheme exception was that it does not apply where the EEOC charge does not mention a particular defendant. Reply at 5. But as discussed *infra*, Plaintiffs' EEOC charges *did* repeatedly mention the non-RTX Defendants and "[t]he EEOC could easily infer RTX's units violated the ADEA," as the "job postings attached to the charge referred to those units." Opp. at 24 (citing D.I. No. 97-3, Exs. B-C); *see also* Plaintiff Bryan's Charge, D.I. No. 97-5 at 4, Ex. C; Plaintiff Beaulieu's Charge, D.I. No. 97-7, Exs. B-C.

3

*Third*, if the R&R had applied the standard for the common discriminatory scheme exception, the Court would have held that it was satisfied—and this Court should do the same here. Plaintiffs easily satisfy this exception, as "Defendants engaged in a common discriminatory scheme of publishing [discriminatory] job ads," using "centralized" hiring practices across all units as "joint employer[s]" and an "integrated enterprise." Opp. at 24 (quoting FAC ¶¶ 41-81). The EEOC could easily infer that the non-RTX Defendants had violated the ADEA together with RTX, because Plaintiffs' charges included dozens of references to RTX's subsidiaries and business units, including in the job descriptions for the positions to which Plaintiffs applied.[3]

### B. Because Plaintiffs Alleged that the Non-RTX Defendants Received Actual Notice of Their Charges, the Common Interest Exception Applies.

Next, the R&R declined to apply the common interest exception, finding that Plaintiffs did not allege that the non-RTX Defendants received actual notice of their charges. R&R at 11. But in each of their amended EEOC charges (that the FAC incorporated by reference), Plaintiffs clearly alleged that the non-RTX Defendants received actual notice, stating: "This amendment is not necessary to provide notice to RTX Corporation, Raytheon Technologies Corporation, Raytheon Company, and/or their predecessors, successors, subsidiaries, divisions, or affiliates regarding the scope of [Complainant's] claims and allegations. Indeed, [those entities] already have notice of [Complainant's] claims[.]" D.I. 97-4 at 4; D.I. No. 97-6 at 4; D.I. 97-8 at 4.

This clear statement of actual notice, based on the FAC and EEOC charges incorporated therein, is sufficient, so long as the balance of the four common interest factors weighs in favor of

---

[3] For example, one of the job descriptions attached to Mr. Goldstein's charge stated that "Collins Aerospace . . . is seeking a motivated Software Engineer," that "Collins Aerospace" is "a Raytheon Technologies [RTX] company," and that "Raytheon Technologies [RTX] is an aerospace and defense company" that "comprises four industry-leading businesses – Collins Aerospace, Pratt & Whitney, Raytheon Intelligence & Space and Raytheon Missiles & Defense." D.I. No. 97-3 at 31-34; *see also* D.I. 97-5, Ex. C; D.I. No. 97-7, Exs. B-C.

4

Plaintiffs, which it does here. *See* Opp. at 24-25. Notably, Defendants' briefs did not argue that any of those four factors are not satisfied. Instead, they only argued a lack of notice—which is wrong— and that the common interest exception does not apply to a represented party, Reply at 5, which the court properly rejected. *See* R&R at 11 n.10. Although the non-RTX Defendants challenge Plaintiffs' allegation that they received notice of the original charges, that factual dispute cannot be decided on a motion to dismiss, as "a factual dispute" over an exhaustion defense is "not properly resolved at this stage of the litigation." *Bivines v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 284 F. Supp. 3d 587, 590 (E.D. Pa. 2018); *see* Opp. at 22.

Finally, while the R&R did not state whether the non-RTX Defendants should be dismissed with or without prejudice, Plaintiffs intend to seek leave to amend their complaint to add more specific allegations about how all Defendants had actual notice of the original charges, including for purposes of relation back. Thus, should the Court reject this objection, Plaintiffs respectfully request clarification that the dismissal is without prejudice and permission to so amend. *See* Fed. R. Civ. P. 15(1)(2) (leave to amend should be "freely given when justice so requires").

