IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RTX CORPORATION (f/k/a Raytheon Technologies, f/k/a Raytheon Company)[1], RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 24-1169-JLH-SRF <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM ORDER

Pending before the Court are the parties' Objections (D.I. 128, 129) to Judge Fallon's September 4, 2025 Report & Recommendation (D.I. 127 ("R&R")). Having reviewed the parties' submissions (D.I. 83, 84, 93, 94, 96, 97, 101, 108, 109, 110, 111, 112, 120, 121, 126, 127, 128, 129, 130, 133, 134) and the applicable law, the R&R will be adopted.

1. I write primarily for the parties and assume familiarity with the First Amended Complaint (D.I. 68 ("FAC")) and the R&R. I will recite only those factual allegations (as alleged in the FAC and documents incorporated in the FAC) necessary to the analysis below. The gravamen of the FAC is that Defendants violated the Age Discrimination in Employment Act

---

[1] As explained further below, RTX Corporation was not formerly known as Raytheon Company.

("ADEA") by advertising and rejecting Plaintiffs for job postings requiring applicants to be recent college graduates or to have only a limited amount of work experience.

2. I review the objected-to portions of the R&R *de novo*. *See* 28 U.S.C. § 636(b)(1)(C).

**Plaintiffs' First Objection to the R&R**

3. Plaintiffs first object to the R&R's recommendation that Defendants' motion to dismiss be granted with respect to Plaintiffs' claims against the "non-RTX Defendants." (D.I. 129 at 1–7; R&R at 7–12.) The non-RTX Defendants are Raytheon Company, Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc., and ARINC, Inc. (FAC ¶¶ 57–66; R&R at 1.)

4. I'll start with the claims against Raytheon Company. Plaintiff Goldstein's first EEOC charge ("First Charge"), filed on August 7, 2019, and assigned number 540-2019-03585, named only "RAYTHEON COMPANY." (FAC ¶ 22; D.I. 97, Ex. 1.) On April 3, 2020, Raytheon Company and United Technologies Corporation ("UTC") consummated a merger of equals. (D.I. 94, Ex. 6 at 68.) As a result, "Raytheon Company became a wholly owned subsidiary of UTC, and UTC was renamed 'Raytheon Technologies Corporation.'" (*Id.*) Thus, as of April 3, 2020, the legal entity named "Raytheon Company" remained the same legal entity with the same name, but was now wholly owned by Raytheon Technologies Corporation, a different legal entity (formerly UTC). (*Id.*; *see also id.* Ex. 21.) On July 17, 2023, Raytheon Technologies Corporation changed its legal name to "RTX Corporation." (FAC ¶ 40; RTX Corporation Form 10-K for the year ended December 31, 2023, at 33.)

5. On April 29, 2021, Goldstein amended his First Charge. (FAC ¶ 22; D.I. 97, Ex. 2.) In a cover letter to the amended charge, Goldstein (through his counsel) stated that he was "writing to provide the Commission with Mr. Goldstein's amended charge of discrimination

2

against Raytheon Company (which is now known as Raytheon Technologies)." (D.I. 97, Ex. 2 at 1.) The body of the document is titled "Amended Charge of Mark Goldstein Against Raytheon Company," and goes on to simply refer to "Raytheon." (*Id.* at 2.) As explained above, the assertion that "Raytheon Company" was "now known as Raytheon Technologies" was incorrect— Raytheon Company remained Raytheon Company, and the entity now known as Raytheon Technologies Company was formerly United Technologies Corporation, not Raytheon Company. (D.I. 94, Ex. 5 at 202.) The FAC alleges that the EEOC issued a right to sue letter with respect to the First Charge on April 9, 2021 (FAC ¶ 22), although another document in the record states that Plaintiff Goldstein received the EEOC right to sue letter on April 3, 2021, (D.I. 97, Ex. 9 at 1). Either way, Plaintiff had 90 days after receiving the right to sue letter to file a lawsuit in district court, *see* 29 U.S.C. § 626(e), and so I'll assume for purposes of the argument that the 90-day clock to sue Raytheon Company had begun ticking at least by April 12, 2021.[2] I also assume for purposes of the argument that the 90-day clock to sue Raytheon Company was tolled from June 6, 2021, to June 6, 2024, under the Tolling Agreement.[3] This case was filed on June 11, 2024, which

---

[2] When the calculation of a time period depends on the receipt of a mailed document and the date of actual receipt of the document is not known, courts presume the document was received 3 days after it was issued. *See* Fed. R. Civ. P. 6(d); *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 222 (3d Cir. 2024).

