**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,

Defendants.

C.A. No. 24-1169-~~JTL~~JLH-SRF

**JURY TRIAL DEMANDED**

## ~~FIRST~~SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Mark H. Goldstein, Ducamp Beaulieu, and John Bryan, on behalf of themselves and other similarly situated individuals, by and through their attorneys, allege as follows:

## INTRODUCTION

1. This is a collective and class action brought by Plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, alleging that Defendants RTX Corporation, formerly Raytheon Technologies Corporation, and formerly Raytheon Company (collectively, "RTX"), and RTX's subsidiaries, Raytheon Company (formerly Raytheon Intelligence & Space and Raytheon Missiles & Defense), Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc., and ARINC Inc. (collectively, "Defendants"), violated the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.*, ("ADEA"), the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B, § 4, *et*

*seq.* ("MFEPA" or "151B"), the Virginia Human Rights Act, Va. Code Ann § 2.2-3900 *et seq.* ("VHRA"), and the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.*, Cal. Code of Reg. Tit. 2, Sec. 11000-11141 ("FEHA") through their nationwide pattern, practice, and/or policy of discriminating against older workers (defined as those who are 40 years of age or older) in their hiring processes.[1]

1.    RTX, together with its business units and subsidiaries, is the world's largest aerospace and defense company, with over 185,000 employees worldwide and approximately $69 billion in revenues in 2023.

2.    RTX is responsible for procuring workers for itself and its business units and subsidiaries, and it prides itself on attracting and retaining younger workers. RTX publicly touts to prospective investors its efforts to build a youthful talent pipeline, including by focusing on "early career hiring."

3.    In furtherance of RTX's goal of hiring younger workers, RTX and its subsidiaries, including but not limited to the named Defendants, reserve many positions *exclusively* for recent college graduates, *i.e.*, applicants who graduated in the prior year or two (or have yet to graduate) or applicants who have a college degree and less than 12 or 24 months of work experience ("recent college graduates"). RTX's recent college graduate hiring requirement intentionally and effectively excludes nearly all older workers from qualifying for, competing for, and obtaining many jobs at RTX and its businesses. RTX and its subsidiaries also routinely publish postings for jobs where a primary basic qualification is being a recent college graduate, thereby unlawfully indicating a

---

[1] Hereinafter, as used in this Complaint, "older workers" refers to workers who are 40 years of age or older.

3

preference for younger workers, discriminating against older workers and deterring older workers from applying.

> **Formatted:** Font: 12 pt
>
> **Formatted:** Normal, Left, Indent: Left: 0", Right: 0", Space Before: 0 pt, Tab stops: 1.17", Left

5.3.     RTX considers itself and its businesses to be "one team with a united vision and shared set of values that drives everything we do"[2] Upon information and belief, RTX develops, promulgates, and directs the hiring and personnel policies challenged herein, which have been adopted by all of its subsidiaries, including all Defendants.

4.     In April 2020, Raytheon Company merged with United Technologies Company to create Raytheon Technologies Corporation, which was renamed RTX Corporation in July 2023. Since that time, RTX Corporation, Raytheon Technologies Corporation, and their lawyers and human resources departments have routinely represented, acted on behalf of, coordinated with, controlled, and acted as agents (with actual and apparent authority) of RTX Corporation's subsidiaries and business units or segments when investigating, evaluating, engaging in compliance efforts, and responding to legal claims that relate to one or more subsidiaries or business units of RTX Corporation or Raytheon Technologies Corporation, including the legal claims that the Plaintiffs have asserted against all Defendants since 2019 through Plaintiffs' discrimination charges and this action. Those subsidiaries and business units include Raytheon/Raytheon Company, Collins Aerospace, and Pratt & Whitney.

5.     Since April 2020, in-house employment lawyers for RTX Corporation and/or Raytheon Technologies Corporation have concurrently and personally represented, provided counsel for, worked directly for, and acted as agents (with actual and apparent authority) of RTX Corporation's and Raytheon Technologies Corporation's subsidiaries and business units, such as Raytheon/Raytheon Company, Collins Aerospace, and Pratt & Whitney.  In-house counsel have engaged in litigation management, compliance efforts, administrative changes, discovery management, human resources, and investigations

---

[2] RTX 2023 Environmental, Social, and Governance Report ("RTX 2023 ESG") at 3, https://prd-sc102-cdn.rtx.com/-/media/rtx/social-impact/our-esg-vision/esg-2024/report/2023-rtx-esgreport.pdf?rev=b3a0440a97b941e0b0bf077c42af94d2 (last visited November 18, 2024).

for all of RTX Corporation's and Raytheon Technologies Corporation's subsidiaries and business units with respect to the legal claims that the Plaintiffs have asserted against RTX Corporation, Raytheon Technologies Corporation, Raytheon Company, and the other Defendants since 2019. Upon information and belief, in-house counsel have engaged in the same types of efforts on behalf of RTX Corporation's and Raytheon Technologies Corporation's subsidiaries and business units in response to other claims of discrimination.

6.       Upon information and belief, when lawyers for RTX Corporation or Raytheon Technologies Corporation received information about the Plaintiffs' legal claims asserted or brought against the subsidiaries or business units of either RTX or Raytheon Technologies Corporation, they responded to that information as counsel for the subsidiaries or business units, and not just as counsel for RTX Corporation or Raytheon Technologies Corporation.

7.       Upon information and belief, when outside counsel have represented RTX Corporation or Raytheon Technologies Corporation with respect to legal claims that relate to or are asserted or brought against the subsidiaries or business units of RTX Corporation or Raytheon Technologies Corporation, those lawyers received and responded to that information as counsel for the subsidiaries or business units, and not just as counsel for RTX or Raytheon Technologies Corporation, including by producing voluminous information to the Equal Employment Opportunity Commission on Recent Graduate Positions.

6.8.       Despite an ongoing labor shortage since at least 2020, a documented need for qualified employees, and a finding from the Equal Employment Opportunity Commission ("EEOC") in 2021 that RTX's recent college graduation hiring practices violate the federal Age Discrimination in Employment Act, Defendants have continued to reject and deter qualified older applicants for many positions simply because they are not recent college graduates.

7.9.       Defendants' efforts to cultivate a younger workforce have proven successful. In May

5

2023, RTX's former global head of talent acquisition noted that roughly 25% of all new hires were new or recent college graduates, a share that has grown in recent years.[3][3] And through Defendants' recent college graduate hiring practices and advertisements described herein, the vast majority of employees hired for many positions at Defendants have been younger workers.

8. Defendants make their preference for younger workers known at the very outset of the hiring process through exclusionary language and eligibility requirements in certain job

---

[3] *See* Jennifer Liu, *The top 10 buzziest companies Gen Z wants to work for—none of them are in Big Tech, says new report*, CNBC (May 1, 2023), https://www.cnbc.com/2023/05/01/top-10-buzziest-companies-gen-z-wants-to-work-fornone-are-big-tech.html#:~:text=Raytheon%20is%20the%20biggest%20employer,that's%20grown%20in%20recent%20years (last visited November 18, 2024).

10.        advertisements. Many of Defendants' job ads use targeted phrases such as "recent college graduate," "new college graduate," "new graduate," or "recent graduate" in the position's title and/or job description and qualifications to disqualify older applicants or deter older applicants from applying.

9.11.        These and other job postings for positions with Defendants often require applicants to have graduated from college or graduate school within a recent time period or to have less than one or two years of work experience to meet the "basic qualifications" for the job, and they often require applicants to provide a copy of their most recent college transcript and to list their month and year of college graduation. Such job postings for U.S.-based, non-internship or temporary positions requiring or preferring a recent graduation date and/or setting a restrictive maximum period of work experience (*i.e.*, no more than 12 to 24 months of relevant work experience for applicants with college or graduate school degrees) are referred to as "Recent Graduate Positions" throughout this Complaint.

10.12.        The language and content of these job advertisements discouragesdiscourage and detersdeter many older workers from even applying for Recent Graduate Positions and prevents older workers who do apply from advancing in the hiring process because too much time has passed since they graduated from college and/or entered the workforce for them to meet the "basic qualifications" of these jobs. In other words, even if older workers meet every other criterion for these positions, they are simply "too old" to meet the graduation date or work experience requirements for the positions.

11.13.        For Recent Graduate Positions, the vast majority of qualified older workers are categorically screened out by Defendants solely based on their year of college graduation, which RTX requires to be provided with their applications, either by an automated system or by an employee who can easily estimate an applicant's age with such information.

12.        Defendants' practices and policies intentionally favor younger applicants to the detriment of older workers for the Recent Graduate Positions. In addition, these practices and policies

7

14.       have a statistically significant disparate impact on older workers, and they cannot be justified by a reasonable factor other than age and cannot be justified by business necessity. Defendants have long known that the vast majority of recent college graduates are under the age of 40, that the vast majority of people who are 40 years or older are not recent graduates, and that people under 40 years of age are far more likely than people who are 40 years or older to be recent graduates.

13.15.    Plaintiffs are some of the many older workers adversely impacted by Defendants' discriminatory practices with respect to Recent Graduate Positions. Plaintiffs have applied to numerous Recent Graduate Positions at Defendants. For each position, Plaintiffs met all the qualifications, except they were not recent college graduates and did not have less than 12 or 24 months of relevant work experience. Despite the fact that Plaintiffs have been genuinely interested in positions with Defendants, committed to relocating, if necessary, and have skills that Defendants need to address a years'-long labor shortage, Defendants have not hired Plaintiffs for any of the positions to which they applied, have not offered them a formal interview, and have failed to seriously consider Plaintiffs' applications based on their age.

14.16.    In response to Mr. Goldstein's 2019 discrimination charge filed with the EEOC, the EEOC issued a Final Determination Letter dated March 30, 2021, attached as **Exhibit A** to this Complaint. That Letter declared that the EEOC's "investigation revealed that [Mr. Goldstein] was denied the opportunity to be considered for the [Recent Graduate Positions] he had applied for *because of his age, and not because he did not meet the minimum qualifications required for the jobs*." Ex. A at 1 (emphasis added). It also found that RTX's discriminatory advertisements had violated the ADEA, explaining that:

> EEOC believes [*RTX's] job advertisements included language that violates the ADEA* in that it indicated a hiring preference for applicants who are not in the protected age group. As noted in 29 U.S.C. 623[e] 'When help wanted notices or advertisements contain any terms and phrases such as 'age 25 to 35,' 'young,' 'college student,'

'*recent college graduate*,' . . . or others of a similar nature, such a term or phrase deters the employment of older persons and is a violation of the [ADEA].

*Id*. at 2 (emphasis added).

15.17.    Despite the EEOC's explicit finding of unlawful age discrimination over three years ago, RTX has continued, unabated, to publish discriminatory job advertisements and notices with the same, or materially similar, offending language to the detriment of older workers, and to apply similarly discriminatory criteria that exclude the vast majority of older workers for Recent Graduate Positions. Indeed, postings for new college graduates and/or college graduates with less than one- or two-years' experience continue to appear on RTX's website and other job boards.

16.18.    Plaintiffs bring this action on behalf of themselves and a collective and classes of similarly situated older workers throughout the United States who applied for and were denied, or were deterred from applying for, at least one Recent Graduate Position during the relevant period, as further defined *infra*.

**JURISDICTION AND VENUE**

17.19.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 626(c) because this action asserts claims under the federal Age Discrimination in Employment Act.

18.20.    This Court has supplemental jurisdiction over the state anti-discrimination law claims under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

19.21.    This Court has personal jurisdiction over Defendants because they are incorporated in Delaware, do business in Delaware, and can reasonably foresee being sued in Delaware.

20.22.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants are

incorporated in this District and reside in this District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**AND OTHER PROCEDURAL BACKGROUND**

23.     This action involves claims that were timely exhausted before the EEOC (and, in some cases, state agencies) in a series of class or systemic discrimination charges filed in 2019, 2023, and 2024, during periods when Defendants made significant changes to their corporate form and corporate names:

(1) a timely charge that Mr. Goldstein filed against Raytheon Company in August 2019 regarding advertising, recruiting, and hiring for Recent Graduate Positions by Raytheon Company since October 2018, and while that charge was pending before the EEOC, Raytheon Company merged into United Technologies in April 2020 to create Raytheon Technologies Corporation (which was renamed RTX Corporation in July 2023);

(2) a timely charge that Mr. Goldstein filed in June 2023 (and amended in November 2024) challenging similar employment practices at all of the Defendants since August 2020 against Raytheon Technologies Corporation (which was renamed RTX Corporation in July 2023) and all of its subsidiaries and business units or segments;

(3) following Mr. Goldstein's Original Complaint in this action, Mr. Beaulieu filed a timely charge in August 2024 (and later amended in November 2024) challenging similar employment practices at all of the Defendants since August 2020, including RTX Corporation and all of its subsidiaries and business units or segments; and

(4) also following Mr. Goldstein's Original Complaint in this action, Mr. Bryan filed a timely charge in September 2024 (and later amended in November 2024) challenging similar employment practices at all of the Defendants since August 2020, including RTX Corporation and all of its subsidiaries and business units or segments.

24.     Each of these charges was timely filed with the EEOC, either because they complained of positions that were denied to each of the Plaintiffs by one or more of the Defendants during the 300 days before the Complaint was filed, or, in the case of Mr. Beaulieu, because a tolling agreement that the Defendants signed with Mr. Goldstein tolled his claims until June 5, 2024, and 300 days had not yet run on his claims when he filed his charge in August 2024.

25.     For instance, Mr. Goldstein's August 2019 charge complained that he was denied positions that he applied for in May and August 2019, less than 300 days before the charge was filed; Mr. Goldstein's June 2023 charge complained that he was denied positions that he applied for in March and April 2023, less than 300 days before the charge was filed; and Mr. Bryan's September 2024 charge

complained that he was denied positions that he applied for in August 2024, less than 300 days before the charge was filed.

26.    In addition, Defendants denied one or more jobs to Mr. Goldstein, Mr. Beaulieu, and Mr. Bryan during the tolling period that lasted between June 11, 2021 and June 4, 2024, and as a result, 300 days had not yet run on their claims for *those positions*. Thus, even if the tolling agreement were completely disregarded, there is no dispute that all of the charges that Mr. Goldstein and Mr. Bryan filed were timely filed with the EEOC.

27.    As described below, although Plaintiffs filed EEOC charges against different entities, the particulars of those charges challenged a company-wide practice of age discrimination with respect to the advertising, recruiting, and hiring of Recent Graduate Positions, including by the subsidiaries and business units of RTX Corporation, Raytheon Technologies, and Raytheon Company.

28.    Plaintiffs filed EEOC charges against entities including Raytheon Company, Raytheon Technologies Corporation, and RTX Corporation because Defendants made significant and confusing changes to their corporate names and form between the filing of Mr. Goldstein's first charge in 2019 and the filing of this Second Amended Complaint in 2026.

29.    As described below, all the Defendants received actual notice of Plaintiffs' charges at the time those charges were filed, to the extent they existed as legal entities at the time of the charges.

30.    RTX Corporation, Raytheon Technologies, and Raytheon Company responded to the charges by providing the EEOC with information about and on behalf of all of their subsidiaries and business units, including by identifying over 1,000 different requisitions at RTX Corporation's subsidiaries or business units. Upon information and belief, they provided the EEOC with information on behalf of all of their subsidiaries and business units because they understood that the charges challenged advertising, recruiting, and hiring practices not just at the parent company, but by all the parent company's

12

subsidiaries and business units.

31.     In addition, all Defendants had a full opportunity to respond to the charges by complying with the law and conciliating the charges with the EEOC and the Plaintiffs.

32.     During the years that the EEOC charges were pending, RTX Corporation, Raytheon Technologies, and Raytheon Company never suggested to the EEOC or the Plaintiffs that Plaintiffs had brought charges against the wrong entity.

33.     However, several months after this original action was filed, RTX Corporation asserted for the first time that its subsidiaries were the employers who should have been sued. D.I. 33 at 33.

34.     To ensure that all the appropriate parties were explicitly included in the charges and the action, Plaintiffs amended their charges in November 2024, then filed a First Amended Complaint that expressly named all of the Defendants that have played a role in denying them employment and violating their civil rights.

35.     To the extent that the Defendants claim that neither Collins Aerospace nor Pratt & Whitney is "a legal entity," and both are "fictitious trade names," RTX Corporation and/or Raytheon Company are legally responsible and liable for the actions of Collins Aerospace and Pratt & Whitney described in the four charges and this action.

36.     In the April 2020 merger of Raytheon Company and United Technologies Corporation, the merged entity, Raytheon Technologies Corporation, assumed all legal liabilities of Raytheon Company, including its employment-related liabilities.

37.     When Raytheon Technologies Corporation became RTX Corporation in July 2023, it retained the legal liabilities of Raytheon Technologies Corporation, including its employment-related liabilities. Therefore, RTX Corporation is legally responsible for and liable for the discriminatory employment advertising, recruiting, and hiring that Mr. Goldstein challenged in this First Charge and, in turn, in this action.

38.    Raytheon Company is also independently legally responsible for and liable for the discriminatory employment advertising, recruiting, and hiring that Mr. Goldstein challenged in his First Charge *and* the June 2023 Charge and, in turn, in this action.

39.    Both RTX Corporation and Raytheon Company are both independently legally responsible and liable for the discriminatory employment advertising, recruiting, and hiring that Mr. Goldstein challenged in his June 2023 Charge and this action with respect to the discriminatory advertising, recruiting, and hiring of their subsidiaries and business units.

21.40.    Plaintiffs exhausted their administrative remedies on behalf of themselves and the collective and classes they seek to represent and have complied with all statutory prerequisites to bringing their ADEA, MFEPA, VHRA, and FEHA claims.

**Mr. Goldstein's First Charge (August 7, 2019)**

41.    Mr. Goldstein filed a charge of discrimination against RTX (then Raytheon Company) with the EEOC on or about August 7, 2019, on behalf of himself and other similarly situated applicants ("First Charge"). In response to *See* **Exhibit B**. At that time, Mr. Goldstein was not represented by counsel, and he did not have counsel on the First Charge until the first quarter of 2021.

42.    In the First Charge, Mr. Goldstein alleged that he applied for and was denied several jobs by Raytheon Company in May 2019 based on age, including Cyber Defense Technologist II, Program Cost Schedule Analyst I (New Grad Opportunity), and Systems Engineer I. All these positions required the applicant to have graduated within the last 18 months before the application.

43.    In response to the First Charge, on October 1, 2019, Michael C. Grubbs and Kristin Van Arsdale, who described themselves as "In House Counsel for Raytheon Company," filed a position statement with the EEOC on behalf of "Raytheon Company." *See* **Exhibit C**. The position statement described Raytheon Company as "a defense and aerospace company," and stated that "Raytheon is

14

organized domestically into primarily four businesses; Integrated Defense Systems ("IDS"); Intelligence, Information and Services ("IIS"); Missile Systems ("MS") and Space and Airborne Systems ("SAS")."

44.      In response to the First Charge, on November 12, 2019, Mr. Grubbs, who continued to describe himself as "In House Counsel for Raytheon Company," responded to the EEOC's request for information on behalf of Raytheon Company. *See* **Exhibit D** at 9. In the response, Mr. Grubbs told the EEOC, on behalf of Raytheon Company, that "there were a total of 2,173 'recent graduate' hires in 2018," and "Of the 2,173 "recent graduate" hires, 17 were 40 years old or older, and 2,156 were age 39 or younger." *Id.* at 2. Mr. Grubbs also told the EEOC that "there were a total of 2,755 'recent graduate' hires between January 1, 2019 and September 10, 2019. Of the 2,755 'recent graduate' hires, 10 were between the ages of 40 and 55, and 2,745 were age 39 or younger." *Id.* Mr. Grubbs reported these hiring numbers for *all* of the business units or segments of Raytheon Company without identifying which hires came from particular business units or segments. *Id.*

45.      Based on the four jobs within Raytheon Company that Mr. Goldstein alleged he was denied based on age in the First Charge and the nearly 5,000 "recent graduate" hires in 2018 and 2019 that Mr. Grubbs reported to the EEOC in his November 12, 2019 letter, on information and belief, Raytheon Company (and later the other Defendants) and their counsel understood that Mr. Goldstein's allegations in the First Charge included Recent Graduate Positions throughout all of Raytheon Company, including its subsidiaries and business units, and not solely positions at the corporate headquarters positions or a subset of the positions within Raytheon Company.

46.      In response to the First Charge, on January 15, 2021, the EEOC issued a Final Determination Letter, on March 30, 2021, which to Raytheon Company—specifically to Raytheon Company, "Michael Grubbs, Senior Counsel – Employment,"—in which the EEOC found that RTX's Raytheon Company's practices violated the ADEA , and invited Raytheon Company to participate in conciliation. *See* **Exhibit E.** That January 15, 2021 Final Determination was only sent to Mr. Grubbs,

15

and was not sent to Mr. Goldstein.

47.    Following the January 15, 2021 determination and invitation to conciliate, Raytheon Company declined to participate in conciliation with the EEOC or Mr. Goldstein.

48.    On March 30, 2021, the EEOC issued a Final Determination Letter to Mr. Goldstein, which found that Raytheon Company's practices violated the ADEA. **Exhibit A.**

22.49.    On April 9, 2021, the EEOC issued and mailed a right to sue letter with respect to the First Charge that gave Mr. Goldstein 90 days from his receipt of the right to sue letter to file a lawsuit in a federal district court. **Exhibit F.** Mr. Goldstein ~~subsequently amended his charge to clarify~~never received the ~~scope of his claims on April 29, 2021.~~right to sue letter in the mail.

50.    On April 15, 2021, Mr. Goldstein filed a supplemental position statement with the EEOC in response to the EEOC's prior request for information from Mr. Goldstein. **Exhibit G**. In that supplemental position statement, Mr. Goldstein stated that Raytheon Company was "now, Raytheon Technologies." *Id.* at 1. Mr. Goldstein subsequently amended his charge to clarify the scope of his claims on April 29, 2021, stating that Raytheon was "now, known as Raytheon Technologies." **Exhibit H** at 1.

51.    On May 7, 2021, the EEOC informed Mr. Goldstein with respect to the First Charge that "Your charge is closed. Respondent was not interested in conciliation".

52.    In early June 2021, the EEOC told Mr. Goldstein that Raytheon Company was still represented by Mr. Grubbs. At that time, Mr. Goldstein's counsel informed Raytheon Company that Mr. Goldstein was now represented and that Mr. Goldstein was interested in conciliation and entering into a tolling agreement to forestall the need to file a lawsuit with respect to the First Charge.

