June 23, 2026

**VIA E-FILING & HAND DELIVERY**
Hon. Sherry R. Fallon
United States Magistrate Judge
J. Caleb Boggs Federal Building
844 N. King Street
Unit 14
Room 6100
Wilmington, DE 19801-3555


      RE:    *Goldstein, et al. v. RTX Corporation, et al.*, C.A. No. 24-1169-JLH-SRF

Dear Magistrate Judge Fallon:

Pursuant to the Court's June 9, 2026 Oral Order, D.I. 196, the Parties write jointly to update the Court on the status of discovery. Plaintiffs request that the Court keep the June 30, 2026 Status Conference on calendar to address ongoing and anticipated discovery issues. Defendants believe a conference is unnecessary but stand ready to attend the June 30 conference should the Court wish to proceed.

## I.      Case Summary

Plaintiffs bring this proposed class and collective action against Defendants alleging violations of the Age Discrimination in Employment Act ("ADEA") and several state laws. Specifically, Plaintiffs allege that RTX systematically discriminates against older applicants by reserving jobs for "recent college graduates," a demographic comprised overwhelmingly of people younger than 40, and by publishing job postings with these limitations. Defendants deny Plaintiffs' allegations and maintain that they base hiring decisions on experience and other legitimate factors, not age.

## II.      Relevant Procedural History

This case was filed on June 11, 2024 and transferred by consent to the District of Delaware on October 20, 2024. The Parties briefed Defendants' Motion to Dismiss and Plaintiffs' Motion for Court-Authorized Notice between January 10, 2025 and April 18, 2025, argued those motions on July 22, 2025, and Your Honor issued a Report and Recommendation with respect to the motions on September 4, 2025

June 23, 2026
Page 2

("September 4, 2025 R&R").  Judge Hall affirmed the September 4, 2025 R&R on December 29, 2025.  The Parties then completed a set of briefing on March 16, 2026 related to Plaintiffs' pleadings and remaining disputes regarding the scope of the ADEA collective notice authorized by the R&R.

### III.    Status of Discovery

The Parties exchanged initial disclosures on December 8, 2025.  Plaintiffs served initial interrogatories and requests for production of documents on December 19, 2025.  Defendants did the same on December 22, 2025.  Since that date, the Parties have exchanged responses, discovery-related correspondence, and document productions.  Under the Court's current Scheduling Order, D.I. 188, fact discovery closes on December 4, 2026.

### A.    Plaintiffs' Position

Defendants have moved very slowly in responding to discovery and have not produced the critical documents and data to permit Plaintiffs to advance their claims. To date, Defendants have produced no applicant data, no communications regarding the "Recent Graduate Positions," no job ads, no custodial ESI, and have not shared a clear timeline with Plaintiffs about when such productions will be forthcoming. With respect to non-data and non-custodial evidence, Defendants have produced only 55 documents total across two productions, the bulk of which is information already available in the public domain (e.g., SEC filings) or which Plaintiffs already maintained (e.g., documents from the EEOC process).

In contrast, the three individual Plaintiffs have produced a total of 7,116 documents across four separate productions and substantially completed such production on April 29, 2026.  Defendants' complaint below that Plaintiffs' fulsome productions are somehow "facially" deficient is unfounded and surfaced only for first time on June 22, the eve of this filing.

In other words, more than five years after the EEOC determined that Defendants violated the ADEA, nearly two years of litigation in federal court, nearly one year after the R&R, and more than six months after serving discovery requests, Plaintiffs have received almost no additional evidence to press their claims forward to resolution.  At the current pace of discovery, Plaintiffs are concerned that the litigation will languish and that the ongoing employment practices challenged in this lawsuit – which have already been determined to be at least plausibly discriminatory – will continue to indefinitely prejudice scores of older job applicants nationwide.

