**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,<br><br>Defendants. | ) | Civil Action No. 24-1169-JLH-SRF |

**MEMORANDUM ORDER**

At Wilmington this **14th** day of **September, 2026**, the court having considered the motion to amend the second amended complaint ("SAC") filed by plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan (collectively, "Plaintiffs"), (D.I. 169),[1] IT IS ORDERED that the motion is GRANTED for the following reasons.

**1. Background.** The court writes primarily for the parties and assumes familiarity with the pleaded allegations and the background summary in the court's September 4, 2025 Report and Recommendation. (D.I. 127 at 2-3) Plaintiffs bring this putative collective and class action on behalf of themselves and all others similarly situated against RTX Corporation, f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company (collectively, "RTX"), and RTX's

[1] The briefing and filings associated with the pending motion to dismiss are found at D.I. 170, D.I. 171, D.I. 184, D.I. 185, and D.I. 189.

subsidiaries Raytheon Company, f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense; Pratt & Whitney; Collins Aerospace; Rockwell Collins, Inc.; and ARINC Inc. (collectively, the "non-RTX Defendants"; together with RTX, "Defendants"). (D.I. 162) Plaintiffs allege that Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Massachusetts Fair Employment Practices Act ("MFEPA"), the Virginia Human Rights Act ("VHRA"), and the California Fair Employment and Housing Act ("FEHA") by engaging in a "nationwide pattern, practice, and/or policy of discriminating against older workers . . . in their hiring processes." (*Id.* at ¶ 1)

**2.** In a Report and Recommendation issued on September 4, 2025, the court recommended dismissing without prejudice the portions of the first amended complaint asserting claims against the non-RTX Defendants because Plaintiffs failed to exhaust their administrative remedies against these Defendants. (D.I. 127 at 11) The court also rejected Defendants' contention that the case should be dismissed for lack of standing because Plaintiffs allegedly had no genuine interest in the job openings to which they applied. (*Id.* at 4-6) The district court adopted the Report and Recommendation in a Memorandum Order dated December 29, 2025 and granted leave for Plaintiffs to file a second amended complaint (the "SAC"). (D.I. 148)

**3.** Plaintiffs filed the SAC on January 20, 2026, reasserting claims against the non-RTX Defendants. (D.I. 162 at ¶¶ 204-13) On February 5, 2026, Goldstein and Beaulieu received Notices of Right to Sue on discrimination charges that they filed with the Equal Employment Opportunity Commission ("EEOC") on December 23, 2025. (D.I. 166 at 2) The parties stipulated to extend certain deadlines so that Plaintiffs could file a motion for leave to file a third amended complaint ("TAC") to add allegations about their recent charges of discrimination. (*Id.*)

**4.** Plaintiffs moved for leave to file the TAC on February 27, 2026. (D.I. 169) The TAC adds allegations regarding the EEOC charges filed by Goldstein and Beaulieu on December 23, 2025 and a description of the positions to which they applied that led to those EEOC charges. (D.I. 169-3) The deadline for Defendants' answer or responsive pleading is stayed until 21 days from the date of the instant Memorandum Order. (D.I. 166; D.I. 168)

**5. Legal Standard.** Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities." *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 520 (D. Del. 2010) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990)). Absent a showing of undue delay, bad faith or dilatory motive, undue prejudice, repeated failure to cure deficiencies by amendment previously allowed, or futility of the amendment, leave to amend under Rule 15 should generally be permitted. *Id.* at 520–21 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision to grant or deny leave to amend lies within the discretion of the court. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

**6. Analysis.** Defendants oppose Plaintiffs' motion for leave to file the TAC on two primary grounds: (1) futility, and (2) prejudice. (D.I. 184 at 7-16) Defendants also contend that the interests of judicial economy would not be served by permitting the proposed amendments, and jurisdictional discovery should be permitted on the issue of standing. (*Id.* at 16-20) For the following reasons, leave to amend should be granted under the Third Circuit's liberal policy favoring amendment of pleadings.

