**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,<br><br>Defendants. | ) | Civil Action No. 24-1169-JLH-SRF |

**MEMORANDUM ORDER**

At Wilmington this **14th** day of **September, 2026**, the court having considered the parties' supplemental briefs and associated filings in support of court-authorized notice pursuant to 29 U.S.C. § 216(b), (D.I. 174; D.I. 175; D.I. 177; D.I. 182; D.I. 183), IT IS ORDERED that the submissions are addressed as follows:

1. **Background.** The court writes primarily for the parties and assumes familiarity with the pleaded allegations and the background summary in the court's September 4, 2025 Report and Recommendation. (D.I. 127 at 2-3) Plaintiffs bring this putative collective and class action on behalf of themselves and all others similarly situated against RTX Corporation, f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company (collectively, "RTX"), and RTX's subsidiaries Raytheon Company, f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense; Pratt & Whitney; Collins Aerospace; Rockwell Collins, Inc.; and ARINC Inc.

(collectively, the "non-RTX Defendants"; together with RTX, "Defendants"). (D.I. 162; D.I. 169-2) Plaintiffs allege that Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Massachusetts Fair Employment Practices Act ("MFEPA"), the Virginia Human Rights Act ("VHRA"), and the California Fair Employment and Housing Act ("FEHA") by engaging in a "nationwide pattern, practice, and/or policy of discriminating against older workers . . . in their hiring processes." (*Id.* at ¶ 1)

**2.** In a Report and Recommendation issued on September 4, 2025, the court recommended granting-in-part Plaintiffs' motion for court-authorized notice as follows:

> GRANT the motion for conditional certification with respect to individuals who, from October 11, 2018 onward, (i) applied to and were denied at least one Recent Graduate Position; (ii) met the basic qualifications for such position; and (iii) were aged 40 or older at the time they applied;
>
> DENY the motion for conditional certification with respect to individuals over age 40 who were deterred from applying for a Recent Graduate Position; and
>
> DENY without prejudice Plaintiffs' request for approval of the proposed Notice and Consent to Join Form, pending the results of the parties' meet and confer efforts regarding the form and content of the notice, which shall occur during the fourteen-day period for objections, and the court's review of the parties' joint status report due seven days after the meet and confer;
>
> GRANT Plaintiffs' request to disseminate notice to the proposed collective members via U.S. mail and email; and
>
> DENY Plaintiffs' request to disseminate notice to the proposed collective members via text message and online publication notice.

(D.I. 127 at 27-28) The court adopted the Report and Recommendation on December 29, 2025 in a Memorandum Order which acknowledged that the parties were unable to reach agreement on the collective notice procedures. (D.I. 148 at 12-13) At the direction of the undersigned judicial officer, the parties submitted a stipulated briefing schedule regarding collective notice procedures. (D.I. 151; D.I. 155; D.I. 156)

**3. Analysis.** The parties raise four primary disputes regarding the proposed collective notice procedures: (1) whether notice should be authorized for applicants of the non-RTX Defendants, (2) how to determine which job postings qualify as "Recent Graduate Positions," (3) how to identify putative collective members, and (4) whether a website to return consent forms should be publicly available or password protected.

**4.** ***Non-RTX Defendants.*** Plaintiffs' proposal regarding the non-RTX Defendants is ADOPTED, and Defendants' competing proposal is REJECTED. At this first, conditional stage of the certification process, notice shall be sent to applicants for Recent Graduate Positions at the non-RTX Defendants. Defendants contend that applicants to jobs posted by the non-RTX Defendants should be excluded from the notice list because the non-RTX Defendants were dismissed from the case pursuant to the court's adoption of the September 4, 2025 Report and Recommendation. (D.I. 177 at 3; *see also* D.I. 127; D.I. 148) But Plaintiffs raise "joint employer" and "single integrated enterprise" theories based on their position that RTX "played a central role in advertising, recruiting, and hiring *all* the Recent Graduate Positions at *all* its subsidiaries and business units[.]"[1] (D.I. 130 at 5) (citing D.I. 68 at ¶¶ 42-48). Under these theories, jobs posted on behalf of the non-RTX Defendants could fall within the scope of RTX's potential liability even if the non-RTX Defendants are not parties to the action.[2] Cases within

---

[1] "The 'single-employer' (or 'integrated-enterprise') test determines whether multiple entities are so interrelated that they may be treated as one employer." *Battistone v. Sam Jon Corp.*, 2002 WL 32345692, at *4 (E.D. Pa. Oct. 4, 2002) (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997)). The joint employer theory "looks to who paid the employers' salaries, who hired and fired employees, and who exercised control over employees' daily employment activities—alongside other factors." *Moyer v. waste Connections of Pa., Inc.*, 2026 WL 1999642, at *4 (E.D. Pa. July 10, 2026) (citing *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213-15 (3d Cir. 2015)).

[2] Plaintiffs rename the non-RTX Defendants as parties to the case in both the second and proposed third amended complaints. (D.I. 162; D.I. 169-2)

the Third Circuit have explained that there is

> no principled reason to require that the [non-RTX Defendants] be named; after all, if the single-employer analysis leads to the conclusion that the companies were sufficiently related to aggregate their number of employees, then the companies by definition were operating in such a way that they are best considered a single entity. To require a plaintiff to assert claims against all the various aliases of that one single entity seems a pointless exercise.

*Battistone v. Sam Jon Corp.*, 2002 WL 32345692, at *4 (E.D. Pa. Oct. 4, 2002); *see also De Alvarenga Barbosa v. Kellermeyer Bergensons Servs., LLC*, 2025 WL 2983157, at *3 (E.D. Pa. Oct. 22, 2025).

**5.** The weight of authority supports Plaintiffs' position that discovery is necessary to consider the merits of single enterprise and/or joint employer theories and, as a result, the issue "is better resolved at the final stage of certification." *Barbosa*, 2025 WL 2983157, at *2 (citing *McGhee v. Toms King*, 2021 WL 1176097, at *8 (W.D. Pa. Mar. 29, 2021)); *see also Manning v. Goldbelt Falcon*, 2010 WL 3906735, at *3 (D.N.J. Sept. 29, 2010) (citing cases and explaining that, "where a motion for conditional certification involves a potential class of employees that worked for separate, but related employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination."). In the meantime, notice should proceed with respect to the non-RTX Defendants, and Defendants may move to decertify the collective at the appropriate time if discovery does not support Plaintiffs' theories.

**6.** ***Identification of Recent Graduate Positions.*** Next, the parties dispute how to determine which job postings qualify as "Recent Graduate Positions" reserved for "those who have graduated in the prior year or two (or who will soon graduate), or applicants with college degrees who have less than 12 or 24 months of work experience." (D.I. 177 at 7) (citing D.I. 93 at 1). Plaintiffs propose negotiating search terms with Defendants that target experience and recent graduate limitations. (D.I. 174 at 5) In contrast, Defendants suggest filtering positions in

their Workday database based on several data fields and then training an artificial intelligence model to identify job descriptions meeting Plaintiffs' definition of "Recent Graduate Positions." (D.I. 177 at 7-8)

**7.** Defendants' proposal to employ the Workday database fields identified in their supplemental submission is ADOPTED. Plaintiffs object to only one of Defendants' proposed filters—the "compensation grade" data field—which would limit the notice list to those who applied to positions with a salary grade of "P1" or "P2." According to Plaintiffs, there is no evidence the "P1" and "P2" grades are the exclusive compensation grades for Recent Graduate Positions. (D.I. 183 at 4) However, Defendants submitted a declaration explaining that "[c]ompensation grades are salary bands: 'P1' indicates an entry-level salaried position, often appropriate for a new college graduate, and 'P2' is one step above, often appropriate for a new graduate school graduate or an employee with a few years of relevant work experience." (D.I. 110 at ¶ 4) This evidence supports Defendants' argument that jobs falling within the definition of "Recent Graduate Positions" are restricted to these salary bands. Plaintiffs do not object to the other Workday database filters identified by Defendants, such as "requisition type," "job requisition country," and "current stage" of application.

**8.** Defendants' proposal to exclude any positions seeking recent master's graduates is ADOPTED. During the July 22, 2025 oral argument, Plaintiffs' counsel confirmed that "recent graduates" are those "individuals who are two years or less out of college or individuals with a college degree and less than two years of experience. . . ." (D.I. 126 at 66:11-18) Consistent with this representation, Plaintiffs' proposed notice form refers to "positions reserved only for 'recent college graduates,' or applicants with college degrees who have less than 12 or 24 months of work experience." (D.I. 175-1 at 1) Plaintiffs may not now expand the definition of

"Recent Graduate Positions" to include recent graduates of master's programs.

**9.** Defendants' proposal to exclude any positions open to either recent college graduates or those with equivalent work experience is also ADOPTED. (D.I. 177 at 8) Positions that offer degree equivalency, such as "Bachelor's degree and less than 2 years prior relevant experience OR In the absence of a degree, 6 years of relevant experience is required[,]" do not meet the definition of "positions reserved *only* for 'recent college graduates,' or applicants with college degrees who have less than 12 or 24 months of work experience." (D.I. 175-1 at 1) (emphasis added). During the oral argument held on July 22, 2025, Plaintiffs' counsel explained that "some of the job ads would not be in the proposed collective," citing a Collins Aerospace position for an Associate Systems Engineer as an example. (D.I. 126 at 75:19-22) Plaintiffs' counsel confirmed that the position, which was open to either new graduates or those with six years of relevant experience, was "not relevant to our proposed collective or our claim" because it was open to people without college degrees. (*Id.* at 75:24-76:5)

**10.** Plaintiffs' proposal to negotiate appropriate search terms targeting experience and recent graduate limitations is ADOPTED-IN-PART, and Defendants' competing proposal to train an artificial intelligence model is REJECTED. Defendants contend that the Workday database does not have a field that can cleanly isolate Recent Graduate Positions, and the requirements for these positions are phrased differently, posing the risk of an underinclusive search. (D.I. 177 at 8) Plaintiffs note that they "requested the sample of job postings Defendants reviewed in reaching that conclusion[,]" but "Defendants have not produced any sample." (D.I. 174 at 5) A collaborative process to agree on search terms is preferable to the unilateral training of an artificial intelligence model, which is no less likely to raise issues of under-inclusiveness. However, Plaintiffs' proposal is REJECTED to the extent that they seek to compel Defendants to

produce a 30% sample of Recent Graduate job postings across the relevant time period. Plaintiffs provide no authority in support of this proposal, which is effectively a motion to compel discovery. Therefore, IT IS ORDERED that the parties shall meet and confer on search terms to employ in the search process within fourteen (14) days of this Memorandum Order.

**11.** ***Identification of Putative Collective Members.*** The parties dispute whether applicants' satisfaction of the basic qualifications for Recent Graduate Positions must be assessed on a case-by-case basis for any required major, coursework, or other criteria before notice issues.[3] (D.I. 174 at 6-7; D.I. 177 at 9) The court expressly rejected such an individualized approach in the Memorandum Order issued on December 29, 2025:

> Defendants contend that "[t]he job postings at issue varied on how they defined recency (e.g., graduation within 12 or 24 months) and on other basic qualifications (e.g., particular concentrations or coursework)—which will necessitate an individual evaluation of each resume against each job posting, just to develop the notice list." (D.I. 128 at 8–9.) This argument might have greater force at the final certification stage where the Court must make "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). But Defendants demand too much at this early stage. For now, the Court determines that Plaintiffs have made the modest factual showing necessary for court-authorized notice. Defendants are free to renew their arguments at the final certification stage. *See, e.g., Archer v. Defenders, Inc.*, No. 18-470, 2018 WL 5962470, at *3 (D. Del. Nov. 14, 2018) (collecting cases and explaining that "courts in this Circuit regularly resolve issues of individualized inquiries at stage two of the certification process").

(D.I. 148 at 11-12) Consequently, Plaintiffs' proposal for deferring the assessment of basic qualifications such as coursework and major is ADOPTED, and Defendants' proposal to undertake an individualized inquiry of these criteria is REJECTED.

---

[3] Plaintiffs have agreed to Defendants' proposal for excluding applicants denied jobs because they required U.S. citizenship or they otherwise failed to hold the appropriate security clearance, and they do not object to excluding applicants who hold no college degree. (D.I. 174 at 7)

**12.** The parties also disagree on the procedure for screening applicants based on age. Defendants propose unilaterally retaining a vendor who can cross-reference known identifying information against a database to determine applicants' age.[4] (D.I. 177 at 9-10) Plaintiffs suggest engaging an independent vendor to match applicant records with public records data, with both sides in the litigation having access to the vendor's information. (D.I. 174 at 8) Plaintiffs' proposal to jointly engage an independent vendor, with costs split between the parties and data accessible to both sides, is ADOPTED, and Defendants' competing proposal is REJECTED.

**13. *Notice Content and Distribution.*** The parties agree to the notice and consent forms attached as Exhibits A and B to the Declaration of Peter Romer-Friedman. (D.I. 175, Exs. A-B; D.I. 177 at 10) The parties disagree as to whether consent forms may be returned on a public case website, or whether any case website must be accessible only to notice recipients via passwords given in the forms. (D.I. 174 at 9-10; D.I. 177 at 10)

**14.** Plaintiffs cite a case from the Southern District of Indiana concluding that "requiring access codes runs counter to improving accessibility and is likely to limit a potential Plaintiff's ability to electronically submit a consent form." *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016). In this instance, however, the court does not find a password requirement to be overly restrictive or onerous to potential collective members who submitted their job applications through Defendants' website, and the minimal burden is warranted to address even a slight risk that the website could be misused. (D.I. 183 at 7) Consequently, Defendants' compromise

---

[4] Defendants express concern about Plaintiffs' access to information on applicants under age 40, but these concerns are speculative, and it is unclear how this information could be of use to Plaintiffs' case. (D.I. 177 at 9-10) To the extent that Defendants are concerned Plaintiffs will misuse the information, and those concerns are not covered by the existing protective orders in this case, (D.I. 153; D.I. 164), the parties may negotiate a supplemental protective order.

proposal to create a "closed" website for the return of consent forms is ADOPTED, and Plaintiffs' proposal to create a public website is REJECTED.

**15. Conclusion.** In accordance with the foregoing analysis, IT IS ORDERED that:

**a.** ***Non-RTX Defendants:*** Plaintiffs' proposal regarding the non-RTX Defendants is ADOPTED, and notice shall be sent to applicants for Recent Graduate Positions at the non-RTX Defendants.

**b.** ***Identification of Recent Graduate Positions:*** Defendants' proposals to: (i) employ the Workday database fields identified in their supplemental submission to identify which positions qualify as "Recent Graduate Positions," and (ii) exclude from the realm of Recent Graduate Positions any positions open to recent master's graduates or "degree equivalency" positions open to either recent college graduates or those with equivalent work experience are ADOPTED. Plaintiffs' proposal to negotiate appropriate search terms targeting experience and recent graduate limitations to further identify Recent Graduate Positions is ADOPTED-IN-PART, and Defendants' competing proposal to train an artificial intelligence model is REJECTED. Accordingly, IT IS ORDERED that the parties shall meet and confer to negotiate appropriate search terms within fourteen (14) days of this Memorandum Order.

**c.** ***Identification of Putative Collective Members:*** Plaintiffs' proposal for deferring the assessment of certain basic qualifications, such as coursework and major, for identifying potential collective members is ADOPTED, and Defendants' proposal to undertake an individualized inquiry of these criteria

at this initial stage of the collective certification process is REJECTED. Plaintiffs' proposal to jointly engage an independent vendor for purposes of determining applicants' ages, with costs split between the parties and data accessible to both sides, is ADOPTED, and Defendants' competing proposal is REJECTED.

**d.** ***Notice Content and Distribution:*** Defendants' compromise proposal to create a "closed" website for the return of consent forms is ADOPTED, and Plaintiffs' proposal to create a public website is REJECTED.

**e.** IT IS FURTHER ORDERED that, should the parties mutually agree on alternative procedures which would modify the procedures set forth in this Memorandum Order, the parties may present those alternative proposals to the court.

**16.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**17.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge