**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MARK GOLDSTEIN, DUCAMP BEAULIEU, and JOHN BRYAN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

RTX CORPORATION (f/k/a Raytheon Technologies Corporation, f/k/a Raytheon Company), RAYTHEON COMPANY (f/k/a Raytheon Intelligence & Space and Raytheon Missiles & Defense), PRATT & WHITNEY, COLLINS AEROSPACE, ROCKWELL COLLINS, INC., and ARINC INC.,

Defendants.

C.A. No. 24-1169-JLH

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*Of Counsel*

Adam T. Klein*
Mollie Berkowitz*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

Mikael Rojas*
Chauniqua D. Young*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Washington DC 20005
(202) 847-4400

Kimberly A. Evans (#5888)
Robert Erikson (#7099)
**BLOCK & LEVITON LLP**
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600

Peter Romer-Friedman*
Patrick David Lopez*
**ROMER-FRIEDMAN BERMAN LAW PLLC**
6856 Eastern Avenue NW, Suite 221
Washington, DC 20012
(202) 355-6364

*[Additional counsel on following page]*

David Berman*
**ROMER-FRIEDMAN**
**BERMAN LAW PLLC**
16 Court Street, Floor 33
Brooklyn, NY 11241
(347) 229-1514

Rebecca Rodgers*
Louis Lopez*
Samantha Wehrle*
Lauren Naylor*
**AARP FOUNDATION**
601 E Street, NW
Washington, DC 20049
(202) 434-6983

**Admitted Pro Hac Vice*

*Counsel for Plaintiffs, the Certified Collective, and the Proposed Class*

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS .......... 1

SUMMARY OF ARGUMENT .......... 1

STATEMENT OF FACTS .......... 2

LEGAL STANDARD .......... 5

ARGUMENT .......... 5

I. Plaintiffs Have Article III Standing to Litigate Claims Against Non-RTX Defendants, Including Those Related to Their December 2025 EEOC Charges. .......... 5

A. Plaintiffs Plausibly Pleaded That They Held a Genuine Interest in the Recent Graduate Jobs at Issue, and Any Other Inference is Impermissible at this Stage. .......... 6

B. Defendants' Misconstruction of Plaintiffs' Efforts to Exhaust as Purported Evidence of Lack of Genuine Interest in the Jobs at Issue is Improper at this Stage. .......... 7

II. In Any Event, Testers Also Have Article III Standing to Bring ADEA Claims. .......... 8

III. While a Failure-to-Exhaust Defense is Generally Not Appropriate to Decide at this Stage, Plaintiffs Nevertheless Have Sufficiently Pleaded that They Exhausted Their Claims Against the Non-RTX Defendants, Not Just as to RTX. .......... 10

A. The Action is Timely as to Raytheon Company Over the Claims in Goldstein's First Charge in 2019, Due to the 2021 Tolling Agreement and His FAC Relating Back to the Original Complaint Against RTX. .......... 11

B. Plaintiffs' 2023 and 2024 Initial Charges and Their November 2024 Amended Charges That Expressly Named All the Defendants as Respondents Were Timely Exhausted Due to the 2021-2024 Tolling Agreement. .......... 14

C. Bryan's November 2024 Amended Charge Timely Exhausted as to All the Defendants Even if the Tolling Agreement Did Not Apply to the Non-RTX Entities. .......... 17

D. Goldstein's 2023 Charge and Beaulieu and Bryan's 2024 Charges Satisfy the Common Interest Exception, Both as Initially Filed and as Amended. ........ 18

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. Prince George's County*,
538 F. Supp. 833 (D. Md. 1982) ........ 10

*Anderson v. Kauffman*,
2023 WL 1805837 (M.D. Pa. Feb. 7, 2023) ........ 11

*Azzun v. Kan. Dep't of Health & Env't*,
2010 WL 4975557 (D. Kan. Dec. 2, 2010) ........ 18

*Barber v. CSX Distrib. Servs.*,
68 F.3d 694 (3d. Cir. 1995) ........ 9

*Bernstein v. Nat'l Liberty Int'l Corp.*,
407 F. Supp. 709 (E.D. Pa. 1976) ........ 14

*Bivines v. Temple Univ. of Commonwealth Sys. of Higher Educ.*,
284 F. Supp. 3d 587 (E.D. Pa. 2018) ........ 10-11

*Bradley v. T-Mobile US, Inc.*,
2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ........ 10

*Chemimage Corp. v. Johnson & Johnson*,
2024 WL 3758814 (S.D.N.Y. Aug. 12, 2024) ........ 16

*Christaldi-Smith v. JDJ, Inc.*,
367 F. Supp. 2d 756 (E.D. Pa. 2005) ........ 20

*In re Cmty. Bank of N. Va.*,
622 F.3d 275 (3d Cir. 2010) ........ 13

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ........ 5, 6

*Davies US Inc. v. Weston*,
2026 WL 1475213 (D. Del. May 26, 2026) ........ 16

*Davis v. Corr. Med. Sys.*,
480 F. Supp. 2d 754 (D. Del. 2007) ........ 13

*EEOC v. Geisenger Health*,
2025 WL 938622 (E.D. Pa. Mar. 27, 2025) ........ 20

*EEOC v. Metal Serv. Co.*,
892 F.2d 341 (3d. Cir. 1990) ........ 18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
2005 WL 3704688 (S.D. Tex. Dec. 5, 2005) ........ 16

*Fair Emp. Council of Greater Wash., Inc., v. BMC Mktg. Corp.*,
28 F.3d 1268 (D.C. Cir. 1994) ........ 9

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ........ 5

*Glus v. G.C. Murphy Co.*,
562 F.2d 880 (3d Cir. 1977) ........ *passim*

*Glus v. G.C. Murphy Co.*,
629 F.2d 248 (3d Cir. 1980) ........ 20

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........ 9

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d. Cir. 2017) ........ 7, 8

*Howard v. N.J. Dep't of Civ. Serv.*,
667 F.2d 1099 (3d Cir. 1981) ........ 6

*Kyles v. J.K. Guardian Security Services, Inc.*,
222 F.3d 289 (7th Cir. 2000) ........ 9

*Lukovsky v. City & County of San Francisco*,
535 F.3d 1044 (9th Cir. 2008) ........ 18

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004) ........ 6

*Lusardi v. Lechner*,
855 F.2d 1062 (3d Cir. 1988) ........ 12

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d Cir. 1977) ........ 9

*Newark Branch, NAACP v. City of Clifton*,
1990 WL 238665 (D.N.J. Dec. 27, 1990) ........ 8, 10

*Newark Branch, NAACP v. Town of Harrison*,
907 F.2d 1408 (3d Cir. 1990) ........ 9-10

*Ratcliffe v. Ins. Co. of N. Am.*,
482 F. Supp. 759 (E.D. Pa. 1980) ........ 14

*Robinson v. Dalton*,
107 F.3d 1018 (3d Cir. 1997)....................11

*Sale v. Jumbleberry Enters. U.S.A., Ltd.*,
2021 WL 7542953 (S.D. Fla. June 18, 2021)....................16

*Schwartz v. D/FD Operating Servs., L.L.C.*,
205 F.R.D. 166 (D. Del. 2002)....................20

*Sledge*, *Parr v. Woodmen of the World Life Ins. Soc'y*,
657 F. Supp. 1022 (M.D. Ga. 1987)....................10

*Spokeo, Inc. v. Robins*,
578 U.S 330 (2016)....................6

*Turk v. Salisbury Behav. Health, Inc.*,
2010 WL 1718268 (E.D. Pa. Apr. 27, 2010)....................20

*United States v. Sunoco, Inc.*,
644 F. Supp. 2d 566 (E.D. Pa. 2009)....................16

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007)....................7

**Statutes**

42 U.S.C. § 1981....................9

29 U.S.C. § 626(d).................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12....................5,11

Fed. R. Civ. P. 15....................13, 14

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants' motion to dismiss—yet again—rehashes premature and improper merits arguments that the Court already rejected. First, in denying Defendants' prior motion to dismiss, the Court squarely rejected Defendants' argument that Plaintiffs lack a genuine interest in jobs they applied to. *See* D.I. 127 at 4-5 ("Viewing [Plaintiffs'] pleaded allegations in the light most favorable to Plaintiffs, it is reasonable to infer that Plaintiffs were genuinely interested in Defendants' job postings[.]"). Yet Defendants once again raise that argument here. As Judge Fallon previously recognized, Defendants' leading case on "genuine interest" held an applicant's "motives [could] be considered only upon an adversarial presentation of the evidence," *i.e.*, at trial—not on a motion to dismiss. D.I. 127 at 5. Similarly, Defendants' exhaustion arguments hinge on "set[ting] aside" Plaintiffs' 2025 charges with the Equal Employment Opportunity Commission (EEOC), because of Defendants' previously rejected arguments on genuine interest. *See* Mot. to Dismiss, D.I. 220 at 12 ("Mot."). Moreover, Defendants again ask this Court to prematurely resolve disputed facts on exhaustion, despite controlling Third Circuit law to the contrary. Drawing all reasonable inferences in the light most favorable to Plaintiffs, as the Court must do in resolving a motion to dismiss, Defendants' exhaustion arguments continue to fall short.[1]

## SUMMARY OF ARGUMENT

The Court should rule as follows:

1. Plaintiffs have Article III standing, because the TAC plausibly pleads Plaintiffs' genuine interest in the jobs they applied for, causing Plaintiffs to lose jobs, income, and benefits.

---

[1] Plaintiffs acknowledge the Third Amended Complaint (TAC) repeats several previously dismissed claims, namely the Age Discrimination in Employment Act (ADEA) disparate impact claim, the Virginia Human Rights Act (VHRA) claim prior to July 1, 2020, and the California Fair Employment and Housing Act (FEHA) as to Goldstein. Plaintiffs include these claims in the TAC to preserve their appellate rights, not to re-litigate this Court's prior rulings on those claims here.

2. While Plaintiffs have alleged they have a genuine interest in the jobs at issue, they need not hold a genuine interest to confer standing, because even testers have Article III standing.
3. It is procedurally improper on a motion to dismiss to resolve factual disputes over Defendants' asserted defense that Plaintiffs failed to administratively exhaust claims against certain parties.
4. Even if the Court resolves the exhaustion dispute, Plaintiffs have amply alleged they exhausted their claims against all Defendants and that all the asserted claims are timely filed.

## STATEMENT OF FACTS

For years, RTX and its subsidiaries and business units have knowingly and routinely advertised and reserved a large portion of their entry-level roles for college graduates with less than one to two years of work experience (known as "Recent Graduate Positions"). D.I. 215 (TAC) ¶¶ 3-4. This recent graduate limitation intentionally excludes qualified older job applicants and deters older workers from applying. *Id.* Plaintiffs Mark Goldstein, Ducamp Beaulieu, and John Bryan are workers ages 40 or older who have been categorically excluded from many jobs at RTX and its various divisions due to their age, despite their interest and qualifications. *Id.* ¶¶ 17, 427.

Goldstein earned a bachelor's degree in economics from American University in 1978 and a master's degree in business administration from American University in 1980. *Id.* ¶ 257. Since 1980, Goldstein has held positions in cybersecurity, risk management, engineering, consulting, and other various fields. *Id.* He also worked as a federal contractor, where he held a government security clearance. *Id.* ¶ 258. Starting in 2019, during a period of unemployment, Goldstein began applying for positions with Defendants, including at least 13 Recent Graduate Positions. *Id.* ¶¶ 113, 260; *see also* Goldstein EEOC Charge, D.I. 215-23 at 15-18. Despite his interest and qualifications, Goldstein was never offered an interview for any of the positions, TAC ¶ 260, and on at least one occasion, he was rejected the same day he applied, *id.* ¶¶ 272, 275.

Beaulieu earned his bachelor's degree in engineering technology from Northeastern University in 2013 and has a background in software development and programming languages. *Id.* ¶¶ 362-63. But he struggled to find entry-level engineering positions after obtaining his bachelor's degree due to his age. *Id.* ¶ 142; *see also* Beaulieu EEOC Charge, D.I. 215-25 at 15. Between 2021 and 2025, Beaulieu applied for three positions with Defendants, seeking better pay and benefits. TAC ¶¶ 143, 365; *see also* Beaulieu EEOC Charge, D.I. 215-25 at 15. Although he was interested and qualified for the positions, he was never offered an interview. TAC ¶¶ 369-70.

Bryan earned a bachelor's degree in economics in 1996 and a master's degree in electrical engineering in 2006, both from University of California San Diego. *Id.* ¶ 382. He has experience in computer programming and hardware design, including in the hardware language used by Defendants. *Id.* ¶ 148; *see also* Bryan EEOC Charge, D.I. 215-21 at 6. Bryan became interested in Raytheon (RTX's predecessor) in 2004 following an on-campus presentation. Bryan EEOC Charge, D.I. 215-21 at 6-7. Since 2020, he applied for over 20 recent graduate jobs with Defendants. TAC ¶¶ 384, 388. Although he was interested and qualified for them, he—like the other Plaintiffs—never received an interview. *Id.*

Plaintiffs filed initial EEOC charges against Defendants between 2019 and 2024. Goldstein filed his first charge *pro se* in 2019 against Raytheon Company. *Id.* ¶ 43. In response to the EEOC charge, Raytheon's in-house counsel, Michael Grubbs, provided the EEOC with hiring data on behalf of *all* of Raytheon Company's subsidiaries and business units. *Id.* ¶ 46. In 2021, the EEOC found Raytheon's hiring practices violated the ADEA and Raytheon declined the opportunity to conciliate. *Id.* ¶¶ 48-49. The EEOC issued a right to sue letter in April 2021, which Goldstein never received. *Id.* ¶ 51. In June 2021, after the EEOC informed Goldstein that his First Charge had been closed, Goldstein and RTX entered into an agreement that tolled the statute of limitations for age

discrimination claims for Goldstein and all similarly situated individuals for the next three years. *Id.* ¶ 55. This agreement was intended to bind and cover jobs at all of the subsidiaries and units of Raytheon Technologies/RTX, including jobs at Raytheon Company that were the sole focus of Mr. Goldstein's 2019 charge. *Id.* ¶ 57. Grubbs, an in-house attorney for Raytheon Technologies (RTX's predecessor) *and* Raytheon Company, signed the tolling agreement. *Id.* ¶ 58.

In June 2023, Goldstein filed a new, Second Charge—that was expressly authorized by the tolling agreement—against RTX (previously named Raytheon Technologies Corporation), its subsidiaries, and related or affiliated entities, asserting similar claims to his First Charge. *Id.* ¶ 64. The Second Charge identified specific jobs with discriminatory postings at Collins Aerospace, Raytheon Technologies Corporation, ARINC, and Raytheon Intelligence & Space. *Id.* ¶ 67 (describing in detail the charge's references to the various entities within RTX's corporate family).

In May 2024, Goldstein told Defendants he planned to cancel the tolling agreement, and in June 2024, he filed the original Complaint. *Id.* ¶¶ 90, 92. After learning of the action, Beaulieu and Bryan each filed EEOC charges against RTX, its subsidiaries, and units in August and September of 2024, respectively. *Id.* ¶ 25. At no point while the prior EEOC charges were pending did Defendants suggest Plaintiffs had filed charges against the wrong entity. *Id.* ¶ 34. But after Goldstein filed the original Complaint, RTX first asserted that Plaintiffs should have sued its subsidiaries separately. *Id.* ¶ 35. In November 2024, Plaintiffs amended their pending EEOC charges and filed a First Amended Complaint (FAC) that named as Defendants all the entities that played a role in denying them jobs to ensure all the proper parties were included. *Id.* ¶ 36. Plaintiffs did not receive right to sue letters for these charges until early 2025. *Id.* ¶¶ 112, 146, 167.

Defendants moved to dismiss the FAC, and, as relevant here, Judge Fallon recommended granting the motion only with respect to the non-RTX Defendants in September 2025. D.I. 127.

After Plaintiffs objected, this Court adopted the recommendation, but granted Plaintiffs leave to amend to resolve the identified deficiencies. D.I. 148. This Court rejected Defendants' claim that the "Tolling Agreement applied only to claims against Raytheon Technologies Corporation, not Raytheon Company," holding that Defendants' argument "is implausible." *Id.* at 3 n.3.

Following the recommendation, but before this Court's order, Goldstein and Beaulieu filed new EEOC charges in December 2025 "out of an abundance of caution [] to ensure that [their] claims against [the non-RTX Defendants] have been fully exhausted." Goldstein EEOC Charge, D.I. 215-23 at 7; Beaulieu EEOC Charge, D.I. 215-25 at 7. In January 2026, Plaintiffs filed their Second Amended Complaint (SAC). D.I. 162. Shortly after Plaintiffs filed the SAC, Goldstein and Beaulieu received right to sue notices for their 2025 EEOC charges and Plaintiffs then moved for leave to file the TAC. D.I. 169. Over Defendants' objections, Judge Fallon recommended granting leave to amend in September 2026, holding again that Plaintiffs had standing, D.I. 211, and this Court quickly affirmed, overruling Defendants' objections in October 2026, D.I. 231.

## LEGAL STANDARD

Under Rules 12(b)(1) and 12(b)(6), a court conducts a two-part analysis. Fed. R. Civ. P. 12; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, it accepts as true all well-pleaded facts. *Fowler*, 578 F.3d at 210-11. Second, it decides whether the facts are sufficient to establish a plausible claim, when drawing "all reasonable inferences . . . in the light most favorable to [plaintiffs]." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016).

## ARGUMENT

### I. Plaintiffs Have Article III Standing to Litigate Claims Against Non-RTX Defendants, Including Those Related to Their December 2025 EEOC Charges.

Defendants do not challenge Plaintiffs' standing for any claims other than those based on Goldstein's and Beaulieu's December 2025 EEOC charges, *see* Mot. at 7, because the Court

previously held that Plaintiffs had standing to bring the claims asserted in the FAC. *See* D.I. 127 at 4-5. But Defendants' argument that Plaintiffs lack Article III standing for the claims in the 2025 charges ignores detailed allegations of Plaintiffs' concrete injuries, is rooted in a novel genuine-interest requirement, and intentionally misreads the charges. To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S 330, 338 (2016). Here, Plaintiffs suffered classic pocketbook injuries that confer Article III standing. After all, "[l]oss of a job opportunity is unquestionably a distinct and palpable injury." *Howard v. N.J. Dep't of Civ. Serv.*, 667 F.2d 1099, 1101 (3d Cir. 1981).

In the TAC, Plaintiffs pleaded that they were genuinely interested in and applied to several Recent Graduate Positions for which they were qualified, but that Defendants repeatedly denied them consideration for those positions. On a motion to dismiss, Plaintiffs' allegations of genuine interest in jobs they were denied foreclose Defendants' attack on standing. *Connelly*, 809 F.3d at 786; *see also Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004); D.I. 127 at 5. Thus, the Court need only consider the plain language of Plaintiffs' allegations in the TAC to reject Defendants' arguments, which seek to inject the unripe issue of tester standing into this litigation and ask the Court to draw improper inferences against Plaintiffs. If the Court considers the merits of Defendants' arguments on tester standing, they are wrong both factually and legally.

### A. Plaintiffs Plausibly Pleaded That They Held a Genuine Interest in the Recent Graduate Jobs at Issue, and Any Other Inference is Impermissible at this Stage.

Defendants' argument that Plaintiffs were not genuinely interested in the positions they applied for in 2025 requires the Court to draw an inference that contradicts Plaintiffs' specific allegations in the TAC. As this Court has already held, any such inference at this stage is improper. D.I. 127 at 4-5; *see also Connelly*, 809 F.3d at 789 n.6; *Lum*, 361 F.3d at 223.

Throughout the TAC, Plaintiffs allege interest in the jobs that they applied for. *See* TAC ¶ 17 ("Plaintiffs have been genuinely interested in positions with Defendants"); *id.* ¶ 261 ("Mr. Goldstein has been genuinely interested in each of the positions he applied for at RTX"); *id.* ¶ 365 ("Mr. Beaulieu has been genuinely interested in each of the positions to which he applied"); *id.* ¶ 388 ("Mr. Bryan has been genuinely interested in each of the positions to which he applied"). Plaintiffs further expressed their interest in the jobs in their EEOC charges, which are incorporated by reference. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 328-29 (3d Cir. 2007) (courts consider documents incorporated into the complaint, including those "explicitly relied upon by the . . . complaint," on a motion to dismiss). Beaulieu and Bryan stated they were interested in the jobs for the better pay and benefits, and Goldstein noted that he had applied to a wide range of positions with Defendants following a lengthy period of unemployment. *See* Beaulieu EEOC Charge, D.I. 215-25 at 16; Bryan EEOC Charge, D.I. 215-21 at 7; Goldstein EEOC Charge, D.I. 215-23 at 15.

Judge Fallon previously held that the same types of allegations of Plaintiffs' genuine interest in the positions for which they applied were sufficient to survive a motion to dismiss. *See* D.I. 127 at 5. As the Court recognized, at the pleading stage it cannot ignore these well-pleaded allegations by inferring that Plaintiffs were not genuinely interested in these jobs, and "[q]uestions regarding the sincerity of Plaintiffs' interest in the job openings may be revisited after fact discovery." *Id.*; *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d. Cir. 2017).

### B. Defendants' Misconstruction of Plaintiffs' Efforts to Exhaust as Purported Evidence of Lack of Genuine Interest in the Jobs at Issue is Improper at this Stage.

Defendants intentionally misconstrue Plaintiffs' exhaustion efforts as somehow undermining their genuine interest in their 2025 job applications. Defendants' argument stems from their misreading of Goldstein and Beaulieu's 2025 EEOC charges, where they each stated: "I am filing *the instant charge* against all of the Respondents out of an abundance of caution, to

ensure that my claims against each of these entities have been fully exhausted, given that some of the Respondents claim that my prior claims against some of the Respondents were not exhausted." D.I. 215-23 at 7–8; D.I. 215-25 at 7 (emphasis added). That Plaintiffs filed the new EEOC charges to exhaust their claims—a requirement for *all* plaintiffs under the ADEA, 29 U.S.C. § 626(d)—does not contradict their genuine interest in the jobs. If Defendants are correct that filing a charge to exhaust a claim defeats standing, then no one would *ever* have standing to assert ADEA claims, as every older worker must file an EEOC charge to exhaust their claims before filing suit.

At best, Defendants' arguments about Plaintiffs' motivations are premature. In ruling on Defendants' first motion to dismiss, Judge Fallon correctly explained that any questions about the sincerity of Plaintiffs' interest in the jobs they applied for "may be revisited after fact discovery," D.I. 127 at 5, adopted by D.I. 148. Thus, this Court has already accepted Plaintiffs' allegations of genuine interest as true at this stage, *see In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d at 633, and that approach is consistent with that taken in *Sledge v. J.P. Stevens & Co.*, which Defendants cite, and cases in this Circuit. 585 F.2d 625, 641 (4th Cir. 1978) (plaintiffs' "motives [should] be considered only upon an adversarial presentation of the evidence"); *see Newark Branch, NAACP v. City of Clifton*, 1990 WL 238665, at *7 (D.N.J. Dec. 27, 1990) (denying summary judgment where factual question of applicant's interest in job existed).

## II. In Any Event, Testers Also Have Article III Standing to Bring ADEA Claims.

Though Plaintiffs here do have a genuine interest in the jobs for which they applied, there is no requirement that Plaintiffs must have a genuine interest to have standing to bring ADEA claims, because Third Circuit law recognizes testing standing under the ADEA. By arguing that Plaintiffs must have a genuine interest in the jobs they applied for to have standing, Defendants invent a genuine interest standing requirement that does not exist in this Circuit. This Court has already rejected that argument three times: in denying Defendants' first motion to dismiss, D.I.

127; in granting Plaintiffs' motion for leave to amend, D.I. 211; and in rejecting Defendants' most recent objections, D.I. 231. The Court should, once again, reject Defendants' argument.

Courts in the Third Circuit have repeatedly recognized the availability of tester standing. *See, e.g.*, *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 898 (3d Cir. 1977). And the Seventh Circuit relied on *Meyers* in *Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289 (7th Cir. 2000), to reject a genuine interest requirement in similar employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 and allow tester standing. *Id.* at 300. Judge Fallon previously looked to *Kyles* to find that tester standing would be available in this case. *See* D.I. 211 at 5-6. But Defendants still attempt to distinguish *Kyles* and *Meyers* by overstating their reliance on cases finding tester standing in the housing context.[2]

While *Kyles* cites to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), it does so only to recognize an area where courts allowed tester standing to enforce statutory rights. *See Kyles*, 222 F.3d at 298-99. *Kyles* recognized a broad substantive right in Title VII to be free from discrimination in hiring, separate from rights recognized in the housing context. *Id.* at 298. Despite Defendants' contentions, it is immaterial that a right to truthful information does not exist under Title VII or the ADEA, as that right was not the basis for tester standing in *Kyles*. Defendants also point to *Fair Employment Council of Greater Washington, Inc., v. BMC Marketing Corporation*, 28 F.3d 1268, 1271 (D.C. Cir. 1994), but this out-of-circuit case denying standing under 42 U.S.C. § 1981 is directly at odds with *Meyers*, which remains binding Third Circuit precedent.

Defendants' other arguments for the genuine-interest standing requirement are similarly unpersuasive. Defendants cite *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408 (3d

[2] Courts routinely look to cases interpreting Title VII to guide their interpretation of the ADEA. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d. Cir. 1995).

Cir. 1990), but that case only addressed the standing of an *organization* whose members *did not* apply to the positions at issue, with the Third Circuit explaining that plaintiffs must make their interest known to the employer in some manner to state a claim. *Id.* at 1415; *see also City of Clifton*, 1990 WL 238665, at *7 ("*Harrison* does not state that an applicant must *both* apply for a job and have a genuine interest in that job. . . . A survey of civil rights cases . . . indicates that the Court need not inquire whether a job applicant . . . really intended to take the job."). Similarly, *Sledge*, *Parr v. Woodmen of the World Life Insurance Society*, 657 F. Supp. 1022, 1032-33 (M.D. Ga. 1987), and *Allen v. Prince George's County*, 538 F. Supp. 833, 842 (D. Md. 1982), are inapposite as they did not address standing. Instead, each focused only on the availability of remedies or the merits of a plaintiff's claim. *See Sledge*, 585 F.2d at 641; *Parr*, 657 F. Supp. at 1032-33; *Allen*, 538 F. Supp. at 841. And the claims in *Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924 (N.D. Cal. Mar. 13, 2020), were dismissed because the plaintiffs failed to point to specific jobs they were qualified for but were not advertised to them because of their age, *not* because they lacked a genuine interest in positions with the defendants. *Id.* at *11. In sum, even if the Court reached Defendants' tester standing arguments at this stage—which it should not—it should reject the novel genuine-interest requirement Defendants invent, as it has no basis in Third Circuit law.

## III. While a Failure-to-Exhaust Defense is Generally Not Appropriate to Decide at this Stage, Plaintiffs Nevertheless Have Sufficiently Pleaded that They Exhausted Their Claims Against the Non-RTX Defendants, Not Just as to RTX.

Defendants' arguments that Plaintiffs failed to exhaust their claims from the pre-2025 charges against the non-RTX Defendants lack merit.[3] First, this Court cannot resolve factual disputes over an exhaustion defense on a motion to dismiss. *Bivines v. Temple Univ. of*

[3] Defendants do not claim that Plaintiffs Goldstein and Beaulieu failed to exhaust as to the non-RTX Defendants in the 2025 charges. Nor could they, because Plaintiffs expressly identified each non-RTX Defendant by name in the caption and body of their 2025 charges. Nor do Defendants claim that Plaintiffs have failed to exhaust any of their claims as to RTX.

*Commonwealth Sys. of Higher Educ.*, 284 F. Supp. 3d 587, 590 (E.D. Pa. 2018) (holding factual disputes on exhaustion not suitable for motion to dismiss); *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) (courts "may rule on a Rule 12(b)(1) motion when on the face of the pleadings it is clear that administrative remedies have not been exhausted, but this rule is inapplicable to the resolution of disputed issues of material fact with respect to the applicability of statutes of limitations." (cleaned up)); *Anderson v. Kauffman*, 2023 WL 1805837, at *5 n.2 (M.D. Pa. Feb. 7, 2023), *vacated in part on other grounds*, 2026 WL 1397313 (3d Cir. May 19, 2026) (failure to exhaust defense not properly raised by Rule 12 as "it requires the court to consider documents outside those attached to the complaint and potentially resolve factual disputes").

Second, Plaintiffs' plausible allegations in the TAC are more than sufficient to exhaust their claims when the Court applies the proper legal standard the Third Circuit has established. Exhaustion rules were not intended to "serve as a stumbling block to the accomplishment of the statutory objective," and "jurisdictional requirements for bringing suit under Title VII should be liberally construed." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 887-88 (3d Cir. 1977) ("*Glus I*"). This is especially true where, as here, there are many factual disputes related to exhaustion, including over Defendants' complex and evolving corporate structure, opaque application process that made it difficult for Plaintiffs to identify the proper defendants, whether all the Defendants had actual notice of the charges, and which claims the parties intended to toll against whom.

### A. The Action is Timely as to Raytheon Company Over the Claims in Goldstein's First Charge in 2019, Due to the 2021 Tolling Agreement and His FAC Relating Back to the Original Complaint Against RTX.

Defendants claim the lawsuit is untimely as to Raytheon Company for the claims exhausted by the First Charge in 2019 against Raytheon Company, as the 2021 tolling agreement allegedly did not apply to Raytheon Company and Goldstein filed the First Amended Complaint adding Raytheon Company as a party over 90 days after he received the right to sue on the First Charge

(even after counting tolling). This is wrong. This Court already held the 2021 agreement tolled Goldstein's claims against RTX and Raytheon Company from 2021 to 2024, and the FAC plainly relates back to the original Complaint. TAC ¶¶ 108-110.

Defendants "do not concede" (Mot. at 13) that the tolling agreement applies to Raytheon Company, even though this Court held that argument was "implausible." D.I. 148 at 3 n.3. But they do not offer any new (or old) arguments on why the tolling agreement does not apply to Raytheon Company. As this Court correctly explained, it would make no sense for the tolling agreement to *not* bind Raytheon Company and only apply to Raytheon Technologies Company (now RTX), since in 2021 Goldstein had only filed the "First Charge Against Raytheon Company," which the agreement referred to by number, and "there was no pending charge against Raytheon Technologies Corporation [RTX]." *Id.* This conclusion remains sound, especially with the TAC adding facts describing how the tolling agreement was intended to cover Raytheon Company and was negotiated by Raytheon Company's lawyer for Raytheon Company's benefit. TAC ¶¶ 57-63.[4]

Because the 2021 agreement tolled claims against Raytheon Company, this lawsuit "would have been timely as to claims against Raytheon Company, except the initial complaint in this case did not name Raytheon Company as a Defendant." D.I. 148 at 3-4. But Goldstein's November 2024 FAC *was* timely as to Raytheon Company for the claims exhausted by the First Charge, as it related back to the original Complaint filed against RTX in June 2024. TAC ¶¶ 108-110. Under

[4] Defendants' argument that Goldstein's First Charge only exhausted his "individual claims against Raytheon Company," and not those of other applicants' (Mot. at 13), is wrong. In his First Charge, Goldstein challenged Defendants' enterprise-wide policies or practices, which is sufficient to exhaust claims on behalf of the ADEA collective. *See* D.I. 215-4 (alleging that Raytheon Company discriminated against Goldstein and "older applicants like [him] who are otherwise qualified"); *see also Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988) (to exhaust collective claims, EEOC charge must merely "notif[y] [the defendant] that it allegedly discriminates against persons over forty years old as a class").

Rule 15(c), an amendment "relates back if (1) it 'asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading'; and (2) the 'party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 295 (3d Cir. 2010) (quoting Fed. R. Civ. P. 15(c)(1)(C)). Here, (1) the FAC's claims against Raytheon Company arose from the same conduct as the original Complaint; (2) the new party the FAC named, Raytheon Company, received timely notice; and (3) the new party knew or should have known it was to be named but for Plaintiffs' mistake about its identity. TAC ¶¶ 108-10; *see Davis v. Corr. Med. Sys.*, 480 F. Supp. 2d 754, 760 (D. Del. 2007).

Raytheon Company only claims it did not know or should not have known it was to be named in this suit. Mot. at 14. But this contention strains credulity, considering that Raytheon Company was the sole focus of the First Charge that led to a cause finding against it, the First Charge claims were tolled, the First Charge against Raytheon Company was described as the basis for the claims in the original Complaint, and the original Complaint stated that "[a]ll references" to the defendant "are intended to include . . . Raytheon Company" and RTX's "subsidiaries, or affiliates." *See* Original Complaint, D.I. 1 ¶¶ 21-22, 31, 43, 136; *see also* D.I. 148 at 3 n.3.

Raytheon Company also claims Plaintiffs intentionally excluded Raytheon Company as a separate legal entity from the original Complaint. Mot. at 14-15. But the most likely reason for Raytheon Company's exclusion, instead, is that Plaintiffs mistakenly excluded Raytheon Company due to confusion over RTX's complex corporate structure that changed significantly during the pendency of the charges. D.I. 1 ¶ 31 ("In April 2020, Raytheon [Company] merged with United Technologies Corporation to form Raytheon Technologies Corporation, which later changed its name to RTX Corporation"); TAC ¶ 30. Indeed, RTX and Raytheon Company "made it difficult

to ascertain which corporate entity was legally responsible for the employment-related liability of Raytheon Company from before the merger," *id.* ¶ 169, and "made it very difficult for applicants to know which specific corporate entities are responsible for hiring or employing persons within RTX and its subsidiaries," *id.* ¶ 168.

Moreover, Defendants' argument conflicts with this Circuit's holding that an applicant cannot be expected to "accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, every separate entity which in some way may have violated [the statute]." *Glus I*, 562 F.2d at 888. And courts in this Circuit recognize that an amendment may relate back under Rule 15(c), including when adding a party, even if such an amendment is more than 90 days after they received their right-to-sue letter. *Ratcliffe v. Ins. Co. of N. Am.*, 482 F. Supp. 759, 761-64 (E.D. Pa. 1980) (allowing amendment to add additional party after 90 days from right to sue); *Bernstein v. Nat'l Liberty Int'l Corp*., 407 F. Supp. 709, 713 (E.D. Pa. 1976).

**B. Plaintiffs' 2023 and 2024 Initial Charges and Their November 2024 Amended Charges That Expressly Named All the Defendants as Respondents Were Timely Exhausted Due to the 2021-2024 Tolling Agreement.**

Defendants appear to concede that the 2021 tolling agreement applied to RTX and, in turn, that Plaintiffs' 2023 and 2024 charges were timely filed as to RTX. But Defendants argue that the tolling agreement did not apply to non-RTX entities or to "*new* applications Plaintiffs allegedly submitted to Raytheon Company between June 2021 and 2024." Mot. at 14. Both arguments are belied by the tolling agreement itself and its purpose, and to the extent there is a dispute over the meaning of the agreement the Court should defer that question until after fact discovery.

First, the tolling agreement plainly applies to *new* applications *beyond* those challenged in the First Charge, because the agreement not only tolled the claims exhausted in the First Charge, but also expressly stated that "[d]uring this [tolling] period Goldstein shall be permitted to file a *new charge* with the EEOC . . . regarding the Challenged Practice." D.I. 215-11 at 1 (emphasis

added). Any "new charge" could only challenge *new* applications beyond those included in the First Charge, as the applications in the First Charge occurred in 2019 (much more than 300 days before the agreement was signed in June 2021), and the EEOC had already issued a cause finding on them. The plain language of the agreement permitting a "new charge" is entirely consistent with this Court's holding that the tolling agreement applied to *Raytheon Company*, since, at that point, the only pending claims were in the First Charge against Raytheon Company. D.I. 148 at 3 n.3.

Next, the tolling agreement was clearly intended to bind not just RTX and Raytheon Company, but also RTX's entire corporate family that engaged in the "the Challenged Practice" at the heart of the agreement. D.I. 215-11 at 1. Although the agreement bound Raytheon Company, as it tolled the claims asserted in the First Charge against Raytheon Company, that does not mean it did not intend to apply to other subsidiaries and units of Raytheon Technologies or RTX, which replaced Raytheon Company as the publicly-traded parent entity in 2020.[5] Indeed, the TAC alleges "Raytheon Technologies Corporation (RTX [] predecessor) intended the tolling agreement to bind Raytheon Technologies Corporation and its subsidiaries or business units," TAC ¶ 60, and explains the scope of the tolling agreement is broad and extends beyond the claims from the First Charge—tolling claims related to a "Challenged Practice" occurring throughout RTX's corporate family for Goldstein and "all other individuals nationwide who may have age discrimination claims against Raytheon under federal, state, or local laws related to [Raytheon's] employment policies or practices regarding new or recent graduates," *id.* ¶ 56-57 (quoting D.I. 215-23 at 1).

As there is a factual dispute over whether the parties intended the tolling agreement to apply to entities beyond RTX and Raytheon Company, the Court should not resolve this issue.

[5] Defendants' suggestion that this Court reached this issue, Mot. at 16, is incorrect. This Court's order concluded that the tolling agreement applies to Raytheon Company and RTX, not that the agreement could not apply to other subsidiaries or units of RTX. *See* D.I. 148 at 3 n.3.

Even outside of the more liberal civil rights jurisdictional context, courts have declined to resolve disputes over whether a tolling agreement signed by a parent company applies to its subsidiary without full discovery. *See*, *e.g.*, *United States v. Sunoco, Inc.*, 644 F. Supp. 2d 566, 574-75 (E.D. Pa. 2009) (denying summary judgment); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2005 WL 3704688, at *16, *20 (S.D. Tex. Dec. 5, 2005) (denying motion to dismiss); *see generally Sale v. Jumbleberry Enters. U.S.A., Ltd.*, 2021 WL 7542953, at *5 (S.D. Fla. June 18, 2021) (denying motion to dismiss due to factual dispute about tolling agreement).

Despite Defendants' contentions, Plaintiffs do not argue the tolling agreement applies to the non-RTX Defendants simply because RTX and the other Defendants shared the same counsel. Instead, Plaintiffs allege that RTX and its in-house lawyer who represented the other Defendants "intended the tolling agreement to bind" the "subsidiaries" and "business units." TAC ¶¶ 58-60.

Defendants point to Judge Fallon's R&R that recognized a "general principle that a contract cannot generally bind a nonparty subsidiary," D.I. 127 at 8, but this Court's opinion already rejected that general principle in interpreting this very tolling agreement by recognizing that the parties clearly intended it to apply to Raytheon Company, an RTX subsidiary. D.I. 148 at 3 n.3. Moreover, it is well-established that a "non-signatory can be held liable for breach where it manifests an intent to be bound by the contract," including where "a non-signatory manifested an unequivocal intent to be bound by a contract where the non-signatory . . . was the key decision-maker in contract negotiations" or "attended meetings . . . and participated in the negotiations and drafting of the contract." *Chemimage Corp. v. Johnson & Johnson*, 2024 WL 3758814, at *3 (S.D.N.Y. Aug. 12, 2024) (cleaned up); *see also Davies US Inc. v. Weston*, 2026 WL 1475213, at *2 (D. Del. May 26, 2026) ("[I]n Delaware, a non-signatory may still be bound if [it] manifests an intent to be."). That is exactly what Plaintiffs allege: a lawyer who represented all Defendants

drafted the agreement, actively participated in its negotiation, and intended it to cover RTX's subsidiaries and business units and their jobs. TAC ¶¶ 57-62.

Finally, Defendants do not contest that, if the tolling agreement applies to the non-RTX Defendants, Plaintiffs' 2023 and 2024 EEOC charges *and* their November 2024 Amended Charges were timely filed with the EEOC and fully exhausted by naming all Defendants as Respondents. All Plaintiffs applied to jobs during the tolling period, which meant they still had 300 days to file their charges when the agreement expired in June 2024, and all Plaintiffs filed Amended Charges naming all Defendants as Respondents within the remaining 300-day charge filing period.[6]

### C. Bryan's November 2024 Amended Charge Timely Exhausted as to All the Defendants Even if the Tolling Agreement Did Not Apply to the Non-RTX Entities.

Defendants do not dispute that Bryan's November 13, 2024, Amended Charge fully exhausts as to all the Defendants. His Amended Charge expressly named all the Defendants as Respondents and challenged the denial of a job he applied for on August 12, 2024, just 93 days before his November 13, 2024 Amended Charge, well within the 300-day charge-filing period. TAC ¶ 152. Instead, they claim Bryan filed his charge *too soon*, as he supposedly only alleged he had "not yet heard back" about the job. Mot. at 15. But Defendants selectively omit the statement in Bryan's charge that he "was not selected for an interview for these positions," *including* the August 12, 2024 job, "because [he] was not a recent college graduate," *i.e.*, that he had not been

[6] Goldstein applied to five jobs during the June 2021-June 2024 tolling period, so he still had 300 days left to file his charges against all the entities when he amended his 2023 charge on November 13, 2024 expressly naming all Defendants as Respondents, just 161 days into the 300-day period. TAC ¶¶ 102, 105-06; D.I. 215-18. And two of Goldstein's applications that *preceded* the tolling period remained timely when he filed his Amended Charge on November 13, 2024. TAC ¶ 107. Beaulieu applied to two jobs during the tolling period, and he filed his Amended Charge on November 13, 2024, expressly naming all Defendants as Respondents, 161 days into the 300-day filing period. TAC ¶¶ 120-21, 124-125; D.I. 215-20. Bryan applied to two jobs during the tolling period and filed his Amended Charge on November 13, 2024, expressly naming all Defendants as Respondents, 161 days into the 300-day filing period. TAC ¶¶ 148-149, 153-54; D.I. 215-22.

selected for the job. D.I. 214-22 at 12-13; *accord* TAC ¶ 387 ("RTX did not respond to that [August 12, 2024] application and thus refused to hire him for that position."). Moreover, by the time he filed his Amended Charge on November 13, 2026, it was clear that Bryan had not been selected, such that there is no doubt that his ADEA claim was ripe. In any event, a formal rejection is not required for a failure to hire claim to accrue in the Third Circuit or any other circuit.[7]

### D. Goldstein's 2023 Charge and Beaulieu and Bryan's 2024 Charges Satisfy the Common Interest Exception, Both as Initially Filed and as Amended.

Whether or not the tolling agreement applies to non-RTX entities, Plaintiffs' 2023 and 2024 charges exhausted as to *all* the non-RTX entities, as Plaintiffs satisfy the common interest test under *Glus I*, 562 F.2d at 888. As the TAC explains, Plaintiffs satisfy *all* four non-dispositive *Glus I* factors, TAC ¶¶ 167-85,[8] and all Defendants had actual notice of Plaintiffs' charges against RTX,

---

[7] The Third Circuit eschews overly rigid accrual rules in civil rights cases, recognizing the key question is whether there is evidence of discriminatory exclusion from jobs. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 349, 352 (3d. Cir. 1990) (holding there was sufficient evidence of discriminatory hiring, despite the lack of a formal application, as applicants had done "everything reasonably possible" to make known their interest in applying for a job, and there was "abundant circumstantial evidence from which the inference of discriminatory treatment can be reasonably drawn"). There is no bright-line rule in this Circuit for how long an applicant must wait to decide they have been constructively rejected. Courts have held failure to hire claims accrue when a reasonable person would have realized he had not been hired. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008); *Azzun v. Kan. Dep't of Health & Env't*, 2010 WL 4975557, at *5 (D. Kan. Dec. 2, 2010) ("[A] period of 90 days after each application period closed is a sufficient period of time . . . to lead a reasonable applicant who had not heard anything from the potential employer to conclude that he was not hired for the desired position[.]").

[8] While Defendants do not challenge those factors, Plaintiffs briefly describe them for the record. First, Plaintiffs could not ascertain "the role of the unnamed party through reasonable effort," *Glus I*, 562 F.2d at 888, as RTX's job postings often did not identify the specific employing entity and "made it very difficult for applicants to know which specific corporate entities are responsible for hiring." TAC ¶ 168; *see, e.g.*, D.I. 215-25 at 25-31; D.I. 215-18 at 17-20. Second, "the interests of [RTX]" "are so similar [to] the unnamed part[ies]" (RTX's subsidiaries and units) "that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings." *Glus I*, 562 F.2d at 888. As Defendants are part of a single "integrated enterprise" where RTX "exerts financial control and operational direction over" its units, TAC ¶¶ 171-72, 202-15, RTX had the power to conciliate and comply on behalf of its units. TAC ¶ 174. Third, no unnamed party was prejudiced by not being named, *Glus I*, 562 F.2d at 888, as RTX responded to the 2023 EEOC charge by filing a position statement that addressed

TAC ¶¶ 31, 73. Defendants do not dispute Plaintiffs satisfy the four *Glus I* factors, instead claiming the TAC does not plead the non-RTX entities had actual notice. Mot. at 16-18.

Defendants are wrong. The TAC alleges in detail how all Defendants had actual notice of the 2023 and 2024 charges. After Defendants' common counsel negotiated the 2021 tolling agreement that expressly authorized the "new" 2023 charge, TAC ¶¶ 54-59, their common counsel received the 2023 charge, understood it challenged company-wide practices across RTX's corporate family, investigated which subsidiaries and units engaged in the challenged practice, and "informed other leaders within those subsidiaries and business units" that the 2023 charge "challenged the employment practices of the subsidiaries and business units." *Id.* ¶¶ 69-74.

Further, when responding to the 2023 charge, RTX and its counsel understood and made clear that RTX responded for its entire corporate family and Goldstein challenged the subsidiaries and business units' practices, including by: addressing Goldstein's allegations over specific job applications at RTX's subsidiaries and business units on the merits, rather than suggesting RTX was not responsible for those jobs; producing information to the EEOC on over 1,000 recent graduate jobs at RTX's *subsidiaries and business units*; and producing organizational charts that identified the number of people involved in "talent acquisition" at each subsidiary or business unit. *Id.* ¶¶ 77-88. Additionally, RTX's Head of Global Talent Acquisition, who "had the authority to speak on behalf of those subsidiaries and business units," "answered the EEOC's questions" about the challenged practices "on behalf of RTX Corporation *and* the subsidiaries and business units".

---

the merits as to jobs at all Defendants without suggesting Plaintiffs named the wrong party. D.I. 215-13 at 2. And RTX even produced detailed information on over 1,000 recent graduate jobs at RTX *and* all of its subsidiaries and units. TAC ¶ 85; D.I. 215-16. Fourth, the non-RTX entities "represented to the complainant that [their] relationship with [RTX] is to be through the named party," *Glus I*, 562 F.2d at 888, as the same lawyers for RTX and the non-RTX entities negotiated with Plaintiffs and signed a tolling agreement covering Goldstein's 2019 EEOC charges. *See* D.I. 215-11; TAC ¶ 176.

*Id.* ¶ 89. Finally, there is dispute that Defendants received actual notice of Beaulieu and Bryan's 2024 Charges and Amended Charges, which were all served on counsel who represented all the Defendants and shared internally with the leaders of all Defendants. TAC ¶¶ 122-23, 136, 150-51.

Defendants' view of "actual notice" grossly overstates the Third Circuit's standard. Defendants misconstrue a line in *Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d 756, 764 (E.D. Pa. 2005), with an inapt citation to *EEOC v. Geisenger Health*, 2025 WL 938622 (E.D. Pa. Mar. 27, 2025), to argue that for there to be actual notice, an unnamed party's knowledge must give rise to the belief that the unnamed party would *be sued*. But as shown by the very next sentence in *Christaldi-Smith*, plaintiffs are merely required to plead that an unnamed party "actually knew that a charge with the EEOC had been filed." 367 F. Supp. 2d at 764.[9] Plaintiffs easily met this low bar by explaining exactly when and how all the Defendants received actual notice that an EEOC charge was filed that challenged their own conduct. *See supra* at 14-17.[10]

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss the TAC.

---

[9] In *Geisenger Health*, the court did not reject that notifying shared in-house counsel could constitute actual notice. It rejected that notifying an attorney that "ultimately represented all named Defendants," *i.e.*, a large healthcare system, constituted actual notice of class-wide disability claims when plaintiff's initial EEOC charge was brought against her specific employer for failing to provide reasonable accommodations during her job's duration. 2025 WL 938622, at *14-16. Here, by contrast, Plaintiffs' EEOC charges have *always* challenged all Defendants' shared recent graduate advertising and hiring and stated Plaintiffs' interest in class and collective claims.

[10] Defendants' claim—that this Court rejected, D.I. 127 at 11 n.10—that the common interest exception only applies to EEOC charges filed *pro se* is still unavailing. Nothing in *Glus I* or *Glus II* suggests the common interest exception is so limited. *Glus I*, 562 F.2d at 880; *Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir. 1980) ("*Glus II*"), *vacated on other grounds*, 451 U.S. 935 (1981). Neither the Third Circuit nor this District has observed this limitation when analyzing *Glus*. *See, e.g.*, *Schwartz v. D/FD Operating Servs., L.L.C.*, 205 F.R.D. 166, 168 (D. Del. 2002); *Turk v. Salisbury Behav. Health, Inc.*, 2010 WL 1718268, at *3 (E.D. Pa. Apr. 27, 2010). While *Glus I* notes "much of the initiation of charges with the EEOC is done by laymen," 562 F.2d at 888, neither its or *Glus II*'s holding nor prior interpretation in this Circuit is cabined to *pro se* charges. D.I. 127 at 11 n.10; *Glus I*, 562 F.2d at 888; *Glus II*, 629 F.2d at 251.

Dated: November 2, 2026

Respectfully Submitted,

*Of Counsel*

*/s/ Robert Erikson*

Adam T. Klein*
Mollie Berkowitz*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

Mikael Rojas*
Chauniqua D. Young*
**OUTTEN & GOLDEN LLP**
1225 New York Avenue NW
Washington DC 20005
(202) 847-4400

Rebecca Rodgers*
Louis Lopez*
Samantha Wehrle*
Lauren Naylor*
**AARP FOUNDATION**
601 E Street, NW
Washington, DC 20049
(202) 434-6983

Kimberly A. Evans (#5888)
Robert Erikson (#7099)
**BLOCK & LEVITON LLP**
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600

Peter Romer-Friedman*
Patrick David Lopez*
**ROMER-FRIEDMAN BERMAN LAW PLLC**
6856 Eastern Avenue NW, Suite 221
Washington, DC 20012
(202) 355-6364

David Berman*
**ROMER-FRIEDMAN BERMAN LAW PLLC**
16 Court Street, Floor 33
Brooklyn, NY 11241
(347) 229-1514

**Admitted Pro Hac Vice*

*Counsel for Plaintiffs, the Certified Collective, and the Proposed Class*