### C. Both of Bryan's Charges Named All the Defendants and Were Timely.

The R&R stated that "[i]t is undisputed that Plaintiffs did not name the non-RTX Defendants in their original charges of discrimination." R&R at 8. This is inaccurate, especially as to Plaintiff Bryan. As Plaintiffs have explained, non-RTX Defendants' "names were referenced in the 'body' of the charges and they were thus 'named in the charge.'" Opp. at 23 n.23 (citing *Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 595 F.2d 711, 727, 729 (D.C. Cir. 1978)). In particular, in the narrative portion of Mr. Bryan's charge, where he described the entities who violated his rights and against whom he filed the charge, he identified not only "RTX Corporation" but also "any wholly owned subsidiaries and related or affiliated entities." D.I. 97-5.

5

The R&R also erred in ignoring Plaintiffs' argument that Mr. Bryan *did* timely exhaust his claims against the non-RTX Defendants, as fewer than 300 days had passed from the date of his last alleged job denial to the date when he filed his amended charge that expressly named the non-RTX Defendants. Opp at 22 n.21. In Bryan's original charge filed on September 27, 2024, he alleged he was denied a job he applied for on August 12, 2024. *See id*; D.I. 97-5 at 9 (Particulars at 6). As he filed an amended charge naming all Defendants on November 13, 2024 (well within 300 days, or before June 8, 2025, the earliest possible deadline to exhaust, assuming he was denied the day he applied), his claims are properly exhausted. Defendants' Reply and the R&R did not address this argument. Thus, Bryan timely exhausted as to the non-RTX Defendants.

        **D.**        **Plaintiffs Have Separately Exhausted Claims Against Raytheon Company.**

Finally, the R&R erred in dismissing Raytheon Company for lack of exhaustion, as it is undisputed that Mr. Goldstein timely exhausted his claims against Raytheon Company. Mr. Goldstein filed his first charge against Raytheon Company on August 7, 2019, D.I. 97-1, which he amended on April 29, 2021, D.I. 97-2; *see* FAC ¶ 22. On March 30, 2021, the EEOC issued a Final Determination based on Mr. Goldstein's charges naming Raytheon Company as the Respondent, D.I. 68-2, followed by a notice of right to sue on April 9, 2021. FAC ¶ 22. Thus, there is no dispute that Mr. Goldstein exhausted as to Raytheon Company.

To the extent Defendants argue Mr. Goldstein's claims based on the 2019 charge are untimely, his 2021 tolling agreement with Raytheon Technologies Corporation (now RTX and previously Raytheon Company, *see* FAC ¶¶ 38-44, 57), tolled claims for Goldstein and other potential plaintiffs regarding the "Challenged Practice" (defined to include claims raised in Mr. Goldstein's 2019 EEOC charge against Raytheon Company) from June 6, 2021 through June 6, 2024, thus tolling claims against Raytheon Company (for Mr. Goldstein and other Plaintiffs). D.I.

6

97-9; FAC ¶¶ 23-29; Opp. at 22-23. The R&R thus erred in dismissing claims against Raytheon. Given the text, purpose, and context of this agreement—to toll claims that had been exhausted against *Raytheon Company*—there is at least a factual dispute (which should not have been resolved against Plaintiffs at this stage) about whether the agreement intended to toll claims against Raytheon Company, not only as the parent but also the same business reorganized under the subsidiary with the same name. Moreover, a subsidiary can be bound by an agreement with its parent, including where, *as here*, the subsidiary's lawyer directly participated in the negotiating of the agreement. *See Chemimage Corp. v. Johnson & Johnson*, 2024 WL 3758814, at *3 (S.D.N.Y. Aug. 12, 2024); *see* D.I. 97-9, 97-10 (showing the same lawyer who signed the tolling agreement represented Raytheon Company *and* its parent). For the same reasons, the agreement tolled some of the claims Goldstein and the other Plaintiffs against asserted against the non-RTX entities in their 2023 and 2024 charges. Opp. at 22 & n.21.

**II.     Plaintiffs' ADEA Disparate Impact Claim Should Not Be Dismissed.**

The R&R erred in dismissing Plaintiffs' ADEA claims by following two out-of-circuit decisions and rejecting Plaintiffs' position that is more faithful to applicable Supreme Court and Third Circuit precedents, the ADEA's text and legislative history, and the EEOC's longstanding position, and that is supported by recent district court cases and persuasive dissents in those two out-of-circuit cases. The R&R leaned heavily on *Villarreal v. R.J. Tobacco Co.,* 839 F.3d 958, 964 (11th Cir. 2016), and *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482 (7th Cir. 2019), both of which narrowly read the ADEA's disparate impact provision (29 U.S.C. § 623(a)(2)) to apply solely to discrimination experienced "as an employee," not as an applicant. R&R at 17.

This approach is wrong. *First*, as explained in *Rabin v. PricewaterhouseCoopers, LLP*, 236 F. Supp. 3d 1126, 1130-31 (N.D. Cal. 2017), and the dissents in *Villarreal* and *Kleber*, the ADEA

7

was enacted several years after Title VII, and its disparate impact provision is *identical* to Title VII's *original* disparate impact provision that the Supreme Court has unequivocally applied to job applicants. *Compare* ADEA of 1967, 90 P.L. 202; 81 Stat. 602, Sec. 4(a)(2) (prohibiting disparate impact based on age), *with* Civil Rights Act of 1964, 88 P.L. 352; 78 Stat. 241, Title VII, Sec. 703(a)(2) (same, based on other traits). Supreme Court precedent dating back to *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), has interpreted the *exact same text* at issue here (making it unlawful to deprive "*any individual of employment opportunities or otherwise adversely affect his status as an employee*") to extend both to new applicant hiring and to other employment decisions. *Id.* at 426 & n.1, 428 (disparate impact liability applies both to requirements that defendant imposed "as a condition of employment" (*i.e.*, scores used for "initial hiring") and job "transfer[s]" (for existing employees)). According to *Griggs*, Congress prohibited (again, through the same text as the ADEA) practices that are "fair in form, but discriminatory in operation," both as to "*criteria for employment*" (*i.e.*, for applicants) and "promotion" (for employees), thereby requiring employers to "take[] into account" the "*posture and condition of the job-seeker*." *Id.* at 431 (emphasis added); *see also id.* (text requires employers to "remov[e] [] artificial, arbitrary, and unnecessary *barriers to employment*") (emphasis added).[4]

*Second*, the Third Circuit has followed *Griggs* in finding that the operative language of Section 623(a)(2) is "identical" to Title VII's disparate impact provision "[e]xcept for substitution of the word 'age,'" which strongly suggests that the Third Circuit would apply *Griggs*'s coverage of disparate impact claims for applicants to the ADEA. *Karlo v. Pittsburgh Glass Works, LLC*, 849

---

[4] As *Rabin* explained, later Supreme Court decisions also read *Griggs*'s interpretation of this text (that is identical to ADEA § 623(a)(2)) to cover job applicants. 236 F. Supp. 3d at 1130-31 (citing *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project*, 135 S. Ct. 2507 (2015)); *Connecticut v. Teal*, 457 U.S. 440, 446 (1982); *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977)).

8

F.3d 61, 69 (3d Cir. 2017). In *Karlo*, the Third Circuit relied on *Griggs* and subsequent Supreme Court precedent, including *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005), to hold that disparate impact discrimination against age-based subgroups is cognizable under the ADEA, despite contrary rulings from three of its sister circuits. *Id.* at 75.[5] The only logical inference is that, just as *Griggs* and its progeny interpreted Title VII to cover disparate impact against job applicants, the same result should follow under the ADEA based on *Karlo* and *Smith*.[6]

*Third,* Plaintiffs' interpretation comports with the best reading of the statute. As noted in *Rabin* and the *Villareal* dissent, the most natural reading of Section 623(a)(2) "plainly describes what [Defendants allegedly] did to [Plaintiffs]" here. Plaintiffs are "individual[s]" who were "deprive[d] of employment opportunities" because of practices Defendants put in place to "limit, segregate, or classify [their] employees," namely requiring them to be recent college graduates. *Rabin*, 236 F. Supp. 3d at 1130 (citing *Villarreal*, 839 F.3d at 982 (Martin, J., dissenting)).

In contrast, the R&R's interpretation (limiting the prohibition against practices that "tend

---

[5] *Smith*, in turn, relied on textual similarities between the relevant Title VII and ADEA provisions and *Griggs*'s recognition of disparate impact under Title VII to find disparate impact cognizable under the ADEA, applying the rule that "when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Id.* at 233-34, 240. Instead of relying on the majority opinion (that supports *Karlo* and Plaintiffs' view), the R&R cites to Justice O'Connor's concurrence in *Smith* (that rejected the inclusion of applicants), but her concurrence should be afforded no weight, as under her strained reading (that was rejected by the majority and Justice Scalia's competing concurrence), disparate impact is not cognizable under the ADEA *at all*. *Smith*, 544 U.S. at 248 (O'Connor, J. concurring) ("I would instead affirm … on the ground that disparate impact claims are not cognizable under the ADEA.").

[6] As noted in *Rabin*, while Title VII was amended in 1971 to expressly add "applicants," the legislative history makes clear this was not intended to change the law but rather to be "declaratory of present law," S. Rep. No. 92-415 at 43 (1971), and "fully in accord" with *Griggs*'s pre-amendment reading of Title VII's analogous text to protect both employees *and applicants*. *Rabin*, 236 F. Supp. 3d at 1131 ("[T]he amendment supports, rather than detracts from, an interpretation of the ADEA as likewise covering both employees and applicants.").

9

to deprive any individual of employment opportunities" to a "subset" of practices that "adversely affect his status as an employee"), results in the absurd conclusion that the text does not apply to hiring at all (despite purporting to protect "employment opportunities") or that the only people who can bring hiring discrimination claims are those who have already been hired. *Kleber*, 914 F.3d at 507 (7th Cir. 2019) (Hamilton, J., dissenting) (stating that under this nonsensical view, the ADEA's protection of "employment opportunities" prohibits practices with "disparate impacts in firing older workers and in promoting, paying, and managing them, *but not in hiring them*!").

*Fourth*, Plaintiffs' reading best reflects Congress' intent in enacting the ADEA to protect not just current employees, but also (and especially) older job applicants are shut out of the job market due to age bias. As the ADEA's statement of purpose noted, "older workers find themselves disadvantaged in their efforts . . . to regain employment when displaced from jobs," and struggle with "high" unemployment, "especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability." 29 U.S.C. § 621(a)(1), (a)(3); *see Kleber*, 914 F.3d at 507 (Hamilton, J., dissenting) ("A central goal—arguably the most central goal—of the [ADEA] was to prevent age discrimination *in hiring*"). The Third Circuit has taken the "ADEA's remedial purpose" seriously and has not hesitated to break ranks with sister circuits when ne to effectuate the ADEA's goals of eradicating age bias. *Karlo*, 849 F.3d 61, 74-75 (diverging from other circuits where to hold otherwise "would deny redress for significantly discriminatory policies that affect employees most in need of the ADEA's protection"). Given this clear congressional intent, the weight of Supreme Court, Third Circuit and other persuasive precedent, and the ADEA's text, the Court should affirm that the ADEA authorizes disparate impact claims for applicants.

## CONCLUSION

In sum, the Court should overrule the portions of the R&R identified above.

10

| | |
|---|---|
| Dated: September 18, 2025 | **BLOCK & LEVITON LLP** |
| *Of Counsel* | */s/ Kimberly A. Evans* |
| | Kimberly A. Evans (#5888) |
| Adam T. Klein* | 222 Delaware Avenue, Suite 1120 |
| Chauniqua Young* | Wilmington, DE 19801 |
| Zarka Dsouza* | (302) 499-3600 |
| **OUTTEN & GOLDEN LLP** | kim@blockleviton.com |
| 685 Third Avenue, 25th Floor | |
| New York, NY 10017 | *Counsel for Plaintiffs and the* |
| (212) 245-1000 | *Proposed Class Collective* |
| atk@outtengolden.com | |
| cyoung@outtengolden.com | |
| zdsouza@outtengolden.com | |

Mikael Rojas*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Washington DC 20005
(202) 914-5097
mrojas@outtengolden.com

Moira Heiges-Goepfert*
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
(415) 638-8800
mhg@outtengolden.com

Peter Romer-Friedman*
Patrick David Lopez*
David Berman*
**PETER ROMER-FRIEDMAN LAW PLLC**
1629 K Street, NW, Suite 300
Washington, DC 20006
(202) 355-6364
peter@prf-law.com
david@prf-law.com

Rebecca Rodgers*
Louis Lopez*
Samantha Wehrle*
Lauren Naylor*
**AARP FOUNDATION LITIGATION**
601 E Street, NW
Washington, DC 20049
(202) 434-6983
rrodgers@aarp.org
llopez@aarp.org
sgerleman@aarp.org
lnaylor@aarp.org

*Admitted Pro Hac Vice*

12