[3] Defendants contend that the Tolling Agreement applied only to claims against Raytheon Technologies Corporation, not Raytheon Company. (D.I. 134 at 7–8.) Although this argument has some facial appeal, considered in context it is implausible. At the time the Tolling Agreement was signed in June 2021, Raytheon Company and Raytheon Technologies Corporation were separate entities, and Goldstein's First Charge was asserted against Raytheon Company only. The Tolling Agreement only could have applied to Goldstein's First Charge against Raytheon Company, because there was no pending charge against Raytheon Technologies Corporation. The Tolling Agreement itself confirms this by specifically referring to "Charge No. 540-2019-03484," which is the First Charge against Raytheon Company. (D.I. 97, Ex. 9 at 1.) If Defendants were correct that the Tolling Agreement applied only to claims asserted in an EEOC charge against Raytheon Technologies Corporation, then the agreement would have no legal effect because there was no EEOC charge against Raytheon Technologies Corporation at the time.

3

presumably would have been timely as to claims against Raytheon Company, except the initial complaint in this case did not name Raytheon Company as a Defendant. Raytheon Company was not named as a Defendant until the FAC, filed on November 20, 2024. So the § 626(e) period ran at least from approximately April 12, 2021, to June 6, 2021 (approximately 55 days), and then from June 6, 2024, to November 20, 2024 (approximately 167 days). That is well beyond § 626(e)'s 90-day limit.[4] So the claims against Raytheon Company must be dismissed under § 626(e).

6. That leaves the claims against the non-RTX Defendants other than Raytheon Company. None of Plaintiffs' EEOC charges mentioned these non-RTX Defendants until Goldstein amended his second EEOC charge in November 2024, suggesting that the claims against the non-RTX Defendants were not exhausted when Plaintiffs added them as Defendants to this action in the FAC in November 2024. *See Schafer v. Bd. of Pub. Educ. of Sch. Dist.*, 903 F.2d 243, 251–52 (3d Cir. 1990). Plaintiffs contend that two exceptions to the exhaustion requirement apply: the so-called "common discretionary scheme" exception and the "common interest" exception. (D.I. 129 at 2–5.) I decline to apply the so-called common discretionary scheme exception because (1) the Third Circuit has never adopted it, and (2) the requirements for an exception to the exhaustion requirement in the Third Circuit are well established and do not

---

[4] Plaintiffs' only response to Defendants' argument that the claims against Raytheon Company are untimely is that Raytheon Company became Raytheon Technologies Corporation which became RTX Corporation, so 90 days have not elapsed because the original complaint was filed against RTX Corporation in June 2024. (D.I. 96 at 22 n.20.) As explained above, that's incorrect—Raytheon Company did not become Raytheon Technologies Corporation or RTX Corporation, and the original complaint did not name as a defendant Raytheon Company, a separate entity from Raytheon Technologies Corporation/RTX Corporation (which Plaintiffs have separately named as a Defendant in this action).

As Plaintiffs make no other argument in support of the timeliness of the claims against Raytheon Company, those claims will be dismissed.

encompass the so-called discretionary scheme exception. *See Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) (setting forth test for determining whether a plaintiff's claims against a party not named in an EEOC charge should be exempted from the exhaustion requirement); *Schafer*, 903 F.2d at 252 (explaining that *Glus* applies only where the unnamed party "has notice and when there is a commonality of interest between the unnamed party and the named party"). And the common interest exception does not apply because the FAC (and the documents it incorporates by reference) do not plausibly allege that these non-RTX Defendants received notice.[5] *See Sullivan v. DiSalle*, No. 25-366, 2025 WL 3454298, at *6–7 (W.D. Pa. Dec. 2, 2025) (rejecting argument that amendment to EEOC charge should relate back to original charge where the amendment added a new respondent); *Webb v. Int'l Bhd. of Elec. Workers*, No. 04-3613, 2005 WL 2373869, at *8 (E.D. Pa. Sept. 23, 2005) (same).

7. Plaintiffs also contend that Plaintiff Bryan's claims against the non-RTX Defendants are exhausted. I disagree. Plaintiffs argue that Bryan named the non-RTX Defendants in his September 2024 EEOC charge, but the R&R correctly recognized that the September 2024 charge does not name any of the non-RTX Defendants. (R&R at 9 n.9; D.I. 97, Ex. 5.)

---

[5] In arguing that the non-RTX Defendants received notice, Plaintiffs point solely to the statement in their amended EEOC charges that "This amendment is not necessary to provide notice to RTX Corporation, Raytheon Technologies Corporation, Raytheon Company, and/or their predecessors, successors, subsidiaries, divisions, or affiliates regarding the scope of [Complainant's] claims and allegations. Indeed, [those entities] already have notice of [Complainant's] claims[.]" (D.I. 97, Ex. 4 at 4; Ex. 6 at 4; Ex. 8 at 4.) But the charges do not explain when these unnamed parties received notice or how they should be considered to have received notice. Moreover, Plaintiffs cite no law suggesting that an EEOC charge against one entity that merely refers generically to that entity's subsidiaries counts as notice to those unnamed subsidiaries. Plaintiffs' Objection filing did not cite to any paragraphs of the FAC nor any other portion of Plaintiffs' amended EEOC charges in support of Plaintiffs' contention that the non-RTX Defendants received notice. (D.I. 129 at 4–5.)

8. Accordingly, I will overrule Plaintiffs' first objection, and I will adopt the recommendation in the R&R to grant Defendants' motion to dismiss with respect to the claims against the non-RTX Defendants.

**Plaintiffs' Second Objection to the R&R**

9. Plaintiffs also object to the R&R insofar as it recommended that Plaintiffs' ADEA disparate impact claim (Count III) be dismissed. (D.I. 129 at 7–10; R&R at 16–17.) The R&R agreed with Defendants that non-employees cannot assert disparate impact claims under the ADEA. Reviewing the issue *de novo*, I agree with the Seventh and Eleventh Circuit Courts of Appeals that the ADEA does not authorize non-employees like Plaintiffs to bring disparate impact claims. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 485 (7th Cir. 2019) (en banc); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) (en banc).

10. In relevant part, the ADEA makes it unlawful for an employer "to limit, segregate, or classify *his employees* in any way which would deprive or tend to deprive any individual of employment opportunities *or otherwise adversely affect his status as an employee*, because of such individual's age." 29 U.S.C. § 623(a)(2) (emphases added). The statute's plain language "proscribes certain conduct by employers and limits its protection to employees." *Kleber*, 914 F.3d at 482.

11. Plaintiffs point out that the statute refers to "any individual," but that doesn't support their argument. By using the catch-all phrase "or otherwise," Congress made "depriv[ing] or tend[ing] to deprive any individual of employment opportunities" a subset of "adversely affect[ing] [the individual's] status as an employee." *Villarreal*, 839 F.3d at 963. In other words, "the use of 'or otherwise' serves to stitch the prohibitions and scope of [§ 623(a)(2)] into a whole, first by making clear that the proscribed acts cover all conduct 'otherwise affect[ing] his status as

6

an employee,' and, second, by limiting the reach of the statutory protection to an individual with 'status as an employee.'" *Kleber*, 914 F.3d at 482–83 (quoting *Villarreal*, 839 F.3d at 964).

12. The surrounding statutory provisions also confirm that when Congress intends to include mere job applicants, it knows how to do so. A neighboring provision makes it unlawful for a labor organization to take certain actions that "would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee *or as an applicant for employment*, because of such individual's age." 29 U.S.C. § 623(c)(2) (emphasis added). Section (d) is similar. 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . ."). And § 623(a)(1) makes it unlawful for an employer to "refuse to hire" on the basis of age. "[W]hen 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—th[e] Court 'presumes' that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Section 623(a)(2) only includes employees, and so Plaintiffs' second objection is overruled. Plaintiffs' ADEA disparate impact claims (which rely on § 623(a)(2)) will be dismissed.

**Defendants' First Objection to the R&R**

13. I next consider Defendants' Objections to the R&R (D.I. 128). Defendants first object to the R&R's recommendation that the Court deny Defendants' motion to dismiss with respect to the FAC's ADEA discriminatory advertising claim (Count I). (D.I. 128 at 2–5; R&R at 12–14.) Section 623(e) of Title 29 makes it unlawful for an employer or employment agency to publish any employment advertisement "indicating any preference, limitation, specification, or discrimination, based on age." I agree with the R&R that the FAC plausibly alleges a violation of

7

the statute, as it alleges that the challenged employment advertisements use terms such as "Recent Graduate" or "New Graduate," and require limited experience, such as "12 months or less of relevant professional work experience." (*See, e.g.*, FAC ¶¶ 71–74, 86–87, 102, 110, 118, 155; D.I. 94, Ex. 8; D.I. 97, Ex. 4 at 17–106, Ex. 8 at 17–117.) *Cf.* 29 C.F.R. § 1625.4(a) ("Help wanted notices or advertisements may not contain terms and phrases that limit or deter the employment of older individuals. Notices or advertisements that contain terms such as 25 to 35, young, college student, recent college graduate, boy, girl, or others of a similar nature violate the Act unless one of the statutory exceptions applies."); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611–12 (1993) (explaining that in certain cases pension status could be a "proxy for age" and that "an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination").[6]

**<u>Defendants' Second Objection to the R&R</u>**

14. Defendants next object to the R&R's recommendation that the Court deny Defendants' motion to dismiss with respect to Plaintiffs' ADEA disparate treatment claim (Count II). (D.I. 128 at 5–7; R&R at 14–16.) Defendants make the same argument here as in the previous objection. I reject it here too. The FAC alleges facts plausibly suggesting that Defendants used

---

[6] Defendants' objection erroneously asserts that the R&R "relies entirely on the EEOC's view" and contends that the Court should not defer to the EEOC's regulation. But the R&R did not rely solely on the EEOC's regulation. (R&R at 12 ("The FAC plausibly alleges that Defendants' job postings and advertisements discriminate based on age by restricting applicants to recent graduates or individuals with limited work experience." (citing FAC ¶¶ 70–73, 219–20)).) And neither do I. To be clear, my ruling is that Defendants' motion to dismiss Count I should be denied because the FAC alleges facts plausibly suggesting that Defendants relied on a proxy for age, in violation of 29 U.S.C. § 623(e).

"recent graduate" and "limited experience" requirements as a proxy for age and therefore plausibly alleges an ADEA disparate treatment claim.[7]

**Defendants' Third Objection to the R&R**

15. Defendants also object to the R&R's recommendation that the Court deny Defendants' motion to dismiss with respect to Plaintiff Bryan's claims under California law (Counts X, XI, XII). (D.I. 128 at 8; R&R at 19–20.) Defendants rely on a statutory provision providing that "hiring or promotion on the basis of experience and training, . . . or hiring under an established recruiting program from high schools, colleges, universities, or trade schools do not, in and of themselves, constitute unlawful employment practices." Cal. Gov't Code § 12940(a)(5)(A). The problem with Defendants' argument is that the FAC does not allege that Defendants' practices "in and of themselves" constitute unlawful employment practices. Instead, as explained above, the FAC alleges facts plausibly suggesting that Defendants used these practices as a proxy for intentional age discrimination. In other words, the FAC alleges facts plausibly suggesting that the § 12940(a)(5)(A) safe harbor does not apply. On this issue, the R&R will be adopted and Defendants' motion to dismiss Counts X, XI, and XII will be denied.

**Defendants' Fourth Objection to the R&R**

16. Finally, Defendants object to the R&R's recommendation that the Court grant Plaintiffs' motion for court-authorized notice under 29 U.S.C. § 216(b) with respect to applicants

---

[7] Defendants' cited authorities are inapt. For starters, none are binding on the Court and the Court does not find them persuasive. They are also distinguishable. In *Arafat v. School Board of Broward County*, 549 F. App'x 872 (11th Cir. 2013), the plaintiff alleged "only a single remark that could possibly constitute age discrimination—a remark at a job fair that [defendant] prefers 'fresh graduates.'" *Id.* at 875. Here, the FAC alleges far more than a single stray remark. And both *Grossman v. Dillard Dep't Stores, Inc.*, 109 F.3d 457 (8th Cir. 1997) and *Gyda v. F.B.I. Crime Lab'y*, No. 13-7591, 2015 WL 4077009 (E.D. Pa. July 6, 2015) are summary judgment decisions based on a full factual record.

9

who applied to one or more recent graduate positions. The ADEA incorporates the enforcement provisions of the Fair Labor Standards Act, including its collective action provision, 29 U.S.C. § 216(b). The Third Circuit has explained that

> so-called conditional certification[] requires a named plaintiff to make a "modest factual showing"—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members. The "sole consequence" of conditional certification is the dissemination of court-approved notice to potential collective action members. Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process.

*Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (citations and footnotes omitted).[8]

17. Reviewing the issue *de novo*,[9] the Court concludes that Plaintiffs have made a modest factual showing that Plaintiffs and the putative collective action members were all subject

---

[8] Defendants point to recent cases in the Fifth, Sixth, and Seventh Circuits appearing to heighten the factual showing required for court-authorized notice. *See Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025) ("[T]o secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated."); *Clark v. A&L Homecare & Training Ctr., L.L.C.*, 68 F.4th 1003, 1011 (6th Cir. 2023) ("[W]e hold that, for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."); *Swales v. KLLM Transports Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021) (rejecting a rigid standard and explaining that district courts "should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs"). The Court appreciates the rationale underlying these out-of-circuit cases. However, unless and until these standards are adopted by the Third Circuit, the Court will instead apply binding Third Circuit caselaw. *See, e.g., Kaynaroglu v. Avis Budget Grp., Inc.*, 773 F. Supp. 3d 169, 186–87 (D.N.J. 2025) (rejecting argument that the court should apply out-of-circuit standard); *Burrell v. Lackawanna Recycling Ctr., Inc.*, No. 14-1891, 2024 WL 2055003, at *5–6 (M.D. Pa. May 6, 2024) (collecting cases).

[9] The parties dispute whether the Court should review this issue under the *de novo* standard or the clearly erroneous or contrary to law standard. (D.I. 128 at 2, 2 n.1 (asserting that the *de novo* standard applies to all issues); D.I. 133 at 7 n.6 (arguing that conditional certification is non-

to a uniform policy of discriminatory treatment against older applicants for recent graduate positions. Plaintiffs have provided evidence of Defendants' numerous job postings requiring applicants to be recent graduates. (D.I. 94, Ex. 8; D.I. 97, Ex. 4 at 17–106, Ex. 8 at 17–117.) After entering their dates of graduation and/or transcripts, Plaintiffs' applications were denied, sometimes just mere minutes after submission. The record further shows that Defendant RTX maintains "enterprise-wide talent acquisition strategies and processes enabled by technology," and that job descriptions for each business unit are posted "on RTX Corporation's career website." (D.I. 94, Ex. 11 ¶¶ 2, 4.) Thus, Plaintiffs have presented more than mere speculation that Plaintiffs and the collective action members were similarly subjected to ADEA violations.

18. Defendants contend that "[t]he job postings at issue varied on how they defined recency (*e.g.*, graduation within 12 or 24 months) and on other basic qualifications (*e.g.*, particular concentrations or coursework)—which will necessitate an individual evaluation of each resume against each job posting, just to develop the notice list." (D.I. 128 at 8–9.) This argument might have greater force at the final certification stage where the Court must make "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). But Defendants demand too much at this early stage. For now, the Court determines that Plaintiffs have made the modest factual showing necessary for court-authorized notice. Defendants are free to renew their arguments at the final certification stage. *See, e.g.*, *Archer v. Defenders, Inc.*, No. 18-470, 2018 WL 5962470,

---

dispositive and therefore the clearly erroneous or contrary to law standard applies).) The Court need not resolve this dispute because, even applying the more rigorous *de novo* review, the Court concludes that notice should be authorized in the same manner as recommended by the R&R.

at *3 (D. Del. Nov. 14, 2018) (collecting cases and explaining that "courts in this Circuit regularly resolve issues of individualized inquiries at stage two of the certification process").

**Recommendations Not Objected To**

19. The parties did not object to many of the R&R's recommendations. Seeing no clear error, the Court adopts the following recommendations:

- That Defendants' motion to dismiss the FAC for lack of standing under Rule 12(b)(1) be denied. (R&R at 4.)

- That Defendants' motion to dismiss Counts IV to VI of the FAC for violations of the Massachusetts Fair Employment Practices Act be denied. (R&R at 17.)

- That Defendants' motion to dismiss Counts VII to IX of the FAC be granted to the extent that those claims are based on Goldstein's hiring allegations predating July 1, 2020. (R&R at 19.)

- That Defendants' motion to dismiss Plaintiffs' claims under the Virginia Human Rights Act be denied to the extent that those claims are based on positions Goldstein allegedly pursued after July 1, 2020. (R&R at 19.)

- That Defendants' motion to dismiss Counts X to XII of the FAC be granted to the extent those claims are brought by Goldstein. (R&R at 19.)

- That Plaintiffs' motion for court-authorized notice be denied with respect to deterred applicants. (R&R at 24.)

**Disputes About Form of Notice**

20. One final note is in order. The R&R recommended that the Court "order the parties to meet and confer on the proper form and content of the notice to be sent to potential opt-ins." (R&R at 26.) The parties have indicated that they have met and conferred but continue to have

12

disputes. (D.I. 130.) The parties further indicated that the Court's ruling on the parties' objections might help them resolve some of those disputes. (*Id.*) Subsequently, Judge Fallon ordered that "to the extent the parties are unable to reach agreement on the collective notice procedures, they may renew their joint request for a briefing schedule at the appropriate time." (D.I. 131.) The parties should proceed before Judge Fallon accordingly.

**Conclusion**

For the reasons above, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Objections (D.I. 129) are OVERRULED.

2. Defendants' Objections (D.I. 128) are OVERRULED.

3. The R&R (D.I. 127) is ADOPTED as modified by this Order.

4. Defendants' Motion to Dismiss (D.I. 82) is GRANTED-IN-PART and DENIED-IN-PART:

    a. The motion is GRANTED with respect to claims against the non-RTX Defendants. All claims against the non-RTX Defendants are DISMISSED.

    b. The motion is GRANTED with respect to Count III of the FAC. Count III is DISMISSED.

    c. The motion is GRANTED with respect to Counts VII to IX to the extent the claims are based on Goldstein's applications for positions prior to July 1, 2020. Those claims are DISMISSED.

    d. The motion is GRANTED with respect to Counts X to XII to the extent those claims are brought by Goldstein. Those claims are DISMISSED.

    e. All dismissed claims are DISMISSED WITHOUT PREJUDICE. Plaintiffs are granted leave to amend the FAC to address the above-identified deficiencies within 14 days.

    f. The motion is DENIED in all other respects.

5. Plaintiffs' Motion for Court-authorized Notice Pursuant to 29 U.S.C. § 216(b) (D.I. 92) is GRANTED-IN-PART and DENIED-IN-PART:

14

a. The motion is GRANTED with respect to Plaintiffs' request for conditional certification with respect to individuals who, from October 11, 2018 onward, (i) applied to and were denied at least one Recent Graduate Position; (ii) met the basic qualifications for such position; and (iii) were aged 40 or older at the time they applied.

b. The motion is DENIED with respect to Plaintiffs' request for conditional certification with respect to individuals over age 40 who were deterred from applying for a Recent Graduate Position.

c. The motion is DENIED WITHOUT PREJUDICE to renew with respect to Plaintiffs' request for approval of the proposed Notice and Consent to Join Form.

d. The motion is GRANTED with respect to Plaintiffs' request to disseminate notice to the proposed collective members via U.S. mail and email.

e. The motion is DENIED WITHOUT PREJUDICE to renew Plaintiffs' request to disseminate notice to the proposed collective members via text message and online publication notice.

Dated: December 29, 2025

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE

15