**The Tolling Agreement (Tolling Claims Between June 6, 2021 and June 6, 2024)**

23.53.    On June 25, 2021, Mr. Goldstein entered into a tolling agreement with RTX (then Raytheon Technologies Corporation), tolling the statute of limitations for age discrimination claims as of June 6, 2021 on behalf of Mr. Goldstein and "all other individuals nationwide who may have age

16

discrimination claims against Raytheon under federal, state, or local laws related to Company's employment policies or practices regarding new or recent graduates——." **Exhibit I** at 1.

54.    The tolling agreement defined the "Challenged Practice" about which claims were tolled as "Mr. Goldstein has filed a charge (Charge No. 540-2019-03585) against Raytheon alleging that Raytheon has engaged in age discrimination through its employment policies or practices regarding new or recent graduates, including advertising, recruiting, and hiring for positions for which the Company prefers new or recent graduates or identifies being a recent or new graduate as a part of the job title, description, skill, experience, requirement, or preference for the position". *Id.*

55.    By defining "the Company" as "Raytheon Technologies," and stating that "Mr. Goldstein has filed a charge (Charge No. 540-2019-03585) against Raytheon," (a charge that was filed against Raytheon Company) the parties intended the Challenged Practice to cover positions at any of the subsidiaries or business units of Raytheon Technologies (which later became RTX Corporation) and to toll claims against the subsidiaries or business units of Raytheon Technologies that were the employers of such positions, such as Raytheon Company.

56.    Mr. Grubbs signed the tolling agreement "[o]n behalf of Raytheon Technologies." *Id.* at 3. At the time of the tolling agreement, Mr. Grubbs was an in-house lawyer for *both* Raytheon Technologies Corporation (RTX Corporation's predecessor) and Raytheon Company. As described above, Mr. Grubbs had represented Raytheon Company before the EEOC on Mr. Goldstein's First Charge.

57.    In June 2021, the same month the tolling agreement was signed, the EEOC identified Mr. Grubbs as still representing Raytheon Company with respect to the First Charge. This is consistent with documents that the EEOC sent to Raytheon Company on January 15, February 17, and April 9, 2021 stating that Michael Grubbs was "Senior Counsel – Employment" at "Raytheon Company."

58.    As described above, the tolling agreement tolled legal claims that Goldstein had filed against Raytheon Company at the EEOC in the First Charge and the "Challenged Practice" that the tolling

17

agreement defined as related to advertising, recruiting, and hiring practices within subsidiaries and business units like Raytheon Company, and not just positions at Raytheon Technologies Corporation, the corporate parent of Raytheon Company. Raytheon Technologies Corporation (RTX Corporation's predecessor) intended the tolling agreement to bind Raytheon Technologies Corporation and its subsidiaries or business units like Raytheon Company.

**Formatted:** Font: 12 pt

**Formatted:** Normal, Indent: Left: 0"

59.    Additionally, by signing the tolling agreement, Raytheon Technologies Corporation sought to assume liability and/or legal responsibility for the actions challenged in the First Charge and described as the "Challenged Practice" in the tolling agreement. Indeed, as noted above, Raytheon Technologies Corporation assumed the employment-related liabilities of Raytheon Company in the April 2020 merger, including liability for the actions challenged in the First Charge.

60.    Both Raytheon Technologies Corporation and Raytheon Company necessarily participated in the negotiations and drafting of the tolling agreement, because they shared the same counsel, Michael Grubbs, with respect to the First Charge and the tolling agreement. Moreover, their common counsel was listed as the person who should receive notice of the cancellation of the tolling agreement, and he did receive notice of the cancellation in June 2024 from Mr. Goldstein.

61.    Both Raytheon Technologies Corporation and Raytheon Company and their counsel Michael Grubbs had actual notice of Mr. Goldstein's discrimination claims against Raytheon Technologies Corporation, Raytheon Company, and their subsidiaries and business units.

**Mr. Goldstein's Second Charge (June 13, 2023)**

24.62.    On June 13, 2023, Mr. Goldstein filed a second EEOC charge against RTX (then Raytheon Technologies Corporation) and its wholly owned subsidiaries and related or affiliated entities on June 13, 2023, as amended on or about November 13, 2024, that asserted similar claims of age

**Formatted:** Indent: Left: 0", First line: 0.5", Right: 0"

18

discrimination under the ADEA and state law on behalf of a nationwide collective and class ("Second

Charge"). The filing of the Second Charge was permitted under the tolling agreement and did not cancel

it.") similar to those asserted in his First Charge. *See* **Exhibit J.**

19

~~On May 7, 2024, Mr. Goldstein informed RTX that he intended to cancel the tolling agreement.~~

63.     The tolling agreement stated that during the effective date of the tolling period. "Mr. Goldstein shall be permitted to file a new charge with the EEOC or an equivalent state or local agency regarding the Challenged Practice." **Exhibit I** at 1. Therefore, the filing of the Second Charge did not cancel the tolling agreement.

64.     The June 13, 2023 charge stated that it challenged Raytheon Technologies Corporation's (later refenced as "Raytheon") "company-wide discriminatory practices intended to and/or that have the effect of excluding older workers from many jobs at Raytheon and/or discouraging older workers from applying to many jobs at Raytheon since at least August 10, 2020 (the 'National Class and Collective')." It stated that "since at least October 1, 2018, through the present, Raytheon has engaged in a nationwide pattern, practice, or policy of discriminating based on age against older workers, particularly when hiring for lower-level positions within Raytheon." In addition, the charge stated that the Respondent, Raytheon Technologies Corporation, had "100,000+" employees, which necessarily included the employees at Raytheon Technologies Corporation's subsidiaries and business units, not just the employees who worked at the corporate parent.

65.     In the June 13, 2023 charge (attached as **Exhibit J**) Mr. Goldstein identified "a number of positions at Raytheon for which Raytheon required or preferred recent graduates," where he had applied and been rejected. *Id.* (pp. 3-5 of the Particulars). In Exhibit B to the charge, Mr. Goldstein provided a copy of each of the job postings from Raytheon Technologies Corporation's website. Some of those job postings, in turn, identified the "Business Unit" or subsidiary of Raytheon Technologies Corporation. For instance:

- The job description for "Proposal Analyst I (Early 2021 Start)" stated that the job was at "Raytheon Vision Systems" and that the "Business Unit Profile" was "Raytheon Intelligence & Space," (which is a part of Raytheon Company).

- The job description for the "New Grad, Software Engineering" position stated that the "Business Unit" was "Collins Aerospace".

- The job description for the "Financial Analyst I" position stated that the "Businesses" was "Raytheon Technologies Corporate," *i.e.*, "Raytheon Technologies Corporation".

- The job description for the "Associate, System Engineer (New Graduate)" position stated that "Collins Aerospace is looking for a passionate Systems Engineer" and included the "Collins Aerospace Diversity & Inclusion Statement."

- The job description for the "Associate, Software Engineering (New Grad)" position stated that the business unit was "Collins Aerospace" and that "The Collins Aerospace Surface Transportations team is seeking a motivated Software Engineer," included the "Collins Aerospace Diversity & Inclusion Statement," and stated that "Collins Aerospace, a Raytheon Technologies Company, is a leader in technologically advanced and intelligent solutions for the global aerospace and defense industry." It also mentioned that the employee would "[p]articipate on project teams to adapt ARINC's AIM rail control system for new customers".

- The job description for the "Systems Engineer I" position stated that the position was a "Collins Aerospace Job" and "This position is for an entry level systems engineer on the KC-46 Platform Systems Team within the Military Avionics & Helicopters department of Avionics Engineering at Collins Aerospace."

66. Exhibit C to the charge "provide[d] examples of additional discriminatory postings for Raytheon positions." **Exhibit J** (p. 6 of Particulars). Some of those additional postings identified the "Business Unit" or subsidiary of Raytheon Technologies Corporation. For instance:

- The job description for the "Test Systems Engineer with TSPT" stated that the position was at "Raytheon Missiles & Defense," (which was a part of Raytheon Company). So did the "Software Engineer I ('23 Bachelor's Degree)" position, the "Software Engineer I – Early in Career (2023 Bachelor's Degree)" position, the "Entry-Level Systems Sustainment Engineer" position, the "UP Software Engineer I - 2023 Bachelor's Degree" position," the "Industrial Engineer I" position, and the "Advanced Integration Missions Solutions – Systems Engineer I" position.

- The job description for the "Associate, Software Engineering (New Grad)" position stated that the position was at "Collins Aerospace," and that "Collins Aerospace, a Raytheon Technologies Company, is a leader in technologically advanced and intelligent solutions for the global aerospace and defense industry."

- The job description for the "Industrial Engineer I (New Grad)" position stated that the position was at "Collins Aerospace" and that "This position is for an industrial Engineer who will. Join the Manufacturing support team at the Collins Aerospace Bellevue

21

facility."

67.     These allegations in the June 13, 2023 charge and its exhibits made clear to anyone who read them, including the EEOC and Raytheon Technologies Corporation and its counsel, that the June 13, 2023 charge challenged discriminatory practices and policies at all of Raytheon Technologies Corporation's subsidiaries and business units, including Raytheon Company (and its business units Raytheon Intelligence & Space and Raytheon Missiles & Defense), Collins Aerospace, Pratt & Whitney, and ARINC.

68.     On June 14, 2023, Mr. Goldstein's counsel emailed a copy of the June 13, 2023 charge to Raytheon Technologies Corporation's counsel Zachary Osborne. Plaintiffs' counsel stated: "Once the exhaustion process is completed on this new class charge, Mr. Goldstein and his counsel plan to file a class/collective action lawsuit that covers the claims from both the prior charge for which the EEOC issued a right to sue letter in 2021 and this new charge." Plaintiffs' counsel also stated that "Mr. Goldstein and his counsel are open to a pre-litigation settlement of the claims in the prior charge and this new charge. Please let me know if you're interested in discussing settlement."

69.     On information and belief, when Mr. Osborne received a copy of the charge on June 14, 2023, he understood that the June 13, 2023 charge challenged discriminatory practices and policies at all of Raytheon Technologies Corporation's subsidiaries and business units, including Raytheon Company (and its business units Raytheon Intelligence & Space and Raytheon Missiles & Defense), Collins Aerospace, and Pratt & Whitney, and that Mr. Goldstein and his counsel were interested in settlement or conciliation with respect to the discriminatory practices and policies at all of Raytheon Technologies Corporation's subsidiaries and business units, including Raytheon Company (and its business units Raytheon Intelligence & Space and Raytheon Missiles & Defense), Collins Aerospace, and Pratt & Whitney.

70.     Mr. Osborne, Raytheon Technologies Corporation's and RTX Corporation's Vice

22

President and Associate General Counsel since April 2020, has routinely and represented, provided counsel, and/or worked directly for RTX's and Raytheon Technologies Corporation's subsidiaries and business units, like Raytheon Company, including specifically with respect to the legal claims that the Plaintiffs have asserted against RTX, Raytheon Technologies Corporation, Raytheon Company, and the other Defendants since 2019.

71.    Because Mr. Osborne represented all the Defendants in this action at the time that he received Mr. Goldstein's June 13, 2023 charge, all the Defendants received actual notice of the June 13, 2023 charge on June 14, 2023 when Mr. Osborne received it.

72.    Upon information and belief, after receiving the June 13, 2023 charge, Mr. Osborne, as counsel for Raytheon Technologies Corporation and its subsidiaries and business units, investigated which of Raytheon Technologies Corporation's subsidiaries and business units, including Raytheon Company and Collins Aerospace, had engaged in the practices that Mr. Goldstein's June 13, 2023 had challenged. In doing so, upon information and belief, Mr. Osborne informed other leaders within those subsidiaries and business units that the June 13, 2023 challenged the employment practices of the subsidiaries and business units.

73.    In July 2023, Raytheon Technologies Corporation changed its name to RTX Corporation.

74.    In July 2023, upon information and belief, Raytheon Technologies Corporation and/or RTX Corporation hired the law firm of Seyfarth Shaw to represent RTX Corporation, Raytheon Technologies Corporation, and Raytheon Company, and other subsidiaries and business units of RTX Corporation and/or Raytheon Technologies with respect to the allegations in the First Charge and the Second Charge. Upon information and belief, Seyfarth Shaw represented RTX Corporation, Raytheon Technologies Corporation, Raytheon Company, and other subsidiaries and business units of RTX Corporation and/or Raytheon Technologies with respect to the allegations in the First and Second Charges

23

until July 2024.

75.      On October 23, 2023, RTX's outside counsel, Andrew Scroggins of Seyfarth Shaw, filed a position statement with the EEOC in which he stated (at 1) that his firm "represents Respondent RTX Corporation," and that "[i]n July 2023, Raytheon Technologies Corporation changed its name to RTX Corporation." **Exhibit K**. The position statement referred interchangeably to "RTX Corporation" as "the Company". In describing the factual background of the dispute, RTX Corporation stated (at 2) that "Mr. Goldstein alleges that he applied to but was not hired for positions at the Company, and that some of the Company's job postings stated hiring preferences based on age." Later, RTX Corporation stated (at 3) that Mr. Goldstein "identifies seven positions to which he applied" at the Company, and then identified each of the seven positions by requisition number. *Id.*

76.      In the position statement, RTX Corporation addressed (at 3-7) Mr. Goldstein's standing to bring the charge and the merits of the charge for *each* of the seven positions to which Mr. Goldstein applied, including all of the positions at RTX's subsidiaries and business units.

77.      The position statement concluded by stating (at 7) that the Company "has sought to comprehensively address the allegations contained in Charging Party's charge." But nowhere did the position statement suggest that RTX Corporation was not responsible for the job postings or hiring decisions at issue in the charge *or* that Plaintiffs failed to properly name a subsidiary or business unit of RTX Corporation. That is because RTX Corporation and its counsel were responding to the EEOC *on behalf of* RTX Corporation *and* its subsidiaries and business units.

78.      Upon information and belief, RTX Corporation and its counsel knew when they submitted the position statement that those seven jobs were for positions at a *variety* of RTX Corporation's subsidiaries and business units, including Raytheon Company (Raytheon Intelligence & Space and Raytheon Missiles & Defense), Collins Aerospace, Rockwell Collins, and ARINC.

79.      Furthermore, in the position statement to the Second Charge and the entire EEOC

proceeding on the Second Charge, RTX Corporation and its counsel did not claim that Mr. Goldstein's claims were untimely or that the tolling agreement did not apply to positions at RTX Corporation's subsidiaries or business units like Raytheon Company or Collins Aerospace.

80.     On December 20, 2023, the EEOC requested that RTX Corporation "submit information and records relevant to the subject charge of discrimination," including, *inter alia*, "copies of job postings between August 1, 2020 and the present date which included in the title, description, and/or qualifications terms such as 'new grad,' 'entry level,' 'recent graduates.'" **Exhibit L.**

81.     In response to the EEOC's December 20, 2023 information request, RTX Corporation's counsel prepared a response on behalf of RTX Corporation and all of its subsidiaries and business units. The response included information from each subsidiary and unit of RTX Corporation about job requisitions that used titles such as "new grad," "entry level," and "recent graduates," and/or that limited the jobs to applicants with no more than 12 or 24 months or experience if they have a college degree.

82.     Therefore, RTX Corporation and its counsel understood that the EEOC sought information about jobs at RTX Corporation *and* all its subsidiaries and business units, including Raytheon Company, Collins Aerospace, Pratt & Whitney, Rockwell Collins, and ARINC, and not just jobs at RTX Corporation the corporate parent.

83.     On March 31, 2024, RTX Corporation and its outside counsel provided a "supplemental response to the EEOC's December 20, 2023 Request for Information." **Exhibit M.** In that supplemental response, RTX Corporation's counsel provided detailed information on approximately *1,000* specific job requisitions at RTX Corporation's *subsidiaries and business units*—including Raytheon Company (Raytheon Missiles & Defense and Raytheon Intelligence & Space), Collins Aerospace, Pratt & Whitney, Rockwell Collins, and ARINC—where the job descriptions used titles such as "new grad," "entry level," and "recent graduates," and/or that limited the jobs to applicants with no more than 12 or

25

24 months or experience if they have a college degree. The responsive information was provided to the EEOC in a file called, "GOLDSTEIN-RTX CHARGE 000010," which is attached as **Exhibit N** to this amended Complaint.

84.     In addition, on March 31, 2024, RTX Corporation and its counsel provided the EEOC with a document on organizational charts for RTX talent acquisition, GOLDSTEIN-RTX Charge 00005-00009. In those charts, which are attached as **Exhibit O** to this amended Complaint, RTX Corporation and its counsel described the number of people involved in talent acquisition at RTX Corporation (the corporate parent), and each of its major subsidiaries/divisions or business segments, Collins Aerospace, Pratt & Whitney, and Raytheon, with 35 employees under the "Corporate TA [Talent Acquisition] Leader," 55 employees under the "Pratt & Whitney TA Leader," and 219 employees under the "Raytheon TA Leader."

85.     By providing the EEOC with information on more than 1,000 Recent Graduate Positions at RTX Corporation's subsidiaries and business units and information on the talent acquisition at RTX Corporation's primary subsidiaries and business units, RTX Corporation and its counsel made clear to the EEOC that they understood that the scope of the June 2023 Charge covered all of RTX Corporation's subsidiaries and business units and that the EEOC was investigating age discrimination at all of RTX Corporation's subsidiaries and business units. The same understanding applied to the later charges of Mr. Beaulieu and Mr. Bryan, whose charges identified their claims as related to Mr. Goldstein's charges and similarly described company-wide practices that involved hiring by RTX Corporation's subsidiaries and business units.

86.     When the EEOC investigated the June 2023 Charge, the EEOC actually investigated the advertising, recruiting, and hiring practices at all of RTX Corporation's subsidiaries and business units, not just the advertising, recruiting, and hiring practices of the parent company RTX Corporation. The EEOC did so because the scope of the June 2023 Charge plainly covered all of RTX Corporation's

subsidiaries and business units, and because the charge itself referenced applications to a number of RTX Corporation's subsidiaries and business units.

87.    In addition, on November 30, 2023, RTX Corporation made Stephen Schulz, RTX Corporation's Head of Global Talent Acquisition, available for an interview with the EEOC to answer questions about the advertising, recruiting, and hiring for Recent Graduate Positions at RTX Corporation and its subsidiaries and business units. Upon information and belief, Mr. Schulz answered the EEOC's questions about those subjects on behalf of RTX Corporation *and* the subsidiaries and business units of RTX Corporation, and Mr. Schulz had the authority to speak on behalf of those subsidiaries and business units.

88.    On May 7, 2024, Mr. Goldstein informed RTX and the other Defendants that he intended to cancel the tolling agreement by providing written notice of the cancellation to Michael Grubbs. In accordance with the terms of the Tolling Agreement, Mr. Goldstein gave RTX 30 days' notice of cancellation of the Tolling Agreement prior to filing this Complaint.

25.89.    Because Mr. Goldstein gave RTX notice that he was cancelling the Tolling Agreement on May 7, 2024, the Tolling Agreement tolled all of Mr. Goldstein's claims (and those of similarly situated individuals) against RTX (formerly Raytheon Technologies Corporation and Raytheon Company), including his claims under the First Charge, between June 6, 2021 and June 6, 2024. ("the Tolling Period").

**The Original Complaint (June 11, 2024)**

90.    On June 11, 2024, Mr. Goldstein filed the original Class Action Complaint in this action against "RTX Corporation (f/k/a Raytheon Technologies Corporation) in the District of Massachusetts, D.I. No. 1 ("the Original Complaint"). Pursuant to the parties' joint motion, the case was later transferred to the District of Delaware.

91.    When disregarding the period of time covered by the Tolling Period, Mr. Goldstein's

[Formatted: Indent: Left: 0", First line: 0.5", Right: 0", Space Before: 0 pt]

Original Complaint with respect to the claims in the First Charge was timely filed on June 11, 2024, because *only* about two-thirds of the 90-day period after the EEOC issued the right to sue had elapsed with respect to the First Charge.

92.      In addition, Mr. Goldstein's Original Complaint with respect to the claims in the June 2023 Charge was also timely filed, because all of the claims that he asserted in the June 2023 Charge were filed within 300 days of the relevant action, when disregarding the period of time covered by the Tolling Period, 60 days had passed since he filed the June 2023 Charge, and the EEOC had not yet issued a right to sue with respect to the June 2023 Charge, so the 90-day right to sue period had not yet begun to run with respect to the June 2023 Charge.

93.      In the Original Complaint, Goldstein stated that "RTX Corporation" would be referred to in the complaint as "Raytheon" or "RTX" and, in turn, that "All references in this complaint to Raytheon are intended to include RTX Corporation, Raytheon Company, United Technologies Corporation, the divisions, parents, subsidiaries, or affiliates of those companies, and any related entities." D.I. No. 1 ¶ 31.

94.      In addition, the Original Complaint described a nationwide, companywide practice of discrimination at "Raytheon," "one of the world's largest aerospace and defense companies, with over 185,000 employees worldwide and approximately $69 billion in revenues in 2023." D.I. No. 1 ¶ 2; *see also id.* ¶¶ 34-35.

95.      The Original Complaint described positions at various subsidiaries and business units of RTX Corporation, including Raytheon Company, Collins Aerospace, Rockwell Collins, and ARINC. D.I. No. 1 ¶¶ 69-128.

96.      Within a few days after the Original Complaint was filed, all the Defendants, including Raytheon Company, received actual notice of the Original Complaint, both through their in-house and outside counsel who concurrently represented RTX and all of the other Defendants, and through numerous publications in the national media about the filing of this action, including in the *Washington Post*, *USA*

*Today, CNN, Bloomberg News, Bloomberg Law, Forbes, Associated Press,* and *CBS News*, among others.

97.     Raytheon Company in particular had notice of the Original Complaint because Raytheon Company and its lawyers, some of whom also worked for RTX Corporation concurrently, were aware that Plaintiffs had cancelled the June 11, 2021 tolling agreement that related in part to the First Charge in which Raytheon Company had been the Respondent.

98.     Raytheon Company, Pratt & Whitney, Collins Aerospace, Rockwell Collins, and ARINC Inc., and their leaders, having actual knowledge of the Original Complaint within a few days of its filing on June 11, 2024, also knew or should have known within a few days after June 11, 2024 that the scope of the Original Complaint included those Defendants' advertising, recruiting, and hiring practices as subsidiaries and business units of RTX Corporation.

26.99.     Pursuant to Mr. Goldstein's EEOC charges and the Tolling Agreement, in the Original Complaint and the subsequent amended Complaints, Plaintiffs timely challenge Defendants' pattern or practice of age discrimination since at least October 11, 2018, which is 300 days prior to the filing of the First Charge on August 7, 2019. Accordingly, in thisthe Original Complaint and Amended Complaints, Plaintiffs challenge Defendants' pattern or practice of age discrimination with respect to the Recent Graduate Positions since October 11, 2018.

| Formatted: Indent: Left: 0", First line: 0.5", Right: 0" |

100.     On September 13, 2024, RTX Corporation asserted for the first time that RTX Corporation was not responsible for the discriminatory practices challenged in the Original Complaint and this action, stating that "While Goldstein brings this suit against RTX, none of the positions he alleges he pursued were with RTX. In fact, as reflected in the table above, the employing entities for all the roles he pursued were RTX subsidiaries, namely Raytheon Company, Rockwell Collins, Inc. ("Rockwell Collins"), and ARINC Incorporated ("ARINC")." ECF No. 33 at 3. This came as a surprise to Mr. Goldstein, because RTX's predecessor Raytheon Technologies Corporation had entered into a tolling agreement with him with respect to the First Charge that he had filed in 2019 against Raytheon Company.

**Mr. Goldstein's Amended Charge (November 13, 2024)**

101.     On or about November 13, 2024, Mr. Goldstein amended his June 13, 2023 Charge. **Exhibit P.**

102.     Mr. Goldstein's November 13, 2024 amendment related back to the June 13, 2023 Charge.

103.     Even if the amendment did not relate back to the June 13, 2024 Charge, the November 13, 2024 amended charge was timely as to all of the Defendants (not just RTX Corporation) regarding *all* of the seven Recent Graduate Positions that were at issue in Mr. Goldstein's Second Charge and Amended Second Charge.

104.     As described in both the June 13, 2023 Charge and amended Charge on November 13, 2024, Mr. Goldstein was denied five Recent Graduation Positions during the Tolling Period that began on June 11, 2021 and ended on June 5, 2024. In the June 13, 2023 Charge and Amended Charge, Mr. Goldstein stated that he applied for and was rejected for or was not hired for Recent Graduation Positions on April 5, 2023 (Systems Engineer I), March 5, 2023 (Systems Engineer I), August 10, 2022 (Associate, Software Engineer (New Grad), March 10, 2022 (Associate System Engineer (New Graduate), and June 1, 2021 (Financial Analyst I). In the case of the Financial Analyst I role, he did not receive a formal rejection, so that the rejection occurred after June 11, 2021, when the Tolling Period began.

105.     Because these adverse actions occurred *during* the Tolling Period, which ended on June 5, 2024, Mr. Goldstein still had 300 days from June 5, 2024 to file a charge with the EEOC regarding those five applications. Mr. Goldstein's November 13, 2024 amended charge was therefore filed 161 days into the 300-day period that he had to file his charge regarding these five applications.

106.    The other two denials of Recent Graduate Positions in Mr. Goldstein's June 2023 charge and amended charge were also timely as to all of the Defendants (not just RTX Corporation) on November 13, 2024, because the earliest of seven applications occurred on February 4, 2021 (Proposal Analyst I), which means that at most 288 days had elapsed since the application, when disregarding the Tolling Period, i.e., 127 days from February 4, 2021 to June 11, 2021 and 161 days from June 5, 2024 to November 13, 2024. The second-earliest of those seven applications occurred on May 18, 2021 (New Grad, Software Engineering), which means that at most 185 days had elapsed since the application, when disregarding the Tolling Period, *i.e.*, 24 days from May 18, 2021 to June 11, 2021, and 161 days from June 5, 2024 to November 13, 2024.

107.    On November 20, 2024, after the parties agreed to transfer the case to this district and agreed upon a date for Mr. Goldstein to file a First Amended Complaint, Mr. Goldstein, along with Mr. Beaulieu and Mr. Bryan, filed a First Amended Complaint (D.I. No. 68), to ensure that all the appropriate corporate entities were named as Defendants with respect to all of Plaintiffs' claims.

108.    All of the claims that Plaintiffs asserted against all the Defendants in the First Amended Complaint arose out of the same conduct originally pled in Mr. Goldstein's Original Complaint, which alleged that he and a nationwide class or collective of older workers, including Mr. Bryan and Mr. Beaulieu, had been denied or deterred from jobs at RTX and its subsidiaries and business units because of their age.

109.    Because all of the Defendants other than RTX Corporation received actual notice of the action within a few days of the Original Complaint's filing on June 11, 2024 (as described above), the Defendants other than RTX Corporation were represented by the same counsel as RTX Corporation, and their joint counsel began to prepare a defense to the litigation regarding allegations about the advertising, recruiting, and hiring practices of RTX Corporation and its subsidiaries and business units, the Defendants other than RTX Corporation were not prejudiced in any way in defending the First Amended Complaint

or the Second Amended Complaint on the merits.

110.    Even if the First Amended Complaint does not relate back to the Original Complaint, the federal ADEA claims that Mr. Goldstein asserted in the First Amended Complaint based on his June 13, 2023 charge (as amended on November 13, 2024) were timely when they were file against all of the Defendants on November 20, 2024, because the EEOC had not yet issued a right to sue by November 20, 2024 and the 90-day filing period following a right to sue had not yet begun to run.

111.    The EEOC continued to investigate Mr. Goldstein's then-pending charge and did not issue a right to sue on Mr. Goldstein's June 13, 2023 Charge (as amended on November 13, 2024) until January 28, 2025.

**Mr. Beaulieu's Charge (August 29, 2024) and Amended Charge (November 13, 2024)**

112.    Mr. Beaulieu and Mr. Bryan learned about Mr. Goldstein's First Charge and June 2023 Charge only after Original Complaint was filed on July 11, 2023 and various national media publications reported on the filing of the Original Complaint. However, the tolling agreement had tolled their claims against RTX Corporation, Raytheon Technologies Corporation, and Raytheon Company, and other subsidiaries and business units of RTX Corporation that accrued during the Tolling Period or could have been timely filed with the EEOC during the Tolling Period.

27.113.    Mr. Beaulieu filed a charge of discrimination against RTX Corporation, including its wholly owned subsidiaries and related or affiliated entities, with the EEOC on or about August 29, 2024, (Exhibit Q), as amended on or about November 13, 2024: (Exhibit R), on behalf of himself and other similarly situated applicants.

114.    Mr. Mr. Beaulieu's November 13, 2024 amended charge specified that he "intend[ed] to assert all of the claims identified therein against any employer or entity that was or that becomes a

predecessor, successor, parent, subsidiary, division, or affiliate of RTX Corporation, Raytheon Technologies Corporation or Raytheon Company," including, but not limited to, "Raytheon Company (formerly Raytheon Intelligence & Space and Raytheon Missiles & Defense), Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc. and ARINC Incorporated."

115.      Upon information and belief, all the Defendants received actual notice of Mr. Beaulieu's charge and amended charges, because the charges were served on or provided to lawyers who concurrently represented RTX Corporation and the other Defendants, including in-house lawyers who represented both RTX Corporation and its subsidiaries and business units, including Raytheon Company.

116.      Upon information and belief, Mr. Beaulieu's charges were internally shared with leaders of all the Defendants because the allegations in the charges related to positions at all of the Defendants.

117.      Mr. Beaulieu's August 29, 2024 charge and November 13, 2024 amended charge were both timely filed with the EEOC to exhaust their claims against all the Defendants. Both of the job applications for Recent Graduate Positions at issue in Mr. Beaulieu's charge and amended charge occurred in September 2021 during the Tolling Period.

118.      Because the Tolling Period began on June 11, 2021 and ended on June 5, 2024, Mr. Beaulieu still had 300 days from June 5, 2024 to file this charge with the EEOC. The August 29, 2024, charge was filed 84 days into the 300-day period that he had to file his charge. The November 13, 2024 amended charge was filed 161 days into the 300-day period that he had to file his charge.

119.      In addition, Mr. Beaulieu's charge and amended charge referred in various ways to Raytheon Company. The original charge's particulars referred to the respondent as "Raytheon Technologies Corporation, formerly Raytheon Company," which the particulars referred to thereafter as "Raytheon."

120.      Mr. Beaulieu's original charge also included exhibits that described Raytheon Technologies as a company that "comprises four industry-leading businesses – Collins Aerospace, Pratt &

33

Whitney, Raytheon Intelligence & Space [a unit of Raytheon Company] and Raytheon Missiles & Defense [a unit of Raytheon Company]."

121.    Mr. Beaulieu's original charge stated that he sought to challenge "Raytheon's company-wide discriminatory practices intended to and/or that have the effect of excluding older workers from many jobs at Raytheon and/or discouraging older workers from applying to many jobs at Raytheon since at least August 10, 2020," i.e., practices under RTX Corporation and its subsidiaries and business units.

122.    Mr. Beaulieu's original charge also "request[ed] that the Commission investigate [his] charge in conjunction with the pending systemic/class action charge of Mark H. Goldstein against Raytheon, EEOC No. 570-2023-02908," and stated that he is "a member of the collective and class that Mr. Goldstein seeks to represent in Charge No. 570-2023-02908, and, to the extent it is relevant, the instant charge seeks to piggyback on Charge No. 570-2023-02908."

123.    The cover letter to Mr. Beaulieu's original charge also stated that "This charge is related to a systemic charge that is currently pending in your district, Goldstein v. Raytheon Technologies, No. 570-2023-02908."

124.    The EEOC investigated Mr. Beaulieu's original and amended charges in conjunction with its investigation of Mr. Goldstein's June 2023 Charge.

125.    Upon information and belief, when RTX Corporation and the other Defendants received actual notice of Mr. Beaulieu's charge shortly after it was filed on August 29, 2024, they understood that Mr. Beaulieu's charge, in conjunction with Mr. Goldstein's June 2023 charge, made allegations against RTX Corporation and all its subsidiaries and business units, and not just RTX Corporation.

126.    Mr. Beaulieu's amended charge, which as described above was timely when it was filed on November 13, 2024, and related back to the filing of the original charge on August 29, 2024, specifically

34

named "Raytheon Company (formerly Raytheon Intelligence & Space and Raytheon Missiles & Defense),
Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc. and ARINC Incorporated" as Respondents.

127.     Consistent with the allegations described above regarding the actual notice that all of the
Defendants received of Mr. Beaulieu's August 29, 2024 charge, his amended charge stated: "This
amendment is not necessary to provide notice to RTX Corporation, Raytheon Technologies Corporation,
Raytheon Company, and/or their predecessors, successors, subsidiaries, divisions, or affiliates regarding the
scope of Mr. Beaulieu's claims and allegations. Indeed, RTX Corporation, Raytheon Technologies
Corporation, Raytheon Company, and/or their predecessors, successors, parents, subsidiaries, divisions, and
affiliates already have notice of Mr. Beaulieu's claims . . . . Mr. Beaulieu submits this amendment solely in
the interest of clarifying the scope of his charges."

128.     In response to Mr. Goldstein's June 2023 Charge that was investigated in conjunction
with Mr. Beaulieu's charge, RTX Corporation and its outside counsel provided data and information about
more than 1,000 Recent Graduate Positions at RTX Corporation's subsidiaries and business units. *See*
Exhibits M, N, & O.

129.     All the Defendants received actual notice of Mr. Beaulieu's amended charge, because
the charges were served on or provided to lawyers who concurrently represented RTX Corporation and all
the other Defendants.

130.     After receiving notice of Mr. Beaulieu's amended charge, the Defendants consented to
Mr. Beaulieu filing a complaint in federal court—joining Mr. Goldstein's action—without having to wait
the typical requisite number of days after the filing of a charge to file suit.

131.     On November 20, 2024, Mr. Beaulieu filed—along with Mr. Goldstein and Mr. Bryan—
a First Amended Complaint in this action that contained Mr. Beaulieu's timely claims against all of the
Defendants.

132.     The First Amended Complaint was the first time that Mr. Beaulieu appeared as a party

in this action, and all of the claims that he asserted in the First Amended Complaint were timely, because the EEOC had not yet issued a right to sue letter and the 90-day period following a right to sue had not begun to run.

133.     The EEOC continued to investigate Mr. Beaulieu's then-pending charge after the First Amended Complaint was filed.

134.     The EEOC did not issue a right to sue letter to Mr. Beaulieu until February 5, 2025.

**Mr. Bryan's Charge (September 27, 2024) and Amended Charge (November 13, 2024)**

28.135.     On or about September 27, 2024, Mr. Bryan filed a charge of discrimination against RTX Corporation, including its wholly owned subsidiaries and related or affiliated entities, with the EEOC on or about September 27, 2024.**(Exhibit S)** as amended on or about November 13, 2024. **(Exhibit T),** on behalf of himself and other similarly situated applicants.

Formatted: Indent: Left:  0", First line:  0.5", Right:  0"

136.    Mr. Bryan's November 13, 2024 amended charge specified that he "intend[ed] to assert all of the claims identified therein against any employer or entity that was or that becomes a predecessor, successor, parent, subsidiary, division, or affiliate of RTX Corporation, Raytheon Technologies Corporation or Raytheon Company," including, but not limited to, "Raytheon Company (formerly Raytheon Intelligence & Space and Raytheon Missiles & Defense), Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc. and ARINC Incorporated."

137.    Upon information and belief, all the Defendants received actual notice of Mr. Bryan's charge and amended charge, because the charges were served on or provided to lawyers who concurrently represented RTX Corporation and the other Defendants, including in-house lawyers who represented both RTX Corporation and its subsidiaries and business units, including Raytheon Company.

138.    Upon information and belief, Mr. Bryan's charge and amended charge were internally shared with leaders of all the Defendants because the allegations in the charges related to positions at all of the Defendants.

139.    Mr. Bryan's September 27, 2024 charge and November 13, 2024 amended charge were both timely filed with the EEOC to exhaust their claims against all the Defendants. For the most recent job application for a Recent Graduate Position at issue in the September 27, 2024 charge—Junior Software Engineer, Req ID 01677525—Mr. Bryan applied on August 12, 2024, which means that no more than 46 days has run between the denial of the job and Mr. Bryan's original EEOC charge, and no more than 93 days had run between the denial of the job and Mr. Bryan's amendment, far less than the 300 days that he needed to file his ADEA claims or the three years that he needed to file his claims under California's Fair Employment and Housing Act.

140.    For two additional Recent Graduate Positions at issue in the September 27, 2024 charge—New College Grad: Advanced RF Algorithms Engineer (Master's Degree), Req ID 190631BR and Software Engineer I (Onsite), Req ID 01544608—Mr. Bryan applied for and was denied those

positions in November 2021 and September 2022, respectively, both during the Tolling Period.

141.    Because the Tolling Period began on June 11, 2021 and ended on June 5, 2024, Mr. Bryan still had 300 days from June 5, 2024 to file a charge with the EEOC regarding those two applications for New College Grad: Advanced RF Algorithms Engineer (Master's Degree), Req ID 190631BR, and Software Engineer I (Onsite), Req ID 01544608. For these two applications, the September 27, 2024, charge was filed 114 days into the 300-day period that he had to file his charge for his ADEA claims and the 3-year period that he had to file his charge for his FEHA claims. And the November 13, 2024 amended charge was filed 161 days into the 300-day period that he had to file his charge for his ADEA claims and the 3-year period that he had to file his charge for his FEHA claims.

142.    In addition, Mr. Bryan's charge and amended charge referred in various ways to RTX's subsidiaries and business units. The particulars of the original charge made clear that the charge was filed against "RTX Corporation, formerly Raytheon Technologies Corporation, and also formerly Raytheon Company, *including any wholly owned subsidiaries and related or affiliated entities*," and the particulars referred thereafter to those entities collectively as "Raytheon." Charge Particulars at 1. In addition, the original charge included dozens of exhibits that contained correspondence from Raytheon Company about his applications.  Mr. Bryan's original charge also stated that he was seeking to challenge "Raytheon's company-wide discriminatory practices intended to and/or that have the effect of excluding older workers from many jobs at Raytheon and/or discouraging older workers from applying to many jobs at Raytheon since at least August 10, 2020," *i.e.*, practices under RTX Corporation and its subsidiaries and business units.

143.    Mr. Bryan's original charge  "request[ed] that the Commission investigate [his] charge in conjunction with the pending systemic/class action charge of Mark H. Goldstein against Raytheon, EEOC No. 570-2023-02908," and stated that he is "a member of the collective and class that Mr. Goldstein seeks to represent in Charge No. 570-2023-02908, and, to the extent it is relevant, the instant charge seeks

to piggyback on Charge No. 570-2023-02908."

144.    The EEOC investigated Mr. Bryan's charge in conjunction with its investigation of Mr. Goldstein's June 2023 Charge.

145.    Upon information and belief, when RTX Corporation and the other Defendants received actual notice of Mr. Bryan's charge shortly after it was filed on September 27, 2024, they understood that Mr. Bryan's charge, in conjunction with Mr. Goldstein's June 2023 charge, made allegations against RTX Corporation and all its subsidiaries and business units, and not just RTX Corporation.

146.    Mr. Bryan's amended charge, which as described above was timely when it was filed on November 13, 2024, and related back to the filing of the original charge on September 27, 2024, specifically named "Raytheon Company (formerly Raytheon Intelligence & Space and Raytheon Missiles & Defense), Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc. and ARINC Incorporated" as Respondents. All of those entities are "subsidiaries and related or affiliated entities" of RTX Corporation, which is how the original charge on September 27, 2024 described the respondents against whom the claims were originally brought.

147.    Consistent with the allegations described above regarding the actual notice that all the Defendants received of Mr. Bryan's September 27, 2024 charge, his amended charge stated that "This amendment is not necessary to provide notice to RTX Corporation, Raytheon Technologies Corporation, Raytheon Company, and/or their predecessors, successors, subsidiaries, divisions, or affiliates regarding the scope of Mr. Bryan's claims and allegations. Indeed, RTX Corporation, Raytheon Technologies Corporation, Raytheon Company, and/or their predecessors, successors, parents, subsidiaries, divisions, and affiliates already have notice of Mr. Bryan's claims . . . . Mr. Bryan submits this amendment solely in the interest of clarifying the scope of his charges."

148.    In response to Mr. Goldstein's June 2023 Charge, that was investigated in conjunction

with Mr. Bryan's charge, RTX Corporation and its outside counsel provided data and information about more than 1,000 Recent Graduate Positions at RTX Corporation's subsidiaries and business units. *See* Exhibits M, N, & O.

149.    All the Defendants received actual notice of Mr. Bryan's amended charge, because the charges were served on or provided to lawyers who concurrently represented RTX Corporation and all the other Defendants.

150.    After receiving notice of Mr. Bryan's amended charge, the Defendants consented to Mr. Bryan filing a complaint in federal court—joining Mr. Goldstein's action—without having to wait the requisite number of days after the filing of a charge to file suit.

151.    On November 20, 2024, Mr. Bryan filed—along with Mr. Goldstein and Mr. Beaulieu—a First Amended Complaint in this action that contained Mr. Bryan's timely claims against all of the Defendants.

152.    The First Amended Complaint was the first time that Mr. Bryan appeared as a party in this action, and all of the claims that he asserted in the First Amended Complaint were timely, because the EEOC had not yet issued a right to sue letter and the 90-day period following a right to sue had not begun to run.

153.    The EEOC continued to investigate Mr. Bryan's then-pending charge, and the EEOC did not issue a right to sue letter to Mr. Bryan until February 5, 2025.

**Commonality of Interest Between RTX, Raytheon Technologies Corporation, and Their Subsidiaries and Business Units**

154.    With respect to Mr. Goldstein's June 13, 2023 EEOC Charge and the EEOC charges filed by Mr. Beaulieu on August 29, 2024 and by Mr. Bryan on September 27, 2023, there was a commonality of interest between RTX and Raytheon Technologies Corporation (which later became RTX), on the one hand, and their subsidiaries and business units that are also named parties in this action, on the other hand, namely Raytheon Company (formerly Raytheon Intelligence & Space and Raytheon

40

Missiles & Defense), Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc., and ARINC Inc.

155.    Since the April 2020 merger, RTX and Raytheon Technologies have made it very difficult for applicants to know which specific corporate entities are responsible for hiring or employing persons within RTX and its subsidiaries and business units. When RTX, Raytheon Technologies, and their subsidiaries and business units have posted jobs on RTX's centralized careers website, https://careers.rtx.com, the web site typically does not state the legal corporate name of the entity where the applicant will work. In many instances, the Plaintiffs applied for jobs where the employer would be Raytheon Company, but the Plaintiffs only interacted with RTX's web site and staff via email and did not know the name of the entity who would actually employ them if they were hired for the position. Because RTX has operated as a single integrated enterprise and intentionally obscured which legal entity would directly or primarily employ employees in particular positions, it usually was not possible for applicants who were denied jobs by RTX or its subsidiaries or business units to identify the legal corporate entity or entities against which to file  an EEOC charge or a lawsuit.

156.    In addition, the April 2020 merger between Raytheon Company and United Technologies that created Raytheon Technologies Corporation (which was later renamed RTX), made it difficult to ascertain which corporate entity was legally responsible for the employment-related liability of Raytheon Company from before the merger.

157.    During the pendency of all the EEOC charges referenced above that were filed in 2023 and 2024, the interests of RTX and its predecessor Raytheon Technologies Corporation were identical to the interests of the other Defendants in this action, such that for purposes of obtaining voluntary conciliation and compliance it was unnecessary to include the Defendants other than RTX in the EEOC proceedings (although they were, in fact, named as respondents and/or expressly referenced in in the EEOC proceedings, as described above).

158.    Upon information and belief, during all relevant times RTX has exerted financial control

and operational direction over each of its subsidiaries and business units.

159.     RTX shares legal and human resources staff with its subsidiaries and business units. The same employment lawyers and human resources staff engaged in conciliation with the EEOC and the Plaintiffs and responded to the relevant discrimination charges for RTX, its subsidiaries, and its business units.

160.     Shared lawyers and human resources staff at RTX and its subsidiaries and business units collectively decided to continue the unlawful practices that the EEOC found violated the ADEA in early 2021.

161.     Even without the presence of RTX's subsidiaries and business units in the 2023 and 2024 EEOC proceedings, RTX and/or Raytheon Technologies Corporation had the opportunity, power, authority, and means to ensure that all of RTX's subsidiaries and business units voluntarily complied with the ADEA, to conciliate over the practices of its subsidiaries and business units, and to reach a settlement on behalf of the subsidiaries and business units that would legally bind those entities.

162.     Because RTX chose not to voluntarily end its unlawful practices on behalf of and in collaboration with its subsidiaries and business units, RTX and its subsidiaries and business units have continued to violate the ADEA in a uniform manner when hiring for Recent Graduate Positions since 2018.

163.     Moreover, RTX and Raytheon Technologies Corporation, represented by the same lawyers as RTX's subsidiaries and business units, like Raytheon Company, agreed in the June 11, 2021 tolling agreement with Mr. Goldstein to "negotiate a settlement in good faith" with respect to the company's nationwide practices regarding Recent Graduate Positions. They had the opportunity, power, authority, and means to conciliate with the Plaintiffs regarding the uniform, discriminatory practices regarding Recent Graduate Positions throughout RTX's subsidiaries and business units.

164.     Even though a settlement was not ultimately reached with Mr. Goldstein or the other Plaintiffs, RTX still could have reached an agreement with the Plaintiffs that required compliance throughout

42

RTX's subsidiaries and business units.

165.     Likewise, RTX could have engaged in conciliation with the EEOC in 2023 or 2024 to obtain compliance for its subsidiaries and business units, but did not do so.

166.     None of the Defendants were prejudiced to the extent the Court finds that they were not named in Mr. Goldstein's June 13, 2023 EEOC Charge, Mr. Beaulieu's August 29, 2024 EEOC Charge, and Mr. Bryan's September 27, 2023 EEOC Charge. As described above, RTX and its lawyers fully understood that all of those charges challenged discriminatory practices and policies at all of RTX and Raytheon Technologies Corporation's subsidiaries and business units, including Raytheon Company (and its business units Raytheon Intelligence & Space and Raytheon Missiles & Defense), Collins Aerospace, and Pratt & Whitney. Plaintiffs' charges challenged the denial of applications for Recent Graduate Positions at various subsidiaries and business units of RTX and described a nationwide, company-wide practice of discrimination throughout RTX's subsidiaries and business units, not just at RTX.

167.     As a result, RTX and its lawyers provided the EEOC with a response that vigorously litigated the merits of the charges on behalf of all of RTX's subsidiaries and business units, denying liability for the entire company's advertising, recruiting, and hiring of Recent Graduate Positions. Further, in response to the EEOC's information request, RTX and its lawyers provided the EEOC with data and information about more than 1,000 jobs at subsidiaries and business units of RTX in an effort to prove its case for all its subsidiaries and business units.

168.     If the Defendants other than RTX had been more explicitly named in the original charges in 2023 and 2024, it would have not made any difference to Defendants' ability to respond to the charges or the ability of RTX and its subsidiaries and business units to conciliate the charges. Moreover, all the Defendants were represented by the same counsel at the time of the charges and later when all the Defendants were named as parties in this litigation.

169.    RTX's subsidiaries and business units effectively represented to the Plaintiffs that their relationship with the Plaintiffs was to be through RTX, and before that, through Raytheon Technologies Corporation.  Since April 2020, RTX or its predecessor company Raytheon Technologies Corporation operated the careers website and hiring process on behalf of all their subsidiaries and business units, such that Plaintiffs and other applicants reasonably believed that their relationship as applicants was with RTX and Raytheon Technologies Corporation.

170.    In addition, the close relationship between RTX and Raytheon Technologies Corporation and their subsidiaries and business units, and the way that RTX presented itself to the public as a single integrated enterprise with three business units (Collins Aerospace, Pratt & Whitney, and Raytheon) made Plaintiffs and other applicants reasonably believe that the interests of RTX's subsidiaries and business units were to be represented by RTX and Raytheon Technologies Corporation.

171.    Indeed, when Mr. Goldstein sought to toll his claims against Raytheon Company from the First Charge, counsel who represented *both* Raytheon Company and Raytheon Technologies Corporation entered into a tolling agreement on June 11, 2021 with Raytheon Technologies Corporation regarding the Challenged Practice throughout the company nationwide.

172.    And in response to Mr. Goldstein's June 13, 2023 Charge, RTX and its lawyers, who also represented RTX's subsidiaries and business units, filed position statements and data responses that indicated that RTX was the party responsible for the hiring within its subsidiaries and business units and the only party that was necessary in the proceeding.

29.173.    More than 60 days have passed since Plaintiffs filed their relevant charges, which is the time that must elapse before a suit alleging violations of the ADEA can be filed in federal court. 29 U.S.C. § 626(d)(1).[4]

---

[4] The 60-day waiting period for ADEA claims asserted in Mr. Bryan's EEOC charge will expire on

**Exhaustion of State Law Claims**

30.174.    The state law claims on behalf of a class of similarly situated individuals in Massachusetts, Virginia, and California are also properly exhausted. Mr. Goldstein submitted his Second Charge to the Massachusetts Commission Against Discrimination ("MCAD") on or around June 13, 2023. More than 90 days have elapsed since Mr. Goldstein filed this charge with MCAD. On April 23, 2024, Mr. Goldstein filed a notice of withdrawal with MCAD, which satisfies his obligations for administrative exhaustion in Massachusetts.

31.175.    Mr. Goldstein's Second Charge was also filed with the Virginia Office of Civil Rights ("OCR"). On July 11, 2023, Mr. Goldstein's counsel mailed the OCR a hard copy of the charge, which the OCR confirmed it had received. More than 180 days have elapsed since Mr. Goldstein's charge was filed with the OCR. Mr. Goldstein received a right to sue letter from the OCR on March 19, 2024, and filed this action within 90 days of receiving the right to sue from the OCR.

32.176.    Mr. Beaulieu filed a charge of discrimination with MCAD on or around August 29, 2024. On November 18, 2024, Mr. Beaulieu filed a notice of withdrawal with MCAD, which satisfies his obligations for administrative exhaustion in Massachusetts.

33.    Mr. Bryan filed his charge of discrimination with the California Civil Rights Department ("CRD") on or around September 27, 2024. Mr. Bryan received a right to sue letter from

_____

November 26, 2024. Because the EEOC has related all three of Plaintiffs' charges together and will not be investigating Mr. Bryan's claims concurrently alongside this pending litigation, in the First Amended Complaint Mr. Bryan's claims were timely and most efficiently pleaded there for purposes of 29 U.S.C. § 626(d)(1).

45

177.    CRD on October 24, 2024, and filed this action within one year of receiving the right to sue letter from CRD.

34.178.    Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

### Plaintiffs

35.179.    Plaintiff Mark Goldstein is an adult resident of the state of Virginia. Mr. Goldstein has approximately 40 years of experience in project management, cybersecurity, technology, risk management, security engineering, sales, marketing, engineering, business, and consulting, including for major private sector companies, such as Northern Telecom (later known as Nortel), America Online, and Websense. He also has experience as a contractor for the U.S. Department of Homeland Security. Mr. Goldstein previously held a federal government security clearance and has a Certified Information Security Systems Profession ("CISSP") certificate and a Certified Information Privacy Professional certificate. He was born in 1956 and iswas 67 years of age as of the date of this filingthe Original Complaint. He earned a bachelor's degree in economics from American University in 1978, and a master's degree in business administration ("MBA") from American University in 1980. He is a citizen of the United States.

36.    Plaintiff Ducamp Beaulieu is an adult resident of the state of Massachusetts. Mr. 180.    Beaulieu has a background in math, physics, programming languages and software engineering. Mr. Beaulieu was born in 1962 and iswas 62 years of age as of the date of this filingthe Original Complaint. He earned a bachelor's degree in engineering technology, with a concentration in software development, from Northeastern University of Boston in 2013. He is a citizen of the United States.

37.    Plaintiff John Bryan is an adult resident of the state of California. Mr. Bryan has experience with various coding language including, C., Matlab. Octave, Fortran, Perl, Javascript,

46

C++. Python, Java, Bash, Verilog, VHDL, Tel, R, and Julia. He served as a Graduate Teaching

181.    Assistant for several years where he taught students how to use various programming languages and tested student design projects. After graduation, Mr. Bryan worked at Stanley Associates (now a subsidiary of CGI Federal, Inc.), which provides information technology services to U.S. defense, intelligence, and other federal government agencies. He was born in 1960 and is~was 63 years of age as of the date of this filingthe Original Complaint. He earned a bachelor's degree in economics from the University of California San Diego in 1996, and a master's degree in electrical engineering from the University of California San Diego in 2006. He is a citizen of the United States.

**RTX**

38.182.   Defendant RTX, f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company, is a publicly traded American corporation that provides aerospace and defense products and services to commercial, military, and government customers. RTX reported net sales of approximately $68.9 billion in 2023.5,5  5

183.    In April 2020, Raytheon Company merged with United Technologies Corporation to form Raytheon Technologies Corporation.  Upon the merger, Raytheon Company became a wholly-owned subsidiary of Raytheon Technologies Corporation.

39.184.  Raytheon Technologies Corporation changed its name to RTX Corporation in approximately July 2023. Raytheon Company has been a wholly-owned subsidiary of RTX Corporation since July 2023.Until approximately June 2022, RTX was headquartered in Waltham, Massachusetts, after which it moved its headquarters to Arlington, Virginia. Many of RTX's and its affiliates' key Human Resources and related personnel are, and previously were, based in Massachusetts, and many of the discriminatory policies and practices described herein were developed, directed, facilitated and enforced in Massachusetts.

---

5 RTX 2023 Annual Report (Mar. 11, 2024), https://investors.rtx.com/static-files/df427ff0-0a2e-4933-b550-c5e76de151bd ("RTX 2023 Annual Report") (last visited November 18, 2024).

40.    In April 2020, RTX merged with United Technologies Corporation to form Raytheon Technologies Corporation, which changed its name to RTX Corporation in or around July 2023.

41.    Upon information and belief, at least tens of thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were

-

185.     deterred from applying to Recent Graduate Positions at RTX and its subsidiaries and business units during the Relevant Time Period. RTX maintains control, oversight, and direction over its employment and hiring practices and those of its subsidiaries and business units, including all Defendants.

42.186.     RTX operates as a "single employer" or "integrated enterprise" and as a "joint employer" with its subsidiaries and business units and subsidiaries, including the other Defendants named herein. RTX also functions as an employment agency with respect to its subsidiaries and business units and subsidiaries by regularly working to procure employees for its subsidiaries and business units and subsidiaries through recruitment, marketing, job advertising, and hiring activities.

187.     Since April 2020, RTX and its lawyers and human resources professionals have disregarded traditional corporate formalities or distinctions when conducting investigations and compliance efforts, and when responding to legal claims regarding employees of RTX and its subsidiaries and business units, including when responding to the legal claims asserted by Mr. Goldstein, Mr. Beaulieu, and Mr. Bryan, and the putative class and collective they seek to represent.

43.188.     RTX is the sole publicly traded parent company that exerts financial control and operational direction over each of its business units and subsidiaries. RTX's corporate statements, tax filings and financial reporting are integrated company-wide, reflecting sales, earnings, costs, and dividends for the entire company, including the Defendants and all other business units and subsidiaries.[6],[6] For example, RTX's public financial filings reflect that "RTX" or the "Company" means "RTX Corporation and its subsidiaries" including RTX's "principal business segments: Collins Aerospace (Collins), Pratt & Whitney, and Raytheon, with each segment comprised of groups of similar operations.""[7],"[7]

---

[6] RTX SEC Form 10-K for Fiscal Year Ending Dec. 31, 2023, 2024 ("RTX 2023 10-K") https://investors.rtx.com/static-files/6c951fb4-1b3e-417a-9c44-c726d27dc93d (last visited November 18, 2024).

[7] *Id.* at 4.

44.  RTX and each Defendant are also operationally entangled or enmeshed. The leadership of Pratt & Whitney, Collins Aerospace, Raytheon Company and Rockwell Collins comprise a significant part of RTX's Leadership and Board of Directors, and RTX is deeply and

189.    directly involved in leading the business strategy, management, and personnel functions
of its business units.[8]

190.    RTX also presents itself to the public as a single integrated enterprise with three business
units – Collins Aerospace, Pratt & Whitney, and Raytheon – covering all of its subsidiaries. It purports to
itself employ "185,000 global employees," including all those directly employed by its subsidiaries, as part
of "the world's largest aerospace and defense company."[9] RTX describes itself and its subsidiaries as
"truly *an integrated aerospace and defense company* – one team with a united vision and a shared set of
values that drives everything we do."[10] According to RTX, its "three market-leading businesses –
Collins Aerospace, Pratt & Whitney and Raytheon – *operate as one*."[11]

45.

46.191.    RTX's public website also presents the company as a single integrated enterprise, using
a centralized company website, https://www.rtx.com/, with different webpages for each of its three main
business units. While RTX operates through hundreds of subsidiaries worldwide, these entities do not
have separately hosted websites, and even the linked websites for RTX's primary business units (Collins
Aerospace, Pratt & Whitney and Raytheon Company) describe each of those entities as "an RTX
business," list RTX's publicly traded stock information on the home page, and direct users to the same
centralized RTX webpages for company information and career and hiring access,
https://careers.rtx.com/global/en.[12]

---

[8] RTX 2023 Annual Report; *see also* RTX 2023 10-K.

[9] RTX 2023 Annual Report at 2.

[10] RTX 2023 ESG at 3.

[11] *Id.* at 4.

[12] *See, e.g.*, Raytheon, "Raytheon: An RTX Business," https://www.rtx.com/raytheon (last visited Nov. 18, 2024) (including links to RTX, Collins Aerospace, and Pratt & Whitney under heading reading "RTX

Businesses").

47.192.   RTX's centralized policies and practices govern recruitment, hiring, and personnel

decisions across the company's business units and subsidiaries. RTX is responsible for developing,

promulgating, and directing HR policies and hiring practices for all of its business segments, including

the discriminatory policies and practices alleged herein. Specifically, the Human Capital & Compensation

Committee of the RTX Board of Directors is responsible for overseeing RTX and its subsidiaries' human

capital management.[13],[13] And RTX's corporate Human Resources team forms "the central hub of [its]

entire enterprise" in providing recruitment and hiring policies that "span[s] the RTX enterprise."[14],"[14]

48.193.   According to its public filings and media statements, RTX personnel are responsible for

"attract[ing], develop[ing], engag[ing], advance[ing], and retain[ing]" employees in all business units,

including by "identify[ing] and hir[ing]" external employees, providing "training and development

programs," "tuition assistance benefits" and "market compensation and benefits" across all business units

company wide.[15],[15]

49.   RTX's Human Resources team, Chief Diversity Officer, and Global Talent personnel

are responsible for recruiting new hires through "proven [college] campus development programs,"

converting interns into full-time hires and "adjust[ing] our hiring strategy to address critical talent

needs, further diversify[ing] our workplace and ensur[ing] we have the right talent with the right

skills at the right time."[16],"[16] Specifically, RTX seeks to resolve the shortage of engineers and

other

---

[13] RTX 2023 Annual Report at 7 ("The Human Capital & Compensation Committee of the RTX Board of
Directors oversees the Company's human capital management").
[14] RTX Corporate, https://careers.rtx.com/global/en/corporate (last visited November 18, 2024).

[15] RTX 2023 10-K at 8; *see also* RTX, "Our Responsibility, Our People," https://www.rtx.com/our-
responsibility/our-people (RTX focuses on "attracting, developing and retaining diverse, world-class
talent" across its businesses) (last visited November 18, 2024).

[16] RTX 2023 ESG at 11.

194.     qualified personnel within its businesses, in part through focusing on "college and university recruiting efforts to create a robust pipeline of intern and new graduate talent."[17] [17] Aside from company-wide recruitment and hiring, RTX is also responsible for promoting equitable retirement savings programs and directing other initiatives focused on employee development and retention for all RTX business units.[18] [18]

50.195.    RTX's corporate policies pertaining to Equal Employment Opportunity and Affirmative Action requirements and procedures, including policies and procedures for preventing, reporting, investigating and remedying complaints of discrimination, harassment, and retaliation, are promulgated by RTX's Chief Human Resources Officer and apply to RTX and all of its businesses and subsidiaries. These policies appear in job postings for all RTX businesses, without material variation. Notably, while RTX's boilerplate "equal opportunity" statements include all federally recognized protected classes, including age, RTX's public filings and marketing materials only highlight its demographic and diversity efforts with respect to race, gender, veteran status, disability, and LGBTQ+ status, to the exclusion of older workers who are also highly underrepresented in entry-level positions and seeking to break into its workforce.[19] [19]

51.    RTX also operates as an employment agency for each Defendant because it is responsible for procuring employees for its business units and subsidiaries, including the Defendants named herein. RTX's Chief Human Resources Officers and personnel drive recruiting and hiring efforts for all of RTX's businesses and subsidiaries. For example, RTX's Executive Director of

---

[17] *Id.* at 13.

[18] *Id.*

[19] RTX 2023 10-K at 7 (highlighting Workforce Demographics and Diversity, Equity, and Inclusion (DE&I)); *see also* RTX, "Diversity, Equity & Inclusion," https://www.rtx.com/our-responsibility/diversity-equity-inclusion (last visited November 18, 2024).

196.    Global Talent Acquisition is responsible for talent acquisition for RTX and its subsidiaries, including through branding and recruitment marketing, managing technology used to disseminate, filtering and processing job applications, compliance and training.

52.197.    RTX personnel are also responsible for hosting and publishing a centralized "Careers" website, https://careers.rtx.com/global/en/, which provides a single corporate gateway to job postings for all positions within the RTX corporate family, regardless of business unit, subsidiary, hiring entity, location or position type. In other words, applicants cannot submit applications through separate company websites for Raytheon, Collins Aerospace and Pratt & Whitney or any other RTX subsidiary; rather, all online opportunities are posted through the RTX "Careers" page. Moreover, while some job posts indicate hiring for a specific business unit, all positions include RTX (formerly Raytheon Technologies and Raytheon Company) branding and company identification and include RTX's Equal Employment and Affirmative Action statements on behalf of the company, giving applicants the impression that they are applying to RTX when they submit an application to work at any of RTX's businesses.

53.198.    RTX Human Resources and Global Talent personnel control, and have direct access to, centralized human resource files, databases, and platforms, such as Brass Ring and Workday, which maintain information regarding job descriptions, job advertisements, and job applications across all business units company-wide.

54.199.    RTX personnel also control, direct, and influence the criteria under which certain job applications are screened or filtered out, including the basic qualifications for Recent Graduate Positions challenged herein, either automatically or after incorporating human review. Specifically, RTX personnel draft, disseminate, and otherwise direct the publication of discriminatory language for Recent Graduate Positions company-wide, using uniform or boilerplate text to discourage and eliminate older workers during the hiring process.

55.200.    RTX personnel further control, direct, and facilitate the automatic and manual rejection of job applications, including for Recent Graduate Positions, based on the failure to satisfy discriminatory age-related job requirements using technological tools, vendors, platforms, and other resources. When applicants are rejected, they typically receive an automated response from RTX's corporate Talent Acquisition group, which is generated by a third-party platform that RTX controls and facilitates.

56.201.    Through these practices, RTX has published discriminatory job advertisements, and has deterred, rejected, or refused to consider numerous applications from Plaintiffs and similarly situated older applicants for Recent Graduate Positions across all of its business units and subsidiaries, with the intent and effect of denying Plaintiffs and other similarly situated older individuals employment because of their age.

**Raytheon Company**

57.202.    Defendant Raytheon Company is a U.S.-based, wholly owned subsidiary of RTX (which itself was formerly also known as Raytheon Company) that provides air and missile defense, electronic warfare, space systems, and cyber products for commercial, military, and government customers. Raytheon Company was previously headquartered in Waltham, Massachusetts and is now headquartered in Arlington, Virginia. Raytheon Company is incorporated in Delaware. Raytheon Company reported net sales of approximately $26.4 billion in 2023.[20] Upon information and belief, thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were deterred from applying to Recent Graduate Positions at Raytheon Company during the Relevant Time Period.

---

[20] RTX 2023 Annual Report at 7.

58

58.203.   Together with, and under the direction of RTX, Raytheon Company has published discriminatory job advertisements, and has deterred, rejected, or refused to consider numerous applications from Plaintiffs and similarly situated older applicants for Recent Graduate Positions, with the intent and effect of denying Plaintiffs and other similarly situated older individuals employment because of their age.

**Pratt & Whitney**

59.204.   Defendant Pratt & Whitney is a U.S.-based, wholly owned subsidiary of RTX that manufactures aircraft engines and auxiliary power units for commercial, military, and government customers. Pratt & Whitney is headquartered in East Hartford, Connecticut, and incorporated in Delaware. Pratt & Whitney reported net sales of approximately $23.7 billion in 2023.[21],[21] Upon information and belief, thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were deterred from applying to Recent Graduate Positions at Pratt & Whitney or its subsidiaries during the Relevant Time Period.

60.205.   Together with, and under the direction of RTX, Pratt & Whitney has published discriminatory job advertisements, and has deterred, rejected, or refused to consider numerous applications from Plaintiffs and similarly situated older applicants for Recent Graduate Positions, with the intent and effect of denying Plaintiffs and other similarly situated older individuals employment because of their age.

**Collins Aerospace**

61.   Defendant Collins Aerospace is a U.S.-based, wholly owned subsidiary of RTX that designs, manufactures, and services aviation systems and components for commercial, military, and government customers. Collins Aerospace is headquartered in Charlotte, North Carolina. Collins

---

[21] *Id.*

206.    Aerospace reported net sales of approximately $26.2 billion in 2023.[22],[22] Upon information and belief, thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were deterred from applying to Recent Graduate Positions at Collins Aerospace or its subsidiaries during the Relevant Time Period.

62.207.    Together with, and under the direction of RTX, Collins Aerospace has published discriminatory job advertisements, and has deterred, rejected, or refused to consider numerous applications from Plaintiffs and similarly situated older applicants for Recent Graduate Positions, with the intent and effect of denying Plaintiffs and other similarly situated older individuals employment because of their age.

**Rockwell Collins**

63.208.    Defendant Rockwell Collins Inc. is a U.S.-based business that operates as part of Collins Aerospace and is a wholly owned subsidiary of RTX. Rockwell Collins is headquartered in Cedar Rapids, Iowa, and is incorporated in Delaware. Upon information and belief, thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were deterred from applying to Recent Graduate Positions at Rockwell Collins or its subsidiaries during the Relevant Time Period.

64.209.    Together with, and under the direction of RTX, Rockwell Collins has published discriminatory job advertisements, and has deterred, rejected, or refused to consider numerous applications from Plaintiffs and similarly situated older applicants for Recent Graduate Positions, with the intent and effect of denying Plaintiffs and other similarly situated older individuals employment because of their age.

---

[22] *Id.* at 6.

**ARINC Inc.**

65.210.   Defendant ARINC Inc. is an U.S.-based, wholly owned subsidiary of Rockwell Collins, which is a wholly owned subsidiary of Collins Aerospace and RTX.  ARINC Inc. provides communication systems to commercial, military, and government customers.  ARINC Inc. is headquartered in Annapolis, Maryland and incorporated in Delaware.  Upon information and belief, thousands of potential class and collective members have applied, attempted to apply, or have been interested in applying but were deterred from applying to Recent Graduate Positions at ARINC, Inc. or its subsidiaries during the Relevant Time Period.

66.211.   Together with, and under the direction of RTX, ARINC Inc. has published discriminatory job advertisements, and has deterred, rejected, or refused to consider numerous applications from Plaintiffs and similarly situated older applicants for Recent Graduate Positions, with the intent and effect of denying Plaintiffs and other similarly situated older individuals employment because of their age.

## FACTUAL ALLEGATIONS

**Defendants' Discriminatory Hiring Policies and Practices**

67.212.   Since at least October 2018, Defendants have engaged in an ongoing pattern or practice of age discrimination in hiring for lower-level positions that disqualifies, rejects, deters, and harms older workers. Defendants' pattern or practice focuses on requiring applicants to be recent college or graduate school graduates for them to qualify and be hired for numerous entry-level positions, either by requiring that the applicants graduated from college or graduate school within a specific recent time frame or that applicants with a college or graduate degree have less than 12 months or 24 months of work experience.

68.213.    As part of Defendants' pattern or practice of age discrimination, Defendants: (1) post job advertisements with discriminatory language that indicates a preference or requirement for younger workers and discriminates against older workers, including by stating that many positions are exclusively for "new" or "recent" graduates or candidates with less than 12 or 24 months of work experience; (2) collect age-related data from applicants that allow Defendants and/or individuals reviewing applications to easily estimate applicants' ages and prevent the applications of older workers from advancing in the hiring process and/or to reject applications on that basis; (3) use applicant screening systems that screen out older workers based on their age, including based on their date of graduation and cumulative work experience; and (4) impose limitations on the eligibility requirements for the Recent Graduate Positions that prevent older workers from being considered or hired for such positions.

69.214.    All Defendants post open positions at RTX's centralized career website, https://careers.rtx.com/global/en/, andwhich is maintained and published by RTX, as well as on various other "job boards" like Indeed, Zip Recruiter, and Monster, which are commercial websites where employers post job openings and recruit workers. Applicants who apply to Defendants via RTX's career website must create a "portal account."" with RTX, which requires applicants, at minimum, to create a username and password. Through this career website, RTX maintains data and information on the workers who have searched and applied for positions at Defendants and their respective applications.

70.    Defendants' job postings and qualification standards for Recent Graduate Positions effectively restrict the positions to workers who are under the age of 40. Those job postings indicate a clear preference for younger workers and discrimination against older workers by advertising the positions as jobs for recent or new graduates and by including limitations or qualifications based on

64

an applicant's date of graduation and/or limited work experience. The Recent Graduate Position postings indicate this preference and restriction in the following ways, among others.

71.215.    First, many job postings for Recent Graduate Positions use the words "New Grad," "New Graduate," "Recent Grad," or similar language in the title of the position, making clear to potential applicants that the jobs are limited to recent or new graduates. For example, during the Relevant Time Period, Defendants published job notices whose titles included the following: "Associate, System Engineer (New Graduate), Req. No. 01464198," "Systems Engineer I – New Grad-Onsite, Req. No. 01550545," and "Associate, Software Engineer (New Grad), Req. No. 01468255."

72.216.    Second, some of Defendants' job postings for Recent Graduate Positions contain language that specifically indicates a preference for younger workers and specifically discourages older workers from applying for those jobs and redirects them to apply for a more limited set of jobs for older workers. For example, Raytheon's job posting titled "Proposal Analyst I (early 2021 Start), Req. No. 174644BR," stated, "***Great opportunity for current seniors in college or recent college graduates. If you are not a current college senior, or a recent college graduate, please visit our other opportunities at our rtx.com/careers and apply!***"

73.217.    Third, Defendants' job postings for Recent Graduate Positions expressly state eligibility requirements that indicate a preference for younger workers, namely that a "basic qualification" for the position is a bachelor's degree earned within a recent time frame, or a bachelor's degree and less than 12 or 24 months of relevant experience. Job postings for "Associate, System Engineer (New Graduate)," Req. No. 01464198, "Systems Engineer I – New Grad-Onsite," Req. No. 01550545 and "Associate, Software Engineer (New Grad)," Req. No. 01468255 are examples of this.

65

74.218.    Defendants' job postings for the Recent Graduate Positions often utilize more than one of these practices, such as including "New Grad" in the title and then requiring that applicants with college degrees have less than 12 or 24 months of work experience.

75.219.    Defendants are aware that their job postings and requirements for the Recent Graduate Positions unlawfully discriminate against older workers, indicate an unlawful preference for younger workers, and discourage older workers from applying for the jobs in violation of the ADEA and state law.

76.220.    In response to Mr. Goldstein's First Charge, the EEOC issued a final determination letter in 2021 informing Defendants that the "EEOC believe [sic] [RTX's] job advertisements included language that violates the ADEA in that it indicated a hiring preference for applicants who are not in the protected age group. As noted in 29 U.S.C., Section 623[e], 'When help wanted notices or advertisements contain any terms and phrases such as 'age 25 to 35,' 'young,' 'college student,' 'recent college graduate,' . . . or others of a similar nature, such a term or phrase deters the employment of older persons and is a violation of the [ADEA].'"

221.    The EEOC reached its 2021 determination after receiving information from and on behalf of all of Raytheon Technologies Corporation's subsidiaries and business units, identifying over 1,000 different requisitions across all of the subsidiaries and business units, including Defendants Raytheon Company, Pratt & Whitney, Collins Aerospace, Rockwell Collins, Inc., and ARINC, Inc.

77.222.    But after receiving the EEOC's final determination in 2021, Defendants did not stop imposing requirements or job notices that discriminate against older workers and deter older workers from applying for the Recent Graduate Positions. Although Defendants shifted the language for certain advertisements in some respects, e.g., reducing the number of advertisements explicitly calling for "recent" or "new" college graduates, Defendants have continued to effectively impose the same criteria by requiring college graduates to have less than 12 or 24 months of work experience to qualify for the Recent Graduate Positions.

78.223.    Since 2018, Defendants' entire application process for the Recent Graduate Positions

has been structured to deter older workers from applying for those positions, to exclude older workers

from consideration or being hired, and to hire younger workers for those positions.

79.224.    At the outset of the hiring process, the language that Defendants use in job postings for

Recent Graduate Positions deters many older workers from even applying to the positions.  Older workers

who are not deterred by the job postings might still be deterred by additional practices implemented by

Defendants that severely disadvantage older applicants and indicate that Defendants are looking to hire

younger workers. For example, some of the Recent Graduate Positions require applicants to provide the

month and year of their college or graduate school graduation and/or require the applicant to submit a

transcript, underscoring that only a recent graduate will be considered or hired for the position. Indeed,

many older workers may not even have copies of their transcripts or have the ability to obtain them.

80.225.    Next, nearly all older workers who apply for the Recent Graduate Positions are

automatically screened out at an early stage of the hiring process and denied consideration. This is because

the basic qualifications for many of the Recent Graduate Positions *require* the applicant to be a recent

college or graduate school graduate or have less than 12 or 24 months of work experience, while the vast

majority of recent graduates and those with little work experience are under 40 years old. Because

Defendants require applicants to provide their month and year of graduation and work history, Defendants

easily estimate each applicant's age and work experience by manual review or through the use of

automated screening systems, and then automatically reject applicants who do not meet the requirements

for date of graduation and/or limited work experience.[23]

---

[23] RTX, on occasion, sends prospective applicants automatic communications at various points in the
application process, further demonstrating that RTX utilizes automated screening tools.

226.    Upon information and belief, RTX screens out candidates for the Recent Graduate Positions who are not recent graduates, either automatically through the hiring portal that it operates or through the RTX Human Resources department. Accordingly, RTX and its subsidiaries and business units never consider these applicants for the Recent Graduate Positions.

81.227.    Older workers who are not automatically screened out by these practices are still very unlikely to be considered, interviewed, or hired by Defendants for the Recent Graduate Positions because, again, they are too old to meet the recent college or graduate school graduate criterion or post-graduate work experience limitations, or because Defendants are not interested in hiring older people for the Recent Graduate Positions. As a result, the vast majority of applicants whom Defendants actively considered, interviewed, and/or hired for the Recent Graduate Positions have been under the age of 40.

> **Formatted:** Indent: Left: 0", First line: 0.5", Right: 0", Space Before: 0 pt

82.228.    Defendants' discriminatory practices bar or severely disadvantage older applicants in competing for the Recent Graduate Positions and disproportionately exclude them from being considered, interviewed, or hired for the Recent Graduate Positions.

> **Formatted:** Indent: Left: 0", First line: 0.5", Right: 0"

83.229.    Defendants have long known that the vast majority of recent college and graduate school graduates are under 40 years old. It is commonly understood and widely known that most recent college and graduate school graduates are younger than 40 and most often in their 20s.

84.230.    This common knowledge is substantiated by data, which was provided to Defendants several years ago. During the EEOC proceeding on his First Charge in 2021, Mr. Goldstein provided the EEOC and Defendants with statistical data collected by the National Center for Education Statistics reporting (in accordance with common knowledge) that the vast majority of college students are under 40 years old. According to that data, 95% of college graduates are under 40, 70% of graduates are 24 or younger at graduation, and only 4.8% of graduates are 40 or older. These statistics reveal that college graduates are *15 times more likely to be under 40 than age 40 or older*. And, again, since at least 2021,

Defendants have known about these statistics, which are consistent with the common understanding of

the demographics of recent college graduates.

85.     Despite this data and the EEOC's clear finding that RTX's hiring practices violate

the ADEA, Defendants have continued to require that applicants for the Recent Graduate Positions

231.    be recent college or graduate school graduates and/or have less than 12 or 24 months

of work experience and have continued to publish advertisements for the Recent Graduate Positions with

language indicating a preference for younger workers and discrimination against older workers.

~~86.~~232.    During the past several years, at any point in time, Defendants have advertised jobs for

dozens of Recent Graduate Positions that required the applicant to be a recent college or graduate school

graduate or have less than 12 or 24 months of relevant work experience.

~~87.~~    For example, on May 30, 2024, RTX published a job posting for a Mechanical

Engineer I (Onsite) with a salary range of $59,000 to $113,000, for which the only "Basic

Qualifications" were U.S. citizenship and a "[b]achelor's degree and 12 months or less of relevant

professional work experience (excluding internships)." Also on May 30, 2024, RTX published a job

posting for a Manufacturing Engineer I (On-Site) with a salary range of $59,000 to $113,000, for

which the only "Basic Qualifications" were U.S. citizenship, the ability to obtain and maintain ATF

access, and a "[b]achelor's degree and 12 months or less of relevant professional work experience

(excluding internships)." On April 3, 2024, RTX published a job posting for a Financial Analyst

(REMOTE) position with a salary range of $53,000 to $103,000, for which the only "Basic

Qualifications" were U.S. citizenship and a "Bachelor's degree and 12 months or less of relevant

professional work experience (excluding internships)." On February 16, 2024, RTX published a job

posting for a Systems Engineer I (Flight Controls) (Hybrid) position with a salary range of $53,000

to $103,000, for which the only "Basic Qualifications" were U.S. work authorization and a

"Bachelor's degree and 12 months or less of relevant professional work experience (excluding

internships)." And on January 29, 2024, RTX published a job posting for a Business Analyst for

Engineering Services (Onsite) with a salary range of $53,000 to $103,000, for which the only "Basic

Qualifications" were U.S. citizenship, permanent residency, or refugee status and a "Bachelor's

degree and 12 months or less of relevant professional work experience (excluding internships)."

233.    Many of the Recent Graduate Positions have been for onsite positions in Massachusetts, Virginia, or California, or for remote positions that could be staffed by workers residing in any state.

88.234.    Throughout the Relevant Time Period, these types of job postings and recent college or graduate school graduation requirements, and RTX's related pattern or practice of discrimination, have achieved a younger workforce for the Recent Graduate Positions and more generally. In fact, in May 2023, RTX reported that 25% of all new hires were new or recent college graduates. Among the Recent Graduate Positions, it is likely that all or nearly all of Defendants' hires have been under 40 years old during the Relevant Time Period.

89.235.    Even an ongoing labor shortage and need for qualified personnel has not deterred Defendants from continuing to limit Recent Graduate Positions to recent college graduates. Since at least 2020, RTX has disclosed in Securities and Exchange Commission ("SEC") filings and quarterly earnings calls that it is facing labor shortages that, in turn, impact the Company's financial results and could "seriously harm [RTX's] business."[24]

90.236.    In the Company's 2020 Annual Report, filed on Form 10-K with the SEC ("2020 10-K"), Raytheon Technologies Corporation (now RTX) disclosed:

> Due to the specialized nature of our business, ***our future performance is highly dependent upon . . . the hiring of new qualified technical, manufacturing, marketing, sales and management personnel for our operations.*** Our defense business in particular requires qualified personnel with security clearances due to our classified programs. ***Competition for personnel is intense*** and we may not be successful in attracting, training or retaining qualified personnel with the requisite skills or security clearances ⎯ . . . . Further, we have experienced and may continue to
> experience personnel reductions as a result of the COVID-19 pandemic's impact on our business and a significant percentage of our current workforce is nearing or eligible for retirement. ***To the extent that we lose experienced personnel, it is critical that we develop other employees, hire new qualified personnel and successfully manage the transfer of critical knowledge.*** In addition, new qualified personnel may

---

[24] *See* Raytheon Technologies (RTX) Q3 2021 Earnings Call Transcript (Oct. 26, 2021), https://www.fool.com/earnings/call-transcripts/2021/10/26/raytheon-technologies-corp-rtx-q3-2021-earnings-ca/ ("And we're also seeing, of course, labor shortages in our supply chain, which is also slowing down input.  And I think that's going to be a continuing problem into next year.").

have different expectations from our current workforce, which could result in difficulties attracting and retaining new employees. ***Loss of key employees, failure to attract new qualified employees or adequately train them, delays in receiving required security clearances, or delays in hiring key personnel could seriously harm our business.***[25]

Nearly identical language was included in Raytheon Technologies Corporation's 2021 10-K.[26]

~~91.~~237.    Raytheon Technologies Corporation's 2022 10-K includes similar language to the 2020 and 2021 10-Ks and also adds:

Formatted: Indent: Left: 0", First line: 0.5", Right: 0"

> Current macroeconomic, industry and labor market conditions have exacerbated an already highly competitive market for hiring and retaining employees with relevant qualifications and experience. ***There is an ongoing labor shortage, particularly for highly qualified personnel including engineers, skilled laborers and security clearance holders.*** Labor market trends also include high attrition and wage inflation, and some candidates and new personnel may have different expectations from our current workforce. As a result of the above factors, ***we have experienced, and expect to continue to experience, significant difficulties in hiring and retaining personnel with relevant qualifications and experience, which has negatively impacted, and may continue to negatively impact, our results of operations, financial condition and liquidity.***[27]

~~92.~~238.    In Q3 2022, RTX's Chief Executive Officer ("CEO") and Chairman provided more insight into RTX's efforts to hire and retain sufficient personnel:

> On labor availability, it's a challenge. Everybody sees it, especially in the supply chain. And I think what's interesting for -- at RTX is we have hired 27,000 people in 2022. That's about 3,000 a month since the beginning of the year. Our total headcount today is over 180,000. The challenge though is we would need about 10,000 more people. So a lot of work yet to do on labor.[28]

---

[25] Raytheon Technologies Corporation 2020 10-K, https://investors.rtx.com/static-files/e2c0b07c-9373-470f-9172-01c1522aa510 (last visited November 18, 2024).

[26] Raytheon Technologies Corporation 2021 10-K, https://investors.rtx.com/static-files/7784efe1-cfe4-4061-a3d2-db4e6fab6f11 (last visited November 18, 2024).

[27] Raytheon Technologies Corporation 2022 10-K, https://investors.rtx.com/static-files/324589ff-71a3-4ba0-8c29-f9199d37fdf2 (last visited November 18, 2024).

[28] RTX Q3 2022 Earnings Call Transcript (Oct. 25, 2022), https://www.fool.com/earnings/call-transcripts/2022/10/25/raytheon-technologies-rtx-q3-2022-earnings-call-tr/ (last visited November 18, 2024).

93.239.    Despite RTX's ongoing difficulty in retaining and hiring sufficient qualified personnel and the negative impact on the Company's financial prospects, Defendants continue to exclude older workers from many entry-level positions by requiring applicants to be recent college or graduate school graduates, regardless of their qualifications, and publish discriminatory job postings that deter older workers from applying to Defendants.

**Defendants' Discriminatory Hiring Policies Have Harmed Plaintiffs and the Classes and Collective They Seek to Represent.**

*Plaintiff Goldstein*

94.240.    Mark H. Goldstein graduated from American University with a bachelor's degree in economics in 1978 and a master's degree in business administration ("MBA") in 1980.

95.241.    Since 1980, Mr. Goldstein has gained extensive experience in cybersecurity, technology, risk management, security engineering, project management, customer support, sales, marketing, engineering, business, and consulting, with positions at Northern Telecom/Nortel, America Online, and Websense.

96.242.    Mr. Goldstein has worked for a contractor for the U.S. Department of Homeland Security, and previously held a federal government security clearance.

97.243.    Mr. Goldstein also has a Certified Information Security Systems Professional certificate and a Certified Information Privacy Professional certificate.

98.244.    Between 2019 and 2023, Mr. Goldstein has applied for at least eight Recent Graduate Positions at RTX for which he was qualified, but RTX has never interviewed him, offered him employment, or hired him.

99.245.    Mr. Goldstein has been genuinely interested in each of the positions he applied for at

RTX and has been willing to relocate, if necessary, or work remotely.

100. When Mr. Goldstein applied to work at Defendants, Defendants required Mr.

246. Goldstein to include and confirm the year and month of his college graduation in

order to submit each of his applications.

101.247. As described below, Mr. Goldstein was qualified for each position for which he

applied. The only "qualifications" that he did not meet were those requiring him to be a recent college

graduate or to have less than 12 or 24 months of relevant work experience.

102.248. On May 6, 2019, Mr. Goldstein applied for a Raytheon Company position advertised by

RTX as "Cyber Defense Technologist II," Requisition Number 139839BR. The position required

applicants to be "currently enrolled or a recent graduate (within 18 months) with a Master's degree in

Computer Science, Information System Management, Information Technology, Criminal Justice,

Business or other relevant degree." The position also required the ability to obtain a Department of

Defense security clearance, the ability to obtain an Information Security Professional Certification

commensurate with the Department of Defense 8570.1-M Level 2 requirements within 6 months of hiring,

and experience working with and/or supporting computer technologies.

103.249. By requiring that applicants be currently enrolled in or recently graduated from a

master's degree program, RTX and Raytheon Company explicitly stated a preference or limitation for

hiring younger workers and discrimination against older workers. In addition, RTX and Raytheon Company

intentionally discriminated against older workers by establishing this recent graduate requirement for the

position and/or applied a facially neutral policy that disproportionately excluded older workers from the

position.

104. Mr. Goldstein met all the qualifications for the Cyber Defense Technologist II

position. He has a BA in Economics and an MBA and thus has a Master's in "Business or other

relevant degree." In addition, in his application, Mr. Goldstein explained that he previously held a

security clearance and would have no issue in obtaining one again. He also has a professional

250.    certification in Certified Information Security Systems Professional (CISSP), which exceeds the DoD 8570.1-M level 2 certification requirement in the posting, as well as extensive experience working with and supporting computer technologies.

105.251.    RTX and Raytheon Company rejected Mr. Goldstein for the Cyber Defense Technologist II position on May 8, 2019 without inviting Mr. Goldstein to interview for the position.

106.252.    RTX and Raytheon Company did not consider Mr. Goldstein's qualifications for the position and rejected Mr. Goldstein solely because he was not currently enrolled in or recently graduated from a master's degree program.

107.253.    Even though Mr. Goldstein was qualified for the role, upon information and belief, RTX and Raytheon Company hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

108.254.    The EEOC found on March 30, 2021 that Mr. Goldstein "was denied the opportunity to be considered for the [Cyber Defense Technologist II] position[] he had applied for because of his age, and not because he did not meet the minimum qualifications required for the job[]."

109.255.    Upon information and belief, many other older workers were also qualified for this position, but either did not apply because of the job posting's preference for younger workers or they did apply but were not considered, interviewed, or hired because of their age. In fact, for the individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

110.256.    On May 15, 2019, Mr. Goldstein applied for a Raytheon Company position advertised by RTX as "Program Cost Schedule Analyst I (New Grad Opportunity)," Requisition Number 139244BR. The position required a "Bachelor's Degree in Business Administration, Finance, Accounting, or business related major in the past 18 months or by spring of 2019."

111.257.   By requiring applicants to have obtained a bachelor's degree within the last 18 months (or to be enrolled in a degree program with an expected graduation date in the next few months), RTX and Raytheon Company explicitly stated a preference for or limitation to hiring younger workers and discrimination against older workers. In addition, RTX and Raytheon Company intentionally discriminated against older workers by establishing this recent college graduate requirement for the position and/or applied a facially neutral policy that disproportionately excluded older workers from the position.

112.   Mr. Goldstein was qualified for the Program Cost Schedule Analyst I position.

258.   Among his other qualifications, he holds a BA in Economics and an MBA.

113.259.   RTX and Raytheon Company summarily rejected Mr. Goldstein for the Program Cost Schedule Analyst I position on May 15, 2019 without inviting Mr. Goldstein to interview for the position.

114.260.   RTX and Raytheon Company did not consider Mr. Goldstein's qualifications for the position and, instead denied his application solely because he was not a recent (or soon to be) college graduate.

115.261.   Even though Mr. Goldstein was qualified for the role, upon information and belief, RTX and Raytheon Company hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

116.262.   The EEOC found on March 30, 2021 that Mr. Goldstein "was denied the opportunity to be considered for the [Program Cost Schedule Analyst] position[] he had applied for because of his age, and not because he did not meet the minimum qualifications required for the job[]."

117.   Upon information and belief, many other older adults were also qualified for this position, but either did not apply, because of the job posting's preference for a younger worker, or

263.    they did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

~~118.~~264.    On or around February 4, 2021, Mr. Goldstein applied for a Raytheon Company position advertised by RTX and Raytheon Company as "Proposal Analyst I (early 2021 Start)," Requisition Number 174644BR. The advertisement for the positions read, *inter alia*, "***Great opportunity for current seniors in college or recent college graduates. If you are not a current college senior, or a recent college graduate, please visit our other opportunities at our rtx.com/careers and apply!***"

~~119.~~    The position required "a BS / BA in Finance / Business Administration / Economics 265.    / Math-Econ or Statistics [or] other related field by December 2020."

~~120.~~266.    By requiring applicants to be recent college graduates as a basic qualification for the Proposal Analyst I position and then directing applicants who were not current college seniors or recent graduates to apply for other positions, RTX and Raytheon Company explicitly stated a preference or limitation for hiring younger workers and discrimination against older workers.

~~121.~~267.    Mr. Goldstein met the qualifications for the Proposal Analyst I position, except that he was not a current college senior or recent graduate.

~~122.~~268.    RTX and Raytheon Company summarily rejected Mr. Goldstein for the Proposal Analyst I position without inviting Mr. Goldstein to interview for the position.

~~123.~~    Upon information and belief, RTX and Raytheon Company decided not to select Mr. 269.    Goldstein for an interview because he was not a recent college graduate and because he is an older worker.

124.270.    Even though Mr. Goldstein was qualified for the role, upon information and belief, RTX and Raytheon Company hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

125.271.    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

126.272.    On or around June 1, 2021, Mr. Goldstein applied for a Raytheon Company position advertised by RTX as "Financial Analyst I," Requisition Number 179782BR. The advertisement stated, *inter alia*, that the position is a "great opportunity for an early career candidate."

127.273.    The Financial Analyst I position required applicants to have a "Bachelor's degree in Finance, Accounting, Business Administration or similar discipline by Dec 2020, May 2021, or have graduated within 18 months' prior to start date." The application process required applicants to upload their most recent transcripts along with their resume.

128.274.    By requiring applicants to obtain a bachelor's degree "by Dec 2020, May 2021, or have graduated within 18 months prior to start date," RTX and Raytheon Company expressed a clear preference or limitation for younger workers and discrimination against older workers. Given the timing of the publication of the advertisement in mid-2021 and its use of recent and specific semester-based graduation dates (December 2020 and May 2021), the advertisement communicated a requirement for applicants to be recent college graduates, i.e., those graduating in December 2020, May 2021 or within 18 months prior to the start date, but no earlier than 18 months before the start date.

129.275.   Mr. Goldstein met the qualifications for the Financial Analyst I position, except for the required graduation date.

130.276.   RTX and Raytheon Company did not invite Mr. Goldstein for an interview or respond in any way to Mr. Goldstein's application for the Financial Analyst I position.

131.   Upon information and belief, RTX and Raytheon Company did not select Mr.

277.   Goldstein for the Financial Analyst I position because he was not a recent college graduate and because he is an older worker.

132.278.   Even though Mr. Goldstein was qualified for the role, upon information and belief, RTX and Raytheon Company hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

133.279.   Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates.

134.280.   On or around March 10, 2022, Mr. Goldstein applied for a Rockwell Collins, Inc. position that RTX advertised as "Associate, System Engineer (New Graduate)," Requisition Number 01464198. The advertisement noted that the position was with Collins Aerospace, "a Raytheon Technologies Company," and did not reference Rockwell Collins, Inc. at all. The advertisement stated that the "basic qualifications" for the position include a "bachelor's degree and less than 2 years prior relevant experience OR, in absence of a degree, 6 years of relevant experience is required."

135.   By advertising for the position as one for a "New Graduate" and then requiring applicants with college degrees to have "less than 2 years prior relevant experience," Rockwell

281.    Collins, Inc. and RTX expressed a clear preference and limitation for hiring younger workers and discrimination against older workers.

136.282.    Mr. Goldstein met the qualifications for the Associate, System Engineer position, except that he was not a new graduate and he exceeded the experience limitation for applicants with a bachelor's degree.

137.283.    Rockwell Collins, Inc. and RTX summarily rejected Mr. Goldstein for the Associate, System Engineer position without an interview on April 7, 2022.

138.284.    On information and belief, Rockwell Collins, Inc. and RTX rejected Mr. Goldstein for the Associate, System Engineer position because he was not a recent college graduate, because he has more than two years of relevant experience, and because he is an older worker.

139.285.    Even though Mr. Goldstein was qualified for the role, upon information and belief, Rockwell Collins, Inc. and RTX hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

140.286.    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates and they did not have less than two years of relevant work experience.

141.    On or around March 10, 2022, Mr. Goldstein applied for an ARINC Inc. position that RTX advertised as "Associate, Software Engineer (New Grad)," Requisition Number 01468255. The advertisement noted that the position was with Collins Aerospace, "a Raytheon Technologies Company," and did not reference ARINC Inc. at all. The advertisement stated that the "basic

287.    qualifications" include a "[b]achelor's degree and less than 2 years prior relevant experience OR in absence of a degree, 6 years of relevant experience is required."

~~142.~~288.  By advertising the position as one for a "New Grad" and then requiring applicants with college degrees to have "less than 2 years prior relevant experience," RTX and ARINC Inc. expressed a clear preference and limitation for hiring younger workers and discrimination against older workers.

~~143.~~289.  Mr. Goldstein met the qualifications for the Associate, Software Engineer position, except that he was not a recent graduate and he exceeded the experience limitation for applicants with a bachelor's degree.

~~144.~~290.  ARINC Inc. and RTX did not invite Mr. Goldstein for an interview or in any way respond to his application for Associate, Software Engineer.

~~145.~~291.  On information and belief, ARINC Inc. and RTX rejected Mr. Goldstein for the Associate, Software Engineer position because he was not a recent college graduate, because he has more than two years of relevant experience, and because he is an older worker.

~~146.~~292.  Even though Mr. Goldstein was qualified for the role, upon information and belief, ARINC Inc. and RTX hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Goldstein.

~~147.~~293.  Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates and they did not have less than two years of relevant work experience.

~~148.~~294.    On or around March 15, 2023, Mr. Goldstein applied for a Rockwell Collins, Inc. position that RTX advertised as "Systems Engineer I – Onsite," Requisition Number 01560901. The advertisement noted that the position was with Collins Aerospace and referenced "Raytheon Technologies" but did not reference Rockwell Collins Inc. at all. The advertisement stated that the position was for an "entry level" worker and the "basic qualifications" included a "Bachelor's Degree and less than 12 months of experience."

~~149.~~295. By requiring applicants to have "less than 12 months of experience" as a basic qualification for the position, Rockwell Collins, Inc. and RTX expressed a clear limitation and preference to hire younger workers who were just entering the workforce and discrimination against older workers.

~~150.~~296.    Mr. Goldstein met the qualifications for the Systems Engineer I position, except that he has more than 12 months' work experience.

~~151.~~297.    Rockwell Collins, Inc. and RTX did not invite Mr. Goldstein for an interview or in any way respond to his application for Systems Engineer I.

~~152.~~    On information and belief, Rockwell Collins, Inc. and RTX did not select Mr.

298.        Goldstein for the Systems Engineer I position because he has more than 12 months' experience and because he is an older worker.

~~153.~~299.    Even though Mr. Goldstein was qualified for the role, upon information and belief, Rockwell Collins, Inc. and RTX hired a substantially younger individual who was not significantly more qualified and experienced than Mr. Goldstein.

~~154.~~    Upon information and belief, many other older adults were also qualified for this position, but either did not apply because of the job posting's clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such

300.     older individuals who did not apply, it would have been futile for them to have applied,

because they were not recent graduates and they did not have less than 12 months of relevant work

experience.

155.301.   On or around March 15, 2023, Mr. Goldstein applied for a Rockwell Collins, Inc.

position that RTX advertised as "Systems Engineer I – New Grad – Onsite," Requisition Number

01550545. The advertisement noted that the position was with Collins Aerospace and referenced

"Raytheon Technologies" but did not reference Rockwell Collins Inc. at all. The advertisement stated that

the "basic qualifications" for the position include a "bachelor's degree and less than 2 years prior relevant

experience OR in absence of a degree, 6 years of relevant experience is required."

156.302.  By advertising for the position as one for a "New Grad" and then requiring applicants

with college degrees have less than two years' experience, Rockwell Collins, Inc. and RTX expressed a clear

limitation and preference to hire younger workers and discrimination against older workers.

157.303.  Mr. Goldstein met the qualifications for the Systems Engineer I position, except he was

not a "New Grad" and he exceeded the experience limitation for applicants with a bachelor's degree.

158.304.   Rockwell Collins, Inc. and RTX did not invite Mr. Goldstein for an interview or in any

way respond to his application for Systems Engineer I.

159.     On information and belief, Rockwell Collins, Inc. and RTX did not select Mr.

305.     Goldstein for this Systems Engineer I position because he was not a recent college

graduate, because he has more than two years of experience, and because he is an older worker.

160.306.   Even though Mr. Goldstein was qualified for the role, upon information and belief,

Rockwell Collins, Inc. and RTX hired a substantially younger individual who was not significantly more

qualified or experienced than Mr. Goldstein.

161.     Upon information and belief, many other older adults were also qualified for this

position, but either did not apply because of the job posting's clear preference for a younger worker

85

307.    or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates and they did not have less than two years of relevant work experience.

~~162.~~308.    Mr. Goldstein was discouraged and deterred from applying for, and did not apply to, dozens of other Recent Graduate Positions at Defendants for which he was qualified but for the requirement that the applicants be recent graduates or applicants with less than 12 or 24 months of relevant work experience. Mr. Goldstein reasonably and correctly believed that it would be futile to apply to additional Recent Graduate Positions because Defendants would never consider him for those positions due to his date of graduation, his work experience that exceeded 24 months, and his age, and that Defendants typically or always enforced the recent college graduate and work experience requirements. For the same reasons, other older workers chose not to apply for Recent Graduate Positions at Defendants because they reasonably and correctly believed that applying would be a futile exercise and that they would never be considered or hired for those positions.

309.    Mr. Goldstein and the members of the Collective and Class have all suffered harm from Defendants' pattern or practice challenged in this action, including the denial of an opportunity to compete for positions on equal footing with younger applicants, the denial of employment, the loss of income, benefits, and career advancement, stigmatic harm from seeing advertisements that indicate a preference for younger workers and discrimination against older workers and from being rejected or deterred from applying for positions that Defendants intended for younger workers.

~~163.~~        ***Plaintiff Ducamp Beaulieu***

~~164.~~310.    Ducamp Beaulieu graduated from Northeastern University with a bachelor's degree in engineering technology, with a concentration in software development, in 2013.

86

165.311.   Mr. Beaulieu has experience working as an engineer and technician and has extensive training in programming languages and software development, as well as general business and sales experience.

166.312.   In September 2021, Mr. Beaulieu applied for two engineering positions with RTX, Raytheon Company, or another RTX-affiliated entity. The first position was advertised as "Junior Systems Engineer/Eng I, Systems Engrg, Req ID 186042BR." The second position was advertised as "Junior Systems Engineer, Req ID 21384442." Both positions stated a requirement or preference that the applicant must be a recent college graduate, attending college or have less than 12 or 24 months of work experience if they were a college graduate.

167.313.   Mr. Beaulieu has been genuinely interested in each of the positions to which he applied and has been willing to relocate, if necessary, or work remotely.

168.314.   When Mr. Beaulieu applied to these Recent Graduate Positions, RTX, Raytheon Company (or other RTX-affiliated entities) required him to include and confirm the year and month of his college graduation in order to submit each of his applications.

169.315.   Mr. Beaulieu was qualified for each position for which he applied because he had a college degree in engineering and experience in engineering. The only "qualifications" that he did not meet were those requiring him to be a recent college graduate or to have less than 12 or 24 months of relevant work experience.

316.   When Mr. Beaulieu submitted his applications for these two positions, he received emails confirming his submission of the applications. The September 5, 2021 confirmation email for the first position was titled "Your candidate reference number Raytheon Company," and the September 7, 2021 confirmation email for the second position was titled, "Regarding Your Raytheon Technologies Job Submission."

170.   RTX and Raytheon Company (or other RTX-affiliated entities) summarily rejected

Mr. Beaulieu for the Recent Graduate Positions to which he applied. Within one day of submitting

his application, Mr. Beaulieu received an automated email from "Raytheon Technologies Talent

Acquisition" stating that he was "not selected" for the "Junior Systems Engineer/Eng I, Systems

Engrg, Req ID 186042BR" position.  He did not receive any further communication from RTX or its

317.    affiliates regarding the "Junior Systems Engineer, Req ID 21384442" position and was

accordingly denied the position.

171.318.   Even though Mr. Beaulieu was qualified for the roles for which he applied, upon

information and belief, RTX and Raytheon Company (or other RTX-affiliated entities) hired a

substantially younger individual who was not significantly more qualified or experienced than Mr.

Beaulieu.

172.319.   Upon information and belief, many other older adults were also qualified for these

positions, but either did not apply because of the job postings' clear preference for a younger worker or did

apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals

who did not apply, it would have been futile for them to have applied, because they were not recent

graduates, and they did not have less than two years of relevant work experience.

173.320.   By requiring that applicants be a recent college graduate or have no more than 12 or 24

months of relevant work experience, RTX and Raytheon Company (or other RTX-affiliated entities)

explicitly stated a preference or limitation for hiring younger workers and discrimination against older

workers. In addition, RTX and Raytheon Company (or other RTX-affiliated entities) intentionally

discriminated against older workers by establishing these requirements and/or applied a facially neutral

policy that disproportionately excluded older workers.

174.321.   Mr. Beaulieu was discouraged and deterred from applying for, and did not apply to,

dozens of other Recent Graduate Positions at Defendants for which he was qualified but for the

requirement that the applicants be recent graduates or applicants with less than 12 or 24 months of relevant

work experience. Mr. Beaulieu reasonably and correctly believed that it would be futile to apply to

additional Recent Graduate Positions because Defendants would never consider him for those positions

due to his date of graduation, his work experience that exceeded 24 months, and his age, and that

Defendants typically or always enforced the recent college graduate and work experience

requirements. For the same reasons, other older workers chose not to apply for Recent Graduate Positions at Defendants, because they reasonably and correctly believed that applying would be a futile exercise and that they would never be considered or hired for those positions.

322.    Mr. Beaulieu and the members of the Collective and Class have all suffered harm from Defendants' pattern or practice challenged in this action, including the denial of an opportunity to compete for positions on equal footing with younger applicants, the denial of employment, the loss of income, benefits, and career advancement, stigmatic harm from seeing advertisements that indicate a preference for younger workers and discrimination against older workers and from being rejected or deterred from applying for positions that Defendants intended for younger workers.

175.        ***Plaintiff John Bryan***

176.323.    John Bryan graduated from the University of California San Diego with a bachelor's degree in economics in 1996 and a master's degree in electrical engineering in 2006.

177.324.    Mr. Bryan has experience with computer programming, hardware design, technology, and engineering, with positions at Stanley Associates/CGI Federal, AppleOne Employment Services, and as a Graduate Teaching Assistant at the University of San Diego, teaching students how to use various program languages and testing student design projects.

178.325.    Since 2020, Mr. Bryan has applied for over 20 engineering or related positions at RTX and Raytheon Company (or other RTX-affiliated entities), including at least three positions (identified in the next three paragraphs) that stated a requirement or preference that the applicant must be a recent college graduate, attending college, or have less than 12 or 24 months of experience if they were a college graduate. For example, some of the positions he applied for included "New College Grad," "Out of college 18 months," or similar exclusionary language in the title of the advertisement, while others stated experience maximums up to 12 or 24 months.

90

326.    On November 11, 2021, Mr. Bryan applied for the New College Grad: Advanced RF Algorithms Engineer (Master's Degree), Req ID 190631BR position, which was a Recent Graduate Position. RTX rejected him five days later, on November 16, 2021 and thus refused to hire him for that position.

327.    On September 29, 2022, Mr. Bryan applied for the Software Engineer I (Onsite), Req ID 01544608 position, which was a Recent Graduate Position.  RTX rejected Mr. Bryan 12 days later, on September 29, 2022 for that position and thus refused to hire him for that position.

328.    On August 12, 2024, Mr Bryan applied for the Junior Software Engineer, Req ID 01677525 position, which was a Recent Graduate Position. RTX did not respond to that application and thus refused to hire him for that position.

179.    However, Defendants and other RTX-affiliated entities have never offered Mr.

329.    Bryan employment or hired him for any Recent Graduate Positions. Mr. Bryan's last application was made on August 12, 2024. Mr. Bryan has been genuinely interested in each of the positions to which he applied and has been willing to relocate, if necessary, or work remotely.

180.330.    When Mr. Bryan applied to Recent Graduate Positions, RTX and Raytheon Company (or other RTX-affiliated entities) required him to include and confirm the year and month of his college graduation in order to submit each of his applications.

181.331.    Mr. Bryan was qualified for each position for which he applied because he had a college degree in engineering and experience in engineering.  The only "qualifications" that he did not meet were those requiring him to be a recent college graduate or to have no more than 12 or 24 months of relevant work experience.

182.332.    RTX and Raytheon Company (or other RTX-affiliated entities) summarily rejected Mr. Bryan for the Recent Graduate Positions to which he applied.

183.333.    Even though Mr. Bryan was qualified for the roles for which he applied, upon

**Formatted:** Font: 12 pt

**Formatted:** List Paragraph, Left, Indent: Left:  0", First line:  0.5", Right:  0", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  -0.33" + Indent at:  0.17", Tab stops:

information and belief, RTX and Raytheon Company hired a substantially younger individual who was not significantly more qualified or experienced than Mr. Bryan for each role that he applied for.

184.334.   Upon information and belief, many other older adults were also qualified for these positions, but either did not apply because of the job postings' clear preference for a younger worker or did apply but were not considered, interviewed, or hired because of their age. In fact, for such older individuals who did not apply, it would have been futile for them to have applied, because they were not recent graduates, and they did not have less than two years of relevant work experience.

185.    By requiring that applicants be a recent college graduate or have no more than 12 or 24 months of relevant work experience, RTX and Raytheon Company (or other RTX-affiliated entities) explicitly stated a preference or limitation for hiring younger workers and discrimination

335.    against older workers. In addition, RTX and Raytheon Company (or other RTX-

affiliated entities) intentionally discriminated against older workers by establishing these requirements

and/or applied a facially neutral policy that disproportionately excluded older workers.

186.336.    Mr. Bryan was discouraged and deterred from applying for, and did not apply to,

dozens of other Recent Graduate Positions at Defendants for which he was qualified but for the

requirement that the applicants be recent graduates or applicants with less than 12 or 24 months of relevant

work experience. Mr. Bryan reasonably and correctly believed that it would be futile to apply to additional

Recent Graduate Positions because Defendants would never consider him for those positions due to his

date of graduation, his work experience that exceeded 24 months, and his age, and that Defendants

typically or always enforced the recent college graduate and work experience requirements. For the same

reasons, other older workers chose not to apply for Recent Graduate Positions at Defendants, because they

reasonably and correctly believed that applying would be a futile exercise and that they would never be

considered or hired for those positions.

187.337.    Mr. Bryan and the members of the Collective and Class have all suffered harm from

Defendants' pattern or practice challenged in this action, including the denial of an opportunity to compete

for positions on equal footing with younger applicants, the denial of employment, the loss of income,

benefits, and career advancement, stigmatic harm from seeing advertisements that indicate a preference

for younger workers and discrimination against older workers and from being rejected or deterred from

applying for positions that Defendants intended for younger workers.

## ADEA COLLECTIVE ACTION ALLEGATIONS

188.    Plaintiffs bring this case as an ADEA collective action pursuant to 29 U.S.C. §

216(b), on behalf of themselves and all individuals similarly situated: *i.e.*, individuals who (i) applied

for and were denied, or were deterred from applying for, at least one Recent Graduate Position (*i.e.*,

338.    a U.S.-based non-internship, non-temporary position at any of the Defendants, including RTX and its subsidiaries and units, or published on any of the Defendants' websites, for which the basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant had less than 24 months of work experience, as a college graduate or otherwise) for which they met the basic qualifications (ii) between October 11, 2018 through the final judgment in this action (the "Relevant Time Period"); and (iii) who were age 40 or older at the time they applied or were deterred from applying to such Recent Graduate Position.

189.339.    Defendants have engaged in a pattern or practice of discriminating against individuals (including Plaintiffs) who are age 40 or older in hiring, recruitment, and other related employment decisions by failing and refusing to consider them for positions whose basic qualifications included the requirement that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience. As a result, persons aged 40 or older have been intentionally denied consideration and hiring and have been disproportionally excluded from positions at Defendants for which they are qualified.

190.340.    Defendants' challenged recruitment, hiring, and other related policies and practices have had a significant adverse disparate impact on applicants aged 40 and older, such that qualified applicants aged 40 or older are denied employment opportunities at a disproportionately higher rate than applicants who are under 40 years old.

191.    Defendants have also discriminated in their advertising for Recent Graduate Positions by indicating a preference for younger applicants and discrimination against older workers, and by imposing limits on the eligibility of older workers on the basis of applicants' age. Defendants' discriminatory job advertisements directly deter and discourage many older workers from even

94

341.    applying for the Recent Graduate Positions, and automatically reject workers who *do*

apply for the positions.

~~192.~~342.    Members of the collective are ascertainable through Defendants' records of applicants and other persons who have logged into RTX's careers website (or will do so in the future). First, applicants who apply or attempt to apply via RTX's website must create a portal account. Those portal accounts likely contain records of prior applications submitted by the account holders and, at the very least, can identify the universe of individuals who applied or considered applying to positions via RTX's website. RTX also receives contact and identifying information from individuals who submit applications via third-party recruitment and hiring platforms.

~~193.~~    Second, under 29 C.F.R. § 1602.14, Defendants are required to preserve all "personnel records relevant to [a] charge [of discrimination]." "[P]ersonnel records relevant to the charge . . . would include . . . application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected." *Id.* Defendants must retain these records until "final disposition of the charge or action," which means the "expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the [EEOC], or by the Attorney General, the date on which such litigation is terminated." *Id.* Mr. Goldstein's First Charge was filed in 2019 and has not yet reached final disposition because it was subject to a tolling agreement, and now is one basis for this action. Likewise, Mr. Goldstein's Second Charge was filed in June 2023 and ~~is~~was still pending before the EEOC, as ~~are~~were the charges filed in 2024 for Mr. Beaulieu and Mr. Bryan, when the First Amended Complaint was filed. Thus, Defendants should have in their possession all personnel records and application materials for Plaintiffs and "all other candidates" for the Recent Graduate Positions since at least 300 days before the First Charge in 2019

95

343.     or even earlier. Finally, Section 1602.14 requires Defendants to retain all applications, regardless of whether a charge has been filed, for at least one year. *Id.*

## CLASS ACTION ALLEGATIONS

194.   Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), on behalf of a subclass of all individuals who (i) applied for and were denied, or were deterred from applying for at least one Recent Graduate Position at any of the Defendants or published on any of the Defendants' websites; (ii) applied or were deterred from applying for such a position located in Massachusetts, or lived in Massachusetts when they applied or were deterred from applying, or who applied or were deterred from applying for a position for which older workers were excluded based on the publication and implementation of discriminatory policies and practices effectuated by Defendants' personnel based in Massachusetts;

344.     (iii) met the basic qualifications for at least one Recent Graduate Position (excluding discriminatory requirements based on recency of graduation and limited work experience); (iv) applied or were deterred from applying for such a position between October 11, 2018 through the final judgment in this action, and (v) were age 40 or older at the time they applied, or were deterred from applying, to such position (the "**Massachusetts Class**").

195.   Plaintiff Mark Goldstein brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), on behalf of a class of all individuals who (i) applied for and were denied, or were deterred from applying for at least one Recent Graduate Position at any of the Defendants or published on any of the Defendants' websites; (ii) applied or were deterred from applying for such a position located in Virginia, or lived in Virginia when they applied or were deterred from applying for at least one Recent Graduate Position; (iii) met the basic qualifications for

at least one Recent Graduate Position (excluding discriminatory requirements based on recency of

graduation and limited work experience); (iv) applied or were deterred from applying for such a

position between October 11, 2018 through the final judgment in

345.    this action, and (v) were age 40 or older at the time they applied, or were deterred from

applying, to such position (the "**Virginia Class**").

196.346.    Plaintiffs Mark Goldstein and John Bryan bring this class action pursuant to Federal

Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), on behalf of a subclass of all individuals who (i)

applied for and were denied, or were deterred from applying for at least one Recent Graduate Position at

any of the Defendants or published on any of the Defendants' websites; (ii) applied or were deterred from

applying for such a position located in California, or lived in California when they applied or were deterred

from applying for at least one Recent Graduate Position; (iii) met the basic qualifications for at least one

Recent Graduate Position (excluding discriminatory requirements based on recency of graduation and

limited work experience); (iv) applied or were deterred from applying for such a position between October

11, 2018 through the final judgment in this action, and (v) were age 40 or older at the time they applied,

or were deterred from applying, to such position (the "**California Class**").

197.347.    Plaintiffs reserve the right to amend the definition of the classes described above based

on discovery and other legal or factual developments.

198.348.    Plaintiffs are members of the Classes they represent.

**Rule 23(a) Is Satisfied.**

199.349.    The members of the Classes identified herein are so numerous that joinder of all

members is impracticable. As of December 31, 2023, Defendants collectively employed approximately

185,000 employees worldwide with 70% of them in the United States. Each Defendant employs thousands

of employees in the United States. Although Plaintiffs do not know the precise number of applicants and

deterred applicants for the Recent Graduate Positions age 40 or older, the number is far greater than can

be feasibly addressed through joinder.

98

200.350.  There are questions of law and fact common to the Classes, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:

> (a)  whether Defendants unlawfully intentionally discriminate against applicants and deterred prospective applicants ages 40 or older in advertising, recruiting, and hiring for the Recent Graduate Positions;
>
> (b)  whether Defendants' policies or practices unlawfully disproportionately exclude or disadvantage and/or have excluded or disadvantaged applicants ages 40 or older for Recent Graduate Positions;
>
> (c)  whether Defendants' policies or practices unlawfully deter or have deterred and/or are or were likely to deter prospective applicants ages 40 or over from applying to the Recent Graduate Positions;
>
> (d)  whether Defendants' challenged policies or practices relating to the publication of job advertisements have unlawfully indicated a preference, limitation, specification, or discrimination based on age;
>
> (e)  whether Defendants' policies and practices violate the Massachusetts Fair Employment Practices Act, the Virginia Human Rights Act, and the California Fair Employment and Housing Act;
>
> (f)  whether Defendants' challenged policies or practices are necessary to their business operations;
>
> (g)  whether Defendants' challenged polices or practices reflect the company's reliance on reasonable factors other than age in filling such jobs and/or are justified by business necessity; and
>
> (h)  whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the class are warranted.

201.351.  Plaintiffs' claims are typical of the claims of the Classes.  They assert the same legal claims as the Classes they seek to represent based on the same legal theories, and their claims arise from the same discriminatory practices that give rise to the claims of the Classes.

202.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof, including counsel at the

99

352.    AARP Foundation, Outten & Golden LLP, and Peter Romer-Friedman Law PLLC who have previously litigated collective and class actions challenging age discrimination.

**Rule 23(b)(2) Certification Is Appropriate.**

203.353.    Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants acted and/or refused to act on grounds generally applicable to the Classes as a whole. The members of the Classes are entitled to injunctive and declaratory relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices. Plaintiffs and the proposed Classes will seek a declaration that Defendants violated MFEPA, VHRA, and FEHA and an injunction prohibiting Defendants from violating these statutes in the future when advertising, recruiting, and hiring employees.

**Rule 23(b)(3) Certification Is Appropriate.**

204.354.    Class certification is also appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The common questions of fact and law identified above predominate over any questions affecting only individual members of the Classes, including because all members of the Classes were subjected to Defendants' common, uniform, unfair, and discriminatory policies and practices.

205.355.    In addition, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Regardless of any differences among class members, all Members of the Classes suffered the same injury in that they were denied the opportunity to be considered for positions on equal footing with younger workers due to their age and related experience based on Defendants' exclusionary policies and practices and they were subjected to Defendants' discriminatory advertising regarding the Recent Graduate Positions. The Members of the Classes have been damaged and are entitled to recovery as a result of Defendants' common, uniform, unfair, and discriminatory policies and practices.

~~206.~~356.   First, the Members of the Classes do not have an interest in individually controlling the prosecution of separate actions, because their individual damages are unlikely to be large enough to warrant pursuing individual litigation in court or obtaining counsel to pursue an individual action, and because the cost of litigating the action will far exceed any potential benefit for individual Members of the Classes. The prosecution of separate actions by individual Class Members would also impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the proposed Classes, including the key legal question of whether Defendants' policies and practices constitute unlawful age discrimination. A class action would achieve substantial economies of time, effort, and expense, and would assure the uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

~~207.~~357.   Second, to date, there has not been any litigation against Defendants by the Classes regarding the policies or practices challenged in this case.

~~208.~~358.   Third, it is desirable to concentrate this litigation in a single forum, namely the District where the Court has jurisdiction over all Defendants.

~~209.~~359.   Finally, there will be no difficulties in managing this case as a class action.

**Rule 23(c)(4) Certification Is Appropriate.**

~~210.~~360.   In addition, or in the alternative, class certification is also appropriate under Rule 23(c)(4) of the Federal Rules of Civil Procedure.  A Rule 23(c)(4) "issue class" may be properly certified to resolve common questions as to the Classes, including Defendants' liability for one or more claims.

**COUNT I**
**Discriminatory Publication or Advertising**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(e)** ~~On Behalf of Plaintiffs and the Collective~~

**On Behalf of Plaintiffs and the Collective**

211.361.    Plaintiffs incorporate the preceding paragraphs as alleged above.

212.362.    This claim is brought by Plaintiffs on behalf of themselves and the collective they represent.

213.363.    Plaintiffs have exhausted their administrative remedies.  More than 60 days have passed since Plaintiffs have filed their charges with the EEOC.

214.364.    The federal Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer or employment agency to print or publish or cause to be printed or published notices or advertisements that relate to employment or referral for employment by an employer or employment agency and that indicate any preference, limitation, specification, or discrimination based on age. 29 U.S.C. § 623(e). The EEOC's regulations that implement § 623(e) provide that "[h]elp wanted notices or advertisements may not contain terms and phrases that limit or deter the employment of older individuals. Notices or advertisements that contain terms such as *age 25 to 35, young, college student, recent college graduate, boy, girl,* or others of a similar nature violate the Act unless one of the statutory exceptions applies." 29 C.F.R. § 1625.4(a).

215.365.    Defendants are employers within the meaning of the ADEA, as they are engaged in an industry affecting commerce and employ 20 or more employees. 29 U.S.C. § 630(b).

216.366.    RTX is an employment agency within the meaning of the ADEA, as it regularly undertakes to procure employees for Defendants. 29 U.S.C. § 630(c).

217.    Plaintiffs and the Collective Members they seek to represent are applicants or employees (actual and/or deferred applicants or employees) within the meaning of the ADEA, as

367.      they are or were seeking employment from an employer (or were deterred from doing

so) whether directly or through an employment agency. 29 U.S.C. § 630(f).

218.368.   Plaintiffs and the Collective Members they seek to represent are protected by the

ADEA, as they are at least 40 years old. *See* 29 U.S.C. § 631(a).

219.369.   As described above, Defendants have a pattern or practice of publishing or causing to

be published notices or advertisements relating to the Recent Graduate Positions that indicate a preference,

limitation, specification, or discrimination based on age. This pattern or practice violates the publication

provision of the ADEA, 29 U.S.C. § 623(e).

220.370.   When Defendants have routinely published advertisements and notices for open

positions with terms like "New Grad," "New Graduate," "Recent Grad," or similar language in the title,

or that state that the basic qualifications require the applicant to be a recent graduate, a soon-to-be graduate,

have graduated within a recent time frame, or have less than 12 or 24 months of relevant work experience

when the applicant is a college or graduate school graduate, the advertisement or notice communicates

that Defendants are less interested in, or not at all interested in, recruiting or hiring older workers and that

Defendants prefer to hire younger workers who are far more likely to be recent college or graduate school

graduates. Such an advertisement or notice informs the ordinary reader of the advertisement or notice and

the public at large, including the Plaintiffs and the Collective Members they seek to represent, that

Defendants prefer to hire younger workers over older and more experienced workers in recruiting and hiring

for the relevant position. Such advertisements and notices further communicate that Defendants are

limiting job opportunities to younger workers and drawing a distinction between younger and older

workers in the advertising, recruiting, and hiring of employees. An ordinary reader of the advertisement or

notice and the public at large would understand such advertisements and notices to express a preference,

discrimination, or limitation based on age.

based on age.

104

221.371.   Defendants have known or reasonably should have known that when they published a job advertisement or notice that limits the position to workers who are recent graduates or who have less than 12 or 24 months of job experience, Defendants are making a statement that they want to fill the position with younger applicants.

222.372.   As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT II**
**Intentional Discrimination – Disparate Treatment**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)**
**On Behalf of Plaintiffs and the Collective**

223.373.   Plaintiffs incorporate the preceding paragraphs as alleged above.

224.374.   This claim is brought by Plaintiffs on behalf of themselves and the collective they represent.

225.375.   Plaintiffs have exhausted their administrative remedies.  More than 60 days have passed since Plaintiffs have filed their charges with the EEOC.

226.376.   The ADEA makes it unlawful for an employer to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to terms, conditions, or privileges of employment, or to limit or segregate or classify individuals in a way that would deprive or tend to deprive individuals of employment opportunities, or otherwise affect their status as an employee because of the individual's age. 29 U.S.C. § 623(a)(1)-(2).

227.   Specifically, 29 U.S.C. § 623(a) provides that it is "unlawful for an employer" "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," or "to limit, segregate, or classify his employees in any way which would deprive

377.       or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(1)-(2).

~~228.~~378.   Defendants are employers within the meaning of the ADEA, as they are engaged in an industry affecting commerce and employ 20 or more employees. 29 U.S.C. § 630(b).

~~229.~~379.   RTX is an employment agency within the meaning of the ADEA, as it regularly undertakes to procure employees for Defendants. 29 U.S.C. § 630(c).

~~230.~~380.   Plaintiffs and the Collective Members they seek to represent are applicants or employees (actual and/or deterred applicants or employees) within the meaning of the ADEA, as they are or were seeking employment from an employer (or were deterred from doing so) whether directly or through an employment agency. 29 U.S.C. § 630(f).

~~231.~~381.   Plaintiffs and Collective Members are protected by the ADEA, as they are at least 40 years old. *See* 29 U.S.C. § 631(a).

~~232.~~382.   As described above, Defendants have engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against applicants and prospective applicants ages 40 and older. Defendants have intentionally discriminated against Plaintiffs and the collective in violation of the ADEA by, among other things:

(a)    Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

~~(a)~~(b)    publishing advertisements or notices about positions at Defendants, including job descriptions on RTX's Careers website (*e.g.*, careers.rtx.com) and various job boards, stating that the basic qualifications require that the applicant has recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain positions and discourage older people from applying;

~~(b)~~(c)    requiring applicants to provide age-related data, including the year and month of graduation and academic transcripts, and estimating applicants' ages through such data;

(c)(d)  intentionally discriminating against older applicants by refusing to consider, interview, or hire them when they apply for the Recent Graduate Positions;

(d)(e)  using automated systems to screen out older applicants who are not recent college or graduate school graduates or applicants with less than 12 or 24 months of work experience;

(e)(f)  targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(f)(g)  engaging in other discriminatory recruiting, hiring, and advertising practices or policies; and

(g)(h)  refusing to stop and remedy the effect of their discriminatory advertising, recruitment, and hiring policies even after the EEOC found that RTX's advertisements and hiring practices violated the ADEA.

233.383.  These company-wide policies have the intended effect of denying Plaintiffs and the collective employment opportunities, including the opportunity to compete for employment on equal footing with younger applicants, because of their age.  Defendants' policies and practices treat older applicants (those 40 years of age and older) worse than younger applicants (those under 40) based on their age, because such advertising, recruiting, and hiring practices intentionally exclude older applicants from being eligible for the same employment opportunities as younger applicants.

234.384.   Upon information and belief, Defendants have intentionally excluded older workers from Recent Graduate Positions because Defendants prefer to hire younger workers for such positions. Defendants know to a substantial degree of certainty that recent graduates are likely to be younger applicants (under 40 years of age) because 95% of college graduates are under 40 years of age. Defendants thus have known and intended that advertising and requiring Recent Graduate Positions to be filled with recent graduates or people with less than 12 or 24 months of work experience will dramatically increase the number of younger applicants and dramatically decrease the number of older applicants for Recent Graduate Positions. Moreover, Defendants have known and intended that their discriminatory advertising, recruiting, and hiring practices would increase the number of younger workers hired and decrease the number of older workers hired for Recent Graduate Positions.

235.385.   As a direct and proximate result of Defendants' intentional discrimination, Plaintiffs and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to compete for employment, and denied fair opportunities with regard to positions, compensation, and/or employment.

236.386.   Age is not a bona fide occupational qualification for the Recent Graduate Positions.

237.387.   As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the Collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

238.388.   The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1)-(2).

**COUNT III**
**Disparate Impact Discrimination**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)**
**On Behalf of Plaintiffs and the Collective[29]**

239.389.   Plaintiffs incorporate the preceding paragraphs as alleged above.

240.390.   This claim is brought by Plaintiffs on behalf of themselves and the collective they represent.

241.391.   Plaintiffs have exhausted their administrative remedies.  More than 60 days have passed since Plaintiffs have filed their charges with the EEOC.

242.392.   29 U.S.C. § 623(a) provides that it is "unlawful for an employer" "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(1)-(2).

243.393.   This provision prohibits discrimination that causes disparate impact in employment, including with respect to prospective applicants or applicants for employment.

244.394.   Defendants maintain discriminatory policies, patterns, and/or practices that have a significant adverse impact on applicants and prospective applicants ages 40 and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age.

245.395.   Such misconduct includes but is not limited to the following:

---

[29] Plaintiffs recognize this Court already has dismissed Count III of the First Amended Complaint in the Memorandum Order dated December 29, 2025, D.I. 148, holding that the ADEA does not permit job applicants to bring disparate impact claims. Though Plaintiffs understand the Court's ruling to be the law of the case at this time, Plaintiffs have included Count III simply to preserve a clear record that Plaintiffs did not voluntarily dismiss or withdraw them, and so that if the Court of Appeals of the U.S. Supreme Court later holds—in this case or another case—that applicants may assert disparate impact claims under the ADEA, there will be no need to amend the complaint to revive Count III.

(a)     Imposing and applying basic qualifications for many positions that require that the applicant has recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant is a college graduate with less than 24 months of work experience;

(b)    publishing advertisements or notices about positions, including job descriptions on RTX's Careers website (*e.g.*, careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant has recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain positions and to discourage older people from applying;

(c)    requiring applicants to provide age-related data, including the year and month of graduation and academic transcripts, and estimating applicants' ages through such data;

(d)    refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Recent Graduate Positions;

(e)    using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(f)    targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(g)    engaging in other discriminatory recruiting, hiring, and advertising practices or policies that cannot be justified by reasonable factors other than age; and

(h)    refusing to stop and remedy the effect of their discriminatory advertising, recruitment and hiring policies even after the EEOC found that RTX's advertisements and hiring practices violated the ADEA.

246.396.   The foregoing policies, patterns, and/or practices have an unlawful disparate impact on applicants and prospective applicants ages 40 and older in violation of 29 U.S.C. §§ 623(a)(1)-(2).

247.397.   As a result of Defendants' policies and practices, Plaintiffs and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment.

248.398.   As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the Collective have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT IV**
**Discriminatory Publication or Advertising**
**Mass. Gen. Laws ch. 151B, § 4(3)**
**On Behalf of Plaintiffs and the Massachusetts Class**

249.399.   Plaintiffs incorporate the preceding paragraphs as alleged above.

250.400.   The Massachusetts Fair Employment Practices Act ("151B") makes it unlawful for an employer or employment agency to publish or print or cause to be printed or published notices or advertisements that relate to employment by an employer or employment agency that express directly or indirectly any limitation, specification, or discrimination based on age. Mass. Gen. Laws ch. 151B, § 4(3).

251.401.   Defendants are employers and RTX is an employment agency within the meaning of 151B. *Id.* § 1.

252.402.   Plaintiffs and Massachusetts Class Members are applicants and/or employees within the meaning of 151B. *Id.*

253.403.    Plaintiffs and Massachusetts Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.* § 1(8).

**Formatted:** Indent: Left:  0", First line:  0.5", Right:  0", Space Before:  0 pt

254.404.    Plaintiffs have exhausted their administrative remedies with respect to their 151B discriminatory publication or advertising claim against Defendants.

255.405.    As described above, Defendants have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by publishing job advertisements on RTX's website and elsewhere that express directly or indirectly a limitation, specification, or discrimination based on age.

256.406.    This pattern or practice violates the publication provision of 151B. When Defendants publish an advertisement or notice for an open position with terms like "New Grad" in the title and/or with a qualification that the applicant be a recent graduate, a soon-to-be graduate, or have less than 12 or 24 months of experience for college graduates, the advertisement or notice communicates the message that Defendants are less interested in or not interested in recruiting or hiring older workers. Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including Plaintiffs and the proposed Massachusetts Class, that Defendants have a preference for younger workers over older workers in recruiting and hiring and that Defendants are limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.  An ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, discrimination, limitation, or specification based on age.

257.407.    Defendants know or reasonably should know that when they publish a job advertisement that limit the position to workers who are recent or soon-to-be college graduates and/or who have less than 12 or 24 months of experience, they are making a statement that Defendants want to fill the position with a younger and less experienced applicant.

113

258.408.   As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the Massachusetts Class have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT V**
**Intentional Discrimination – Disparate Treatment**
**Mass. Gen. Laws ch. 151B, § 4(1B)**
**On Behalf of Plaintiffs and the Massachusetts Class**

259.409.   Plaintiffs incorporate the preceding paragraphs as alleged above.

260.410.   The Massachusetts Fair Employment Practices Act makes it unlawful for "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." Mass. Gen. Laws ch. 151B § 4(1B).

261.411.   Section 151B(1)(B) prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment. *Id.*

262.412.   As described above, Defendants have engaged in a pattern or practice of discriminatory employment advertising, recruitment, and hiring by excluding older workers from certain positions with maximum experience requirements and a preference or requirement for recent or soon-to-be college graduates.

263.413.   Defendants are employers and RTX is an employment agency within the meaning of 151B. *Id.* § 1.

264.414.   Plaintiffs and Massachusetts Class Members are applicants and/or employees within the meaning of 151B. *Id.*

265.415.   Plaintiffs and Massachusetts Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.* § 1(8).

114

266.416.  Plaintiffs have exhausted their administrative remedies with respect to their 151B

intentional discrimination claim against RTX.

267.417.  Defendants have intentionally discriminated against Plaintiffs and the Massachusetts

Class in the following ways:

(a)  Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

(b)  publishing advertisements or notices about positions at Defendants, including job descriptions on RTX's Careers website (*e.g.*, careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant has recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain positions and to discourage older people from applying;

(c)  requiring applicants to provide age-related data, including the year and month of graduation and academic transcripts, and estimating applicants' ages through such data;

(d)  refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Recent Graduate Positions;

(e)  using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(f)     targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates;

(g)     engaging in other discriminatory recruiting, hiring, and advertising practices or policies; and

(h)     refusing to stop and remedy the effect of their discriminatory advertising, recruitment, and hiring policies even after the EEOC found that RTX's advertisements and hiring practices violated the ADEA.

268.418.   This pattern or practice of discrimination challenged in this action is undertaken by Defendants with the intent and purpose of discouraging and preventing older workers from applying for jobs with Defendants based on their age, and with the intent of failing or refusing to hire older workers based on their age. This pattern or practice of discrimination constitutes intentional discrimination under 151B. It treats older workers (who are 40 years old or older) worse than younger workers (who are under 40 years old) in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because Defendants exclude older workers from receiving equal consideration for employment opportunities as younger workers.

269.419.   In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age and experience, and segregated from younger workers who are preferentially and arbitrarily "eligible" for certain positions based on their work experience and graduation dates.

270.420.   Upon information and belief, Defendants know and intend that advertising open positions in such a way will increase the number of younger persons who will apply for jobs and decrease the number of older persons who will apply for jobs at Defendants. Moreover, Defendants know and intend that this discriminatory advertising practice will increase the number of younger workers, and decrease the number of older workers, hired by Defendants.

116

271.421.   As a direct and proximate result of Defendants' intentional discrimination, Plaintiffs and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to position, compensation, and/or employment with Defendants.

272.422.   As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the Massachusetts Class suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

273.423.   Defendants' actions constitute unlawful discrimination in violation of 151B.

<u>**COUNT VI**</u>
**Disparate Impact Discrimination**
**Mass. Gen. Laws ch. 151B, § 4(1B)**
**On Behalf of Plaintiffs and the Massachusetts Class**

274.424.   Plaintiffs incorporate the preceding paragraphs as alleged above.

275.425.   The Massachusetts Fair Employment Practices Act makes it unlawful for an employer or an employment agency to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to the terms, conditions, or privileges or employment, because of an individual's age. Mass. Gen. Laws ch. 151B § 4.

276.426.   This provision prohibits discrimination that causes a disparate impact in employment, including with respect to prospective applicants or applicants for employment.

277.427.   Defendants are employers and RTX is an employment agency within the meaning of 151B. *Id.* § 1.

278.428.   Plaintiffs and the Massachusetts Class Members are applicants and/or employees within the meaning of 151B. *Id.*

279.429.  Plaintiffs and the Massachusetts Class Members are protected by these statutory provisions as they are at least 40 years old. *Id.* § 1(8).

280.430.  Plaintiffs have exhausted their administrative remedies with respect to their 151B disparate impact claim against Defendants.

281.431.  Defendants maintain discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of 151B and are not, and cannot be, justified by business necessity, including but not limited to the following: their publication of discriminatory advertisements and job notices indicating a preference, limitation, specification, or discrimination based on age and age-based proxies, including those requiring candidates to be recent graduates and/or to have minimal work experience; their collection and use of age-related data with the effect of excluding or screening out older applicants from Recent Graduate Positions; and their targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates and/or those with minimal work experience.

282.432.  As a direct and proximate result of Defendants' intentional discrimination, Plaintiffs and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with ~~Defendant~~Defendants.

283.433.  As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs and the Massachusetts Class have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

### COUNT VII
**Discriminatory Publication or Advertising**
**Va. Code Ann. § 2.2-3900, *et seq.***
**On Behalf of Plaintiff Mark Goldstein and the Virginia Class**

284.434.  Plaintiffs incorporate the preceding paragraphs as alleged above.

118

285.435.   The Virginia Human Rights Act ("VHRA") makes it unlawful for an employer to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such employer that indicates any preference, limitation, specification, or discrimination based on age.  VA Code Ann. § 2.2-3905(B)(8).

286.436.   Defendants are employers within the meaning of VA Code Ann. § 2.2-3905(A).

287.437.   RTX is an employment agency within the meaning of VA Code Ann. § 2.2-3905(A).

288.438.   Plaintiff Mark Goldstein and the Virginia Class Members are protected by these statutory provisions, as they are at least 40 years old. VA Code Ann. § 2.2-3905(A).

289.439.   Plaintiff Goldstein has exhausted his administrative remedies with respect to his VHRA discriminatory publication or advertising claim against Defendants.

290.440.   As described above, Defendants have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by publishing job advertisements that indicate express preferences, limitations, or discrimination on the basis of age.

291.   This pattern or practice violates the publication provision of the VHRA. When Defendants publish an advertisement or notice for an open position with terms like "New Grad" in the title and/or with a qualification that the applicant be a recent graduate, be a soon-to-be graduate, or have less than 12 or 24 months of experience, the advertisement or notice communicates the message that Defendants are less interested in or not interested in recruiting or hiring older workers. Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including Plaintiff Goldstein and proposed Class Members, that Defendants have a preference for younger workers over older workers in recruiting and hiring and that Defendants are limiting job opportunities to younger workers and drawing a distinction between younger and older workers in the advertising, recruiting, and hiring of employees.  An ordinary reader of the advertisement and

441.    the public at large would, in fact, understand that this message is expressing a preference, discrimination, or limitation based on age.

292.442.    Defendants know or reasonably should know that when they publish a job advertisement that limits the position to workers who are recent or soon-to-be college graduates and/or who have less than 12 or 24 months of experience, they are making a statement that Defendants want to fill the position with a younger, less experienced applicant.

293.443.    As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiff Goldstein and the Virginia Class Members have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT VIII**
**Intentional Discrimination – Disparate Treatment**
**Va. Code Ann § 2.2-3900, *et seq.***
**On Behalf of Plaintiff Mark Goldstein and the Virginia Class**

294.444.    Plaintiffs incorporate the preceding paragraphs as alleged above.

295.445.    The VHRA makes it unlawful to fail or refuse to hire or otherwise discriminate against any individual because of such individual's age or to limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect an individual's status as an employee because of such individual's age.  VA Code Ann. § 2.2-3905(B)(1).

296.446.    The VHRA prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

297.447.    As described above, Defendants have engaged in a pattern or practice of discriminatory employment advertising, recruitment, and hiring by excluding older workers from certain positions at Defendants with maximum experience requirements and a preference or requirement for recent or soon-to-be college graduates.

298.448.   Defendants are employers within the meaning of VA Code Ann. § 2.2-3905(A).

299.449.   RTX is an employment agency within the meaning of VA Code Ann. § 2.2-3905(A).

300.450.   Plaintiff Goldstein and the Virginia Class are protected by these statutory provisions as they are at least 40 years old. VA Code Ann. § 2.2-3905(A).

301.451.   Plaintiff Goldstein has exhausted his administrative remedies with respect to his VHRA intentional discrimination claim against Defendants.

302.452.   Defendants intentionally discriminated against Plaintiff Goldstein and the Virginia Class in the following ways:

(a)    Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

(b)    publishing advertisements or notices about positions at Defendants, including job descriptions on RTX's Careers website (e.g., careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant has recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain positions and to discourage older people from applying;

(c)    requiring applicants to provide age-related data, including the year and month of graduation and transcripts, and estimating applicants' ages through such data;

(a)(d)   refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Recent Graduate Positions;

(d)(e)  using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(e)(f)   targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(f)(g)   engaging in other discriminatory recruiting, hiring and advertising practices or policies; and

(g)(h)   refusing to stop and remedy the effect of their discriminatory advertising, recruitment and hiring policies even after the EEOC found that RTX's advertisements and hiring practices violated the ADEA.

303.453.   This pattern or practice of discrimination challenged in this action is undertaken by Defendants with the intent and purpose of discouraging and preventing older workers from applying for jobs with Defendants based on their age, and with the intent of failing or refusing to hire older workers based on their age. This pattern or practice of discrimination constitutes intentional discrimination under the VHRA. It treats older workers (who are 40 years old or older) worse than younger workers (who are under 40 years old) in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because Defendants exclude older workers from receiving equal consideration for employment opportunities as younger workers.

304.454.   In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age and experience, and segregated from younger workers who are preferentially and arbitrarily "eligible" for certain positions based on their work experience and graduation dates.

305.   Upon information and belief, Defendants now and intend that advertising open positions in such a way will increase the number of younger persons who will apply for jobs and

455.    decrease the number of older persons who will apply for jobs. Moreover, Defendants

know and intend that this discriminatory advertising practice will increase the number of younger workers,

and decrease the number of older workers, hired by Defendants.

306.456.    As a direct and proximate result of Defendants' intentional discrimination, Plaintiff

Goldstein and similarly situated individuals have been deterred from seeking employment, denied

employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard

to positions, compensation, and/or employment.

307.457.    As a direct and proximate result of Defendants' discriminatory policies and/or practices

as described above, Plaintiff Goldstein and the Virginia Class have suffered harm and damages including,

but not limited to, lost past and future income, compensation, and benefits.

<u>**COUNT IX**</u>
**Disparate Impact Discrimination**
**Va. Code Ann § 2.2-3900, *et seq.***
**On Behalf of Plaintiff Mark Goldstein and the Virginia Class**

308.458.    Plaintiffs incorporate the preceding paragraphs as alleged above.

309.459.    The VHRA makes it unlawful to fail or refuse to hire or otherwise discriminate against

any individual because of such individual's age or to limit, segregate, or classify employees or applicants

for employment in any way that would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect an individual's status as an employee because of such

individual's age.  VA Code Ann. § 2.2-3905(B)(1).

310.460.    This provision prohibits discrimination that causes a disparate impact in employment,

including with respect to prospective applicants or applicants for employment.

311.461.    Defendants are employers within the meaning of VA Code Ann. § 2.2-3905(A).

312.462.    RTX is an employment agency within the meaning of VA Code Ann. § 2.2-3905(A).

463.    Plaintiff Goldstein and the Virginia Class are protected by these statutory provisions as they are at least 40 years old. *Id.*

313.

314.464.    Plaintiff Goldstein has exhausted his administrative remedies with respect to his VHRA intentional discrimination claim against Defendants.

315.465.    Defendants maintain discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of the VHRA and are not, and cannot be justified by business necessity, including but not limited to the following: their publication of discriminatory advertisements and job notices indicating a preference, limitation, specification, or discrimination based on age and age-based proxies, including those requiring candidates to be recent graduates and/or to have minimal work experience; their collection and use of age-related data to exclude or screen out older applicants from Recent Graduate Positions; and their targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates.

316.466.    As a direct and proximate result of Defendants' discrimination, Plaintiff Goldstein and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment.

317.467.    As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiff Goldstein and the Virginia Class have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT X**
**Discriminatory Publication or Advertising**
**Cal. Gov't Code § 12900, *et seq.***
**On Behalf of Plaintiffs Mark Goldstein, John Bryan, and the California Class**

318.468.    Plaintiffs incorporate the preceding paragraphs as alleged above.

124

319.469.   The California Fair Employment and Housing Act ("FEHA") makes it unlawful for an employer or employment agency to print or circulate or cause to be printed or circulated any publication, or to make any nonjob-related inquiry of an employee or applicant, either verbal or through use of an application form, that expresses, directly or indirectly, any limitation, specification, or discrimination as to age, or any intent to make any such limitation, specification, or discrimination, unless the law compels or provides for that action. Cal. Gov't Code § 12940(d).

320.470.   Defendants are employers within the meaning of Cal. Gov't Code § 12926(d).

321.471.   RTX is an employment agency within the meaning of Cal. Gov't Code § 12926(e).

322.472.   Plaintiffs Goldstein and Bryan and the California Class are protected by these statutory provisions as they are at least 40 years old. Cal. Gov't Code § 12926(b).

323.473.   Plaintiffs Goldstein and Bryan have exhausted their administrative remedies with respect to their FEHA discriminatory publication or advertising claim against Defendants.

324.474.   As described above, Defendants have a pattern or practice of engaging in discriminatory employment advertising, recruitment, and hiring by publishing job advertisements that indicate express preferences, limitations, or discrimination on the basis of age.

325.   This pattern or practice violates the publication provision of the FEHA. When Defendants publish an advertisement or notice for an open position with terms like "New Grad" in the title and/or with a qualification that the applicant be a recent graduate, be a soon-to-be graduate, or have less than 12 or 24 months of experience, the advertisement or notice communicates the message that they are less interested in or not interested in recruiting or hiring older workers. Such an advertisement or notice informs the ordinary reader of the advertisement and the public at large, including Plaintiffs Goldstein and Bryan and the proposed California Class, that Defendants have a preference for younger workers over older workers in recruiting and hiring and that Defendants are limiting job opportunities to younger workers and drawing a distinction between younger and older

475.        workers in the advertising, recruiting, and hiring of employees.  An ordinary reader of the advertisement and the public at large would, in fact, understand that this message is expressing a preference, discrimination, or limitation based on age.

326.476.    Defendants know or reasonably should know that when they publish a job advertisement that limits the position to workers who are recent or soon-to-be college graduates and/or who have less than 12 or 24 months of experience, they are making a statement that they want to fill the position with a younger, less experienced applicant.

327.477.    As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs Goldstein and Bryan and the California Class have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

<u>COUNT XI</u>
**Intentional Discrimination – Disparate Treatment**
**Cal. Gov't Code § 12900, *et seq.***
**On Behalf of Plaintiffs Mark Goldstein, John Bryan, and the California Class**

328.478.    Plaintiffs incorporate the preceding paragraphs as alleged above.

329.479.    FEHA makes it unlawful to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment, or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of age. Cal. Gov't Code § 12940(a).

330.480.    FEHA prohibits intentional age discrimination in employment, including with respect to prospective applicants or applicants for employment.

331.    As described above, Defendants have engaged in a pattern or practice of discriminatory employment advertising, recruitment, and hiring by excluding older workers from

481.    certain positions with maximum experience requirements and a preference or requirement for recent or soon-to-be college graduates.

~~332.~~482.    Defendants are employers within the meaning of Cal. Gov't Code § 12926(d).

~~333.~~483.    RTX is an employment agency within the meaning of Cal. Gov't Code § 12926(e).

~~334.~~484.    Plaintiffs Goldstein and Bryan and the California Class are protected by these statutory provisions as they are at least 40 years old. Cal. Gov't Code § 12926(b).

~~335.~~485.    Plaintiffs Goldstein and Bryan have exhausted their administrative remedies with respect to their FEHA intentional discrimination claim against Defendants.

~~336.~~486.    Defendants have intentionally discriminated against Plaintiffs Goldstein and Bryan and the California Class in the following ways:

(a)    Imposing and applying basic qualifications for many positions that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience;

(b)    publishing advertisements or notices about positions at Defendants, including job descriptions on RTX's Careers website (e.g., careers.rtx.com) and various job boards, stating basic qualifications that require that the applicant recently graduated from college or graduate school, or is still in college or graduate school, or that the applicant was a college graduate with less than 24 months of work experience, and that use titles and other statements to encourage younger people to apply for certain positions and to discourage older people from applying;

(c)    requiring applicants to provide age-related data, including the year and month of graduation and transcripts, and estimating applicants' ages through such data;

(d)    refusing to consider, interview, or hire applicants who are not recent college graduates or have more than 12 or 24 months of work experience when they apply for the Recent Graduate Positions;

(e)    using automated systems to screen out older applicants who are not recent college graduates or applicants with less than 12 or 24 months of work experience;

(f)    targeting, filtering or otherwise limiting recruitment and hiring efforts to recent graduates;

(g)    engaging in other discriminatory recruiting, hiring and advertising practices or policies; and

(h)    refusing to stop and remedy the effect of their discriminatory advertising, recruitment and hiring policies even after the EEOC found that RTX's advertisements and hiring practices violated the ADEA.

337.487.  This pattern or practice of discrimination challenged in this action is undertaken by Defendants with the intent and purpose of discouraging and preventing older workers from applying for jobs with Defendants based on their age, and with the intent of failing or refusing to hire older workers based on their age. This pattern or practice of discrimination constitutes intentional discrimination under the FEHA. Defendants treat older workers (who are 40 years old or older) worse than younger workers (who are under 40 years old) in advertising, recruiting, and hiring prospective applicants for job opportunities based on their age, because Defendants exclude older workers from receiving equal consideration for employment opportunities as younger workers.

In addition, this practice limits, segregates, and classifies older workers in the advertising, recruitment, and hiring of employees in a way that deprives or tends to deprive them of employment opportunities based on age, because older workers are classified based on their age and experience, and segregated from younger workers who are preferentially and arbitrarily "eligible" for certain positions based on their work experience and graduation dates.

338.488.  Upon information and belief, Defendants know and intend that advertising open positions in such a way will increase the number of younger persons who will apply for jobs and decrease the number of older persons who will apply for jobs at Defendants. Moreover, Defendants know and

intend that this discriminatory advertising practice will increase the number of younger workers, and decrease the number of older workers, hired by Defendants.

339.489.   As a direct and proximate result of Defendants' intentional discrimination, Plaintiffs Goldstein and Bryan and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment.

340.490.   As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs Goldstein and Bryan and the California Class have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**COUNT XII**
**Disparate Impact Discrimination**
**Cal. Gov't Code § 12900 et seq.**
**On Behalf of Plaintiffs Mark Goldstein, John Bryan, and the California Class**

341.491.   Plaintiffs incorporate the preceding paragraphs as alleged above.

342.492.   FEHA makes it unlawful to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment, or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of age.  Cal. Gov't Code § 12940(a).

343.493.   This provision prohibits discrimination that causes a disparate impact in employment, including with respect to prospective applicants or applicants for employment.

344.494.   Defendants are employers within the meaning of Cal. Gov't Code § 12926(d).

345.495.   RTX is an employment agency within the meaning of Cal. Gov't Code § 12926(e).

346.496.   Plaintiffs Goldstein and Bryan and the California Class are protected by these statutory provisions as they are at least 40 years old. Cal. Gov't Code § 12926(b).

347.497.   Plaintiffs Goldstein and Bryan have exhausted their administrative remedies with respect to their FEHA intentional discrimination claim against Defendants.

348.498.   Defendants maintain discriminatory policies, patterns, and/or practices that have an adverse impact on applicants and prospective applicants ages 40 and older in violation of the FEHA and are not, and cannot be justified by business necessity, including but not limited to the following: its publication of discriminatory advertisements and job notices indicating a preference, limitation, specification, or discrimination based on age and age-based proxies, including those requiring candidates to be recent graduates and/or to have minimal work experience; their collection and use of age-related data to exclude or screen out older applicants from Recent Graduate Positions; and their targeting, filtering, or otherwise limiting recruitment and hiring efforts to recent graduates.

349.499.   As a direct and proximate result of Defendants' discrimination, Plaintiffs Goldstein and Bryan and similarly situated individuals have been deterred from seeking employment, denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment.

350.500.   As a direct and proximate result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs Goldstein and Bryan and the California Class have suffered harm and damages including, but not limited to, lost past and future income, compensation, and benefits.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request:

A.      An order that this action be designated as an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

B.      The designation of Plaintiffs as representatives of the Collective action;

C.      The designation of Plaintiffs' counsel as counsel for the Collective action;

D.      The certification of the case as a class action on behalf of the proposed Classes;

E.      The designation of Plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan as class representative for the Massachusetts Class;

F.      The designation of Plaintiff Mark Goldstein as class representative for the Virginia Class;

G.      The designation of Plaintiffs Mark Goldstein and John Bryan as class representatives for the California Class;

H.      The designation of Plaintiffs' counsel of record as class counsel for all of the Classes;

I.      A declaratory judgment that the practices or policies complained of herein are unlawful and violate 29 U.S.C. §§ 621, *et seq.*, Mass. Gen. Laws ch. 151B, *et seq.*, Va. Code Ann. § 2.2-3905, *et seq.*, and Cal. Gov't Code § 12900, *et seq.*;

J.      A preliminary and permanent injunction against Defendants and their partners, officers,

agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs and the Collective and Classes because of their age;

K.    An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of age, and that Defendants eradicate the effects of their past and present unlawful employment practices;

L.      An order appointing a monitor to ensure that Defendants comply with the injunction provisions of any decree that the Court orders;

M.      An order retaining continuing jurisdiction over this action to ensure that Defendants comply with such a decree;

N.      An order for front pay benefits to Plaintiffs and Class and Collective Members;

O.      Back pay (including interest and benefits) for Plaintiffs and the Class and Collective Members;

P.      All damages sustained as a result of Defendants' conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

Q.      Liquidated damages;

R.      Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

S.      Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

T.      Pre-judgment and post-judgment interest, as provided by law; and

U.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure or any similar rule or law, Plaintiffs demand a trial by jury for all causes of action and issues for which trial by jury is available.

| | |
|---|---|
| Dated: ~~November~~January 20, | ~~AARP Foundation Litigation~~ |
| | ~~601 E~~David Berman* |
| ~~2024~~ 2026~~OF COUNSEL:~~ | **PETER ROMER-FRIEDMAN LAW PLLC** |
| | 16 Court **Street** ~~NW Washington, DC 20049~~ |
| OF COUNSEL: | Floor 33 |
| | (202) 434-6983 |
| Adam T. Klein* | ~~rrodgers@aarp.org~~ |
| Chauniqua D. Young* | ~~llopez@aarp.org~~ |
| Zarka Dsouza* | ~~sgerleman@aarp.org~~ |
| **OUTTEN & GOLDEN LLP** | ~~lnaylor@aarp.org~~ |
| 685 Third Avenue, 25th Floor | |
| New York, NY 10017 | |
| (212) 245-1000 | |
| atk@outtengolden.com | |
| cyoung@outtengolden.com | |
| zdsouza@outtengolden.com | |

Mikael Rojas*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue N.W.
Washington, D.C. 20005
(202) 914-5097
mrojas@outtengolden.com

Kaelyn Mahar*
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
(925) 557-5622
kmahar@outtengolden.com

Peter Romer-Friedman ~~(pro hac forthcoming)~~ *
Patrick David Lopez ~~(pro hac forthcoming)~~
~~David Berman (pro hac forthcoming)*~~
**PETER ROMER-FRIEDMAN LAW PLLC**
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364
peter@prf-law.com
david@prf-law.com

~~Rebecca Rodgers (admitted *pro hac vice*)~~
~~Louis Lopez (*pro hac forthcoming*)~~
~~Samantha Wehrle (*pro hac forthcoming*)~~
~~Lauren Naylor (admitted *pro hac vice*)~~

134

**Formatted:** Font: 10 pt
**Formatted:** Body Text, Line spacing: Multiple 0.06 li
**Formatted:** Font: 12 pt
**Formatted:** Not Expanded by / Condensed by
**Formatted:** Not Expanded by / Condensed by
**Formatted:** Indent: Left: 0.32", Right: 0", Space Before: 0 pt
**Formatted:** Not Expanded by / Condensed by
**Formatted:** Not Expanded by / Condensed by
**Formatted:** Font: 12 pt
**Formatted:** Font: 12 pt, Not Expanded by / Condensed by
**Formatted:** Font: 12 pt
**Formatted:** Font: 12 pt, Not Expanded by / Condensed by
**Formatted:** Normal, Indent: Left: 0.32", Right: 0.07"
**Formatted:** Indent: Left: 0.32", Right: 0.07"
**Formatted:** Not Expanded by / Condensed by
**Formatted:** Font: 12 pt, Bold
**Formatted:** Font: 12 pt, Bold, Not Expanded by / Condensed by
**Formatted:** Font: 12 pt, Bold
**Formatted:** Font: 12 pt, Bold, Not Expanded by / Condensed by
**Formatted:** Font: 12 pt, Bold
**Formatted:** Font: 12 pt, Bold, Not Expanded by / Condensed by
**Formatted:** Underline
**Formatted:** Normal, Indent: Left: 0.32", Right: 0.07"
**Formatted:** Indent: Left: 0.32", Right: 1.78"

Brooklyn, NY 11241
(347) 229-1514
berman@prf-law.com

~~BLOCK & LEVITON LLP~~

/s/ ~~Kimberly A. Evans~~Robert Erikson
Kimberly A. Evans (#5888)
Robert Erikson (#7099)

**BLOCK & LEVITON LLP**
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600
kim@blockleviton.com

*Attorneys for the Plaintiffs and
the Proposed Classes and Collective*

**AARP FOUNDATION LITIGATION**
601 E Street NW
Washington, DC 20049
(202) 434-6983
rrodgers@aarp.org
llopez@aarp.org
sgerleman@aarp.org
lnaylor@aarp.org
dyellin@aarp.org

\* Admitted~~Adam T. Klein
(admitted *pro hac vice*)
Moira Heiges-Goepfert (admitted *pro hac vice*)
Chauniqua Young (admitted *pro hac vice*)
Zarka DSouza (admitted *pro hac vice*)
Mikael Rojas (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor~~

Rebecca Rodgers*
Louis Lopez*
Samantha Wehrle*
Lauren Naylor*
David S. Yellin*

135

of New York NY 10017

(212) 245-1000
atk@outtengolden.com
mhg@outtengolden.com
cyoung@outtengolden.com
zdsouza@outtengolden.com
mrojas@outtengolden.com