June 23, 2026
Page 3

Accordingly, Plaintiffs respectfully request that the Court use the June 30, 2026 status conference to review the Parties' progress in discovery and to provide the Parties with guidance to help ensure that discovery proceeds in an efficient manner. In this vein, Plaintiffs also request that the Court set an additional status conference for 45 days from June 30, 2026, *i.e.*, on or about August 12, 2026, to once again review the Parties' progress in discovery. Plaintiffs seek to resolve all outstanding discovery disputes without resort to motion practice, but respectfully request that the August 12, 2026 date also be reserved, to the extent necessary, as an oral argument date with the Court for any ripe discovery motions.[1]

To briefly recap the discovery process from Plaintiffs' perspective, Plaintiffs have engaged in a collaborative conferral process with Defendants for the last six months, attempting to resolve disputes without Court involvement in a manner consistent with the Parties' ESI Order and the operative Scheduling Order. Plaintiffs have repeatedly requested insight on rolling production timelines to allow for evaluation of deficiencies and, if necessary, timely presentation to the Court. And Plaintiffs relied on Defendants' statement that they "anticipated substantially completing production" of at least the "non-custodial and non-data documents . . . by June 15, 2026." Ex. A at 6. But Defendants only produced an additional 20 documents on that date. As noted above, Defendants' total 55 produced documents consist primarily of SEC filings (which already exist in the public record), documents related to Plaintiffs' EEOC charges (which Plaintiffs largely already have), generic corporate equal employment opportunity (EEO) policies, and a few internal job posting and recruiting guides. And on June 15, 2026, Defendants further prolonged their production timing by stating they expect to produce more documents in the next two weeks, but without explaining when they will substantially complete production or what will be included in the forthcoming production(s).

Plaintiffs believe the parties are near impasse on several issues, including but not limited to the following:

---

[1]   Plaintiffs acknowledge that their request deviates to some degree from the Court's *Guidelines for Discovery Matters*, but Plaintiffs respectfully submit that affixing a deadline in August will assist the Parties in advancing discovery or clarifying where they are at impasse. Of course, before filing any discovery motions, Plaintiffs will abide by the Court's *Guidelines for Discovery Matters* and the Local Rules.

June 23, 2026
Page 4

***First***, Defendants object to and largely withhold documents and information (including refusing to answer an interrogatory) regarding the relationship between RTX and the other Defendants – Raytheon Company, Collins Aerospace, Rockwell Collins, Inc., and ARINC, Inc.  This evidence is plainly relevant to Plaintiffs' claims that all Defendants operate as joint employers and/or as a single enterprise with respect to the challenged practices in this case.  In their Motion to Dismiss, Defendants did not seek dismissal of these alleged theories of liability, and they are clearly appropriate topics for discovery.  Yet, to date, Defendants have produced a few pages of relevant discovery, showing only that some Defendants are wholly owned subsidiaries of others.

Relatedly, Defendants have refused to produce any applicant data, perhaps the most important evidence in this case, or virtually any other evidence from any entities other than RTX and Pratt and Whitney given the Court's current dismissal of those parties on administrative exhaustion grounds.  While Plaintiffs appreciate that pending motion practice will determine the precise status of Raytheon Company, Collins Aerospace, Rockwell Collins, Inc., and ARINC, in this litigation, Plaintiffs served discovery on all Defendants given (1) the above-referenced joint employer and single enterprise theories; (2) their Second Amended Complaint, which further details why the currently-dismissed Defendants should not be dismissed on administrative exhaustion grounds; and (3) their Third Amended Complaint, which, in any event, alleges additional EEOC charges filed against such Defendants which would eliminate any argument about administrative exhaustion.  Defendants do not respond to the joint employer and single enterprise theories when they erroneously contend that producing applicant data would require resolving pending motions in Plaintiffs' favor.  All Defendants should be preparing production of applicant data, which will likely not entail undue additional burden based on the fact that RTX is currently assembling such production on the Workday platform.

***Second***, with respect to custodial evidence, the Parties agreed to a negotiated timeline in which Defendants committed to proposing custodians no later than May 21, 2026, and to progressing toward agreement on identifying impasse on search parameters (including search terms) by May 28, 2026.  Despite this agreement, on May 29, 2026, Defendants offered only eleven custodians, barely surpassing its minimum requirements under the Court's default discovery rules,[2] Section 3(a), with

---

[2]      While Plaintiffs appreciate the Court's default ESI suggestions, each case, of course, requires an individual assessment of what processes are relevant and proportional.  And complex, multiparty litigation with substantial data and document

June 23, 2026
Page 5

no proposed search terms, no identification of ESI sources, and no information to enable Plaintiffs to meaningfully assess where the custodians are situated within Defendants' complex organizational structure. Because Plaintiffs have access to a confined number of documents based on Defendants' lack of production to date, they lack information necessary to fully identify the precise gaps in Defendants' custodian list. However, Defendants' list is facially deficient for several reasons; for example, Defendants omit any custodian during portions of the liability period, Defendants identify no custodians at the non-RTX entities, and Defendants' list omits individuals from segments of its Human Resources department who are highly likely to have responsive materials (i.e. Talent Management and Workforce Intelligence departments).

***Third***, based on the limited progress made in discussing and negotiating ESI issues, Plaintiffs also served a 30(b)(6) deposition notice for a corporate representative who could comprehensively explain Defendants' data systems and other issues relevant to the litigation in this case. Defendants have objected to producing such a witness and have threatened to move for a protective order to avoid producing any witnesses on these topics. Plaintiffs have tried to work cooperatively through ESI negotiation process to acquire the sufficient information but, for the reasons explained above, have made very limited progress.

While Defendants argue that these and other issues "are not ripe for the Court's review," Plaintiffs assert that, particularly in complex litigation such as this, any guidance from the Court may help to facilitate the resolution of disputes that would otherwise require resource-intensive motion practice by the Parties and additional time for the Court to ultimately decide and rule on. It is for this reason that Plaintiffs initially requested regular status conferences with the Court throughout the discovery period. *See* D.I. 40 at 13 (Parties' Proposed Scheduling Order) (separate proposal from Plaintiffs requesting status conferences with the Court every 60 days). Plaintiffs acknowledge and appreciate that this matter is far from the only one before this Court that requires the Court's attention. Nevertheless, Plaintiffs respectfully make this request in light of their allegations regarding an ongoing practice of systemic, nationwide discrimination by one of the country's largest employers against older individuals and their obligations to advance these claims on behalf putative class and collective members. *See, e.g.*, *Mobley v. Workday*, Case No. 23-

---

issues requires like this matter requires much more information than what Defendants have currently disclosed in order to facilitate the necessary data and document productions.

June 23, 2026
Page 6

cv-0770-RFL-LB, D.I. 232 (Order Requiring Plaintiffs' Counsel [to Explain] Their Delay and Plan to Avoid Future Delay[]) (criticizing counsel for appearing "to have done little to complete the discovery needed" in "an important case alleging use of biased" hiring procedures potentially implicating "millions" of applicants).

Accordingly, as noted above, Plaintiffs request an additional date with the Court on or about August 12, 2026 to as an additional status conference or, if necessary, to use as an oral argument date on any motions filed in an appropriate time prior to that date.

### B. Defendants' Position

Plaintiffs' lengthy submission inaccurately describes the status of discovery in this case and raises discovery issues they concede are not ripe for the Court's review, improperly attempting to short-circuit the Parties' ongoing conferral efforts and the Court's discovery procedures. Plaintiffs' premature request that the Court address issues the Parties may be able to resolve would waste the Parties' and the Court's resources—not conserve them.

Plaintiffs misleadingly suggest that they have spent years seeking discovery "to press their claims forward."[3] In fact, as they admit, the Parties only served opening discovery requests in December 2025 following extensive motion practice on jurisdictional, pleading, and conditional notice issues. Fact discovery does not close until December 2026, and the Parties are in the thick of written discovery, making document productions and engaging in numerous conferrals. The Parties agreed to an informal discovery schedule "for the parties' organizational convenience," Ex. A at 2, with which Defendants have complied. Defendants have already produced more than 3,500 pages of documents and plan to make rolling productions, including an additional production before June 30. Defendants also proposed custodians for ESI searches and keywords for a search of an RTX platform housing internal discrimination complaints. And while Plaintiffs claim that they have substantially completed their productions, their discovery responses are facially deficient in numerous respects, which Defendants detailed in a June 22 letter. Consistent with the state of the Parties' ongoing negotiations, the Parties are continuing to confer on these issues, and there are no discovery motions awaiting the Court's decision.

---

[3] Contrary to Plaintiffs' claim, the EEOC did not "conclude that Defendants violated the ADEA," instead issuing a reasonable cause finding on Plaintiff Goldstein's 2019 charge as to Raytheon Company.

June 23, 2026
Page 7

As for the non-ripe issues that Plaintiffs identified, *first*, while Plaintiffs fault Defendants for not producing applicant data, Plaintiffs concede that the scope of the data production will depend on the Court's ruling on the parties' pending ADEA collective notice list briefing. The Parties' filings raise threshold disputes about the proper in-scope entities and methodology for identifying "recent graduate" positions, the resolution of which will impact what applicant data should be produced and how collection will proceed. *See* D.I. 174; D.I. 177; D.I. 182; D.I. 183. Preparing and producing this data for thousands of recent graduate positions will require significant effort from RTX personnel. *See* D.I. 177 at 8. Plaintiffs' assertion that "[a]ll Defendants" should undertake this effort now assumes that the Parties' disputes will be resolved in Plaintiffs' favor.

Plaintiffs' claim that full discovery should proceed as to the non-RTX Defendants under Plaintiffs' joint employer and single enterprise theories similarly takes as given that those entities should be treated as full parties, ignoring that the Court already dismissed them from the case. The Court's resolution of the Parties' notice briefing and any forthcoming motion to dismiss the operative complaint will guide the Parties' resolution of these issues. In the meantime, Defendants have agreed to produce documents sufficient to show the relationship between RTX and Raytheon Company, Rockwell Collins, Inc., and ARINC, Inc., as well as documents demonstrating that Collins Aerospace is not an independent legal entity. None of these issues are ripe for resolution at a status conference.

*Second*, Plaintiffs' custodial ESI grievances are likewise misplaced and premature. Plaintiffs admit that Defendants have already proposed more than the 10 custodians ordinarily required under the Court's Default Standard for Electronic Discovery. Contrary to Plaintiffs' claims, Defendants provided information about these custodians' positions and the likely categories of responsive documents they possess. Plaintiffs only agreed that searches should proceed as to certain custodians on June 6, and Defendants are now diligently working to collect the custodians' ESI, propose search terms, and generate search term hit reports. While Plaintiffs raised various issues regarding the custodian list on June 6, Defendants have responded to those concerns, and the Parties are continuing to discuss them.

*Third*, the Parties have not reached impasse on Plaintiffs' requested Rule 30(b)(6) data deposition. After Defendants served responses and objections to Plaintiffs' deposition notice, Plaintiffs agreed to postpone their request for deposition pending further productions and conferrals between the Parties. The Parties may need to

June 23, 2026
Page 8

brief a protective order in the future, but there is currently no dispute for the Court to address.

Because there are no pending discovery issues ripe for the Court's review, Defendants respectfully submit that a June 30 status conference is not needed. However, Defendants stand ready to attend should the Court wish to proceed.

## IV.    Date for Next Status Conference

Plaintiffs propose that the Court set a further status conference and/or oral argument date for August 12, 2026.

Defendants do not oppose scheduling an additional status conference and defer to the Court on the appropriate date for any such conference.  Defendants oppose Plaintiffs' request to reserve oral argument on potential future discovery disputes that are not even known to the Parties, let alone briefed and ready for decision.

Respectfully submitted,

| | |
|---|---|
| */s/ John Miragli* | */s/ Robert Erikson* |
| John Miraglia | Robert Erikson |
| Reed Smith LLP | Block & Leviton LLP |
| 1201 Market Street, Suite 1500 | 222 Delaware Avenue, Suite 1120 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 778-7500 | (302) 499-3600 |
| jmiraglia@reedsmith.com | robby@blockleviton.com |
| | |
| *Attorney for Defendants* | *Attorney for Plaintiffs* |

CC:   Mikael Rojas, Outten & Golden LLP (via CM/ECF)
        Peter Romer-Friedman, Peter Romer-Friedman Law PLLC (via CM/ECF)
        Rebecca Rodgers, AARP Foundation (via CM/ECF)
        Jason Schwartz, Gibson, Dunn & Crutcher LLP (via CM/ECF)