7. ***Futility.*** Defendants contend that the proposed amendments in the TAC are futile because Plaintiffs lack standing to bring their claims regarding the 2025 EEOC charges. (D.I. 184 at 7-13) "To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018) (internal quotation marks and citations omitted). Because Defendants raise a facial challenge to the court's standing, the court applies the same standard that governs a Rule 12(b)(6) motion for failure to state a claim, accepting the plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences allegations in favor of the plaintiff. *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024).

8. Defendants argue that there is no injury in fact because the proposed TAC and the 2025 EEOC charges show Plaintiffs applied to job openings solely for litigation purposes and lacked a genuine interest in those openings.[2] (D.I. 184 at 8-12) In the 2025 EEOC charges, Defendants cite Goldstein and Beaulieu's concession that they "fil[ed] the instant charge against all of the Respondents out of an abundance of caution" "to ensure that [their] claims against each of these entities have been fully exhausted." (D.I. 169, Ex. U at 7; Ex. W at 7) Defendants also quote portions of Plaintiffs' opening brief on the pending motion acknowledging that they filed the 2025 EEOC charges to "ensure that their claims against the non-RTX Defendants are fully exhausted and that these entities can be brought into the case." (D.I. 170 at 6 & n.4) Finally,

[2] Defendants begin their answering brief by accusing Plaintiffs of engaging in "a thinly veiled attempt to circumvent the orders of this Court dismissing Plaintiffs' claims against all Defendants besides RTX Corporation[,]" without addressing the fact that the court previously rejected some of the same standing arguments raised in their answering brief. (D.I. 184 at 1; D.I. 127 at 4-6)

Defendants refer to the context surrounding Plaintiffs' 2025 job applications, the 2025 EEOC charges, and the proposed amendments to support their position that Plaintiffs are "employment testers"[3] motivated by litigation tactics and they therefore lack standing. (D.I. 184 at 9-11)

**9.** In support of their standing argument, Defendants cite a 1987 case from the Middle District of Georgia, which held that "[a] plaintiff whose primary purpose in interviewing for a job is to create the basis for a Title VII EEOC charge and lawsuit is not the bona fide applicant for a job that he must be to establish a prima facie case." *Parr v. Woodmen of the World Life Ins. Soc'y*, 657 F. Supp. 1022, 1032 (M.D. Ga. 1987). The court analyzed the elements of the plaintiff's employment discrimination claim under the *McDonnell Douglas* framework following a bench trial without expressly addressing the plaintiff's standing. The court's decision rested on the fact that the plaintiff "never actually applied for the job" and therefore failed to meet the requirement "that he applied for a job" under Title VII. *Id.*

**10.** The *Parr* decision received negative treatment in a subsequent decision from the Seventh Circuit holding that "testers who experience discrimination as they apply for jobs have standing to sue under Title VII." *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 298 (7th Cir. 2000) (citing Supreme Court case authority holding that testers have standing to bring suit for alleged violations of the Fair Housing Act). The Seventh Circuit determined that this was the case even if the testers were not "harmed apart from the statutory violation—even if, for example, [they were] not genuinely interested in the job[s] [they] applied for and in that sense w[ere] not harmed by the employer's refusal to hire [them]." *Id.*

**11.** Although it appears the Third Circuit has not directly addressed the issue of tester

[3] "Employment testers" are individuals who pose as job seekers for the purpose of detecting unlawful hiring discrimination. *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289 (7th Cir. 2000).

standing for employment discrimination claims under Title VII or the ADEA, it recognized tester standing in the context of a civil rights claim under 42 U.S.C. § 1982. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 898 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). There, the Third Circuit explained that even if a tester is "motivated solely by his desire to test the legality of [the defendant's] policies, such a purpose is sufficient to confer standing" under Section 1982. *Id.*; *see also Nat'l Dental Council v. Com. of Pa. State Bd. of Dentistry*, 677 F. Supp. 785, 788 (M.D. Pa. 1987) (declining to consider an individual's motivation in joining the lawsuit based on *Pennypack*'s holding that a plaintiff's desire to litigate the legality of a defendant's policies is irrelevant to standing). Defendants did not address the Third Circuit's ruling in *Pennypack*, and the court is bound to follow that decision. The court also finds the reasoning of *Kyles* persuasive to the extent that it establishes there is no bright line rule barring employment testers from establishing standing to sue.

**12.** The proposed TAC avers that Goldstein and Beaulieu's 2025 EEOC charges "relate[ ] back to and piggyback[ ] on all prior charges that [they] filed against any of the Respondents[.]" (D.I. 169-2 at ¶¶ 117, 146) Having previously determined that those allegations were sufficient to plausibly establish standing at this early stage, the court declines to disrupt that holding by denying Plaintiffs' motion for leave to amend based on Defendants' standing argument.[4]

---

[4] Defendants suggest that the 2025 EEOC charges do not sufficiently identify an injury traceable to each Defendant for standing purposes. (D.I. 184 at 12) But there is no dispute that Plaintiffs' 2025 EEOC charges state "each of the Respondents engage in the same discriminatory practices, [so] the allegations herein apply equally to all entities named as Respondents in this charge." (*Id.*) (citing D.I. 169, Ex. U at 15 n.21; Ex. W at 15 n.21). At this early stage, the court must accept the pleaded allegations as true and view them in the light most favorable to Plaintiffs.

13. ***Prejudice.*** Defendants argue that they will be prejudiced if the court permits Plaintiffs to file the proposed TAC because the amended pleading attempts to revive the previously dismissed non-RTX Defendants through tactical amendments. (D.I. 184 at 13-14) Regardless of whether the court grants leave to amend, however, Defendants will need to address claims asserted against the non-RTX Defendants because the SAC also includes claims against them. (D.I. 162; D.I. 189 at 8) Defendants also contend that additional discovery will be needed on the circumstances surrounding Goldstein and Beaulieu's 2025 applications and EEOC charges. (D.I. 184 at 16) Defendants do not identify any specific burden associated with this discovery or any delay in the case schedule that is likely to result from the additional discovery. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (explaining that prejudice is only established when the nonmovant demonstrates "its ability to present its case would be seriously impaired were amendment allowed."). On this record, Defendants have not "established prejudice sufficient to defeat [Plaintiffs'] right to amend." *Id.*

14. ***Judicial economy.*** In addition to the factors set forth in *Foman v. Davis*, 371 U.S. 178 (1962), the Third Circuit has stated that courts may consider "additional equities, such as judicial economy/burden on the court" in analyzing a motion for leave to amend. *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017). Plaintiffs allege that leave to amend should be granted to avoid the inefficiencies that would result if they choose to file a separate lawsuit bringing claims regarding the 2025 EEOC charges, and Defendants respond with their own speculation about future events in the litigation. (D.I. 170 at 1; D.I. 184 at 16-18) This consideration is neutral.

15. ***Jurisdictional discovery.*** Defendants alternatively request jurisdictional discovery into Plaintiffs' state of mind when they applied for positions with Defendants. (D.I. 184 at 18-

20) In their answering brief filed on March 20, 2026, Defendants represent they "have already served discovery requests regarding Plaintiffs' purported interest in the jobs they pursued, and Plaintiffs have agreed to provide responsive documents subject to limited objections." (*Id.* at 19) No discovery disputes have been raised on this issue in the intervening months, suggesting a likelihood that the discovery has been completed. Defendants do not specify what other jurisdictional discovery would be required. On this record, there is no basis to grant additional jurisdictional discovery.

**16. Conclusion.** In the exercise of the court's discretion, and in the interest of upholding the Third Circuit's liberal policy favoring amendment to ensure that claims are decided on the merits, IT IS ORDERED that the motion to amend (D.I. 169) is GRANTED. On or before **September 15, 2026**, Plaintiffs shall file their TAC in the form attached at D.I. 169-2.

**17.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**18.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge